Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 10

# UNIVERSITY OF CALIFORNIA, SANTA CRUZ



BERKELEY • DAVIS • IRVINE • LOS ANGELES • RIVERSIDE • SAN DIEGO • SAN FRANCISCO                      SANTA BARBARA • SANTA CRUZ

ADLAI E. STEVENSON COLLEGE

SANTA CRUZ, CALIFORNIA 95064

January 13, 1998

Richard Sindel
Attorney at Law
8008 Carondelet, Suite 301
Clayton, Missouri 63105

Dear Mr. Sindel:

I have received your fax and write in response to it. I had no idea that you were actually planning to go to trial in this case in February of this year until Connie Caspari called my office last week and left a message to that effect on my answering machine. Although I knew that the trial was originally scheduled for sometime around that period, I had assumed that you had obtained a lengthy continuance. Let me tell you why I had reached that conclusion:

1) Until your fax yesterday expressing concern about my inability to return Ms. Caspari's two most recent phone calls (I was in Florida working on another capital case and inaccessible for the entire week), you have never once attempted to converse with me about the case; not through phone calls or letters. All of the contacts have been made by your paralegal, Ms. Caspari. I assumed that as we got to within several months of the actual trial date you would make direct contact. I was apparently wrong about that.

2) I did not receive a single document pertaining to the case until early October, 1997, and that consisted of only the police report pertaining to the crime itself.

3) The next set of materials was sent almost two months later. It, too, was relatively sparse (some of the client's school and psych records; medical records from his current incarceration). The accompanying cover letter mentioned that probation and parole records, the remainder of the client's

information often fills several binders (as opposed to inch or so of material I have been given in this case). After I get that information, digest it, discuss it with the investigator and, of course, the attorney, we decide on a set of direct interviews that I need to conduct (that will typically include family members, teachers, neighbors, institutional personnel who can address adjustment issues, and so on). Ordinarily there are numerous interviews with the client (which, given the distances involved in a case like this, would likely be reduced to just several). The process is an ongoing and iterative one, so that information collected at one stage helps to direct the next. Sometime early on in this process, and investigator or paralegal also takes responsibility for beginning to chart the client's chronology or timeline, which incorporates every client-related event reflected in the documents that have been collected and arranges them sequentially. I then use the structure of that chronology as the outline for a more detailed timeline that weaves in the results of interviews that I and the investigator have conducted.

Based on the material I have received so far, we have not yet completed the first stage of a five or six stage process. There is little that I can do until these early steps have been completed. I am not, as I hope you understand, an investigator. I don't retrieve documents, don't locate people, and typically (for reasons of economy) don't do initial interviews with the whole range of folks who could—but won't necessarily be—helpful to the case. Instead, once I have the requisite amount of information, I work with investigators and attorneys to focus the investigation, develop themes that need further investigation and analysis, focus the evidence that has been collected by others, supplement that evidence by conducting interviews with key people myself, assist in organizing penalty phase themes and witness preparation, and then testify about the client's mitigating social history and, where appropriate, his potential for positive prison adjustment. But I can do none of this without a whole range of preliminary tasks having been done by others.

So, where does this leave us? I'm not sure. I'm sending you by mail a copy of this letter and including an article of mine about mitigation and a transcript of testimony in another case to clarify exactly how much is involved in preparing a case in mitigation and what the end result should look like. I don't know how or why we have miscommunicated although, frankly, the fact that you haven't bothered to contact me directly cannot have helped the situation. In any event, you must get a substantial continuance from the court. Although I believe the above stated tasks are clearly your responsibility, use me as an excuse with the judge if you like. You can tell him I misunderstood the timetable, was overcommitted, have become unavailable, am incompetent, or whatever you need to in order to get the time you must have to do the things I have outlined (and only in summary fashion) above. If you can get the continuance and want me to continue on the case, I am certainly willing to do so, with the understanding that we must proceed in the fashion I have outlined above and as reflected in the documents I will

medical records, and a biographical account from his mother would be sent later. They have never arrived (although a very brief—3 page handwritten—and unfortunately not very helpful biographical statement from the client did arrive here during the second week of December). Although these records alone would not have been enough to begin building an effective penalty phase case, they would have been a good start. But I don't yet have them.

4) In addition to never having been sent the above mentioned records and materials, I have never seen a single investigative report generated by your office. That is, I have no information concerning the guilt phase case-in-chief, potential mitigation witnesses, the prosecution case in aggravation, and so on and on.

5) I did talk to Ms. Caspari in December and thought, at least, that I had underscored the importance of getting additional documentation and beginning work on a client chronology or "timeline." But none of that material has been forthcoming. So I assumed, until the phone message I received last week, that the delay in receiving any further materials was due largely to the holidays and the fact that there had been a substantial delay in the case.

In short, I have almost none of the information I or anyone would need to begin to develop mitigating themes in this or any case. When Ms. Caspari left a message for me in the beginning of January asking about a summary of the mitigation that I had developed in the case I tried immediately to reach her to explain that. Unfortunately, I called at a time when she was not in the office. However, I _still_ didn't understand that you were approaching an actual trial date with so little information having been gathered. I then went out-of-town on the other capital case that I mentioned and only returned yesterday. I was not in town when she called last week and certainly not available when she called my office shortly before 9 AM on Sunday. Her message last week that you were nearing the start of trial, and your fax yesterday to the same effect, came as a shock, to say the least.

Where does all of this leave us? As I said, I am afraid I do not have _anywhere near_ the amount of information I will need to assist you in developing a case in mitigation for your client and, frankly, am very concerned that nowhere near the amount of needed information has been collected. If the material I have reflects what has been developed, then the mitigation case is in an _extremely_ preliminary stage.

The development of a capital penalty case proceeds in stages. Certainly before I am able to conduct productive interviews with key family members and the client himself, I need to be provided with a substantial number of relevant documents, not to mention the results of initial interviews with a wide range of persons conducted by a trained investigator. In the typical case this

send you. If you want to work with someone else—and I can certainly understand why that might advisable given our shaky start—let me emphasize that all of the above mentioned things must still be done by whomever you retain. I am more than happy to discuss these steps with you further once you've received the documents and are in a position to think about how much remains to be done and how we might go about doing it.

Sincerely,

Craig Haney, Ph.D., J.D.
Professor of Psychology

CH:es