Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 12

## Declaration of John William Simon, Esq.
## Pursuant to 28 U.S.C. § 1746

I, John William Simon, Esq., hereby declare and certify that the following is true to the best of my knowledge, information, and belief, subject to the penalty of perjury.

1.      I was appointed as second-chair counsel in the death penalty case of United States v. Billie Jerome Allen, 97-cr-141 (E.D. Mo.). I am completing this declaration at the request of Mr. Allen's present counsel. At the request of current counsel, I am limiting my comments to facts relevant to the penalty phase of Mr. Allen's trial. The case was authorized by the Department of Justice as a capital prosecution in August, 1997. Lead counsel, Richard H. Sindel, Esq., asked if I would be interested in joining the case as second-chair counsel. I expressed willingness, and I was formally appointed by the Court on September 24, 1997. My role was to act as a resource for Mr. Sindel with regard to legal issues, as well as to assist with development of a mitigation case, if needed.

2.      When I joined the case I knew that Mr. Sindel had retained Dr. Craig Haney to act as his mitigation specialist. I knew of Dr. Haney's strong reputation and assumed that aspect of the case was in good hands. I first became concerned with a difficulty with regard to the mitigation case in early January 1998, and wrote Mr. Sindel about it on January 9, 1998. Thereafter Mr. Sindel wrote Dr. Haney. On January 13, 1998, we received a letter from Dr. Haney responding to Mr. Sindel's

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 12

letter. It was my understanding that Mr. Sindel received a letter from Dr. Haney, on the basis of which I learned that Dr. Haney would not be serving as our mitigation specialist. It is clear that Mr. Sindel and I had a very different perception than Dr. Haney about what he would be doing for the case. Prior to Mr. Sindel's receipt of Dr. Haney's letter, I had neither mail, telephone, nor personal contact with him in regard to the mitigation issues in this case.

3.     I had more contact with Mr. Allen's family than did Mr. Sindel. Most of my contact was with Juanita Allen, and the bulk, if not all of it, related to communicating progress reports about the case. Prior to the mid-January exchange of letters with Dr. Haney, I did not generate, or assist in generating, a social history for Mr. Allen. I did not conduct mitigation interviews with those who knew Mr. Allen as a child or young man.

4.     Once we understood that Dr. Haney would not participate in the penalty phase preparation, and realized that essentially no work had been done on this critical phase of trial, we experienced pressure that was extraordinary even in the context of a capital case. We immediately set out to retain an alternative mitigation specialist. Mr. Sindel decided to hire Dr. David Randall. Dr. Randall told us exactly what Dr. Haney had expressed: that less than one month was an inadequate time to prepare for a penalty trial. It is my understanding that Mr. Sindel nonetheless prevailed upon him to give it his best effort, and he agreed to do so. We also promised that we would seek

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 12

a continuance from the Court based on Dr. Haney's withdrawal and the overall sorry state of our mitigation preparation. Based on my experience prior to this case and since, I agree with the concepts expressed by both Haney and Randall: conducting a proper mitigation investigation requires a great deal of time and is very labor intensive. It takes time and great effort to earn the trust of the variety of mitigation witnesses who are relevant to a putting together a social history.

5. Prior to that point, we had Mr. Allen evaluated by Dr. Cuneo for trial competency. Dr. Randall explained that we needed to have a mental health professional, other than himself to assess Mr. Allen's mental health profile relevant to mitigating factors. Therefore we asked Dr. Cuneo, who had already evaluated Mr. Allen for competency, to assess the presence of mitigating factors. To opine on mitigation, he relied upon his prior competency evaluation, conversations with Dr. Randall, an interview with Mr. Allen's mother, and review of documents. At some point, Dr. Randall suggested that Mr. Allen have neuropsychological testing, and we retained Dr. Michael M. Gelbort to conduct this testing. His evaluation was done on the eve of the first day of jury selection.

6. As is evident from the dates of our retaining of Dr. Randall, and the dates that Dr. Gelbort and Dr. Cueno conducted their evaluations, our mitigation preparations were impacted by severe time pressures. This pressure permeated our preparation. Dr. Randall was making decisions about whom to investigate, interview,

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 12

and follow up on, based primarily on what could be done in our limited time. I assisted Dr. Randall with some of the mitigation interviews. This was done out of necessity. Mr. Sindel was primarily preparing for the guilt phase. I too was quite busy doing the purely legal work on this case; but there was no choice but to have me assist with the mitigation investigation.

7.    I have reviewed materials provided to me by Mr. Allen's current section 2255 counsel, including the reports of their experts, Dr. Stewart and Dr. Martell. My review of these materials makes it apparent to me that we could have done so much more if the misunderstanding with Dr. Haney had not taken place, or if we had more time, or both. These materials show that there was much significant information about Mr. Allen's life and mental health problems about which we were not aware. We were unaware because the time-compression made it impossible to develop the level of rapport that would enable the client's family to make the disclosures necessary to develop the information. This information is exactly the kind of information that I have at all relevant times understood to be appropriate to the presentation of a defense penalty phase in a capital case. I regard the additional information gathered by section 2255 counsel as making a powerful case for life. If we had access to it, we would certainly have used it along with or, in some instances, instead of the information we were able to find within the weeks between the incident with Dr. Haney and the trial. Based on my experience from both before and after this trial, I am confident that if we

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 12

had this information, we would have used it at trial. We did not make a choice between presenting what we did and presenting the facts collected by section 2255 counsel. We simply were never aware of these new facts because we did not have adequate time.

8.     I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

John William Simon, Esq.
Constitutional Litigation, LLC
2683 South Big Bend Blvd. # 12
St. Louis, Missouri  64143-2100
(314) 604-6983
FAX  (314) 754-2605

Dated:     July 27, 2009
           Clayton, Missouri