## DECLARATION OF DANIEL J. CUNEO, Ph.D.
## PURSUANT TO 28 U.S.C. § 1746

I, Daniel J. Cuneo, Ph.D., do hereby declare, affirm, and verify under penalty of perjury as follows:

1.    I am a licensed psychologist in Missouri and Illinois where I maintain a clinical and forensic practice. My work as a forensic psychologist has focused primarily on performing mental competency evaluations of criminal defendants, sanity evaluations, prediction of future dangerousness and risk assessments for the mentally ill and criminal defendants, and on treating criminal defendants who have been found incompetent to stand trial. I have been retained by the courts, prosecutors, and defense counsel to perform thousands of competency evaluations in my career. I have testified in court on behalf of the prosecution and the defense, although I have primarily appeared for the prosecution.

2.    I have been asked by current counsel for Billie J. Allen to provide this declaration regarding my involvement in Mr. Allen's capital trial in the United States District Court for the Eastern District of Missouri. I have also been specifically asked to compare the social history and mitigation information relied on by the mental health experts retained by Mr. Allen's current counsel with the social history and mitigation information provided to me by trial defense counsel in 1998. In this regard, I have been asked to opine whether any differences in the nature and scope of this

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 22

background information would have impacted my evaluation and opinions provided in 1998.

3.      To accomplish the task asked of me by Mr. Allen's current counsel, I have reviewed the following materials:

Eighth Circuit Direct Opinion; transcript of my penalty phase testimony (3/5/98); my 1998 Report; Dr. Richard Wetzel plotting of raw data; Bureau of Prisons Medical records; Declaration of Juanita Petty Allen; Declaration of Nicole Petty; Declaration of Angela Allen; Declaration of Billy Wayne Allen; Declaration of Raymond Petty; Declaration of Cathy Toliver; Declaration of Brady Toliver; Declaration of Darletta Tabb; Declaration of Dr. Pablo Stewart, Report of Dr. Daniel Martell.

4.      In January 1998, I was retained by trial defense counsel and appointed by the Court to conduct a competency evaluation of Mr. Allen, and I conducted that evaluation on January 16, 1998. As part of the evaluation, in order to determine whether he was competent to assist his attorneys, I questioned Mr. Allen about the crimes with which he was charged. As reflected in my report of February 16, 1998, I determined that Mr. Allen was competent to assist his attorneys and to stand trial.

5.      In early February 1998 – after I had already conducted my competency evaluation – trial counsel asked me to also consider possible mitigating factors present in Mr. Allen's psychological profile. Due to the time constraints that the defense team was then working under, I did not have time for a second face-to-face interview with Mr. Allen that would have focused solely on mitigation. Instead, I rendered my

mitigation opinion based on my competency-related interview; conversations with Dr. David Randall, who had just been hired by trial counsel as a mitigation investigator; consultation with neuropsychologist Michael Gelbort; and a brief interview with Juanita Allen (Mr. Allen's mother). I also reviewed some background documents provided to me by the defense team.

6.      None of the information provided to me from those sources described any physical abuse, neglect, or other trauma that Mr. Allen suffered in his home or at the hands of his family. Indeed, the only trauma revealed to me was violence that Mr. Allen experienced on the streets of his neighborhood including, most notably, witnessing the shooting death of his friend Marquise Taylor.

7.      As reflected in my report and testimony from trial, I believed that Mr. Allen suffered from Chronic Posttraumatic Stress Disorder (PTSD). In his clinical interview and from the information provided by other witnesses, Mr. Allen displayed all of the symptoms of Chronic PTSD. However, as described above, the murder of his friend Marquise Taylor was the most significant traumatic event of which I was aware at the time. While this event would have been sufficient to cause his PTSD, it is now clear based upon my review of the materials provided to me by Mr. Allen's current counsel, that the trauma underlying Mr. Allen's PTSD was not this single event late in his teen years. Rather Mr. Allen suffered lifelong trauma as a result of

the pervasive and severe abuse suffered, as exacerbated by the family's dysfunction and over-all impoverishment. There is no question based upon my 1998 review and review of the materials provided by current counsel that Mr. Allen's adult conduct was significantly impacted by his history of childhood trauma, abuse, dysfunction, impoverishment, and abandonment at home.

