Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

No. 98-2549

## THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

-----

### UNITED STATES OF AMERICA

Appellee

v.

### BILLIE JEROME ALLEN

Appellant

-----

Appeal from the United States District Court
For the Eastern District of Missouri
Eastern Division
The Honorable E. Richard Webber
United States District Judge

### BRIEF OF APPELLANT

Michael A. Gross
15 North Gore Avenue, Suite 201
St. Louis, Missouri 63119
Telephone: (314) 918-1080

John W. Simon
Inglish & Monaco
237 East High Street
Jefferson City, Missouri 65101
Telephone: (573) 634-2522

Attorneys for Appellant

RECEIVED

JUN 07 1999

U. S. COURT OF APPEALS
EIGHTH CIRCUIT

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

## SUMMARY OF THE CASE

Billie Jerome Allen appeals to this Court from a judgment convicting him of having committed murder in violation of 18 U.S.C. §§ 924 and 2113, and from the sentence of death and imprisonment imposed upon him by the District Court.

The trial was lengthy and the record is voluminous. This appeal raises several issues requiring the interpretation of the Constitution, the construction of statutes, and the review of voluminous evidence. Because of the gravity of the sentence imposed upon Mr. Allen and the number, the complexity, and the broad implications of the issues raised in this Court, Mr. Allen suggests that oral argument should be heard. Mr. Allen requests that his counsel be granted 45 minutes for their argument.

# TABLE OF CONTENTS

Page

| | |
|---|---|
| Summary of the Case | 1 |
| Table of Contents | 2 |
| Table of Authorities | 3 |
| Jurisdictional Statement | 17 |
| Statement of the Issues | 19 |
| Statement of the Case | 28 |
| Statement of Facts | 30 |
| Summary of Argument | 34 |
| Argument | 40 |
| Conclusion | 151 |
| Certificate of Compliance | 152 |
| Certification of Service | 153 |
| Addendum | |
|     Judgment in a criminal case | A-1 |
|     Amended judgment in a criminal case | A-3 |

# TABLE OF AUTHORITIES

|  | Page |
|---|---|
| Ake v. Oklahoma<br>470 U.S. 68 (1985) | 85, 87, 106 |
| Albernaz v. United States<br>450 U.S. 333 (1981) | 137, 139 |
| Alderman v. United States<br>394 U.S. 165 (1969) | 103 |
| Arizona v. Fulminante<br>499 U.S. 279 (1991) | 86 |
| Arkwright Mutual Insurance Company v.<br>Gwinner Oil, Inc.<br>125 F.3d 1176 (8th Cir. 1997) | 123 |
| Beazell v. Ohio<br>269 U.S. 167 (1925) | 55 |
| Beets v. Iowa Department of Corrections Services<br>164 F.3d 1131 (8th Cir. 1999) | 86 |
| Bell v. United States<br>349 U.S. 81 (1955) | 147 |
| Berger v. United States<br>295 U.S. 78 (1934) | 114 |
| Blockburger v. United States<br>284 U.S. 299 (1932) | 137-39 |
| Blystone v. Pennsylvania<br>494 U.S. 299 (1990) | 124-26, 128-29 |

3

Page

Booth V. Maryland
482 U.S. 496 (1987)                                     118-20

Brady v. Maryland
373 U.S. 83 (1963)                                      91, 94

Brewer v. Williams
430 U.S. 387 (1977)                                     76

Brown v. Ohio
432 U.S. 161 (1977)                                     137

Buchanan v. Kentucky
483 U.S. 402 (1987)                                     100-01

Busic v. United States
446 U.S. 398 (1980)                                     142

Cabana v. Bullock
474 U.S. 376 (1986)                                     55

Caldwell v. Mississippi
472 U.S. 320 (1985)                                     44, 111, 115

California v. Brown
479 U.S. 538 (1987)                                     57

Carter v. Kentucky
450 U.S. 288 (1981)                                     130

Chandler v. Fretag
348 U.S. 3 (1954)                                       85

Clemons v. Mississippi
494 U.S. 738 (1990)                                     62

4

|                                                                 | Page              |
| --------------------------------------------------------------- | ----------------- |
| Darden v. Wainwright<br>477 U.S. 168 (1986)                     | 113-14            |
| Dennis v. United States<br>384 U.S. 855 (1966)                  | 95                |
| Dobson v. Bacon Transport Company<br>607 F.2d 805 (8th Cir. 1979) | 150             |
| Edwards v. Arizona<br>451 U.S. 477 (1981)                       | 76                |
| Estelle v. Smith<br>451 U.S. 454 (1981)                         | 99-100            |
| Ex Parte Bain<br>121 U.S. 1 (1887)                              | 69-70             |
| Flentie v. American Community Stores Corporation<br>389 F.2d 80 (8th Cir. 1968) | 150 |
| Ford v. Wainwright<br>477 U.S. 399 (1986)                       | 45. 83            |
| Furman v. Georgia<br>408 U.S. 238 (1972)                        | 41-42, 50, 59-60  |
| Gardner v. Florida<br>430 U.S. 349 (1977)                       | 44. 57. 94, 112   |

5

Page

Giglio v. United States
405 U.S. 150 (1972)                                    93

Godfrey v. Georgia
446 U.S. 420 (1979)                                   45, 47-48

Gregg v. Georgia                                      42-43, 49-50, 58-
428 U.S. 153 (1976)                                   59, 61, 65

Grogan v. Garner
806 F.2d 829 (8th Cir. 1986)                          130

Grubbs v. Delo
948 F.2d 1459 (8th Cir. 1991)                         76

Halladay v. Verschoor
381 F.2d 100 (8th Cir. 1967)                          150

Hamilton v. Schriro
74 F.3d 1545 (8th Cir. 1996)                          40, 88, 97, 135

I.C.C. v. Blue Diamond Products Company
192 F.2d 43 (8th Cir. 1951)                           146

Johnson v. Mississippi
486 U.S. 578 (1988)                                   56

Johnson v. Texas
509 U.S. 350, 359 (1993)                              41

Jurek v. Texas
428 U.S. 262 (1976)                                   43

J. W. Hampton, Jr. & Co. v. United States
276 U.S. 394 (1928)                                   52

                                                                    Page

Kellogg v. Skon
__ F.3d __ (8th Cir. May 10, 1999)                                  113

Koon v. United States
518 U.S. 81 (1996)                                                  117

Lesko v. Lehman
925 F.2d 1527 (3rd Cir. 1991)                                       57

Lewis v. Jeffers
497 U.S. 764 (1990)                                                 47

Lindsey v. Washington
301 U.S. 397 (1937)                                                 55

