Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

## No. 98-2549

## THE UNITED STATES COURT OF APPEALS
## EIGHTH CIRCUIT

---

### UNITED STATES OF AMERICA

Appellee

v.

### BILLIE JEROME ALLEN

Appellant

---

Appeal From the United States District Court
Eastern District of Missouri
Hon. Richard E. Webber, District Judge

## BRIEF OF APPELLANT ON REMAND

RECEIVED
OCT 1 5 2002
U.S. COURT OF APPEALS
EIGHTH CIRCUIT

Michael A. Gross
34 North Brentwood Boulevard
St. Louis, Missouri 63105
Telephone: (314) 727-4910
Facsimile: (314) 727-4378

John William Simon
Post Office Box 16005
St. Louis, Missouri 63105
Telephone: (314) 645-1776
Facsimile: (314) 645-2125

*Attorneys for Appellant*

# SUMMARY OF THE CASE

This is an appeal on remand from the United States Supreme Court in a federal capital case.

The prosecution charged appellant Billie Jerome Allen with two federal offenses related to a bank robbery in which the bank security guard had been killed. On the basis of this homicide, the prosecution sought the death penalty against both of the men it accused of participating in the robbery.

As the Federal Death Penalty Act required, the prosecution charged the aggravating factors that made Mr. Allen eligible for execution by means of a "Notice of Intent to Seek the Death Penalty." Over Mr. Allen's objection, the prosecution did not submit the FDPA mens rea elements or any statutory aggravating factors to the grand jury. Relying on Walton v. Arizona, the District Court and this Court held that to be unnecessary on the ground that mens rea and statutory aggravating factors were not "elements" of the charged offenses. In *Ring v. Arizona* the Supreme Court overruled Walton. The Court remanded this case for reconsideration in light of *Ring*.

This is a straightforward case for the application of Ring and the Fifth Amendment's Indictment Clause. In order to be available to help resolve any question that the Court may have, however, counsel request that the appeal be scheduled for oral argument and that the parties each be allocated 30 minutes.

i

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Summary of the Case | i |
| Table of Contents | ii |
| Table of Authorities | iv |
| Statement of Jurisdiction | vi |
| Statement of Issues | vii |
| Statement of the Case | 1 |
| Statement of Facts | 2 |
| Summary of Argument | 7 |

Argument

I. The District Court erred in sentencing Mr. Allen to death, because the indictment contained none of the intent or statutory aggravating factor allegations that are required to charge a federal capital offense.    9

   A. In a federal prosecution for a capital offense, the indictment must be submitted to and approved by a grand jury.    9

   B. The indictment must charge every element of the offense.    10

   C. In a capital case, the aggravating factors that render a defendant eligible for the death penalty are elements of the offense.    11

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Case 4:07-cv-00027-ERW    Doc. #: 94-60    Filed: 08/14/09    Page: 4 of 41 PageID
Exhibit 51                                                #: 1439

Page

D.    In a federal capital case, the
      prosecution must submit at least one
      statutory aggravating factor element to
      the grand jury, and if it fails to do so
      the indictment does not charge a
      capital offense.                                    13

II.   The Federal Death Penalty Act violates the Indictment
      and Due Process Clauses of the Fifth Amendment
      because the Act requires that prosecutors rather than
      grand jurors charge the aggravating factor elements
      of a capital offense                                18

      A.    The FDPA commits the charging of the
            statutory aggravating factor element of a
            capital crime to prosecuting attorneys rather
            than to grand jurors                          18

      B.    Only an act of Congress can cure the
            constitutional deficiency of the FDPA         20

Conclusion                                                25

Certificate of Service and Compliance with 8th Cir. R. 28A    viii

Case: 4:07-cv-00027-ERW    Doc. #: 94-60    Filed: 08/14/09    Page: 5 of 41 PageID #: 1440

# TABLE OF AUTHORITIES

| | Page |
|---|---|
| U.S. Const. amend. V | 7, 16-17, 20, 23 |
| 18 U.S.C. § 3591 | 1-3, 13, 16-23 |
| 18 U.S.C. § 3592 | 2, 13, 16-23 |
| 18 U.S.C. § 3593 | 17-23 |
| *Apprendi v. New Jersey,* 530 U.S. 466 (2000) | 4, 9-12 |
| *Department of Housing and Urban Development v. Rucker,* 122 S.Ct. 1230 (2002) | 20 |
| *Duncan v. Louisiana,* 391 U.S. 145 (1968) | 8 |
| *Enmund v. Florida,* 458 U.S. 782 (1982) | 13 |
| *Gregg v. Georgia,* 452 U.S. 153 (1976) | 13 |
| *Hamilton v. Schriro,* 74 F.3d 1545 (8th Cir. 1996) | 16 |
| *Harris v. United States,* 122 S.Ct. 2406 (2002) | 8 |
| *Jones v. United States,* 526 U.S. 227 (1998) | 9, 12 |
| *McCleskey v. Kemp,* 481 U.S. 279 (1987) | 16 |
| *Ring v. Arizona,* 122 S.Ct. 2428 (2002) | 4, 8-10, 18-19, 21-22 |
| *Smith v. United States,* 360 U.S. 1 (1959) | 8 |
| *Stirone v. United States,* 361 U.S. 212 (1960) | 8, 13-14 |
| *United States v. Albertini,* 472 U.S. 675 (1985) | 20 |
| *United States v. Cotton,* 122 S.Ct. 1781 (2002) | 9, 11-12 |

iv

*United States v. Dionisio,* 410 U.S. 19 (1973)                          8

*United States v. Evans,* 333 U.S. 483(1948)                          22

*United States v. Hudson,* 11 U.S. 32 (1812)                          19

*United States v. Jackson,* 390 U.S. 570 (1968)                          20-22

*United States v. Moussaoui,* No. 01-455 (E.D.Va.)                          12

*United States v. White,* 241 F.3d 1015 (8th Cir. 2001)                          7

*Walton v. Arizona,* 497 U.S. 639 (1990)                          3, 21-22

*Woodson v. North Carolina,* 428 U.S. 280 (1976)                          15

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of conviction and sentence in a criminal case. The prosecution invoked the subject matter jurisdiction of the District Court pursuant to 18 U.S.C. § 3231. Mr. Allen invoked the jurisdictin of this Court pursuant to 18 U.S.C. §§ 3595(a) and 3742(a) and 28 U.S.C. § 1291. He invoked the jurisdiction of the United States Supreme Court pursuant to 28 U.S.C. § 1254(1). On June 28, 2002, the Supreme Court vacated the judgment of this Court and remanded the case for additional consideration.

