UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA )
)
Appellee )
)
vs. )   · No. 98-2549 ·
)
BILLIE JEROME ALLEN )
)
Appellant )

PETITION FOR REHEARING

I. Reasons for Granting Rehearing

The Court should rehear this appeal because its opinion overlooks or misapprehends the following points of fact and law:

1. *Harmless error analysis.* This Court's conclusion that the error in Mr. Allen's indictment was harmless overlooks (a) the fact that Mr. Allen was tried for two capital crimes arising from one homicide and (b) the proposition of law, which the Supreme Court articulated in *Vasquez v. Hillery,* 474 U.S. 254 (1986), and reiterated in *Campbell v. Louisiana,* 523 U.S. 392 (1998), and from which it never has suggested retreat, that part of the "vital check" exercised by the grand jury over prosecutorial authority is "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense--all on the

**16**

basis of the same facts." *Vasquez* at 263; *Campbell* at 399. The decision to subject Mr. Allen to prosecution for two capital crimes on the basis of one homicide—a prosecution that produced a petit jury verdict of death on only one count—was made by prosecutors alone. The Court's opinion does not answer the question, essential to the constitutional issue presented under these facts, of whether one can be certain beyond a reasonable doubt that the grand jury would have exercised its power to charge "numerous counts or a single count" in this capital case.

2. *Determination that the indictment error is not structural.* In concluding that the omission from an indictment of the element that would render the charged offense capital is not a structural error, the Court has overlooked or misapprehended (a) the legal propositions that a constitutional error is structural if it affects "the framework within which the trial proceeds, rather than simply . . . the trial process itself," *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (opinion of Rehnquist, C.J.), and that indictment error can be structural, *id.* at 309-10 (citing *Vasquez*), and (b) the fact that subjecting a defendant to trial where the punishment may be death rather than imprisonment is determinative of the trial's framework rather than an irregularity of its eventual process.

2

## II. Argument

### A. The Error Was Not Harmless

Nobody accused Billie Allen of committing more than one act of homicide, but the government elected to prosecute him for two capital crimes. That decision to take two cracks at a death sentence—to subject Mr. Allen and his jurors to the process of deciding two times whether his life would be spared or taken—was an exercise of the government's prosecutorial power. The Fifth Amendment requires that a grand jury pass upon such prosecutorial choices, and the Supreme Court has characterized that gatekeeping function "as a vital check against the wrongful exercise of power by the State and its prosecutors." *Campbell*, 523 U.S. at 399.

The present opinion fails to address the fact that the grand jury in this case did not exercise its control over the number of capital crimes to be charged against Mr. Allen. The Court has framed its harmless error inquiry as "whether any rational grand jury . . . would have found the existence of the requisite mental state and one or more of the statutory aggravating factors found by the petit jury if the grand jury had been asked to do so." *United States v. Allen*, No. 98-2549, slip op. at 8 (8th Cir. May 2, 2005). The resulting analysis omits any mention of *Vasquez* or *Campbell* or the crucial grand jury

3

function that the Supreme Court identified in those opinions. The appeal should be reheard to correct that omission.

In *Vasquez* the Court held:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense--all on the basis of the same facts.

474 U.S. at 263. In *Campbell* it characterized the grand jury "as a vital check against the wrongful exercise of power by the State and its prosecutors" and reiterated its recognition of the grand jury's control over "significant decisions such as how many counts to charge and whether to charge ... a capital crime." 523 U.S. at 399. There is nothing obscure about a point made explicit twice by the Supreme Court within the past 20 years and there is nothing trivial about this life-or-death role of the grand jury.

No one can deny that the number of capital crimes charged against Mr. Allen proved significant: the petit jury found him guilty under both counts of the indictment but declined to vote for his execution under one of those counts. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

4

*Chapman v. California*, 386 U.S. at 23. Surely no court could conclude *beyond a reasonable doubt* that the grand jury in this case would have charged Mr. Allen with two crimes punishable by death when the petit jury found only one crime deserving of that consequence.[1]

The relevant inquiry in this case cannot be reduced to whether "the government engaged in the hasty, malicious, or oppressive persecution of an innocent man," or whether "the prosecution was unreasoned," or whether "the government singled Allen out for prosecution" for some improper personal reason, slip op. at 10, and then answered summarily without reference to the decision to charge two capital crimes in a single-homicide case. Nor can the deprivation of which Mr. Allen complains be characterized simply as "a chance at grand jury nullification." *Id.* at 14. The Supreme Court has made it clear that grand jurors actually must pass on the number of capital

---

[1] The panel opinion observed:

> Nothing in the petit jury's findings compels the conclusion that a completely different group of people—the grand jury—would have found the same fact, even if the evidentiary burdens are lower. This is particularly true where, as here, at issue are relatively qualitative determinations which do not lend themselves to precise fact-finding in the same way that drug quantity determinations might.

*United States v. Allen*, 357 F.3d 745, 757-58, *vacated*, 357 F.3d 745 (8th Cir. 2004).

charges to be made in an indictment. In view of the passages quoted above from *Vasquez* and from *Campbell*—and of the fundamental character of the indictment clause guarantee as recognized in *Stirone v. United States*, 361 U.S. 212, 213-19 (1960), and *Ex parte Bain*, 121 U.S. 1, 10 (1887), and by this Court in the present opinion, slip op. at 5-6— the requirement of a citizen check on prosecutorial desire about the number of capital crimes to be charged is something much more substantial than "a chance at grand jury nullifcation."

The decision whether to seek death on multiple counts, especially in a one-homicide case, is not a technical question on which the prosecutors know the One Right Answer because they have law degrees or because they were appointed by the President or because they were hired and retained by someone who was: it is exactly the question the Framers did not trust elected or appointed public officials to answer. *See Vasquez*, 474 U.S. at 263, and *Campbell*, 523 U.S. at 399; *see also United States v. Mandujano*, 425 U.S. 564, 571 (1976) (observing that "[t]he Framers . . . accepted the grand jury as a basic guarantee of individual liberty" and that "[i]ts historic office has been to . . . insur[e] that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and

6

guidance"). At this rate, any exercise of a grand juror's discretion to vote against what any prosecutor asked him or her to do would be "nullification." That is not the law. We have a written Constitution in material part to assure that the temptation to ignore such fundamental principles is resisted in cases that inspire anger and other emotions.

In its gatekeeping function, the grand jury protects the accused from the whim as well as the malice of government prosecutors. The grand jury thus serves as the "conscience of the community" when "strict application of the law would prove unduly harsh." *Gaither v. United States,* 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969). In this case government prosecutors—dependent upon political appointees for their tenure and advancement in office—acted as the conscience of the community in affording themselves two opportunities to secure Mr. Allen's execution. Under the Constitution that choice required the imprimatur of lay citizens, sworn as grand jurors, who have "no election to win and no executive appointment to keep." *United States v. Dionisio,* 410 U.S. 19, 45 (1973). This Court should rehear Mr. Allen's appeal and address directly the significance of excluding the

7