# GOVERNMENT'S ADDENDUM 11 - E

# (ADDENDUM TO DOCUMENT 107)

# Breakfast Seminars

**Pre-Registration Required**    *Atlanta, Ga.*

## Wednesday

#4    **Fingerprint Evidence and the Nature of Forensic Science**

February 13, 2002                          7:00 a.m. - 8:30 a.m.                          1.0 CE Hour

**Simon A. Cole**
Cornell University
Department of Science & Technology Studies
Ithaca, NY

This paper proposes that the discipline of Science & Technology Studies (S&TS), an interdisciplinary field drawing on sociology, history, politics, and philosophy of science and technology, can be of utility in helping courts and scientists understand and articulate what is meant by the term "scientific evidence." While "science" is notoriously difficult to define, S&TS can help clarify the Supreme Court's guidelines for scientific and technical evidence explicated in the recent *Daubert* and *Kumho* decisions.

In the 1990s, the Supreme Court superseded the *Frye* "general acceptance" standard for scientific evidence with five *Daubert/Kumho* guidelines: testing, standards, peer review, error rate, and general acceptance. While *Daubert* was widely viewed as a more liberal standard, for some fields it was actually more stringent. Forensic fingerprint identification, with a long history of general acceptance and a paucity of testing, was just such a field. Indeed, it now seems likely that *Daubert*, which was framed in a civil, "toxic torts" case, may have a considerable - and probably unintended - impact in criminal litigation as it is applied to forensic science.

This paper uses forensic fingerprint identification as a case study to illustrate the potential impact of *Daubert/Kumho* on forensic science. A great deal of controversy has been generated recently as defense attorneys have used the Supreme Court's new standards for scientific and technical evidence to challenge one of the oldest and most revered forensic techniques, latent fingerprint identification. Defense attorneys have filed more than a dozen *Daubert* challenges to forensic fingerprint identification. The National Institute of Justice (NIJ) issued an "Assessment of Status and Needs" and a "Request for Proposals" calling for research into the validity and reliability of forensic fingerprint identification. These documents may or may not (depending on who you ask) have constituted an admission on the NIJ's part that such validation did not yet exist. A full-blown controversy has emerged over whether fingerprint identification has a scientific basis and, if so, what that basis is. The controversy has begun to receive attention in the national press and was featured prominently on the AAFS's website.

For convenience, the contours of the controversy may be outlined according to the *Daubert/Kumho* factors themselves:

- Testing: Does a century of adversarial litigation count as testing? Furthermore, what is the hypothesis to be tested? Is it, as fingerprint examiners contend, that all friction ridge arrangements are unique; or, is it, as critics insist, that fingerprint examiners can reliably match latent fingerprints with their source fingers?

- Standards: What is the standard for a forensic fingerprint match? Is it a certain number of matching ridge characteristics, as traditionally believed; or, is it, as is now being argued by many practitioners, the subjective judgment of the examiner? Is either of these a legitimate standard? More peripherally, what are the standards of training, certification, and competence for fingerprint examiners?

- Error rate: Has an error rate for forensic fingerprint identification been calculated? If so, is it unacceptably high? If not, is fingerprint examiners' claim that the error rate is zero a scientific claim?

- Peer review/General acceptance: What is the appropriate peer group to evaluate and scrutinize the claims of fingerprint examiners? Should it be restricted to fingerprint examiners themselves, or should it be extended to forensic scientists more broadly, or even scientists in general?

The seminar will discuss how fingerprint identification fares under all of these criteria and contrast it with other forensic sciences. The paper concludes that forensic fingerprint identification does not meet the *Daubert/Kumho* criteria and that *Daubert/Kumho* can serve as useful mechanisms exposing the weaknesses and untested assumptions embedded in some forensic practices. The paper will seek to offer a clearer articulation of what science is and how this conceptual framework might be applied to the forensic sciences more broadly.

**ADDENDUM 11 - E**