# GOVERNMENT'S ADDENDUM 12

# DAUBERT MOTION IN
# US V. COLEMAN

# (ADDENDUM TO DOCUMENT 107)

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
v.                           )    No. 4:01CR296 ERW
                             )
KENNETH COLEMAN,             )
                             )
        Defendant.           )

FILED

AUG 1 5 2001

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## DEFENDANT'S MOTION FOR
## *DAUBERT* HEARING ON PROPOSED "EXPERT" TESTIMONY

Comes now defendant, Kenneth Coleman, by and through his undersigned counsel, and moves this Court to hold a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire v. Carmichael*, 119 S.Ct. 1167 (1999) to establish the reliability of expert testimony that the government intends to offer at the trial of this cause (including, but not limited to, handwriting examination and identification, fingerprint examination and identification, fiber analysis and identification, and footwear impression analysis and identification).

*Daubert* provides that the courts, when assessing reliability, must consider such factors as whether the particular technique or methodology in question has been tested, whether an error rate for the methodology has been established, and whether there are objective standards to govern the technique's operations. Id. at 593-594.

*Kumho Tire*, in turn, makes clear that prosecutors cannot avoid this reliability requirement simply by offering this expert testimony as "technical" or "specialized" knowledge, rather than as "scientific." 119 S.Ct. at 1174.

**ADDENDUM 12**

Forensic identification witnesses are especially vulnerable to attack under *Daubert* and *Kumho Tire* because, while these witnesses have long claimed the mantle of science to bolster their opinions, there have in fact been little or no testing done to validate the fundamental premises upon which their particular fields of so-called expertise are based.[1]

Nor have error rates or objective identification standards for these disciplines ever been established. Id.

## A. THE LEGAL STANDARD

1.    *Daubert v. Merrell Dow Pharmaceuticals.*

The Supreme Court in *Daubert* addressed the issue of what the standard should be for admitting expert scientific testimony in a federal trial.[2] The Ninth Circuit in *Daubert* had affirmed the district court's decision to exclude the plaintiff's proffered expert because the expert's methodology for concluding the benedictin can cause human birth defects did not meet the "general acceptance" test of *Frye v. United States*.[3] In reversing the Ninth Circuit, the Supreme Court held as an initial matter that the *Frye* standard had effectively been displaced by the Federal Rules of Evidence, a fact which a majority of the federal circuits had failed to recognize.[4]

---

[1]Michael J. Saks, <u>Merlin and Solomon: Lessons From the Law's Formative Encounters With Forensic Identification Science</u>, 49 Hastings L.J. 1069, 1080 - 1090 (1998).

[2]509 U.S. at 582.

[3]293 F. 1013, 1014 (D.C. Cir. 1923).

[4]509 U.S. at 588 - 589.

The *Daubert* Court additionally held that under Federal Rule of Evidence 702,[5] a federal trial court faced with a proffer of expert testimony must act as a gatekeeper so as to exclude expert opinions lacking sufficient reliability.[6] Specifically addressing the issue of "scientific" experts, the Court held that trial judges must determine at the outset whether the "reasoning or methodology underlying the [expert] testimony is scientifically valid[7] . . . ." As the Court recognized, in a case involving scientific evidence, evidentiary reliability will be based upon "scientific validity."[8] The Supreme Court specifically states that this standard applies not only to "novel scientific techniques," but also to "well established propositions."[9]

## B.   THE LEGAL STANDARD APPLIED TO PROPOSED EXPERTS IN THIS CASE

1.   Handwriting. See *United States v. Starzecpyzel*, 880 F. Supp. 1027 (S.D.N.Y. 1995); *United States v. Hines*, 55 F. Supp. 2d 62 (D. Mass. 1999)(defendant charged with bank robbery); and *United States v. Santillan*, 1999 WL 1201765 (N.D.Cal. 1999).

2.   Latent Fingerprints. *Saks, supra* note 9 at 1106; A. Mortensenns, J. Starrs & C. Henderson, Scientific Evidence in Civil and Criminal Cases, § 809 at 519 (4th Ed. 1995).

First and foremost there has been a complete absence of scientific testing in the fingerprint profession. In sharp contrast to the relatively new field of DNA, no testing has been conducted to

---

[5]Fed. R. Evid. 702 provides
 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

[6]509 U.S. at 592 - 593.

[7]Id.

[8]Id. at 590 n.9.

[9]Id. at 592 n.11.

determine what the probability is of two different people having a number of fingerprint ridge characteristics in common. Even more fundamentally, there have been no studies performed to assess just how reliable it actually is for an examiner to make an identification on the basis of a latent fingerprint fragment which oftentimes is very small and very distorted.

WHEREFORE, pursuant to FRE 702, *Daubert* and *Kuhmo Tire*, defendant Kenneth Coleman requests this Honorable Court to hold a *Daubert* hearing prior to the admission of expert testimony for handwriting, fingerprint, fiber and/or footwear examination and identification.

Respectfully submitted,

Ronald E. Jenkins    #7127
10 S. Brentwood Blvd., Suite 200
St. Louis, Missouri 63105
(314) 721-2525
(314) 721-5525 (Fax)
Attorneys for Defendant

OF COUNSEL:
JENKINS & KLING, P.C.

## Certificate of Service

The undersigned certifies that a copy of the foregoing has been served by United States first class mail, postage prepaid, this ___14th___ day of August, 2001, on Stephen R. Welby, Assistant United States Attorney, Office of U.S. Attorney, 111 South Tenth Street, 20th Floor, St. Louis, Missouri 63102.

4