IN THE UNITED STATES COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| Billie Allen, | § | |
| Plaintiff, | § | CAPITAL CASE |
| | § | |
| VS. | § | 4:07-CV-0027 ERW |
| | § | |
| United States of America, | § | ORAL ARGUMENT REQUESTED |
| Defendant. | § | |
| | § | |

**PETITIONER'S MOTION FOR DISCOVERY
AND EVIDENTIARY HEARING**

Petitioner Billie Allen moves the Court for discovery and an evidentiary hearing in this matter and in support states:

Pending before the Court are Mr. Allen's Motion for Relief Pursuant to 28 U.S.C. §2255, his Amended §2255 Motion, and his Supplement to the Amended §2255 Motion. The Government has answered the Amended Motion, Mr. Allen has submitted a Traverse, and the Government has filed a Sur-Reply to the traverse and separate response to the Supplement to the Amended Motion.  Because Mr. Allen has made allegations, which if proven, would entitle him to relief, he must be afforded an evidentiary hearing and discovery, as discussed below.

**I.     Evidentiary Hearing**

28 U.S.C. §2255(b) sets forth the standard governing when a hearing is appropriate and required:

> Unless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no relief, the
> court shall . . . grant a prompt hearing thereon [and] . . .
> make findings of fact and conclusions of law with respect
> thereto.

1

The Eighth Circuit has interpreted this section to mean that a "petitioner is entitled to an evidentiary hearing on his §2255 claim unless … the record 'affirmatively refutes the factual assertions upon which [the claim] is based.'"  *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007), quoting *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir.1994).  In *Watson*, the court held that an evidentiary hearing was required where the petitioner asserted that he asked his lawyer to file a notice of appeal, and his lawyer had not done so.  Since the record did not facially refute this assertion, and, if true, it could have established ineffective assistance of counsel, the district court erred in failing to hold a hearing.

Further, a district court may not decide a claim without an evidentiary hearing based on its determination of the relative merits of the parties' written evidentiary proffers.[1]  Thus, in *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001), the court found that, where affidavits and pleadings submitted by the parties "contained sharply conflicting evidence," the district court erred in finding an evidentiary hearing unnecessary.  As in *Watson* and *Shaw*, the Eighth Circuit ruled in *Koskela* that a §2255 petitioner "is entitled to an evidentiary hearing,. . . unless the motion, files, and record conclusively show that he is not entitled to relief."  *Id.*; *see also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("An evidentiary hearing on a §2255 motion

---

[1] In its Sur-Reply, the Government mischaracterized the numerous Declarations Mr. Allen has submitted in support of his claims as "unsworn witness statements."  Sur-Reply at 3.  The Declarations each include a statement that the witness certifies, under penalty of perjury, that the information contained therein is true and correct.  That is precisely what federal law requires in order for those Declarations to be treated as affidavits.  *See* 28 U.S.C. §1746; *Burgess v. Moore*, 39 F.3d 216, 217-18 (8th Cir. 1994) ("Under 28 U.S.C. §1746, . . . documents signed and dated under penalty of perjury are treated as verified and satisfy affidavit requirements in federal proceedings.").  Indeed, the government took the exact same approach in submitting an un-notarized Affidavit in support of its Response to the §2255 motion.  *See* Government's Response, Addendum 4.

must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief").

The Eighth Circuit has repeatedly applied this rule to find that ineffective assistance of counsel claims ordinarily cannot be resolved without a hearing. In *Watson*, the court stated: "Where petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.'" *Watson*, 493 F.3d at 964, quoting *Shaw*, 24 F.3d at 1043. Similarly, in *Nelson v. United States*, 297 Fed.Appx. 563, 565 (8th Cir. 2008) (unpublished), the court stated:

> Our cases teach that issues regarding the ineffectiveness of counsel often require a hearing to consider evidence not disclosed on the face of the trial record. *See, e.g.*, *Holloway v. United States*, 960 F.2d 1348, 1357 (8th Cir.1992) (noting that remand for an evidentiary hearing is necessary where the record is inconclusive on a claim for ineffective assistance of counsel); *United States v. Dubray*, 727 F.2d 771, 772 (8th Cir.1984) (noting in a direct appeal that ineffective assistance of counsel claims normally "cannot be advanced without the development of facts outside the original record" (internal marks omitted)).

Mr. Allen's multiple assertions of ineffective assistance of counsel clearly meet this standard. He has made factual allegations, supported by declarations under the penalty of perjury and other evidence, that, if true, demonstrate that he is entitled to relief from his convictions and/or death sentence.

To assist the court in determining the scope of a hearing, Mr. Allen presents the following non-exhaustive list of issues that can only be resolved through evidentiary hearing.[2]

---

[2] In its Sur-Reply, the Government repeatedly contends that issues Mr. Allen did not specifically address in the Traverse are "abandoned" and should be dismissed by the Court. *See* Sur-Reply at 29, 35, 72, 74,

3

### Ground A.  Ineffective assistance of counsel in connection with the motion to suppress

The Amended §2255 Motion alleges facts that, if true, establish that trial counsel were ineffective for failing to properly litigate Mr. Allen's pre-trial motion to suppress. Trial counsel were ineffective for failing to properly present Mr. Allen's offer of proof and the controlling legal authority which would have limited the scope of the government's cross examination of Mr. Allen at the suppression hearing.  Appellate counsel was ineffective for failing to raise the Rule 104(d)/ *Simmons* issue on direct appeal.