8.     Mr. Allen's current counsel has provided me with, and I have reviewed, the expert psychiatric declaration of Pablo Stewart, M.D., and the expert psychological report of Daniel A. Martell, Ph.D. Drs. Stewart and Martell, relying on numerous witness declarations and interviews, describe the profoundly harsh upbringing that Mr. Allen endured at home. Their reports chronicle frequent, unpredictable beatings and whippings that Mr. Allen suffered at the hands of his mother and other family members; the many nights he spent locked out of his house in the ghetto from a very young age; and the complete absence of a supportive and nurturing home environment.

9.     Drs. Stewart and Martell thus trace the onset of Mr. Allen's PTSD to the early childhood years of Mr. Allen's abusive home life, many years before the Marquise Taylor shooting. Based on my review of their reports and on my earlier evaluation, it is clear that, if I had been provided the same information, I likewise would have diagnosed Mr. Allen with Posttraumatic Stress Disorder, Chronic

secondary to his abusive upbringing and would have opined his childhood trauma contributed to this diagnosis. I therefore specifically endorse Dr. Stewart's conclusion that my evaluation and testimony in this case were "hampered by the absence of any background information shedding light on the severe abuse and neglect that Mr. Allen suffered beginning in early childhood."

10. This omission was significant for several reasons. Although my experience and expertise in 1998 was not in the areas of capital mitigation, I am aware that such abuse would be a core mitigating consideration for any juror deciding whether or not Mr. Allen should be put to death for his crime.

11. This omission also prevented me from responding to some of the government's attempts to impeach my PTSD diagnosis with evidence suggesting that Marquise Taylor's shooting was not the precipitating event of Mr. Allen's PTSD. For example, the prosecutor questioned my finding that Mr. Allen suffered from "persistent avoidance" secondary to the shooting ("persistent avoidance" being a diagnostic criteria for PTSD), by asking questions that suggested that persistent avoidance was inconsistent with Mr. Allen's subsequent return to the streets and to the scene of the crime. I did not have a good response to those questions. However, had I possessed the information collected by current counsel, which establishes that Mr. Allen had no choice – he was locked out of his home throughout his teen years for no

reason and for days at a time – I could have powerfully responded to those questions.

12. The prosecutor similarly questioned me about how Mr. Allen's "social impairment" (another diagnostic criteria for PTSD) could be traced to Marquise Taylor's shooting, and instead suggested that Mr. Allen simply chose not to apply himself throughout his life and that his "impairments" predated the Taylor shooting. Once again, these questions were hard to answer because of the limited information that was available to me. Had I possessed then the comprehensive picture of Mr. Allen's upbringing that I now possess, I could have shown that his PTSD symptomotology, including his social impairment, dated to many years before the Marquise Taylor shooting. In short, had a full history been available at the time of trial, the jury would have been presented with a consistent and compelling account of Mr. Allen's tragic life and severe psychological impairments. Without that comprehensive history, the jury instead heard a starkly inaccurate and misleading portrayal of Mr. Allen.

13. I also note that based on my evaluation and my discussions with Drs. Gelbort and Randall at the time of trial, I would have liked trial counsel to obtain a functional MRI of Mr. Allen's brain. A functional MRI would have provided incontrovertible evidence of Mr. Allen's brain damage. Further, the childhood abuse and trauma that Mr. Allen suffered can literally change the physiology of the brain.

Page 6 of 7

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 22

A functional MRI could have shown the presence and extent of such changes in Mr. Allen's brain.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief, subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

Daniel J. Cuneo, Ph.D.

Dated:       July 27, 2009