Lockett v. Ohio
438 U.S. 586 (1978)                                                 56, 149

Lowenfield v. Phelps
484 U.S. 231 (1988)                                                 56. 63. 149

Maynard v. Cartwright
486 U.S. 356 (1988)                                                 48

McClesky v. Kemp
481 U.S. 279 (1987)                                                 50, 65, 71, 83

McGee v. Funderburg
17 F.3d 1122 (8th Cir. 1994)                                        145-46

McKane v. Durston
153 U.S. 684 (1894)                                                 63

|  | Page |
|---|---|
| <u>McNeil v. Wisconsin</u><br>501 U.S. 171 (1991) | 76 |
| <u>Michigan v. Mosley</u><br>423 U.S. 96 (1975) | 76, 78 |
| <u>Miller v. Florida</u><br>482 U.S. 423 (1987) | 54 |
| <u>Miranda v. Arizona</u><br>384 U.S. 436 (1966) | 75, 100 |
| <u>Missouri v. Hunter</u><br>459 U.S. 359 (1983) | 139 |
| <u>Mistretta v. United States</u><br>488 U.S. 361 (1989) | 51, 54 |
| <u>Morris v. Slappy</u><br>461 U.S. 1 (1983) | 83 |
| <u>Nardone v. United States</u><br>308 U.S. 338 (1939) | 103 |
| <u>North Carolina v. Pearce</u><br>395 U.S. 711 (1969) | 136 |
| <u>Parker v. Dugger</u><br>498 U.S. 308 (1991) | 46, 62, 115 |
| <u>Payne v. Tennessee</u><br>501 U.S. 808 (1991) | 118-20 |
| <u>Penry v. Lynaugh</u><br>492 U.S. 302 (1989) | 83, 99 |

|  | Page |
|---|---|
| Powell v. Alabama<br>287 U.S. 45 (1932) | 100 |
| Powell v. Texas<br>492 U.S. 680 (1989) | 100-01 |
| Proffitt v. Florida<br>428 U.S. 242 (1976) | 43 |
| Pulley v. Harris<br>465 U.S. 37 (1984) | 45, 58, 61 |
| Roberts v. Louisiana<br>428 U.S. 325 (1976) | 43 |
| Ross v. Moffitt<br>417 U.S. 600 (1974) | 85 |
| Russell v. United States<br>369 U.S. 749 (1962) | 70 |
| Savino v. Murray<br>82 F.3d 593 (4th Cir. 1996) | 101 |
| Schiro v. Farley<br>510 U.S. 222 (1994) | 44 |
| Simmons v. United States<br>390 U.S. 377 (1968) | 99 |
| Simpson v. United States<br>435 U.S. 6 (1978) | 141-42 |

|  | Page |
|---|---|
| Smith v. Estelle<br>602 F.2d 694 (5th Cir. 1979) | 100 |
| Smith v. Murray<br>477 U.S. 527 (1986) | 96 |
| Smith v. United States<br>360 U.S. 1 (1959) | 69 |
| Sochor v. Florida<br>504 U.S. 527 (1992) | 48 |
| South Carolina v. Gathers<br>490 U.S. 805 (1989) | 118-19 |
| Stirone v. United States<br>361 U.S. 212 (1960) | 69, 71 |
| Stringer v. Black<br>503 U.S. 222 (1992) | 48 |
| Swindler v. Lockhart<br>885 F.2d 1342 (8th Cir. 1989) | 83 |
| Trop v. Dulles<br>356 U.S. 86 (1958) | 63 |
| Ungar v. Sarafite<br>376 U.S. 575 (1964) | 80, 83 |
| United States v. Allen<br>886 F.2d 143 (8th Cir. 1989) | 54 |
| United States v. Bagley<br>473 U.S. 667 (1985) | 91, 93 |

Page

United States v. Baum
482 F.2d 1325 (2nd Cir. 1973)                    95

United States v. Beckford
962 F.Supp. 748 (E.D. Va. 1997)                  102-08

United States v. Calvert
523 F.2d 895 (8th Cir. 1975)                     95

United States v. Casas
999 F.2d 1225 (8th Cir. 1993)                    123, 130

United States v. Comstock
154 F.3d 845 (8th Cir. 1998)                     55

United States v. Dionisio
410 U.S. 19 (1973)                               70

United States v. Fay
668 F.2d 375 (8th Cir. 1981)                     131

United States v. Freisinger
937 F.2d 383 (8th Cir. 1991)                     109, 113

United States v. Golay
560 F.2d 866 (8th Cir. 1977)                     139

United States v. Hall
152 F.3d 381 (5th Cir. 1998)                     102

United States v. Harvey
756 F.2d 636 (8th Cir. 1985)                     115

United States v. Haworth
942 F.Supp. 1406 (D.N.M. 1996)                   102

Page

United States v. Hernandez
779 F.2d 456 (8th Cir. 1985)                          112-13

United States v. ITT Blackburn Company
824 F.2d 628 (8th Cir. 1987)                          71

United States v. Johnson
12 F.3d 827 (8th Cir. 1994)                           109

United States v. Johnson
968 F.2d 768 (8th Cir. 1962)                          1112, 115

United States v. Kinsley
518 F.2d 665 (8th Cir. 1975)                          146-47

United States v. Kragness
830 F.2d 842 (8th Cir. 1987)                          138

United States v. Leisure
844 F.2d 1347 (8th Cir. 1988)                         71

United States v. Looking
156 F.3d 803 (8th Cir. 1998)                          72

United States v. Macklin
104 F.3d 1046 (8th Cir. 1997)                         111

United States v. McClinton
982 F.2d 278 (8th Cir. 1992)                          78

United States v. McCullah
76 F.3d 1087 (10th Cir. 1996)                         52

United States v. Mills
835 F.2d 1262 (8th Cir. 1987)                         143

Page

United States v. Nguyen
928 F.Supp. 1525 (D.Kan. 1996)                              70

United States v. Phelps
168 F.3d 1048 (8th Cir. 1999)                              131

United States v. Pitera
795 F.Supp. 546 (E.D.N.Y. 1992)                            52

United States v. Pretlow
779 F.Supp. 758 (D.N.J. 1991)                              52

United States v. R.L.C.
915 F.2d 320 (8th Cir. 1990)                              147

United States v. Rouse
100 F.3d 560 (8th Cir. 1996)                              117

United States v. Solivan
937 F.2d 1146 (6th Cir. 1991)                             112

United States v. Spivey
958 F.Supp. 1523 (D.N.Mex. 1997)                           70

United States v. Splain
545 F.2d 1131 (8th Cir. 1976)                             112