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

# STATEMENT OF THE ISSUES

## I.

**Whether the District Court erred in sentencing Mr. Allen to death, because the indictment contained none of the intent or statutory aggravating factor allegations that are required to charge a federal capital offense.**

U. S. Const. amend. V

*Ring v. Arizona,* 122 S.Ct. 2428 (2002)

*Apprendi v. New Jersey,* 530 U.S. 466 (2000)

*Jones v. United States,* 526 U.S. 227 (1998)

## II.

**Whether the Federal Death Penalty Act violates the Indictment and Due Process Clauses of the Fifth Amendment because the Act requires that prosecutors rather than grand jurors charge the aggravating factor elements of a capital offense.**

U. S. Const. amend. V

*Ring v. Arizona,* 122 S.Ct. 2428 (2002)

*United States v. Jackson,* 390 U.S. 570 (1968)

*United States v. Albertini,* 472 U.S. 675 (1985)

## STATEMENT OF THE CASE

This is an appeal from a judgment of conviction and sentence imposed in a capital prosecution. A jury found appellant Billie Jerome Allen guilty of having violated 18 U.S.C. §§ 924(c)(1) and (j)(1), and 2113(a) and (e). Pursuant to the jury's recommendation, the District Court sentenced Mr. Allen to imprisonment for life on one count of the indictment and to death on the other count. This Court affirmed the judgment and sentence of the District Court. The Supreme Court granted Mr. Allen's petition for a writ of certiorari, vacated this Court's judgment, and remanded the case for further consideration in light of its decision in *Ring v. Arizona,* 122 S.Ct. 2428 (2002).

1

## STATEMENT OF FACTS

Two masked men robbed the Lindell Bank & Trust Company in St. Louis on March 17, 1997. One or both of them shot and killed Richard Heflin, the bank security guard. The prosecution contended that Norris G. Holder had masterminded the robbery and recruited Mr. Allen into that enterprise. Police caught Mr. Holder red-handed as he fled from the crime scene. They arrested Mr. Allen early the next morning.

The prosecution filed a two-count indictment in the United States District Court for the Eastern District of Missouri on April 17, 1997. Count I charged that Mr. Holder and Mr. Allen had violated 18 U.S.C. §§ 2 and 2113(a) and (e) by robbing a federally insured bank and killing Mr. Heflin during the commission of that crime. Count II charged that the defendants had violated 18 U.S.C. §§ 2 and 924(c)(1) and (j)(1) by using "a firearm in relation to [that] bank robbery . . . and in so doing . . . commit[ing] murder as defined in 18 U.S.C. § 1111" by killing Mr. Heflin "with malice aforethought." Count II alleged further that the murder of Mr. Heflin had been "deliberate, malicious, [and] premeditated." Appellant's Sep. App. (A.S.A.) at 82-83.

The indictment contained no allegation of the mens rea specified by 18 U.S.C. § 3591(a)(2) as a precondition to the consideration of statutory aggravating and mitigating factors in a federal capital prosecution. The indictment alleged

2

none of the statutory aggravating factors listed in 18 U.S.C. § 3592(c). Each allegation of the indictment was directed against both Mr. Holder and Mr. Allen jointly; none differentiated between the defendants' respective mental states, actions, or roles in the crime. The indictment did not specify which of its alternative allegations might apply to which defendant.

On August 18, 1997, the prosecution filed its "Notice of Intent to Seek the Death Penalty Against Defendant Allen." A.S.A. at 186-91. There the prosecution pleaded all four of the mens rea elements contained in 18 U.S.C. § 3591(a)(2), five statutory aggravating factors from 18 U.S.C. § 3592(c), and four non-statutory aggravating factors. Of the five statutory aggravating factors alleged, the following two eventually would be submitted to and found by the jury:

> Grave Risk of Death to Additional Persons. The Defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense.

> Commission of the Offense for Pecuniary Gain. The Defendant committed the offense in consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value . . .

A.S.A. at 187-88.

The penalty notice charged Mr. Allen individually with each new factual allegation. The notice was signed by the United States Attorney, a presidential appointee, and by an Assistant United States Attorney. A.S.A. at 192. It did not purport to have been presented to or approved by a grand jury.

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

On October 20, 1997, Mr. Allen moved to preclude the imposition of the death penalty because the indictment failed to charge a capital offense. He reasoned:

> Where a statute authorizes an increase in the maximum possible sentence upon the finding of a factual element, the statute defines a separate, greater offense that requires that the government charge and prove to a jury the additional element.

Appellant's Supp. Sep. App. at 14. He contended that the mens rea specified in § 3591(a)(2) and at least one statutory aggravating factor identified in § 3592(c) were "elements" of a federal capital crime, and that because the indictment in this case did not allege any of those elements it was insufficient to charge an offense punishable by death. *Id.* at 14-17.

On January 13, 1998, a Magistrate Judge recommended that Mr. Allen's motion be denied. A.S.A. at 240-302. The magistrate relied on *Walton v. Arizona,* 497 U.S. 639 (1990), in making that recommendation. The District Court adopted the magistrate's recommendation over Mr. Allen's objection. A.S.A. at 319.