Relevant evidence to be presented at the hearing will include testimony regarding trial counsel's lack of a strategic basis for failing to properly present an offer of proof of Mr. Allen's testimony at the suppression hearing, trial counsel's lack of a strategic basis for failing to present controlling legal authority in litigating the motion to suppress, and appellate counsel's lack of a strategic basis for failing to present the controlling legal authority at the proper time.

Because the record does not affirmatively refute the assertions on which this claim is based, an evidentiary hearing is required.

### Ground B.  Improper restraint and ineffective assistance of counsel

The Amended §2255 Motion alleges facts that, if true, establish that trial counsel were ineffective for failing to challenge the restraint of Mr. Allen with a stun belt. Relevant evidence will include testimony regarding whether the jury was aware of the

---

75, 144.  The Government is mistaken.  As the Eighth Circuit has recognized, §2255 requires an "explicit and unequivocal waiver" before claims are deemed abandoned.  *Latorre v. United States*, 193 F.3d 1035, 1037 n.1 (8th Cir. 1999).  Mr. Allen has not waived, explicitly or otherwise, any of the claims raised in his §2255 Motion, and they remain pending in this Court.  Similarly, in setting forth non-exhaustive lists regarding the requested hearing and discovery herein, Mr. Allen does not include every conceivable fact or issue that would be addressed in discovery or at a hearing, and does not intend to waive any fact or part of a claim not specifically discussed.

belt, whether the belt affected Mr. Allen in such a way as to unconstitutionally impair his participation in his own trial, and whether there was sufficient evidence to require the restraints.  As discussed below, discovery will also be required as to this Ground. Because the record does not affirmatively refute the assertions on which this claim is based, an evidentiary hearing is required.

**Ground C.  Racial discrimination in the imposition of the death penalty**

The Amended §2255 Motion alleges facts that, if true, establish that the federal death penalty is disproportionately sought against African American defendants in federal jurisdictions where, due to their racial and socioeconomic conditions, jurors are more likely to return a sentence of death than in the city or county jurisdiction where the crime would otherwise be tried.  The Motion and Traverse explain the significance of race in this case, both as it pertains to the defendants, the victim, and the jury pool from the Eastern District of Missouri rather than from St. Louis City.  The Government, in its Sur-Reply, argues that this claim is not meritorious because the Attorney General did not act with discriminatory intent in authorizing a capital charge in Mr. Allen's case.  The Government also states that Mr. Allen's case, in which two African-American men were charged with murdering a white security guard at a bank in Claymont, was not racially charged.

A hearing is necessary to determine these disputed factual issues.  As discussed below, Mr. Allen is requesting discovery on this ground; assuming relevant evidence is obtained by the discovery process, Mr. Allen has the right to present that evidence at a

hearing.  In addition, Mr. Allen wishes to reserve his right to rebut any evidence presented by the Government of a strategic basis for counsel's failure to object .

### Ground D.  Ineffective assistance of counsel in jury selection

#### 1.  Ineffective assistance of counsel in connection with the empanelling of an anonymous jury

The Amended §2255 Motion alleges facts that, if true, establish that trial counsel was ineffective for failing to challenge the court's decision to empanel the jury anonymously.  The Motion and Traverse explain that insufficient relevant factors for such a decision were present in Mr. Allen's case.  The Government, in its Response and Sur-Reply, argues that such a challenge would have failed.

The constitutional error can be established without a hearing.  As discussed below, however, Mr. Allen is requesting discovery to develop evidence of prejudice in connection with this ground.  Assuming relevant evidence is obtained by the discovery process, Mr. Allen has the right to present that evidence at a hearing.  And, should the Government present evidence of a strategic basis for counsel's failure to object, Mr. Allen is entitled to a hearing to rebut that evidence.

#### 2.  Ineffective assistance of counsel for failing to raise a *Batson* challenge

The Amended §2255 Motion alleges facts that, if true, establish that appellate counsel's failure to raise a claim related to the three *Batson* objections trial counsel made during jury selection was prejudicial.   Because the trial court, during jury selection, reached the second step of the *Batson* analysis—requiring the prosecution to explain the reason for its peremptory strikes—there is a reasonable probability that, on

appeal, the Eighth Circuit Court of Appeals would have found the Government's purportedly race-neutral reasons pretextual, and would have found a *Batson* violation. Relevant testimony at an evidentiary hearing will include appellate counsel's testimony regarding the lack of a strategic basis for failure to raise the *Batson* claim on appeal.

### Ground E.  Ineffective assistance of counsel concerning second robbery of Lindell Bank

The Amended §2255 Motion alleges that the jurors were influenced by extrinsic evidence regarding a robbery of the same Lindell Bank branch during trial.  The record fails to affirmatively refute these allegations.  As discussed below, moreover, Mr. Allen is requesting discovery to develop evidence in connection with this ground.  Assuming relevant evidence is obtained by the discovery process, Mr. Allen has the right to present that evidence at a hearing.  And, should the Government present evidence of a strategic basis for counsel's failure to object, Mr. Allen is entitled to a hearing to rebut that evidence.  A hearing on this claim is therefore necessary.