United States v. Tipton
90 F.3d 861 (4th Cir. 1996)                               52

United States v. Vest
905 F.Supp. 651 (W.D. Mo. 1995)                        101, 105

13

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

|  | Page |
|---|---|
| United States v. Walker<br>910 F.Supp. 546 (N.D.N.Y. 1995) | 52 |
| United States v. Weisman<br>858 F.2d 389 (8th Cir. 1988) | 80, 83 |
| United States v. Whitetail<br>956 F.2d 857 (8th Cir. 1992) | 117 |
| Vanskike v. ACF Industries, Inc.<br>665 F.2d 188 (8th Cir. 1981) | 150 |
| Whalen v. United States<br>445 U.S. 684 (1980) | 53, 136-38 |
| Williams v. Brewer<br>509 F.2d 227 (8th Cir. 1974) | 76 |
| Witherspoon v. Illinois<br>391 U.S. 510 (1968) | 149 |
| Wood v. Georgia<br>370 U.S. 375 (1962) | 70 |
| Woodson v. North Carolina<br>428 U.S. 280 (1976) | 42-44, 56, 130, 149 |
| Zant v. Stephens<br>462 U.S. 862 (1983) | 42. 46-47, 60-61, 63, 65 |
| 18 U.S.C. § 924 | 136, 139-46 |

14

|  | Page |
|---|---|
| 18 U.S.C. § 1111 | 141 |
| 18 U.S.C. § 2113 | 136, 139-40 |
| 18 U.S.C. § 3591 | 40-41, 55, 58, 64 |
| 18 U.S.C. § 3592 | 49-51, 53, 55-56, 64-65 |
| 18 U.S.C. § 3593 | 57 |
| 18 U.S.C. § 3595 | 62 |
| U.S. Const. art. I, § 1 | 19, 40, 51 |
| U.S. Const. art. I, § 9 | 19 |
| U.S. Const. amend. V | 21. 68, 72, 98, 102, 105, 122 |
| U.S. Const. amend. VI | 21, 24, 26, 72, 77, 97-98, 102, 105, 122 |
| U.S. Const. amend. VIII | 19, 24, 26, 40, 98, 105, 122 |
| Fed.R.Crim.P. 7(a) | 68 |
| Fed.R.Evid. 403 | 57 |
| 139 Cong. Rec. S12396 (daily ed., September 23, 1993) | 127 |
| 139 Cong. Rec. S15286 (daily ed., November 8, 1993) | 127-28 |

15

|  | Page |
|---|---|
| 140 Cong. Rec. H2333 (daily ed., April 14, 1994) | 140 |
| 140 Cong. Rec. H7940 (daily ed., August 11, 1994) | 140 |
| House Report 103-964 | 128 |
| S.Rep. No. 225 | 142 |
| 1984 U.S.C.C.A.N. | 142 |
| Goodpaster, <u>The Trial For Life: Effective Representation Of Counsel In Death Penalty Cases</u> 58 N.Y.U.L.Rev. 299 (1983) | 84 |
| Traynor, <u>The Ground Lost and Found in Criminal Discovery</u>, 39 N.Y.U.L.Rev. 228 (1964) | 95 |

## JURISDICTIONAL STATEMENT

### (i) Factual Information

Mr. Allen was charged in a two-count indictment. (App. 82-83) Count I charged that Mr. Allen had violated 18 U.S.C. §§ 2 and 2113(a) and (e) by killing Richard Heflin during the robbery of a federally insured bank. (App. 82) Count II charged that Mr. Allen had violated 18 U.S.C. §§ 2 and 924(c)(1) and (j)(1) by using a firearm and killing Richard Heflin during the commission of a federally insured bank. (App. 83)

A jury found Mr. Allen guilty of both charges. (App. 332-33) Trial was resumed before the same jury to determine Mr. Allen's punishment. (App. 51) The jury recommended that Mr. Allen be sentenced to imprisonment for life without the possibility of parole under Count I of the indictment and to death under Count II. (App. 458-92)

On June 4, 1998, the District Court entered judgment on the jury's verdicts and imposed the sentences which the jury had recommended. (App. 493) Mr. Allen filed a notice of appeal from that judgment on June 8, 1998. (App. 501) Also on June 8, 1998, the Government filed a motion to correct the sentence pursuant to Fed.R.Crim.P. 35(c). (App. 496) The District Court entered an amended judgment on June 11, 1998. (App. 502)

17

Mr. Allen filed a notice of appeal from that judgment on June 17, 1998. (App. 505)

### (ii) District Court Jurisdiction

The District Court was authorized to adjudicate this case by 18 U.S.C. § 3231, which invests the district courts with exclusive original jurisdiction of federal criminal prosecutions.

### (iii) Appellate Jurisdiction

This Court is authorized to adjudicate this appeal by 28 U.S.C. § 1291, which defines the jurisdiction of appeals from final judgments of the district courts, 18 U.S.C. § 3742(a), which authorizes appeals from criminal sentences generally, and 18 U.S.C. § 3595, which authorizes appeals from cases in which a sentence of death has been imposed. The timeliness of Mr. Jones' notice of appeal is governed by Fed.R.App.P. 4(b)(1)(A)(i), which required that the notice of appeal be filed within 10 days after the entry of judgment.

### (iv) Assertion of Finality

This is an appeal from a judgment of conviction which disposed of all claims between the parties.

## STATEMENT OF THE ISSUES

### I.

Whether the District Court erred in denying Mr. Allen's motion to preclude the Government from seeking the death penalty because the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591, et seq., is unconstitutional, in that (1) the statute permits Government attorneys to invent and charge non-statutory aggravating factors, and thus fails to insure principled guidance of the exercise of sentencing discretion by jurors, in violation of U.S. Const. amends. V and VIII; (2) the statute permits the Government to charge non-statutory aggravating factors, and thus embodies an impermissible delegation of legislative power to the executive branch, in violation of U.S. Const. art. I, § 1; (3) the statute permits the Government to define non-statutory aggravating factors, and thus enables the definition of punishable conduct after the conduct has occurred, in violation of the ex post facto clause, U.S. Const. art. I, § 9, clause 3; (4) the statute permits the Government to rely upon "information" rather than "evidence" to obtain a death sentence and thus violates U.S. Const. amends. V & VIII; (5) the statute fails to provide for adequate proportionality review of death sentences imposed pursuant to the weighing of aggravating and mitigating factors, and thus enables the arbitrary and capricious imposition of the death penalty, in violation of U. S. Const. amends. V & VIII; (6) the statute fails to narrow the class of person eligible for execution, and thus channel the discretion of capital juries, in violation of U.S. Const. amend. VIII.