A jury convicted Mr. Allen of both counts charged in the indictment. In the penalty phase the jury found that Mr. Allen was eligible for the death penalty because he had "intentionally inflicted serious bodily injury which resulted in the death of Richard Heflin," and because he had "knowingly create[d] a grave risk to one or more persons in addition to Richard Heflin" and "commit[ted] the offense in the expectation of the receipt of anything of pecuniary value." *Id.* at 460-61, 477-

4

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

78. Despite those findings the jury returned a recommendation of imprisonment for life without the possibility of release on Count I. *Id.* at 472. It recommended that Mr. Allen be sentenced to death on Count II. *Id.* at 489.

On appeal Mr. Allen renewed his challenge to the adequacy of the indictment to charge a capital offense. Appellant's Brief at 67-71. This Court affirmed the judgment of conviction and the death sentence imposed on Mr. Allen in a two-to-one opinion. The opinion rejected Mr. Allen's Fifth Amendment claim, relying on *Walton v. Arizona, supra,* and its progeny, for the proposition that "[a]ggravating factors, whether statutory or non-statutory in nature, 'are not separate penalties or offenses . . .' or 'elements of any offense.'" *United States v. Allen,* 247 F.3d 741, 764 (8th Cir. 2001), *vacated,* 122 S.Ct. 2563 (2002).

While Mr. Allen's petition for a writ of certiorari was pending in the Supreme Court, the Court announced its decision in *Ring v. Arizona,* 122 S.Ct. 2428 (2002). *Ring* overruled *Walton.* In *Ring* the Court held that when the enumerated aggravating factors in a capital sentencing scheme "operate as 'the functional equivalent of an element of a greater offense,'" those factors are elements for the purpose of constitutional analysis. *Id.,* at 2443 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 494 n.19 (2000)).

Four days after announcing its opinion in *Ring* the Supreme Court granted Mr. Allen's petition, vacated this Court's judgment, and remanded the case for

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

further consideration in light of *Ring. Allen v. United States,* 122 S.Ct. 2653 (U.S. 2002) (mem.). This Court subsequently ordered the parties to brief the following questions:

> 1. In light of *Ring v. Arizona* . . . was the indictment in this case sufficient to charge a capital offense, and, if not, must the death sentence imposed by the district court now be vacated because no aggravating factors were charged in the indictment?

> 2. In light of *Ring,* is the Federal Death Penalty Act unconstitutional because it does not require or contemplate the participation of the grand jury in the charging of aggravating circumstances in a capital case?

## SUMMARY OF ARGUMENT

In 1976, in *Gregg v. Georgia*, the Supreme Court approved as constitutional the capital sentencing scheme that Georgia had adopted in response to *Furman v. Georgia*. One of the provisions on which the Supreme Court relied as avoiding the risk of the arbitrary and capricious infliction of the death penalty was the legislature's designation of a finite number of aggravating factors, at least one of which the sentencer had to find before considering a death sentence. In 1990, the Court decided *Walton v. Arizona*, holding that statutory aggravating factors were not "elements" of an offense, and did not need to be submitted to a trial jury and found beyond a reasonable doubt.

In 1994, against this background, Congress adopted the Federal Death Penalty Act (FDPA). Like Georgia's but unlike Arizona's, its capital sentencing scheme provided that at least one aggravating factor listed in the statute had to be submitted to the jury before it could consider a death sentence. It did not provide that any such factor, or the question of mens rea, be submitted to the grand jury.

On June 4, 1998, the District Court sentenced Mr. Allen, to death under FDPA for his alleged role in the bank robbery that had occurred on March 17, 1997. Over objection, the prosecution had sought the death penalty without having submitted any of the statutory aggravating factors to the grand jury. Relying on *Walton*, both the court below and this Court held that statutory aggravating factors

7

are not "elements" of an offense, and did not need to be included in the indictment or found by the grand jurors.

During the pendency of the appellant's petition for a writ of certiorari to review this Court's judgment, the Supreme Court announced its decision in *Ring v. Arizona*. Applying its intervening decision in *Apprendi v. New Jersey*, it held that statutory aggravating factors in a scheme that is in pertinent part analogous to that of the FDPA are "elements" of an aggravated capital offense, and that under the Sixth Amendment's guaranty of trial by jury, that element must be submitted to the trial jury.

The United States Constitution contains a guaranty of grand jury indictment. All elements of a federal felony must be contained in the indictment and submitted to a grand jury. In light of *Ring*, the indictment in this case was defective to charge a federal capital offense. The FDPA required the prosecution alone to give notice of the statutory aggravating factor or factors. The Act is unconstitutional because it removes the grand jury from the charging process with respect to this element of the offense. Its provision for a sentence of death is null and void; there was no constitutional means of sentencing a person to death for a violation of the underlying federal statutes at the time of the Lindell Bank & Trust Company robbery. Mr. Allen's death sentence is therefore null and void.

8

## ARGUMENT

**I. The District Court erred in sentencing Mr. Allen to death, because the indictment contained none of the intent or statutory aggravating factor allegations that are required to charge a federal capital offense.[1]**

**A. In a federal prosecution for a capital offense, the indictment must be submitted to and approved by a grand jury.**

The Fifth Amendment guarantees that no individual shall be held to account for a capital offense "unless on a presentment or indictment of a Garnd Jury." U.S. Const. amend. V. The common law mandated the use of indictments in all cases warranting serious punishment, and "[t]he Fifth Amendment made the rule mandatory in federal prosecutions in recognition of the fact that the intervention of the grand jury was a substantial safeguard against oppressive and arbitrary proceedings." *Smith v. United States,* 360 U.S. 1, 9 (1959). The Supreme Court has made it clear that a defendant may not be tried "on charges that are not made in the indictment against him." *Stirone v. United States,* 361 U.S. 212, 217 (1960).

In *United States v. Dionisio,* 410 U.S. 19 (1973), the Court explained that the "most celebrated" purpose of the grand jury "is to stand between the government and the citizen" and protect individuals from the abuse of arbitrary prosecution:

---

[1] A challenge to the sufficiency of an indictment is reviewed de novo. *United States v. White,* 241 F.3d 1015, 1020 (8th Cir. 2001).