### Ground F.  Ineffective assistance of counsel for failure to make double jeopardy objection

The Amended §2255 Motion alleges that Mr. Allen's right to effective assistance of counsel was violated when counsel failed to object on double jeopardy grounds where Mr. Allen was first acquitted of the death penalty on Count 1 then sentenced to death for the same homicide in Count 2.  In its Sur-Reply, the Government contends that the jurors found Mr. Allen "far more culpable for the firearms murder during the

bank robbery than the killing resulting from a bank robbery." Sur-Reply at 47. This assertion raises an issue of disputed fact requiring a hearing.

Further, the Government contends that counsel's failure to raise this issue resulted from "decisions" made by counsel that cannot be considered ineffective. *Id.* at 49. This bald assertion likewise raises an issue of fact as to whether counsel made a reasoned decision not to raise the issue or whether counsel was inexcusably unaware of the applicable Supreme Court case law. A hearing is appropriate and necessary to determine these issues of disputed fact.

### Ground G.  Ineffective assistance of counsel and *Brady* violation:  The late disclosure of payments to Thomas Mundell

Because no hearing was conducted in the trial court, discovery will be required as to this issue, as set forth below. At an evidentiary hearing, Mr. Allen will present evidence of the full extent of Mr. Mundell's history as a paid government informant, his history of criminal activity, the benefits Mr. Mundell received from the government in exchange for his cooperation, including the government's agreement not to prosecute him for his criminal activity, and the resulting bias and credibility issues affecting Mr. Mundell's testimony in this case. A hearing is necessary to determine these disputed factual issues.

### Ground H.  Ineffective assistance of counsel in connection with gang references

This ground for relief is based on the trial record, which fully establishes the factual basis for the omitted objection. The Government has suggested no evidence of

a strategic basis for counsel's failure to raise this issue.  Should such evidence be presented later, Mr. Allen is entitle to a hearing to rebut it.  And, as discussed below, moreover, Mr. Allen is requesting discovery to develop evidence of prejudice in connection with this ground.  Assuming relevant evidence is obtained by the discovery process, Mr. Allen has the right to present that evidence at a hearing.

### Ground I.  Ineffective assistance of counsel for failure to present guilt phase evidence

The Government's Sur-Reply makes plain the numerous factual disputes concerning this claim that can only be resolved through discovery and an evidentiary hearing.  The Government first questions whether Jerry Bostic ("J.B.") in fact met the physical description provided by various witnesses to the crime.[3]  Sur-Reply at 65-66. Next, while recognizing that the exculpatory value of the bloody white strap is not clear (in the absence of additional DNA testing), the Government does not—and could not— credibly argue that the strap would not be exculpatory if DNA testing reveals that Mr. Bostic's blood is on the strap.  *See id.*  Clearly, if Mr. Bostic's blood is on the strap, that evidence would exonerate Mr. Allen.  These factual questions demonstrate the need for an evidentiary hearing, after the additional testing and discovery requested below.

---

[3] The Government also contends that the allegations regarding Mr. Bostic's involvement in the crime are time-barred because they were not raised in the Amended Motion.  *See* Sur-Reply at 63-65.  The Amended Motion refutes this contention.  There, Mr. Allen repeatedly alleged that trial counsel were ineffective for failing to investigate and present evidence that Mr. Allen did not participate in the robbery, but that Mr. Holder committed the crime with someone else.  *See* Amended §2255 Motion at 29-32. These allegations explicitly referenced "the involvement of another person in the shooting," and "another participant in the robbery," and that Mr. Holder committed the crime "with someone other than Mr. Allen." *Id.* at 29-31.  The *only specific suspect* identified in the Amended Motion is the allegation that "a person named 'JB' (rather than Mr. Allen)" was involved in the crime with Mr. Holder.  *Id.* at 30.  Clearly, Mr. Allen timely raised the claim that his counsel was ineffective for failing to adequately investigate and present evidence that "a person named 'JB' (rather than Mr. Allen)" was Mr. Holder's accomplice.

With respect to counsel's failure to present the exculpatory gas chromatographic evidence, the Government relies on an Affidavit from a Criminalist at the St. Louis Police Department stating that she "believe[s] that in this instance" the gas chromatographic testing has "no correlation" with the purported smell of smoke on Mr. Allen's clothes.  Sur-Reply at 68; Government's Response, Addendum 4 at 1.  This assertion is directly at odds with Mr. Allen's allegations, and the factual dispute can only be resolved through an evidentiary hearing.  *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001).

With respect to counsel's failure to investigate and present exculpatory evidence available from Greg Prater and Joe Powell,  James Combs, Wayne Ross, Jeffrey Moore, and the FBI report of the anonymous phone call, the Government primarily contends that this evidence lacks "relevance" and is "speculative."  Sur-Reply at 69-72, 74-76.  The Government makes these arguments by interpreting the evidence as *not* exculpatory, a sharply conflicting position with the allegations made in the Amended §2255 Motion.  "The "sharply conflicting" views of what the evidence will show can only be resolved at an evidentiary hearing.  *Koskela*, 235 F.3d at 1149.