Furman v. Georgia
408 U.S. 238 (1972)

Woodson v. North Carolina
428 U.S. 280 (1976)

McClesky v. Kemp
481 U.S. 279 (1987)

Lockett v. Ohio
438 U.S. 586 (1978)

19

## II.

Whether the District Court erred in denying Mr. Allen's motion to preclude imposition of the death penalty because the indictment did not allege either that Mr. Allen had acted with the intent specified in 18 U.S.C. § 3591(a), or that at least one of the aggravating factors enumerated in 18 U.S.C. § 3592(c) had been present, and the indictment thus was inadequate to charge a capital offense, and his trial, conviction, and sentence violated the Grand Jury Clause of the Fifth Amendment.

Smith v. United States
360 U.S. 1 (1959)

Ex Parte Bain
121 U.S. 1 (1887)

Stirone v. United States
361 U.S. 212 (1960)

United States v. Dionisio
410 U.S. 19 (1973)

20

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

## III.

Whether the District Court erred in denying Mr. Allen's motion to suppress evidence of statements obtained from him after he had requested the assistance of counsel and prior to the provision of counsel, because the evidence clearly established that the police did not scrupulously honor Mr. Allen's request that counsel be provided for him, in violation of the Fourth, Fifth, and Sixth Amendments.

Miranda v. Arizona
384 U.S. 436 (1966)

Edwards v. Arizona
451 U.S. 477 (1981)

Michigan v. Mosley
423 U.S. 96 (1975)

Grubs v. Delo
948 F.2d 1459 (8th Cir. 1991)

## IV.

Whether the District Court abused its discretion in denying Mr. Allen's motion for a continuance of the trial setting after he was abandoned by his original court-paid mitigation expert, because that ruling compelled defense counsel and a substitute mitigation expert to proceed to trial without adequate time to locate and secure mitigation evidence, and distracted defense counsel from other matters of trial preparation on the eve of trial, in violation of Mr. Allen's rights to due process of the law, to the equal protection of the laws, and to be free from cruel and unusual punishments.

Morris v. Slappy
461 U.S. 1 (1983)

Ungar v. Sarafite
376 U.S. 575 (1964)

McClesky v. Kemp
481 U.S. 279 (1987)

Ake v. Oklahoma
470 U.S. 68 (1985)

V.

Whether the District Court erred and abused its discretion in denying Mr. Allen's motions to strike testimony of Betty Thompson and William Green regarding the identity of a person whom they had seen leaving the crime scene with a money bag, and for the declaration of a mistrial, on the basis of the Government's misconduct in withholding information about a material change in the testimony of those pivotal witnesses and its failure to comply with defense requests for discovery, because the Government's suppression of that information misled defense counsel in their preparation for trial and compromised their ability to plan and present a defense and to provide Mr. Allen with informed advice and was violative of the Due Process, Assistance of Counsel, and Cruel and Unusual Punishment Clauses.

Brady v. Maryland
373 U.S. 83 (1963)

United States v. Bagley
473 U.S. 667 (1985)

Giglio v. United States
405 U.S. 150 (1972)

Gardner v. Florida
430 U.S. 349 (1977)

## VI.

Whether the District Court erred and abused its discretion in granting the Government attorneys' motion for psychiatric examination of the defendant without also granting the defendant the full relief requested in his motion for protective order respecting prosecution mental examination results, and plainly erred or abused its discretion in allowing the prosecution to proceed with the penalty phase of the trial after (1) the United States Attorney had designated an individual Assistant United States Attorney to receive the results of the prosecution's mental-health investigation, (2) the District Court had issued an oral order providing that this individual prosecutor not disclose these results until the conclusion of the guilt-or-innocence phase, and (3) this individual prosecutor disclosed at least part of the results before the conclusion of the guilt-or-innocence phase, when, in the context of this trial, the District Court's initial disposition of the question and the prosecution's violation of it deprived the defendant of his rights under the Self-Incrimination Clause of the Fifth Amendment, the Due Process Clause of the Fifth Amendment (including the equal protection component of that guaranty), the Assistance of Counsel Clause of the Sixth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment.

United States v. Beckford
962 F.Supp. 748 (E.D.Va. 1997)

United States v. Haworth
942 F.Supp. 1406 (D.N.Mex. 1996)

United States v. Vest
905 F.Supp. 651 (W.D.Mo. 1995)

Estelle v. Smith
451 U.S. 454 (1981)

24

## VII.

Whether the District Court committed plain error, and thereby violated Mr. Allen's rights to due process of law and to be free from cruel and unusual punishment, U.S. Const. amends. V & VIII, by failing to declare a mistrial or order another remedial measure sua sponte when counsel for the Government referred to Mr. Allen as "a murderous dog" during closing argument in the penalty phase of trial.

United States v. Johnson
968 F.2d 768 (8th Cir. 1962)

United States v. Freisinger
937 F.2d 383 (8th Cir. 1991)

Darden v. Wainwright
477 U.S. 168 (1986)

Kellogg v. Skon
___ F.3d ___ (8th Cir. May 10, 1999)

## VIII.

Whether the District Court abused its discretion or committed plain error in denying Mr. Allen's motion to limit the quantum of victim impact evidence because the Government thus was permitted to adduce the testimony of eleven victim impact witnesses, constituting substantially more than a quick glimpse of Richard Heflin's life, causing the death penalty to be imposed under the influence of passion, prejudice, or other arbitrary factors, and depriving Mr. Allen of his rights to due process of law and to be free from cruel and unusual punishment.

Payne v. Tennessee
501 U.S. 808 (1991)

25

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

## IX.

Whether the District Court erred and abused its discretion in refusing to instruct the jury that the law never requires a jury to impose a sentence of death, as requested in Mr. Allen's several proposed instructions and partial instructions prior to and during the penalty phase of the trial, because each of those instructions would have corrected the mandatory language in the Government's proffered instructions relating to the outcome of the weighing process and would have clarified the jury's options with respect to sentencing, and the instructions the District Court gave did not correctly state the law, in violation of the Due Process Clause of the Fifth Amendment, the Jury Trial Clause of the Sixth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment.

Blystone v. Pennsylvania
494 U.S. 299 (1990)

Carter v. Kentucky
450 U.S. 288 (1981)

Woodson v. North Carolina
428 U.S. 280 (1976)

United States v. Phelps
168 F.3d 1048 (8th Cir. 1999)

26

## X.

Whether the District Court erred and exceeded its jurisdiction or committed plain error in submitting both Count I and Count II to the jury for its sentencing recommendation, because the Government was precluded by the Double Jeopardy Clause from seeking to have Mr. Allen punished twice for a single crime and multiple submissions unduly emphasizing the option of death violated the Due Process Clause the prohibition against cruel and unusual punishment, and Mr. Allen's substantial rights were thereby affected.