9

> Properly functioning, the grand jury is to be the servant of neither the Government nor the courts, but of the people . . . As such, we assume that it comes to its task without bias or self-interest. Unlike the prosecutor or policeman, it has no election to win or executive appointment to keep.

*Id.* at 33, 35. And in a decision addressing the definition of "elements" of a federal offense that was announced on the same day as *Ring v. Arizona,* the Court reaffirmed the importance of the grand jury—a group of lay citizens rather than an elected or politically appointed prosecutor—in this gate-keeping role, noting that "grand and petit juries . . . form a 'strong and two-fold barrier . . . between the liberties of the people and the prerogative of the [sovereign].'" *Harris v. United States,* 122 S.Ct. 2406, 2418 (2002) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 151 (1968)).

## B. The indictment must charge every element of the offense.

The Court has made it clear that the grand jury's role extends to every element of an offense. *Jones v. United States,* 526 U.S. 227, 232 (1998). As recently as *United States v. Cotton,* 122 S.Ct. 1781 (2002), a case involving the intersection of *Apprendi* and the plain error rule, the Court reaffirmed that any fact increasing the maximum punishment in a federal prosecution "must . . . be charged in the indictment." *Id.* at 1783.

10

**C. In a capital case, the statutory aggravating factors that render a defendant eligible for the death penalty are elements of the offense.**

In *Ring* the Court held that "Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense.'" 122 S.Ct. at 2443 (quoting *Apprendi,* 530 U.S. at 494 n.19). *Ring* explained that "'the relevant inquiry is one not of form, but of effect,'" and that the effect of a finding of aggravating factors under the Arizona code was to expose a defendant "to a greater punishment than that authorized by the jury's guilty verdict." *Id.* at 2440 (quoting *Apprendi* at 494). The Court reasoned that "[i]f a [sovereign] makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the [sovereign] labels it—must be found by a jury beyond a reasonable doubt." *Id.* at 2439.

Although the context in which *Apprendi* gave the Supreme Court occasion to define "elements" for the purpose of constitutional analysis was the Sixth Amendment guarantee of trial by jury, the ratio decidendi of *Apprendi* indicates that the Court had the grand jury as well as the petit jury in mind:

> Just as the circumstances of the crime and the intent of the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment. "Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in order to bring the

11

defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances with certainty and precision. [2 M. Hale, Pleas of the Crown *170]." Archbold, PLEADING AND EVIDENCE IN CRIMINAL CASES, at 51. If, then, "upon an indictment under the statute, the prosecutor prove the felony to have been committed, but fail in proving it to have been committed under the circumstances specified in the statute, the defendant shall be convicted of the common-law felony only." *Id.*, at 188.

530 U.S. at 480-81. As the Court was to hold in *Ring* with respect to submission to the trial jury, therefore, facts beyond those defining the generic offense that are necessary to render a defendant liable to a higher degree of punishment are elements of an aggravated felony and must be charged by the grand jury. *Accord, Harris v. United States, supra,* 122 S.Ct. at 2417 (holding that "[a] crime was not alleged, and a criminal prosecution was not complete, unless the indictment and the jury verdict included all the facts to which the legislature had attached the maximum punishment"); *United States v. Cotton, supra,* 122 S.Ct. at 1783 (recognizing that any fact increasing the maximum punishment to which the defendant may be subjected "must also be charged in the indictment").

In these recent instances of defining "element" for constitutional purposes the Supreme Court has yoked indictment to verdict and grand jury to trial jury. *Apprendi* and *Ring* presented no occasion for the Court to hold that the elements of ethnic intimidation, on the one hand, and pecuniary gain and depravity of mind, on the other, had to be included in the indictment: both cases arose from state-court

12

prosecutions and the guarantee of grand jury indictment does not apply to the states. But the Fifth Amendment explicitly protects the right to grand jury review of federal charges. With the restraints of federalism removed—as they are in the present appeal—there is no reason to treat an element differently when it relates to the guarantee of grand jury indictment than when it relates to the guarantee of petit jury trial.

**D. In a federal capital case, the prosecution must submit at least one statutory aggravating factor element to the grand jury, and if it fails to do so the indictment does not charge a capital offense.**

The Constitution requires that the prosecution charge each element of a federal crime in an indictment. *Jones v. United States,* 526 U.S. at 232. Before *Ring* there was room to debate whether aggravating factors were elements of a capital offense. *Ring* ended the debate: aggravating factors operate as the "functional equivalent" of elements of a capital prosecution in any constitutional analysis. 122 S.Ct. at 2443 (quoting *Apprendi,* 530 U.S. at 494).

*Cotton* recognized that the Indictment Clause of the Fifth Amendment requires that any fact increasing the maximum punishment to which a defendant may be subjected "must also be charged in the indictment." 122 S.Ct. at 1783. In *Ring* the Supreme Court rejected the notion that statutory aggravating factors

13

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

necessary to render a defendant eligible for the death penalty are not "elements" of a capital offense, even if the statute defining the predicate offense provides that death is a possible punishment.  122 S.Ct. at 2439-40.

The Justice Department has all but conceded the necessity of alleging aggravating factors in a capital indictment.  In *United States v. Moussaoui,* No. 01-455 (E.D.Va.), the prosecution acknowledged "that the [Supreme] Court is likely to find that the Indictment Clause mandates submission of aggravating factors to the grand jury."  Government's Opp'n to Mot. to Dismiss Notice of Intent to Seek a Sentence of Death, *United States v. Moussaoui,* http://notablecases.vaed. uscourts.gov/1:01-cr-00455/docs/66899/0.pdf.   There the prosecution identified the panel majority's decision in the present case as the only opinion "to address the application of the Indictment Clause to the [Federal Death Penalty Act]" and conceded that the remand of the case "further indicat[es] that the Supreme Court regards the Indictment Clause as applicable to aggravating factors in the FDPA."