Finally, regarding the exculpatory evidence available from Broderick Bonner, the Government asserts that trial counsel "prudently avoided" calling Mr. Bonner because he would have testified about Holder's vast collection of guns.  Sur-Reply at 74.  Even assuming that *Holder's* penchant for illegal gun collection could somehow damage *Mr. Allen's* defense, the Government's assertion that trial counsel made a strategic choice not to call Mr. Bonner raises a factual question that cannot be resolved by the record.

Mr. Allen's allegations and the Government's speculation can only be resolved at an evidentiary hearing.

### Ground J.  Ineffective assistance of counsel at the penalty phase

The Amended §2255 Motion and Traverse allege that trial counsel failed to conduct a timely and adequate mitigation investigation in this case, and, as a result, failed to uncover extensive evidence of the childhood abuse, trauma, abandonment, neglect, and lifelong neurologic and psychiatric impairments that Mr. Allen suffered. *See* Amended §2255 Motion at 32-41; Traverse at 100-141.  Mr. Allen also presented the declarations of both trial counsel and the mitigation investigator who was retained at the last moment to attempt (unsuccessfully, as it transpired) to salvage the defense penalty phase case.

The Government has not established—nor could it—that the record "affirmatively refutes" these allegations.  The Government's raises two primary defenses to the allegation of trial counsel's deficient performance in failing to conduct a timely, adequate mitigation investigation.  First, the Government argues that Dr. Craig Haney is at fault for the mitigation investigation's shortcomings.  Sur-Reply at 82 ("the important point is that Prof. Haney's mistake is not the fault of Mr. Sindel or Mr. Simon"); *see also id.* at 78-89. This bald assertion, which is belied by the declarations of Mr. Sindel, Mr. Simon, and Dr. Randall, and in conflict with three decades of capital jurisprudence, *e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 524-25 (2003) (well-defined norms require *counsel* to conduct thorough mitigation investigation), raises an important issue of disputed fact that can only be resolved at a hearing.

11

Second, the Government argues that trial counsel's mitigation presentation at trial "was the best strategy for life," and that "Mr. Sindel and Mr. Simon's strategy was clearly to emphasize the positive in Allen rather than the negative."  Sur-Reply at 98-99. It is a well established principle of law, however, that counsel must "discover all reasonably available mitigating evidence" as a prerequisite "to making an informed choice among possible defenses," and that decisions made after less than full investigation are unworthy of deference.  *Wiggins*, 539 U.S. at 524-25.  In any event, the Government's assertions about trial counsel's strategy are in conflict with the Declarations of Mr. Sindel, Mr. Simon, and Mr. Randall, among others.  The Government's assertions thus raise factual disputes that further underscore the need for an evidentiary hearing.  *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001)/

The Government likewise fails to establish that the record "affirmatively refutes" the allegations that a timely, adequate investigation would have uncovered extensive evidence of lifelong abuse, trauma, abandonment, neglect, and psychiatric and neurologic impairment.  For example, regarding the allegations of lifelong abuse of Mr. Allen, the Government first contends that "Allen had no outward sign that would corroborate the level or seriousness of the 'abuse' now claimed."  Sur-Reply at 106. The Government next complains that "it is not clear whether this is simply a matter of corporal punishment or torture."  *Id.* at 106 n.40.  Finally, the Government notes that trial testimony attested to one (and only one) beating of Mr. Allen *when he was 16 or 17 years old*.  *Id.* at 107.  The Government's assertions clearly demonstrate the need for an evidentiary hearing to establish the extent, nature, and timing of this "corporal punishment or torture."

12

Similarly, regarding the allegations of childhood abandonment, the Government cites to trial testimony that his mother justifiably evicted Mr. Allen after their home was shot up in 1997, and that she "twice filed missing person reports" on Mr. Allen. *Id.* at 104-05. These events, however, occurred *when Mr. Allen was an adult*, and fail to answer the instant allegations (1) that Mr. Allen was frequently locked out of the house alone from age 10, overnight and for days at a time, in a violent neighborhood, *see* Traverse at 121-22, (2) that his *childhood* history of abandonment had profound psychological impacts on Mr. Allen; and (3) that the final acts of abandonment Mr. Allen suffered as a young adult therefore precipitated a psychological crisis in the weeks before the crime. *See* Traverse, Ex. 20 ¶¶ 9-10, 17, 42. The Government completely fails to "affirmatively refute" these allegations.

The Government likewise fails to refute the allegations regarding Mr. Allen's lifelong trauma, neglect, and psychiatric and neurological impairments. The §2255 Motion and Traverse clearly allege that trial counsel's deficient investigation undermined the trial experts' ability to accurately diagnose and credibly testify about Mr. Allen's impairments, and further prevented the jury from hearing a coherent and complete narrative regarding the effect of trauma and neglect on Mr. Allen, and on his conduct relative to the charged offenses. These allegations are supported by declarations from Mr. Sindel and Mr. Simon, from experts, and from numerous other witnesses. The Government has not "affirmatively refuted" these allegations and, accordingly, Mr. Allen "is entitled to an evidentiary hearing." *Koskela*, 235 F.3d at 1149.