Whalen v. United States
445 U.S. 684 (1980)

Blockburger v. United States
284 U.S. 299 (1932)

Witherspoon v. Illinois
391 U.S. 510 (1968)

Dobson v. Bacon Transport Company
607 F.2d 805 (8th Cir. 1979)

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

## STATEMENT OF THE CASE

### (i) Nature of the Case

This is a murder prosecution in which the Government contended that Billie Jerome Allen had violated 18 U.S.C. §§ 2, 924(c)(1) and (j)(1), and 2113(a) and (e) by killing Richard Heflin during the robbery of a federally insured bank.  (App. 82-83

### (ii) Course of Proceedings

Mr. Allen was tried before a jury beginning on February 9, 1998. (App. 43) At the conclusion of the guilt-or-innocence portion of the trial, the jury found Mr. Allen guilty under both counts of the indictment.  (App. 332-33) The penalty portion of the trial was conducted before the same jury, commencing on March 2, 1998, and ending on March 10, 1998.  (App. 51, 54) At the conclusion of the latter portion of the trial, the jury recommended that Mr. Allen be sentenced to imprisonment for life without the possibility of parole under Count I of the indictment and to death under Count II.  (App. 472, 489)

### (iii) Disposition in District Court

The District Court conducted a sentencing hearing on June 4, 1998. (App. 493)  The Court sentenced Mr. Jones to imprisonment for life without

28

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A
Case: 4:07-cv-00027-ERW    Doc. #: 94-56    Filed: 08/14/09    Page: 30 of 53 PageID #: 1224

the possibility of parole under Count I of the indictment and to death under Count II, and ordered that the sentences be executed consecutively.   (App. 493-94)

On June 8, 1998, Mr. Allen filed a notice of appeal from that judgment and sentence. (App. 501) On the same date, the Government filed a motion for correction of the sentence pursuant to Fed.R.Crim.P. 35(c). (App. 496-500) That motion sought to have the sentence of imprisonment imposed pursuant to Count I of the indictment designated for service consecutive to the death sentence imposed under Count II.  (App. 496) On June 11, 1998, the District Court filed an amended judgment granting the relief which had been sought by the Government.  (App. 502-04)

Mr. Allen filed a notice of appeal from the amended judgment on June 18, 1998.  (App. 505)

## STATEMENT OF FACTS

On the morning of March 17, 1997, two men parked a minivan in front of the Lindell Trust Bank in St. Louis, climbed out of the car wearing masks and carrying semi-automatic rifles, and walked into the bank lobby. (T. VII: 231; 11: 53-54, 59, 110) One of the men fired his rifle twice or three times as he entered the lobby. (T. VII: 117, 125, 231, 249) Richard Heflin, the bank's armed security guard, was shot and fell to the floor. (T. VI: 76-77, 97; VII: 126, 233)

The intruder who had fired his rifle yelled, "Everybody get the fuck down." (T. VII: 231) A bank employee who had been standing in front of the teller counter jumped over the counter. (T. VII: 127, 232) The gunman in the lobby walked toward him and fired at him, but the employee was not injured. (T. VII: 232) The gunman then shot Mr. Heflin again as he lay on the floor. (T. VI: 100; VII: 129) Mr. Heflin was mortally wounded. (T. VIII: 141-42, 145)

The other intruder went directly behind the bank counter and filled a money bag with currency from the tellers' cash drawers. (T. VII: 235, 241) The man behind the counter was not the man who had shot Mr. Heflin. (T.

VII: 132) After the man behind the counter had gathered the cash, both robbers left the bank. (T. VII: 133)

William Green, who had driven to the bank to cash a check and had heard shots coming from inside the bank, saw the two men leave and re-enter the van. (T. VIII: 139) According to Mr. Green's trial testimony, the man who got into the driver's seat was carrying a money bag. (T. VIII: 160)[1] Betty Thompson, a bank customer who also was outside the building during the robbery, had seen the gunmen arrive and enter the bank and saw them emerge afterward. (T. VII: 75-82) Ms Thompson testified at trial that the man who left the bank with the money bag got into the driver's seat of the van. (T. VII: 82)[2]

The robbers drove away from the bank and onto an adjacent highway, then left the highway and drove into a park. (T. VIII: 160-63) A fire started inside the van. (T. VIII: 164, 203, 217) The driver was on fire

---

[1] An investigative report prepared by an agent of the Federal Bureau of Investigation and provided to defense counsel during discovery related Mr. Green's observation that the passenger had been carrying the money bag. (T. VIII: 181, 184-89)

[2] It appears that defense counsel also were provided with discovery material reporting that Ms Thompson originally recalled having seen the van's passenger emerge from the bank with the money bag. (T. VII: 95-98; VIII 184-99)

31

when he emerged. (T. VIII: 203-04) Police officers arrested him immediately afterward near the vehicle. (T. VIII: 165, 222) Another man who had been in the van ran into a wooded area of the park and was not captured. (T. VIII: 220) Police later identified the driver as Norris Holder. (T. VIII: 234)

Police officers arrested Billie Jerome Allen at a house in St. Louis at approximately 2:00 a.m. the following morning. (H.T. 5/16/97: 142-46) They took him to police headquarters, placed him in a small interrogation room, and handcuffed him to a table. (H.T. 5/16/97: 146-47, 152, 191-93) Mr. Allen remained handcuffed to the interrogation room table until approximately 10:00 a.m. (H.T. 5/16/97: 192-93) According to police, he was advised of his various constitutional rights several times. (H.T. 5/16/97: 146-47, 152, 192-93, 244)

At approximately 4:20 a.m., a Federal Bureau of Investigation agent named Janet Hartman came to interview Mr. Allen and began to advise him of his constitutional rights once again. (H.T. 5/16/97: 80, 88) Mr. Allen interrupted Agent Hartman and stated that he wished to have an attorney appointed to assist him. (H.T. 5/16/97: 88-89, 202) Agent Hartman terminated the conversation. (H.T. 5/16/97: 90, 202) No police officer or

32

Case: 4:07-cv-00027-ERW   Doc. #: 94-56   Filed: 08/14/09   Page: 34 of 53 PageID #: 1228

prosecuting official made any attempt to secure counsel for Mr. Allen for the remainder of the morning. (H.T. 5/16/97: 90, 201, 257-58) A St. Louis homicide detective involved in the investigation acknowledged at trial that Mr. Allen had not been permitted to make any telephone calls after having requested a lawyer and that he was being held "incommunicado." (T. 9: 200-02)