Both the mens rea required by § 3591(a)(2) and the statutory aggravating factors required by § 3592(c) were essential elements of the federal capital murder offense for which Mr. Allen was sentenced to death. *See also Enmund v. Florida,* 458 U.S. 782, 797 (1982) (mens rea requirement); *Gregg v. Georgia,* 452 U.S. 153, 187, 196-98 (1976) (plurality opinion) (mens rea and aggravation requirements). Each of those averments—never made by a grand jury, only by prosecutors—was

14

one of fact.  Together those averments subjected Mr. Allen to a greater punishment than that authorized by the facts alleged in the indictment alone.

Neither this Court nor Mr. Allen has any way of knowing whether the grand jury would have returned an indictment alleging the presence of aggravating factors sufficient to charge a crime punishable by death.  It is of course equally impossible to tell whether the grand jury would have been prepared to charge *two* capital offenses on the basis of a single homicide committed during a single bank robbery.  Speculation about what the grand jury might have done is a slippery slope, as *Stirone* recognized.

In *Stirone* the grand jury indicted a labor official for making illegal threats that interfered with the interstate shipment of sand for a plant making concrete.  At trial the prosecution introduced evidence that the concrete was going to be used to build a steel mill and that the conduct charged against the union official also interfered with the shipment of steel.  The trial court instructed the jury that it could find the defendant guilty if his acts interfered with the interstate shipment of *either* sand *or* steel.  The Supreme Court reversed because of this departure from the allegations of the indictment:

> [N]either this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with [the] concrete.  And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned.  Although the trial

15

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous . . . While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error . . . . The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

361 U.S. at 217-18.

Mr. Allen must not be held to a requirement of proving prejudice from a jurisdictional error such as failure to include elements of the offense in a federal indictment. The distinction between interfering with the shipment of steel and interfering with the shipment of sand necessary to make the steel pales in comparison with the distinction between death and "life imprisonment[,] a 100-year prison term [or] one of only a year or two." *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976) (plurality opinion).

Whether the grand jury would have elected to charge Mr. Allen with two capital crimes on the basis of one homicide is a question that the record cannot answer. In fact the record contains a clear suggestion to the contrary: the trial jury reached different conclusions regarding the appropriate punishment for Count I

16

and for Count II; unlike the grand jury, it was not reviewing the case against Mr. Holder—whom the government characterized as the mastermind of the bank robbery—side-by-side with the case against Mr. Allen.

The district court allowed the prosecution to top off the indictment with allegations that transformed the non-capital offenses charged by the grand jury into crimes punishable by death. It denied Mr. Allen's timely objection to that transformation. Neither the aggravating factor allegations nor the question of double exposure to being sentenced to death in a one-homicide case was submitted to the body of lay citizens comprising the grand jury. That failure comprised a stark breach of the promise made by the Indictment Clause of the Fifth Amendment.

A sovereign may vest authority in elected or appointed prosecuting attorneys to decide whether to seek the death penalty. *See McCleskey v. Kemp,* 481 U.S. 279, 296-97 (1987). But that discretion hardly overrides—in fact is an archetypical reason for—the constitutional requirement of neutral review of prosecutorial intentions. The prosecution in this case should have been precluded from seeking Mr. Allen's execution through allegations that the grand jury never charged. Now the sentence of death that it won should be vacated.

17

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

## II. The Federal Death Penalty Act violates the Indictment and Due Process Clauses of the Fifth Amendment because the Act requires that prosecutors rather than grand jurors charge the aggravating factor elements of a capital offense.[2]

The FDPA and the Arizona capital sentencing scheme found unconstitutional in *Ring* are the same for the purpose of applying the Supreme Court's definition of "element." Each allows death as a theoretical sentence in the statute defining the offense, and in a separate statute each sets forth the aggravating factors and procedural steps necessary to rendeer the accused eligible for capital punishment. Under neither scheme does the fact that a trial jury returns a guilty verdict on the underlying offense authorize the imposition of a death sentence, or even authorize the same jury or judge to consider such a sentence. Both the Arizona act and the FDPA require additional proceedings and factfinding with respect to the aggravating factor elements of a capital offense.

### A. The Federal Death Penalty Act commits the charging of the statutory aggravating factor element of a capital crime to prosecuting attorneys rather than to grand jurors.

The Federal Death Penalty Act of 1994 authorizes a sentence of death only after the prosecution has charged and proved aggravating factors, including at least

---

[2] A challenge to the constitutionality of a statute is reviewed de novo. *Hamilton v. Schriro,* 74 F.3d 1545, 1552 (8th Cir. 1996).

18

Case: 4:07-cv-00027-ERW   Doc. #: 94-60   Filed: 08/14/09   Page: 27 of 41 PageID #: 1462

one of sixteen listed in § 3592(c) for homicide-related offenses.  18 U.S.C. §§ 3591-3593.  The Act provides without ambiguity that the allegation of aggravating factors against a defendant will be made by prosecuting attorneys in a notice of intent to seek a sentence of death, rather than by a grand jury in its indictment.  18 U.S.C. § 3593(a).  The Fifth Amendment states that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."  U.S. Const. amend. V.  The FDPA bypasses grand juries in this integral aspect of the capital charging process.  By committing the decision to charge one element of a capital offense to politically appointed prosecutors and their employees, rather than to a body of lay citizens, Congress created a death penalty scheme that is unconstitutional.

The FDPA does not contemplate a grand jury having any role at all in deciding who will or will not face a sentence of death.  Instead Congress vested the authority to make and implement that decision in the executive branch:

> If . . . the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—
>
>> (1) stating that the government believes that the circumstances of the offense are such that . . . a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a). Subsection (b) of the same section provides for a death-sentencing hearing before the jury or before the judge in cases not tried to a jury. The context of subsection (a) allows no good-faith doubt that the actions it prescribes will occur *after* the accused has been indicted for an offense that, in the abstract, might be subject to the death penalty.