13

**Ground K.  Ineffective assistance of counsel for failure to object to victim impact evidence**

The record reveals the improper evidence and trial counsel's failure to object. That the evidence was inadmissible has been demonstrated without a hearing. However, in its Sur-Reply, the Government contends that trial counsel "reasonably opted not to renew his objection" on this ground.  Sur-Reply at 131.  This assertion raises a disputed question of fact regarding whether trial counsel's failure to object was based on a reasoned decision or not.  A hearing is therefore necessary and appropriate on this issue.  The government has presented no evidence of such a reasoned decision, but should it do so, Mr. Allen is entitled to a hearing to refute any such evidence.

**Ground L.  Ineffective assistance of counsel for failure to object to penalty phase argument**

The record reveals the improper arguments and trial counsel's failure to object. The constitutional violation can be demonstrated without a hearing.  However, Mr. Allen wishes to reserve his right to a hearing should the Government offer evidence of a strategic basis for counsel's failure to raise this issue.

**Ground N.  Ineffective assistance of counsel for failure to object to the non-statutory aggravator**

The record includes the improper instruction and trial counsel's failure to object. The constitutional violation can be demonstrated without a hearing.  However, Mr. Allen wishes to reserve his right to a hearing should the Government offer evidence of a strategic basis for counsel's failure to raise this issue.

14

### Ground O.  Ineffective assistance of counsel for failure to argue properly the grand jury issue

The Amended §2255 Motion and Traverse explain the authority that should have been cited and the arguments that should have been made by counsel, and this Court can determine the legal issues without a hearing.  However, Mr. Allen wishes to reserve his right to a hearing should the Government offer evidence of a strategic basis for counsel's failure to raise this issue.

### Ground P.  Ineffective assistance of counsel for failure to request an instruction concerning the burden of proof in the penalty phase weighing process

The record demonstrates that the objection was not made, and the legal requirement that the instruction must be given can be demonstrated without a hearing. However, Mr. Allen wishes to reserve his right to a hearing should the Government offer evidence of a strategic basis for counsel's failure to raise this issue.

### Ground Q.  Lethal injection

As set forth in the Traverse, Mr. Allen believes that this Court should withhold consideration of this claim until it is ripe.  Mr. Allen asserted this claim to preclude any subsequent argument by the Government that the claim has been waived for failure to raise it in a timely fashion.

If the Court finds it appropriate to seek to resolve this claim now, its merits cannot be established without discovery and an evidentiary hearing at which the Court can receive evidence concerning the process the government would use to kill Mr. Allen.

15

### Ground S.  New evidence regarding inaccurate and unreliable ballistics and fingerprint evidence

Mr. Allen established in Ground S that the prosecution relied on the ballistics evidence in this case to argue to the jury, in both the guilt and penalty phases of trial, that Mr. Allen was the triggerman who shot Mr. Heflin.  Mr. Allen further established that the prosecution relied on the fingerprint evidence in this case to connect Mr. Allen both to the planning and the commission of these crimes.  Mr. Allen has alleged that the government's ballistics and fingerprint evidence was unreliable, thus undermining confidence in his convictions and death sentence.  *See* Supplement to Amended §2255 Motion at 2-5, 13-14.

In response, the Government argues that courts have repeatedly found – prior to the NAS Report – that these forensic disciplines were reliable.[4]  *See* Government Response to Ground S at 15 (citing cases).  This contention, however, does nothing to "affirmatively refute" the allegations regarding the newly accepted view of the scientific community that these disciplines are in fact plagued by unreliability.  The factual dispute regarding this claim is clear: the forensic evidence was either reliable or unreliable. Resolving this dispute requires an evidentiary hearing.

In sum, Mr. Allen "is entitled to an evidentiary hearing," *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001), on Ground S because the Government has not established that the record "affirmatively refutes the factual assertions upon which [the ground is] based," *Shaw*, 24 F.3d at 1043.  Accordingly, Mr. Allen requests that the Court order a hearing on each of the assertions of constitutional error in Ground S.

---

[4] The Government devotes the bulk of its response to arguments that this claim is procedurally barred. *See* Government Response to Ground S at 2-13.  Mr. Allen will address these arguments in his forthcoming Traverse to the Government's Response to Ground S.

## II.    Discovery

Mr. Allen's discovery requests are governed by Rule 6 of the Rules on Motion Attacking Sentence Under Section 2255.  Rule 6 states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  A post-conviction petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).  As the federal courts have found, a habeas petitioner may:

> invoke the process of discovery available under the Federal
> Rules of Civil Procedure if, and to the extent that, the judge
> in the exercise of his discretion and for good cause shown
> grants leave to do so . . . A federal habeas court must allow
> discovery and an evidentiary hearing only where a factual
> dispute, if resolved in the petitioner's favor, would entitle him
> to relief.

*United States v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004); *see also Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996) (holding that under the analogous standard of Rule 6 of the Rules Governing §2254 Cases, Mr. Toney was entitled to discovery to conduct DNA testing); *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) ("Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief.").

When a petitioner establishes good cause, discovery must be allowed.  The Supreme Court has explained that "[t]he very nature of the writ [of habeas corpus] demands that [habeas proceedings] be administered with the initiative and flexibility

17

essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969); *see also  Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996) ("it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry").