A homicide detective, who acknowledged that the entire homicide division was notified early in the morning that Mr. Allen had requested an attorney, testified that at approximately 10:15 a.m. Mr. Allen insisted on discussing the bank robbery with the Deputy Commander of the St. Louis Police Department homicide unit. (H.T. 5/16/97: 249, 259-60, 284) According to police witnesses, Mr. Allen recanted his request for an attorney and made a detailed statement in which he admitted having participated in the bank robbery and having shot Mr. Heflin. (T. 2/17: 9-13)

33

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

## SUMMARY OF ARGUMENT

Mr. Allen contends that the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591, et seq., is unconstitutional.  He contends first that § 3592(c), which permits the Government to define non-statutory aggravating factors when it seeks a death sentence, violates several constitutional provisions: (1) the statute fails to limit and guide the sentencing discretion of jurors as required by the constitutional prohibition against cruel and unusual punishment, (2) it reflects an impermissible delegation of legislative authority to the executive branch, and (3) it violates the Ex Post Facto Clause by allowing prosecutors to enhance the punishment for a crime after its commission.  Mr. Allen next argues that § 3591(a) facilitates the arbitrary imposition of the death penalty by allowing the sentencing decision in capital cases to be made on the basis of "information" rather than "evidence." Mr. Allen contends that the provisions for appellate review of death sentences in § 3595(a) single out condemned defendants for circumscribed appellate opportunity and that the failure of the Act to require proportionality review will facilitate arbitrary imposition of death sentences.

34

Case: 4:07-cv-00027-ERW    Doc. #: 94-56    Filed: 08/14/09    Page: 36 of 53 PageID #: 1230

Mr. Allen argues that the indictment in this case was inadequate to charge a crime punishable by death because it failed to allege the existence of aggravating factors which are the unique indicia of capital offenses.

Mr. Allen contends that a confession introduced into evidence and attributed to him should have been suppressed. The evidence established that Mr. Allen had been arrested early in the morning and chained to a desk in an interrogation room at police headquarters from approximately 4:00 a.m. until approximately 10:00 a.m. Despite his request for an attorney shortly after 4:00 a.m., which was made to an FBI agent and city police officers, no law enforcement personnel made any effort to procure counsel for Mr. Allen for the remainder of the morning. Mr. Allen purportedly recanted his request for counsel and made a self-incriminating statement late in the morning, after a homicide detective advised him that he had been identified in a lineup as one of the robber-murderers. Mr. Allen argues that failure of police to honor his request for counsel throughout the morning of his arrest rendered the supposed confession involuntary.

Mr. Allen contends that the District Court deprived him of a reasonable opportunity to locate, secure, and develop evidence of

35

mitigating factors. Approximately one month prior to trial, defense counsel learned that the court-paid mitigation expert had abandoned the case. Counsel immediately retained a new mitigation expert. Ten days prior to the February 9, 1998, trial setting, Mr. Allen requested that the trial be postponed. The new expert testified in support of the motion and explained why it would be impossible for him to adequately prepare the mitigation case in less than 120 days. The District Court denied the motion.

Mr. Allen contends that the Government violated his rights to due process of law and to the assistance of counsel by prosecutorial misconduct. He argues that Government counsel sandbagged defense counsel for months prior to trial regarding the testimony of two crucial prosecution witnesses. Although counsel for the Government was aware that the witnesses would give testimony suggesting that Mr. Allen had shot and killed Mr. Heflin, and knew also that defense counsel had received investigative reports during the discovery process which related precisely the opposite observation from each witness, the Government chose to withhold information regarding the purported incorrectness of the investigative reports. Want of that knowledge precluded defense

36

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

counsel from investigating the legitimacy of the change in stories and from making informed decisions in their preparation for trial and their advice to Mr. Allen.

Mr. Allen contends that the District Court created undue risk to his rights to be free from involuntary self-incrimination and cruel and unusual punishment, and his rights to enjoy due process of law and equal protection of the law, by affording Government counsel access to statements made in a court-ordered psychiatric evaluation, and that those constitutional deprivations appear to have been actualized by the improper sharing of that information despite the establishment of a "Chinese wall" within the office of Government counsel.

Mr. Allen argues that the District Court committed plain error in failing to take remedial action sua sponte when Government counsel referred to him as a "murderous dog" during closing argument. The inflammatory potential of that improper characterization was enhanced because counsel attributed the description to Mr. Heflin, as he lay dying.

Mr. Allen contends that the Government's introduction of emotionally charged victim impact testimony from many of Mr. Heflin's relatives, friends, and colleagues was calculated and likely to produce a

37

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

verdict informed by emotion rather than reason. He argues that the evidence constituted substantially more than a quick glimpse of the life which had been taken and that the District Court erred in denying his motion for an order limiting such evidence or plainly erred in failing to truncate the Government's evidentiary onslaught.

Mr. Allen submits that he was entitled to have the jury instructed during the penalty phase of trial that the law never requires a jury to impose a sentence of death. He contends that the instructions which were tendered by the Government and given to the jury by the District Court were inconsistent with the governing statute and infringed his Eighth Amendment rights by suggesting that the law required the imposition of a death sentence once the jury's weighing of aggravating and mitigating factors had established that such a sentence could be "justified."

Mr. Allen argues that the submission of two capital counts to the jury at the penalty phase of trial was precluded by the Double Jeopardy Clause and the legislative history of 18 U.S.C. § 924(j). He contends further that the double submission, which required the jury to go through the weighing process two times, unduly highlighted the option of a death sentence and

improperly enhanced the likelihood that jurors who initially considered

death inappropriate eventually would vote for such a sentence.

ARGUMENT

I.

The District Court erred in denying Mr. Allen's motion to preclude the Government from seeking the death penalty because the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591, et seq., is unconstitutional, in that (1) the statute permits Government attorneys to invent and charge non-statutory aggravating factors and thus fails to insure principled guidance of the exercise of sentencing discretion by jurors, in violation of U.S. Const. amends. VIII and XIV, (2) the statute permits the Government to charge non-statutory aggravating factors and thus embodies an impermissible delegation of legislative power to the executive branch, in violation of U.S. Const. art. I, § 1, (3) the statute permits the Government to define non-statutory aggravating factors and thus enables the definition of punishable conduct after the conduct has occurred, in violation of the ex post facto clause, U.S. Const. art. I, § 9, clause 3, (4) the statute permits the Government to rely upon "information" rather than "evidence" to obtain a death sentence and thus violates U.S. Const. amends. VIII and XIV, (5) the statute fails to provide for adequate proportionality review of death sentences imposed pursuant to the weighing of aggravating and mitigating factors enables the arbitrary and capricious imposition of the death penalty, in violation of U. S. Const. amends. VIII and XIV, (6) the statute fails to narrow the class of person eligible for execution and thus channel the discretion of capital juries, in violation of U.S. Const. amend. VIII.