### B. Only an act of Congress can cure the constitutional deficiency of the FDPA.

*Ring* holds that aggravating factors which must be charged and proved to make a defendant eligible for execution are elements of a capital offense. 122 S.Ct. at 2443. *Ring* thus establishes as well that in the FDPA Congress defined the new crime of federal capital murder. The FDPA needs repair if the federal government intends to continue to use it as the vehicle for sentencing people to death.

Neither prosecutors nor judges can ameliorate the constitutional infirmities of the Act by re-routing the process of charging aggravating factors through grand juries. That "fix" would be an unconstitutional exercise of the legislative power by the executive or the judicial branch. Federal courts would be required to make numerous judgment calls of a legislative nature. For example, which aggravating

20

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

factors must be included in the indictment?  Must, or *may,* a defendant plead to those factors?  Do the diminished evidentiary standards provided by the Act for the penalty trial apply to the proof of some or all aggravating factors?  If they apply to the proof of aggravating factors, do those standards apply as well to the presentation of mitigating evidence?

Ever since 1812 it has been the law that only Congress has the power to define federal crimes.  *United States v. Hudson,* 11 U.S. 32 (1812).  Prosecutors cannot circumvent the legislative process by re-inventing the charging process mandated by Congress in the FDPA.  Neither should this Court accommodate any request by prosecutors for judicial reconstruction of the Act.

Congress has enacted a statute with unambiguous provisions that conflict with the Constitution.  It is the duty of the courts to declare that unconstitutionality rather than to engage in legislation meant to "save" the measure:

> Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language.  *Garcia v. United States,* 469 U.S. 70, 75 (1984; *United States v. Tercet,* 452 U.S. 576, 580 (1981).  "[O]nly the most extraordinary showing of contrary intentions" in the legislative history will justify a departure from the language.  *Garcia,* 469 U.S. at 75.  This proposition is not altered simply because application of a statute is challenged on constitutional grounds.  Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature.  *Heckler v. Mathews,* 465 U.S. 728, 741-42 (1984).  Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, § 1, of the Constitution.  *United States v. Locke,* 471 U.S. 84, 95-96 (1985).  Proper respect for those

21

powers implies that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N' Fly v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194 (1985).

*United States v. Albertini,* 472 U.S. 675, 679 (1985); *see also Department of Housing and Urban Development v. Rucker,* 122 S.Ct. 1230, 1235-36 (2002) (stating that the canon of constitutional avoidance "has no application in the absence of statutory ambiguity").

The Supreme Court once before considered whether a federal death penalty provision that violated the Fifth and Sixth Amendments could be remedies by judicial reconstruction. In *United States v. Jackson,* 390 U.S. 570 (1968), the Court found a sentencing provision unconstitutional. *Id.* at 581-82. In an effort to salvage the provision the prosecution proposed a number of interpretations of the statute and cited ad hoc procedures developed by district courts as "cures for the constitutional problems." *Jackson* rejected each approach, holding that the statute required legislative rather than judicial repair. *Id.* at 572-81.

In obvious reliance upon *Walton v. Arizona,* Congress has created a scheme in which the prosecuting attorneys alone have discretion to determine whether to charge a capital offense and which aggravating factors to allege. The overruling of *Walton* and the recognition that aggravating factors are elements of a federal capital crime have rendered that scheme constitutionally untenable. Allowing prosecutors now to seek the indictment of congressionally defined factors would

22

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

give "to the [grand jury] the ultimate duty that Congress deliberately placed in other hands." *See Jackson* at 576; *see also Blount v. Rizzi,* 400 U.S. 410, 419 (1971) (refusing to transfer obscenity determination from Postmaster General to court in order to "save" statute).

The capital sentencing scheme of the FDPA is unconstitutional. It is for Congress alone to select an alternate scheme that does comport with the Constitution. Neither the executive nor the judicial branch has the power to adopt a constitutional procedure based on the defective FDPA. Congress may or may not choose that procedure. In light of *Ring* Congress may elect to have a completely different death penalty act—or it may choose to have no death penalty act at all:

> This task is outside the bounds of judicial interpretation. It is better for Congress, and more in accord with its function, to revise the statute than for us to guess at the revision it would make. That task it can do with precision. We could do no more than make speculation law.

*United States v. Evans,* 333 U.S. 483, 495 (1948).

The FDPA provided a system to govern many different aspects of capital punishment in federal courts. Mr. Allen has identified one aspect that clearly is unconstitutional in light of *Ring.* But many aspects may be subject to amendment in the wake of changes to the statute required by *Ring.* In *Jackson* the Court explained that judicial procedure-crafting in such situations is "fraught with the gravest difficulties" because it generates a proliferation of questions, leaving

23

defendants "without the guidance that [they] ordinarily find in a body of procedural and evidentiary rules spelled out in advance of trial." 390 U.S. at 579-80.

Congress enacted the FDPA before *Walton v. Arizona,* 497 U.S. 639 (1990), had been overruled by *Ring.* Under *Walton* aggravating factors were not elements of a capital crime. Having ample reason to believe that aggravating factors were sentencing considerations rather than offense elements, Congress surely did not intend to create new offenses in the FDPA. In light of *Ring* it is clear that the Act did create a new federal crime. The substantive and procedural provisions of the FDPA now lie in constitutional disarray. A court should not do what Congress never intended by "construing" grand juries into the capital charging process and otherwise reconfiguring the legislation.

A construction of the FDPA allowing for the charging of aggravating factors by grand juries would require turning a blind judicial eye to the ordinary meaning of the language chosen by Congress. Ring materially altered the constitutional environment in which Congress had enacted the FDPA. Until Congress corrects the constitutional infirmity in the sentencing scheme that it designed, the Act cannot be reconciled with the Indictment Clause of the Fifth Amendment. This Court should declare the FDPA unconstitutional and vacate the death sentence imposed upon Mr. Allen pursuant to that Act.