Since the purpose of post-conviction discovery "is to ensure that the facts underlying a [habeas] claim are adequately developed," a court must allow discovery whenever "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief."  *Harris*, 394 U.S. at 291.  Accordingly, a court may not deny a petitioner's discovery motion "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief.  *Id.*  This is never more so than in the context of a capital case, where the unique finality and irreversibility of the sentence requires heightened procedural safeguards.  *E.g.*, *Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (a court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case").

With these principles in mind, and incorporating by reference the arguments made above regarding the factual disputes necessitating an evidentiary hearing, Mr. Allen makes the following discovery requests:

**Ground A.  Ineffective assistance of counsel in connection with the motion to suppress**

Mr. Allen requests the following discovery:

- EMS records regarding Mr. Allen from March 18, 1997;

18

- The identities of civilian witnesses and law enforcement personnel involved in or present at the lineups where Mr. Allen was identified; and all police and FBI records of the lineup;

- Notes taken by Officer Harper during the interrogation of Mr. Allen;

- All typed and handwritten notes, and all correspondence or records, taken by any city, state or federal law enforcement regarding the interrogation of Mr. Allen.

### Ground B.  Improper restraint and ineffective assistance of counsel

Mr. Allen requests the following discovery:

- inspection of the stun belt(s) worn by Mr. Allen, or a stun belt of the same manufacturer and model;

- any and all records in the possession of the United States Attorney's Office, United States Marshal Service, or any other federal government agency regarding:

  o which United States Marshals or other law enforcement officers (1) placed the stun belt(s) on Mr. Allen, (2) removed the stun belt(s) from Mr. Allen, (3) had control of the stun belts' operation while Mr. Allen was wearing them, and (4) escorted or guarded Mr. Allen while he was wearing the stun belt(s);

  o the use, maintenance, malfunction, and operation of the stun belt(s) worn by Mr. Allen during its/their operational life;

  o the malfunction of any stun belts of the same manufacturer and model while in use by the United States Marshal Service;

- interviews of jurors to determine whether the jurors were aware that Mr. Allen wore a stun belt during the proceedings, and how this knowledge affected them.[5]

---

[5] Mr. Allen previously moved this Court for leave to interview jurors concerning whether the jurors were aware that the Lindell Bank was robbed again during the trial, and how this affected them; whether the jurors were prejudiced against Mr. Allen as a result of the secrecy of their identity during trial; and whether the jurors were aware that Mr. Allen wore a stun belt throughout the proceedings, and how this affected them.  In this Motion, Mr. Allen renews his request to interview the jurors on those topics and additionally seeks to interview the jurors regarding the effect of references to Mr. Allen's and defense witnesses' purported gang affiliations at the guilt and penalty phases; and the jurors' rationales in reaching disparate penalty phase verdicts on two counts for the same homicide.

**Ground C.  Racial discrimination in the imposition of the death penalty**

Mr. Allen requests:

- any and all data, whether in electronic or hard copy form, concerning the racial makeup of jury venire panels in the Eastern District of Missouri during the period 1988-1998;

- any and all data, whether in electronic or hard copy form, concerning the racial makeup of jury venire panels in the City of St. Louis during the period 1988-1998;

- any and all correspondence, whether electronic, typed, or hand-written, between any officials in the U.S. Attorney's Office for the Eastern District of Missouri and any officials in the U.S. Department of Justice, regarding the capital charging decision of this case;

- any and all telephone logs or notes of telephone conversations, between any officials in the U.S. Attorney's Office for the Eastern District of Missouri and any officials in the U.S. Department of Justice, regarding the capital charging decision in this case;

- any and all data, memoranda, correspondence, policies, procedures, or other records, whether in electronic or hard copy form, concerning capital charging decisions by the U.S. Attorney's Office for the Eastern District of Missouri, including decisions not to seek a death sentence;

- any and all data, memoranda, correspondence, policies, procedures or other records, whether in electronic or hard copy form, concerning capital charging decisions by the U.S. Department of Justice during the period 1988-1998, including decisions not to seek a death sentence.

**Ground D.  Ineffective assistance of counsel in jury selection**

**1.     Trial and appellate counsel were ineffective for failing to challenge the improper empanelling of an anonymous jury**

Mr. Allen requests that counsel be permitted to interview jurors concerning:

- the effect of the anonymous jury process upon jurors' decision-making in this case, and how the anonymity colored the jurors' perceptions of Mr. Allen in this case;

20

- their interactions during the trial with courthouse staff, including U.S. Marshals and other law enforcement officials.

**2.    Appellate counsel ineffectively failed to raise preserved *Batson* challenges**

Mr. Allen requests:

- any and all records, including electronic and handwritten notes, taken by the prosecuting attorneys and any other members of the prosecution legal team during jury selection in this matter;

- any and all copies of juror questionnaires that were used by the prosecuting attorneys and/or any other members of the prosecution legal team during jury selection, including any and all handwritten notes on the questionnaires;

- any and all paperwork related to jury selection that was in the possession of the prosecution legal team during jury selection, including, but not limited to, printouts of the venire list, criminal record checks or other investigative paperwork on potential jurors, including any handwritten notes on those documents.

**Ground E.  Ineffective assistance of counsel concerning second robbery of Lindell Bank**

Mr. Allen requests that counsel be permitted to interview jurors concerning:

- whether the jurors were aware that the Lindell Bank was robbed again during the trial, and how this affected them.