> **Standard of Review:** This Court reviews issues of statutory construction and claims of constitutional error de novo. Hamilton v. Schriro, 74 F.3d 1545, 1552 (8th Cir. 1996); United States v. Hoosman, 62 F.3d 1080, 1081 (8th Cir. 1995).

The Government sought the death penalty for Mr. Allen pursuant to

a two-count indictment charging offenses which arose from the robbery of

a federally insured bank. After the grand jury had indicted Mr. Allen, the

40

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

Government filed a notice of its intent to seek his execution pursuant to the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591 et seq. (App. 186-91) Mr. Allen sought an order from the District Court precluding the Government from seeking his execution because of the unconstitutionality of that act. (App. 194-227) The District Court denied the motion. (App. 319) The Federal Death Penalty Act of 1994 is unconstitutional, the District Court erred in holding otherwise, and the sentence of death imposed upon Mr. Allen should be vacated.

A. Modern Death Penalty Jurisprudence

Before Furman v. Georgia, 408 U.S. 238 (1972), "sentencing juries had almost complete discretion in determining whether a given defendant would be sentenced to death." Johnson v. Texas, 509 U.S. 350, 359 (1993). In Furman, the Supreme Court invalidated all existing death penalty statutes for violating the protections of the Eighth and Fourteenth Amendments to the United States Constitution. Although each of the five justices joining in the per curiam opinion advanced somewhat different reasoning in additional concurring opinions, the fundamental principle underlying Furman is that a death penalty scheme is unconstitutional where it permits the imposition of death sentences in an arbitrary and

41

capricious manner.  As the Court later explained: "A fair statement of the consensus expressed . . . in <u>Furman</u> is that 'where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." <u>Zant v. Stephens</u>, 462 U.S. 862, 874 (1983) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 189 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)); <u>Woodson v. North Carolina</u>, 428 U.S. 280, 302 (1976) ("Central to the limited holding in <u>Furman</u> was the conviction that the vesting of standardless sentencing power in the jury violated the Eighth and Fourteenth Amendments" (Stewart, Powell, and Stevens, JJ., concurring).

After <u>Furman</u>, many states amended their death penalty statutes in attempts to address the deficiencies which had led to that decision.  On July 2, 1976, the Supreme Court issued opinions in five cases raising challenges to post-<u>Furman</u> death penalty statutes enacted by various states.  The Court upheld those statutes that had carefully tailored the process of selecting persons eligible for a death sentence while providing the sentencer with the authority to consider the individual circumstances of

42

each defendant. <u>Gregg v. Georgia</u>, 428 U.S. 153 (1976); <u>Jurek v. Texas</u>, 428 U.S. 262 (1976); <u>Proffitt v. Florida</u>, 428 U.S. 242 (1976). At the same time, the Court struck down those statutes that provided for an automatic death sentence upon conviction of certain classes of murders without requiring "particularized consideration of all relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death." <u>Woodson v. North Carolina</u>, 428 U.S. 280, 303 (1976); <u>accord, Roberts v. Louisiana</u>, 428 U.S. 325 (1976).

Since 1976, the Court has decided numerous capital cases, resulting in an extensive and complex body of death penalty law. These cases have produced a set of core principles that are unique to capital cases. In addition, as a result of the special procedural requirements mandated by the Eighth Amendment, capital sentencing is fundamentally different from the standard sentencing proceeding and more closely resembles trial on the issue of guilt. The following is a summary of those core principles:

1. <u>Death is Different.</u> Death is fundamentally different from all other forms of punishment. "Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year

43

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

or two." <u>Woodson</u>, 428 U.S. at 305. As the Court emphasized in <u>Gardner v. Florida</u>, 430 U.S. 349 (1977):

> "[D]eath is a different kind of punishment from any other which may be imposed in this country . . . From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."

<u>Id.</u>, at 357-58 (internal citations omitted).

The principle that death is different pervades death penalty jurisprudence. Because death is unique in its finality and severity, increased scrutiny is required at every step of the capital case process to ensure that death is an appropriate penalty. <u>See Caldwell v. Mississippi</u>, 472 U.S. 320, 329 (1985). "The 'unique' nature of modern capital sentencing proceedings . . . derives from the fundamental principle that death is 'different.'" <u>Schiro v. Farley</u>, 510 U.S. 222, 238 (1994) (Blackmun, J., dissenting).

2. <u>Heightened Standard of Reliability.</u> "[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." <u>Caldwell</u>, 472

44

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

U.S. at 329. Because death is different, a "heightened standard of reliability" is required at every step of the process of deciding to impose death in an individual case. <u>Ford v. Wainwright</u>, 477 U.S. 399, 411 (1986). This heightened standard of reliability is "[the] natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." <u>Id.</u>

3. <u>Meaningful Appellate Review.</u> Within the death penalty framework demanding a heightened standard of reliability, one of the most basic and important procedural safeguards is the availability of "meaningful appellate review." <u>Pulley v. Harris</u>, 465 U.S. 37, 55 (1984) (Stevens, J., concurring). While <u>Pulley</u> ultimately held that the Eighth and Fourteenth Amendments did not require in every capital sentencing statute a specialized form of capital appellate scrutiny known as proportionality review, the Court has remained steadfast in its view that meaningful appellate review remains an essential component of a constitutional death penalty scheme.

In <u>Godfrey v. Georgia</u>, 446 U.S. 420 (1979), the Court discussed three independent criteria as indispensable to a finding that a particular capital sentencing scheme effectively and constitutionally channeled the

45

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

sentencing authority's discretion. Among these bedrock requirements was the availability of rational appellate review of the "process for imposing a sentence of death." Id., 446 U.S. at 428. In Zant v. Stephens, supra, the Court explained that its original approval of Georgia's capital sentencing procedure in Gregg had rested

> "primarily on two features of the scheme: that the jury was required to find at least one valid statutory aggravating circumstance and to identify it in writing, and that the State Supreme Court reviewed the record of every death penalty proceeding to determine whether the sentence was arbitrary or disproportionate."

Id., 462 U.S. at 876.

More recently, in Parker v. Dugger, 498 U.S. 308 (1991), the Court once again emphasized the importance of meaningful appellate review in determining the constitutionality of a death penalty scheme: "We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally." Id., at 321.