24

## CONCLUSION

Mr. Allen requests that this Court vacate his death sentence. That sentence must be vacated because the grand jury did not allege the element of aggravating factors in its indictment and the indictment thus was insufficient to charge a capital offense. Mr. Allen's death sentence must vacated also because the Federal Death Penalty Act entrusts the responsibility for an essential aspect of the capital charging process to prosecuting attorneys rather than to grand jurors, and the Act thus violates the Indictment Clause of the Fifth Amendment.

Michael A. Gross
34 North Brentwood Boulevard
St. Louis, Missouri 63105
Telephone: (314) 727-4910
Facsimile: (314) 727-4378

John William Simon        by MAG
Post Office Box 16005
St. Louis, Missouri 63105
Telephone: (314) 645-1776
Facsimile: (314) 645-2125

Counsel for Appellant

25

## 8TH CIR. R. 28A STATEMENT

This brief has been prepared pursuant to the Court's order regarding length and to Fed.R.App. 35(a)(7)(A). The brief has been printed in 14-point Times New Roman font using Microsoft Word X. The diskette filed with this brief has been scanned for viruses and found to be virus-free. The brief has been recorded on that diskette in Microsoft Word X format.


Michael A. Gross

## CERTIFICATE OF SERVICE

Two printed copies of the appellant's brief and one computer diskette upon which the brief was recorded were delivered on October 15, 2002, to:

Joseph Landolt
Office of United States Attorney
Thomas F. Eagleton Federal Courthouse
111 South 10th Street
St. Louis, Missouri 63102


Michael A. Gross

# ADDENDUM

U. S. Const. amend. V

18 U.S.C. §§ 1391-1393

# CONSTITUTIONAL AND STATUTORY PROVISIONS

## U. S. Const. amend. V

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger . . . ."

18 USCS § 3591   (2002)

§ 3591.  Sentence of death

(a) A defendant who has been found guilty of--
    (1) an offense described in section 794 or section 2381; or
    (2) any other offense for which a sentence of death is provided, if the defendant, as determined beyond a reasonable doubt at the hearing under section 3593--
        (A) intentionally killed the victim;
        (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
        (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
        (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act,

shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

(b) A defendant who has been found guilty of--
    (1) an offense referred to in section 408(c)(1) of the Controlled Substances Act (21 U.S.C. 848(c)(1)), committed as part of a continuing criminal enterprise offense under the conditions described in subsection (b) of that section which involved not less than twice the quantity of controlled substance described in subsection (b)(2)(A) or twice the gross receipts described in subsection (b)(2)(B); or
    (2) an offense referred to in section 408(c)(1) of the Controlled Substances Act (21 U.S.C. 848(c)(1)), committed as part of a continuing criminal enterprise offense under that section, where the defendant is a principal administrator, organizer, or leader of such an enterprise, and the defendant, in order to obstruct the investigation or prosecution of the enterprise or an offense involved in the enterprise, attempts to kill or knowingly directs, advises, authorizes, or assists another to attempt to kill any public officer, juror, witness, or members of the family or household of such a person,

shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

ADD-1

**§ 3592.  Mitigating and aggravating factors to be considered in determining whether a sentence of death is justified**

(a) Mitigating factors.  In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:

(1) Impaired capacity. The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

(2) Duress. The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.

(3) Minor participation. The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

(4) Equally culpable defendants. Another defendant or defendants, equally culpable in the crime, will not be punished by death.

(5) No prior criminal record. The defendant did not have a significant prior history of other criminal conduct.

(6) Disturbance. The defendant committed the offense under severe mental or emotional disturbance.

(7) Victim's consent. The victim consented to the criminal conduct that resulted in the victim's death.

(8) Other factors. Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

(b) Aggravating factors for espionage and treason.  In determining whether a sentence of death is justified for an offense described in section 3591(a)(1), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

(1) Prior espionage or treason offense. The defendant has previously been convicted of another offense involving espionage or treason for which a sentence of either life imprisonment or death was authorized by law.

(2) Grave risk to national security. In the commission of the offense the defendant knowingly created a grave risk of substantial danger to the national security.

(3) Grave risk of death. In the commission of the offense the defendant knowingly created a grave risk of death to another person.

The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

(c) Aggravating factors for homicide.  In determining whether a sentence of death is justified for an offense described in section 3591(a)(2), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

(1) Death during commission of another crime. The death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, an offense under section 32 (destruction of aircraft or aircraft facilities), section 33 (destruction of motor vehicles or motor vehicle facilities), section 36 [section 37] (violence at international airports), section 351 (violence against Members of Congress, Cabinet officers, or Supreme Court Justices), an offense under section 751 (prisoners in custody of institution or officer), section 794 (gathering or delivering defense information to aid foreign government), section 844(d) (transportation of explosives in interstate commerce for certain purposes), section 844(f) (destruction of Government property by explosives), section 1118 (prisoners serving life term), section 1201 (kidnapping), section 844(i) (destruction of property affecting interstate commerce by explosives), section 1116 (killing or attempted killing of diplomats), section 1203 (hostage taking), section 1992 (wrecking trains), section 2280 (maritime violence), section 2281 (maritime platform violence), section 2332 (terrorist acts abroad against United States nationals), section 2332a (use of weapons of mass destruction), or section 2381 (treason) of this title, or section 46502 of title 49, United States Code (aircraft piracy).

ADD-2

(2) Previous conviction of violent felony involving firearm. For any offense, other than an offense for which a sentence of death is sought on the basis of section 924(c), the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person.

(3) Previous conviction of offense for which a sentence of death or life imprisonment was authorized. The defendant has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

(4) Previous conviction of other serious offenses. The defendant has previously been convicted of 2 or more Federal or State offenses, punishable by a term of imprisonment of more than 1 year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.

(5) Grave risk of death to additional persons. The defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.