**Ground F.  Ineffective assistance of counsel for failure to make double jeopardy objection**

Mr. Allen requests that counsel be permitted to interview jurors concerning:

- their rationale in sentencing Mr. Allen to life on Count 1 and sentencing Mr. Allen to death on Count 2, where the jury found the exact same aggravating and mitigating circumstances present for each count.
- 

21

**Ground G.   Ineffective assistance of counsel and *Brady* violation in regarding the late disclosure of payments to Thomas Mundell**

Mr. Allen requests:

- any and all records, including electronic and handwritten notes and correspondence, in the possession of the Federal Bureau of Investigation, the United States Department of Justice, any United States Attorney's Office, and any other federal or state agency concerning:

    o   Mr. Mundell's history as a government informant;

    o   Mr. Mundell's history of criminal activity;

    o   any and all benefits Mr. Mundell has received from the government in exchange for his cooperation with law enforcement and/or prosecutors;

    o   any records discussing, reflecting, or shedding light on Mr. Mundell's credibility, bias, or reliability;

    o   any statements or testimony given by Mr. Mundell in other criminal investigations or prosecutions;

- pursuant to Fed. R. Civ. P. 26(b) and 30, the depositions upon oral examination of Thomas Mundell, Joseph Landolt, and Steven Holtshouser concerning the nature of Mr. Mundell's cooperation and when prosecutors became aware of it.

**Ground H.   Ineffective assistance of counsel in connection with gang references**

Mr. Allen requests that counsel be permitted to interview jurors concerning:

- the effect of references to Mr. Allen's and defense witnesses' purported gang affiliations on the jury at the guilt and penalty phases.

**Ground I.   Ineffective assistance of counsel for failure to present guilt phase evidence**

Mr. Allen requests[6]:

---

[6] Mr. Allen previously requested the right to review all discovery.  The motion was granted as to certain documents only, which were not found in trial counsel's file.  Mr. Allen now requests to review all reports and other investigative documents, whether or not they were provided in discovery to trial counsel.

- any and all reports, notes, and other documents from the St. Louis Police Department, the Federal Bureau of Investigation, and any other law enforcement agency regarding their investigation of this crime including, but not limited to, all records generated from investigation in Forest Park, at the Northwest Plaza mall, and at the crime scene at Lindell Bank.

- any and all records generated by Criminalist Donna Becherer, Criminalist Kim Gorman, and any other employee of the St. Louis Police Department or Federal Bureau of Investigation relating to DNA testing on the bloody white strap (identified as specimen "Q4" in the June 5, 1997, DNA Laboratory Report issued by Criminalists Becherer and Gorman), including:

  o all documentation, raw data, test results, reports, bench memos, bench notes, papers, notebooks, articles, or narratives relating to Mr. Allen's case and trial;

  o photographs of the physical evidence relating to Mr. Allen's case and trial;

  o computers disks or other electronic storage devices that contain the items identified above;

- the complete DNA profile of Jerry Bostic, in possession of the National DNA Index System ("NDIS" or "CODIS"), the United States Attorney's Office, the Missouri DNA Database, and the St. Louis Police Department Crime Laboratory.[7]

- any and all records, including electronic and handwritten reports, notes, and correspondence, and written and videotaped statements, in the possession of the Federal Bureau of Investigation, the United States Attorney's Office, the St. Louis Police Department, and any other federal, state, or city agency, including the City Water Department, concerning:

  o any and all benefits Mr. Greg Prater received from the government, or agreements entered into, in consideration for his cooperation with law enforcement and/or prosecutors, including benefits arranged through the City Water Department;

  o any records discussing, reflecting, or shedding light on Mr. Prater's credibility, bias, or reliability;

---

[7] If federal, state, or city officials are not in possession of the requested DNA profile for Mr. Bostic, counsel will move at the appropriate time for his DNA profile to be obtained by other means including, if necessary, by exhuming and obtaining a sample from Mr. Bostic's body.

- o any and all benefits Mr. Joe Powell received from the government, or agreements entered into, in consideration for his cooperation with law enforcement and/or prosecutors, including benefits arranged through the City Water Department;

- o any records discussing, reflecting, or shedding light on Mr. Powell's credibility, bias, or reliability;

- o any and all benefits Ms. Lisa Moore received from the government, or agreements entered into, in consideration for her cooperation with law enforcement and/or prosecutors, including benefits arranged through the Lindell Bank;

- o any records discussing, reflecting, or shedding light on Ms. Moore's credibility, bias, or reliability, specifically to include all statements, written, videotaped, or unrecorded, given by Ms. Moore.

- detailed records of all phone calls made, received, and attempted from the pay phone in the lobby of the Deaconess Hospital on March 17, 1997;

- detailed records of all calls, pages, and data messages sent, received, and attempted from Norris Holder's cell phone and pager during March, 1997;

- detailed sales records from the Hat Zone store in Northwest Plaza mall on March 17, 1997.

## Ground J.  Ineffective assistance of counsel at the penalty phase

Mr. Allen requests:

- that the United States Attorney's Office, the Federal Bureau of Investigation, and the St. Louis Police Department search for and disclose any and all records relating Mr. Allen's history of abuse, abandonment, neglect, trauma, and psychiatric and neurologic impairments; and

- complete and unredacted records from the St. Louis Probation Department regarding Mr. Allen's juvenile record.