4. Aggravating Factors Must Genuinely Narrow the Class of Persons Eligible for the Death Penalty and Must Justify the Imposition of a More Severe Sentence on the Defendant Compared to Similarly Situated Defendants. A constitutional death penalty statute must "genuinely

narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephenson, supra, 462 U.S. at 877. A death penalty statute must "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed' guidance" and that 'make rationally reviewable the process for imposing a sentence of death.'" Lewis v. Jeffers, 497 U.S. 764, 774 (1990) (quoting Godfrey v. Georgia, supra, 446 U.S. at 428).

A statute's aggravating factors play a critical role in channeling the sentencer's discretion through clear and objective standards. An aggravating factor must set out a clear, principled way to distinguish those few cases in which the death penalty may be imposed from the many cases in which it is not imposed." Godfrey, at 428-29, 433. As the Court has instructed:

> "Although our precedents do not require the use of aggravating factors, they have not permitted a State in which aggravating factors are decisive to use factors of vague or imprecise content. A vague aggravating factor employed for the purpose of determining whether a defendant is eligible for the death penalty fails to channel the sentencer's discretion. A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that they jury will treat the defendant as more deserving of the death penalty than he

47

might otherwise be by relying upon the existence of an illusory circumstance."

Stringer v. Black, 503 U.S. 222, 235-36 (1992). Following these principles, the Court has struck down aggravating factors that are too vague to supply clear guidance or that could be interpreted as applying to almost any murder. See, e.g., Maynard v. Cartwright, 486 U.S. 356 (1988) (aggravating factor of crime being "especially heinous, atrocious, or cruel" was unconstitutionally vague); Godfrey v. Georgia, supra, (aggravating factor of crime being "outrageously or wantonly vile, horrible, or inhuman" was unconstitutionally vague).

In a jurisdiction with a capital sentencing statute which requires the sentencing jury to weigh aggravating and mitigating factors, "there is Eighth Amendment error when the sentencer weighs an 'invalid' aggravating circumstance in reaching the ultimate decision to impose the death sentence." Sochor v. Florida, 504 U.S. 527, 532 (1992). "Employing an invalid aggravating factor in the weighing process 'creates the possibility . . . of randomness' by placing a 'thumb [on] death's side of the scale,' thus 'creat[ing] the risk [of] treat[ing] the defendant as more deserving of the death penalty.'" Id., at 532 (quoting Stringer v. Black, supra, 503 U.S. at 232, 235-36 (internal citations omitted).

48

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

## B.  Unconstitutionality of the Act

### 1.  The Act Is Unconstitutional Because It Permits The Use of Non-Statutory Aggravating Factors

The Federal Death Penalty Act of 1994 permits the Government to allege both statutory and non-statutory aggravating factors as bases for imposition of a death sentence.  In homicide cases, § 3592(c) enumerates 16 aggravating factors and adds that the sentencer may consider "any other aggravating factor for which notice has been given." 18 U.S.C. § 3592(c). The allowance of non-statutory aggravating factors defined and charged at the discretion of the Government runs afoul of several constitutional principles.

### a.  Failure to Limit and Guide Sentencing Discretion of Jury

The Eighth Amendment requires that "discretion . . . afforded a sentencing body on a matter so grave as the determination of whether a human life  should be taken or spared" must be "suitably directed and limited . . . to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, supra, 428 U.S. at 189 (opinion of Stewart, Powell, and Stevens, JJ.).  In particular, the Supreme Court's Eighth Amendment jurisprudence since Gregg has explained that while sentencers may not be prevented from considering any relevant offered as a reason for sparing a

49

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A
Case: 4:07-cv-00027-ERW    Doc. #: 94-56    Filed: 08/14/09    Page: 51 of 53 PageID #: 1245

defendant's life, the decision to impose death must be guided by "carefully defined standards that must narrow a sentencer's discretion." McClesky v. Kemp, 481 U.S. 279, 304 (1987)). By simultaneously promoting both individualized sentencing decisions and uniform application of the death penalty, these two principles are designed to provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." Furman v. Georgia, supra, 408 U.S. at 313 (White, J., concurring).

By authorizing the Government to expand the statutory list of aggravating factors unilaterally on a case-by-case basis, § 3592(c) establishes a capital proceeding flawed by the lack of certainty and the inevitability of disparate of results condemned in Furman. The federal statute provides no guidance to prosecutors in determining how to select or define non-statutory aggravating factors in a particular case. Under such a scheme, the factors that would persuade jurors to impose death in any given case would emerge from prosecutorial imagination. The requirement of "clear and objective" criteria for the determination of sentence in a capital case cannot be met under such a scheme. See Gregg v. Georgia, supra, 428 U.S. at 197. Particularly in conjunction with the

50

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 49A

evidentiary free-for-all created by the scope of "information" admissible at the penalty phase, this investiture of federal prosecutors creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously in federal courts. The Eighth Amendment forbids that.

### b. Impermissible Delegation of Legislative Power

Section 3592(c) affords prosecutors virtually limitless discretion to define non-statutory aggravating factors. The statute fails to provide any clear guidance for the exercise of that discretion. The provision thus constitutes an improper delegation of legislative authority from the legislative branch to the executive.

The constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. The Supreme Court has interpreted this constitutional provision as preventing Congress from delegating its legislative power to another branch of government. "[T]he non-delegation doctrine originated in the principle of separation of powers that underlies our tripartite system of Government." Mistretta v. United States, 488 U.S. 361, 371 (1989). While Congress may obtain assistance from other branches by delegating certain enforcement and policy-making authority, it must "lay down by legislative

51

act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." Id., 488 U.S. at 372 (quoting J. W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)).

Courts have split on the threshold issue of whether the power provided to federal prosecutors to define non-statutory aggravating factors constitutes a delegation of legislative power to the executive branch. Compare United States v. McCullah, 76 F.3d 1087, 1106, aff'd on denial of reh'g, 87 F.3d 1136 (10th Cir. 1996) (prosecutorial discretion to promulgate non-statutory aggravating factors is a permissible delegation of power by the legislative to the executive branch); United States v. Tipton, 90 F.3d 861, 895 (4th Cir. 1996) (assuming delegation of power, delegation is permissible); United States v. Pretlow, 779 F.Supp. 758, 763-64 (D.N.J. 1991) (permissible delegation of legislative power), with United States v. Walker, 910 F.Supp. 546, 560 (N.D.N.Y. 1995) (not a delegation of legislative power); United States v. Pitera, 795 F.Supp. 546, 560 (E.D.N.Y. 1992) (same).

In fact, under this weighing scheme the submission of aggravating factors to the jury most certainly plays a role in defining the class of