(6) Heinous, cruel, or depraved manner of committing offense. The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.

(7) Procurement of offense by payment. The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

(8) Pecuniary gain. The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

(9) Substantial planning and premeditation. The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism.

(10) Conviction for two felony drug offenses. The defendant has previously been convicted of 2 or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

(11) Vulnerability of victim. The victim was particularly vulnerable due to old age, youth, or infirmity.

(12) Conviction for serious Federal drug offenses. The defendant had previously been convicted of violating title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of 5 or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

(13) Continuing criminal enterprise involving drug sales to minors. The defendant committed the offense in the course of engaging in a continuing criminal enterprise in violation of section 408(c) of the Controlled Substances Act (21 U.S.C. 848(c)), and that violation involved the distribution of drugs to persons under the age of 21 in violation of section 418 of that Act (21 U.S.C. 859).

(14) High public officials. The defendant committed the offense against--

(A) the President of the United States, the President-elect, the Vice President, the Vice President-elect, the Vice President-designate, or, if there is no Vice President, the officer next in order of succession to the office of the President of the United States, or any person who is acting as President under the Constitution and laws of the United States;

(B) a chief of state, head of government, or the political equivalent, of a foreign nation;

(C) a foreign official listed in section 1116(b)(3)(A), if the official is in the United States on official business; or

(D) a Federal public servant who is a judge, a law enforcement officer, or an employee of a United States penal or correctional institution--

(i) while he or she is engaged in the performance of his or her official duties;

(ii) because of the performance of his or her official duties; or

(iii) because of his or her status as a public servant.

For purposes of this subparagraph, a "law enforcement officer" is a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, or prosecution or adjudication of an offense, and includes those engaged in corrections, parole, or probation functions.

ADD - 3

(15) Prior conviction of sexual assault or child molestation. In the case of an offense under chapter 109A [18 USCS §§ 2241 et seq.] (sexual abuse) or chapter 110 [18 USCS §§ 2251 et seq.] (sexual abuse of children), the defendant has previously been convicted of a crime of sexual assault or crime of child molestation.The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

(16) Multiple killings or attempted killings. The defendant intentionally killed or attempted to kill more than one person in a single criminal episode.

(d) Aggravating factors for drug offense death penalty.  In determining whether a sentence of death is justified for an offense described in section 3591(b), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

(1) Previous conviction of offense for which a sentence of death or life imprisonment was authorized. The defendant has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute.

(2) Previous conviction of other serious offenses. The defendant has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the importation, manufacture, or distribution of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) or the infliction of, or attempted infliction of, serious bodily injury or death upon another person.

(3) Previous serious drug felony conviction. The defendant has previously been convicted of another Federal or State offense involving the manufacture, distribution, importation, or possession of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) for which a sentence of five or more years of imprisonment was authorized by statute.

(4) Use of firearm. In committing the offense, or in furtherance of a continuing criminal enterprise of which the offense was a part, the defendant used a firearm or knowingly directed, advised, authorized, or assisted another to use a firearm to threaten, intimidate, assault, or injure a person.

(5) Distribution to persons under 21. The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by section 418 of the Controlled Substances Act (21 U.S.C. 859) which was committed directly by the defendant.

(6) Distribution near schools. The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by section 419 of the Controlled Substances Act (21 U.S.C. 860) which was committed directly by the defendant.

(7) Using minors in trafficking. The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by section 420 of the Controlled Substances Act (21 U.S.C. 861) which was committed directly by the defendant.

(8) Lethal adulterant. The offense involved the importation, manufacture, or distribution of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), mixed with a potentially lethal adulterant, and the defendant was aware of the presence of the adulterant.

The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

ADD-4

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 51

18 USCS § 3593   (2002)

§ 3593.  Special hearing to determine whether a sentence of death is justified

(a) Notice by the Government.  If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter [18 USCS §§ 3591 et seq.] and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

(b) Hearing before a court or jury.  If the attorney for the government has filed a notice as required under subsection (a) and the defendant is found guilty of or pleads guilty to an offense described in section 3591, the judge who presided at the trial or before whom the guilty plea was entered, or another judge if that judge is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted--

(1) before the jury that determined the defendant's guilt;

(2) before a jury impaneled for the purpose of the hearing if--

(A) the defendant was convicted upon a plea of guilty;

(B) the defendant was convicted after a trial before the court sitting without a jury;

(C) the jury that determined the defendant's guilt was discharged for good cause; or

(D) after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary; or

(3) before the court alone, upon the motion of the defendant and with the approval of the attorney for the government.

A jury impaneled pursuant to paragraph (2) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate, with the approval of the court, that it shall consist of a lesser number.

(c) Proof of mitigating and aggravating factors.  Notwithstanding rule 32(c) [rule 32(b)] of the Federal Rules of Criminal Procedure, when a defendant is found guilty or pleads guilty to an offense under section 3591, no presentence report shall be prepared. At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a).

Billie Allen v. United States of America
No. 4:07-CV-27-ERW
Exhibit 5

governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. For the purposes of the preceding sentence, the fact that a victim, as defined in section 3510, attended or observed the trial shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury. The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death. The government shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the information.

(d) Return of special findings.  The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor for which notice has been provided under subsection (a) found to exist. A finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law.

(e) Return of a finding concerning a sentence of death.  If, in the case of--

    (1) an offense described in section 3591(a)(1), an aggravating factor required to be considered under section 3592(b) is found to exist;

    (2) an offense described in section 3591(a)(2), an aggravating factor required to be considered under section 3592(c) is found to exist; or

    (3) an offense described in section 3591(b), an aggravating factor required to be considered under section 3592(d) is found to exist,

the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

(f) Special precaution to ensure against discrimination.  In a hearing held before a jury, the court, prior to the return of a finding under subsection (e), shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be. The jury, upon return of a finding under subsection (e), shall also return to the court a certificate, signed by each juror, that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

ADD-6