24

**Ground S.  New evidence regarding inaccurate and unreliable ballistics and fingerprint evidence**

Mr. Allen requests from the St. Louis Police Department and the Federal Bureau of Investigation, with respect to any and all fingerprint collection, evaluation, and reporting, and with respect to any and all ballistics collection, evaluation, and reporting:

- the complete case record generated in this matter including all:

  - documentation, reports, bench memos, bench notes, papers, notebooks, computer disks, articles, or narratives relating to the examinations performed by Ballistics Examiner Frank Stubits (St. Louis Police Department), by Fingerprint Examiners William Pauley (FBI) and Thomas Shulze (St. Louis Police Department), and by any other employee who worked on physical evidence relating to Mr. Allen's case and trial (collectively, the "Examiners");

  - photographs of the physical evidence relating to Mr. Allen's case and trial;

  - drawings or diagrams made by the Examiners who drafted diagrams or depictions of the crimes scenes, the physical evidence, or results from forensic examinations relating to Mr. Allen's case or trial;

  - worksheets created or completed by the Examiners relating to Mr. Allen's case and trial; and

  - computers disks or other electronic storage devices that contain the objects identified above;

- editions and versions of the Examiners' crime laboratories' quality control manual dating back to 1990;

- annual reviews or audit reports relating to the Examiners' crime laboratories' operation and quality control system dating back to 1990;

- documentation, reports, manuals, memos, computer disks, or articles generated after 1990 relating to the general acceptance or validity of the procedures utilized by the Examiners in Mr. Allen's case;

- technical procedural manuals relating to ballistics analysis and fingerprint analysis in use in 1997;

- records, documentation, reports, memos, manuals, or computer disks dating back to 1990 relating to the calibration of the instrumentation utilized by the Examiners in preparation for Mr. Allen's trial;

- reports, from 1990 on, that document when or if the Examiners' casework was technically reviewed, who conducted the reviews, the outcomes of the reviews, and whether corrective actions had to be taken, and if so, what corrective action was taken;

- copies of the laboratories' testimony review policy dating back to 1990;

- reports, memos, or documents, from 1990 on, that identifies when the Examiners' testimony was reviewed, who performed the review, and whether corrective action had to be taken due to discrepancies in his testimony or reports;

- records, reports, memos, or computer disks that identify or store the actual proficiency tests taken by the Examiners after 1990;

- photographs and videotape records from the crime and crime scene at the Lindell Bank;

- inspection of the ballistics and fingerprint evidence in this case, including the guns, bullets, bullet fragments, shell casings, and fingerprints collected and tested.

**Other Discovery**

Because the prosecution's due process obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny continue in post-conviction, *Imbler v. Pachtman*, 424 U.S. 409, 427 n.25 (1976), Mr. Allen requests that the Government review all statements, FBI reports, and information that is in any way supportive of Mr. Allen's allegations, as contained herein, in the Amended §2255 Motion, in the Supplement to the Amended §2255 Motion, and in the Traverse.  Mr. Allen recognizes that the Government, pursuant to this Court's Order of June 8, 2009, has provided current counsel with the discovery materials turned over to trial counsel.  Given that the current §2255 claims concern specific contested issues not raised by trial counsel, however,

26

this request seeks materials that were not included in trial discovery but which are in any way relevant to the issues raised in the current proceedings.

## CONCLUSION

For the foregoing reasons, Mr. Allen prays that the Court grant oral argument on this motion[8], and after argument:

1.  Order an evidentiary hearing as requested in this motion, and

2.  Authorize the discovery requested in this motion to be completed at a reasonable time before the evidentiary hearing.

Respectfully submitted,

/s Elizabeth Unger Carlyle
Elizabeth Unger Carlyle #51877
P.O. Box 866
Columbus, MS  39703
Missouri Bar No. 41930
(816)525-6540
elizcar@lawalumni.neu.edu

Joseph M. Cleary #534292
1455 N. Pennsylvania
Indianapolis, IN  46202
(317) 630-0137
jcleary498@aol.com

Michael Wiseman
Chief, Capital Habeas Corpus Unit
Federal Community Defender for the
Eastern District of Pennsylvania
Suite 545 West -- The Curtis Center
Philadelphia, PA  19106
215-928-0520
Michael_Wiseman@fd.org

ATTORNEYS FOR PETITIONER

---

[8] Because of the numerous issues in this motion, counsel for Mr. Allen believe the court would benefit from the opportunity to discuss them with counsel before ruling.

27

**CERTIFICATE OF SERVICE**

I hereby certify that it is my belief and understanding that counsel for respondent, Mr. Joseph M. Landolt, Asst. U. S. Attorney, Mr. Steven Holtshouser, Asst, U.S. Attorney, and Ms. Carrie Costantin, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102, are participants in the Court's CM/ECF program and that separate service of the foregoing document is not required beyond the Notification of Electronic Filing to be forwarded to counsel on March 29, 2010, upon the filing of the foregoing document.

/s/ Elizabeth Unger Carlyle
Elizabeth Unger Carlyle