Westlaw.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

**H**

United States Court of Appeals,
Eighth Circuit.
**Andre COLE**, Appellant
v.
Donald P. **ROPER**; Jeremiah W. Nixon, Appellees.
**No. 09-1213.**

Submitted: April 12, 2010.
Filed: Nov. 5, 2010.

**Background:** Following affirmance of his state convictions for first-degree murder, first-degree assault, first-degree burglary, and armed criminal action, and sentence of death, 71 S.W.3d 163, and affirmance of denial of post-conviction relief, 152 S.W.3d 267, petitioner filed petition for writ of habeas corpus. The United States District Court for the Eastern District of Missouri, Catherine D. Perry, Chief Judge, denied relief. Petitioner appealed.

**Holdings:** The Court of Appeals, Beam, Circuit Judge, held that:
(1) state court's rejection of *Batson* claim did not warrant habeas relief;
(2) state court's rejection of petitioner's claim that his counsel provided ineffective assistance by failing to present evidence of extreme mental and emotional disturbance did not warrant habeas relief;
(3) state court's rejection of petitioner's claim that his counsel provided ineffective assistance by failing to present evidence of petitioner's good prison conduct did not warrant habeas relief;
(4) restraint of petitioner during penalty phase did not violate his due process rights; and
(5) prosecutor's statements during closing arguments did not deny petitioner due process.

Affirmed.

Bye, Circuit Judge, filed opinion concurring in part and dissenting in part.

West Headnotes

**[1] Habeas Corpus 197 ☞842**

197 Habeas Corpus
　197III Jurisdiction, Proceedings, and Relief
　　197III(D) Review
　　　197III(D)2 Scope and Standards of Review
　　　　197k842 k. Review de novo. Most Cited Cases

**Habeas Corpus 197 ☞846**

197 Habeas Corpus
　197III Jurisdiction, Proceedings, and Relief
　　197III(D) Review
　　　197III(D)2 Scope and Standards of Review
　　　　197k846 k. Clear error. Most Cited Cases
In a habeas corpus action, the Court of Appeals reviews the district court's conclusions of law de novo and its factual findings for clear error.

**[2] Habeas Corpus 197 ☞450.1**

197 Habeas Corpus
　197II Grounds for Relief; Illegality of Restraint
　　197II(A) Ground and Nature of Restraint
　　　197k450 Federal Review of State or Territorial Cases
　　　　197k450.1 k. In general. Most Cited Cases
A state court decision may be incorrect, yet still not unreasonable, and the Court of Appeals will grant habeas relief only if the state court decision is both incorrect and unreasonable. 28 U.S.C.A. § 2254(d).

**[3] Constitutional Law 92 ☞3309**

92 Constitutional Law
　92XXVI Equal Protection
　　92XXVI(B) Particular Classes
　　　92XXVI(B)8 Race, National Origin, or

**APPENDIX A**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

Ethnicity
    92k3305 Juries
        92k3309 k. Peremptory challenges.
Most Cited Cases
The Court of Appeals uses a three-step process for evaluating whether the use of a peremptory challenge was based on purposeful discrimination, so as to violate a defendant's equal protection rights, in that, first, the defendant must make a prima facie case of racial discrimination; second, after such showing is made, the state must suggest a race-neutral explanation for the use of the strike; and, third, after a race-neutral reason is offered, the trial court must decide whether the defendant has shown purposeful discrimination. U.S.C.A. Const.Amend. 14.

**[4] Constitutional Law 92 ☞3309**

92 Constitutional Law
    92XXVI Equal Protection
        92XXVI(B) Particular Classes
            92XXVI(B)8 Race, National Origin, or Ethnicity
                92k3305 Juries
                    92k3309 k. Peremptory challenges.
Most Cited Cases
Within the framework for evaluating whether the use of a peremptory challenge was based on purposeful discrimination, so as to violate a defendant's equal protection rights, the defendant may rely on all of the circumstances that bear upon the issue of racial animosity to show purposeful discrimination. U.S.C.A. Const.Amend. 14.

**[5] Habeas Corpus 197 ☞768**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)4 Conclusiveness of Prior Determinations
                197k765 State Determinations in Federal Court
                    197k768 k. Presumptive accuracy of state determination, and rebuttal of presumption.

Most Cited Cases
Whether a peremptory strike was motivated by race, for purposes of a *Batson* claim of discrimination in the use of peremptory challenges to exclude jurors, is ultimately a question of fact, and a state court finding is accorded a presumption of correctness under the Antiterrorism and Effective Death Penalty Act of (AEDPA). 28 U.S.C.A. § 2254(e)(1).

**[6] Habeas Corpus 197 ☞496**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k496 k. Jury. Most Cited Cases
Missouri Supreme Court's rejection of petitioner's *Batson* claim was not contrary to or unreasonable application of Supreme Court precedent, and thus did not warrant habeas relief, where Supreme Court found that prosecutor's reasons for rejecting juror, including that juror was divorced and that petitioner was on trial for murder and assault following divorce, were race-neutral, and further found that "similarly situated" jurors proposed by defense were not actually divorced, but one was simply subject to child support order, though not married. 28 U.S.C.A. § 2254(d).

**[7] Habeas Corpus 197 ☞486(5)**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k482 Counsel
                197k486 Adequacy and Effectiveness of Counsel
                    197k486(5) k. Post-trial proceedings; sentencing, appeal, etc. Most Cited Cases
Missouri Supreme Court's rejection of petitioner's claim that his counsel provided ineffective assistance by failing to investigate and present evidence that he suffered from extreme mental and emotional disturbance at time of murder was not contrary to or

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

unreasonable application of Supreme Court precedent, and thus did not warrant habeas relief, where trial counsel testified that petitioner informed her that he had not been treated for mental disease or defect and denied that he was depressed, and, even if performance was lacking, it was unlikely that petitioner suffered any prejudice from failure to call more favorable expert or lay witnesses, given strong expert testimony already in hands of state. U.S.C.A. Const.Amend. 628 U.S.C.A. § 2254(d).

**[8] Criminal Law 110 ⚷1870**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General
            110k1870 k. In general. Most Cited Cases

**Criminal Law 110 ⚷1882**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General
            110k1879 Standard of Effective Assistance in General
            110k1882 k. Deficient representation in general. Most Cited Cases
Under the performance prong of a claim of ineffective assistance of counsel, the court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. U.S.C.A. Const.Amend. 6.

**[9] Criminal Law 110 ⚷1883**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General

            110k1879 Standard of Effective Assistance in General
            110k1883 k. Prejudice in general. Most Cited Cases
If performance was deficient, the prejudice prong of the test for ineffective assistance of counsel requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. U.S.C.A. Const.Amend. 6.

**[10] Habeas Corpus 197 ⚷486(5)**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
         197k482 Counsel
            197k486 Adequacy and Effectiveness of Counsel
            197k486(5) k. Post-trial proceedings; sentencing, appeal, etc. Most Cited Cases
Missouri Supreme Court's rejection of petitioner's claim that his counsel provided ineffective assistance by failing to investigate and present evidence of petitioner's good prison conduct following his murder conviction was not contrary to or unreasonable application of Supreme Court precedent, and thus did not warrant habeas relief, where Missouri Supreme Court cited counsel's testimony that her experience with presenting evidence on a defendant's good behavior in jail was generally ineffective, and stated that testimony of jail witnesses would have overlapped other good character evidence that was presented at sentencing. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254(d).

**[11] Criminal Law 110 ⚷1884**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General
            110k1879 Standard of Effective Assistance in General
            110k1884 k. Strategy and tactics in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

general. Most Cited Cases
A court may not second-guess counsel's reasonable strategic decisions when addressing a claim of ineffective assistance of counsel. U.S.C.A. Const.Amend. 6.

[12] Habeas Corpus 197 ☞366

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k366 k. Direct review; appeal or error. Most Cited Cases
Habeas petitioner's claim, that leg brace restraint he was required to wear during guilt phase of his murder trial was visible to jurors and thus violated his due process rights, was procedurally defaulted, where petitioner failed to preserve his claim for review by state courts, and advanced no arguments with regard to cause for or prejudice from procedural default of such claim. U.S.C.A. Const.Amend. 14.

[13] Habeas Corpus 197 ☞362.1

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k362.1 k. In general. Most Cited Cases
Habeas petitioner's claim, that leg brace restraint he was required to wear during punishment phase of his murder trial was visible to jurors and thus violated his due process rights, was not procedurally defaulted, inasmuch as petitioner raised issue to state courts in motion to recall mandate as soon as

his claim became legally viable, following Supreme Court's decision in *Deck v. Missouri.* U.S.C.A. Const.Amend. 14.

[14] Habeas Corpus 197 ☞843

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
            197III(D)2 Scope and Standards of Review
                197k843 k. Discretion of lower court. Most Cited Cases
In a habeas proceeding, the Court of Appeals reviews a district court's decision denying an evidentiary hearing for an abuse of discretion.

[15] Habeas Corpus 197 ☞751

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)3 Hearing
                197k745 Criminal Cases
                    197k751 k. Sentence and punishment. Most Cited Cases
*Deck v. Missouri* in which United States Supreme Court held that visibly shackling a defendant during penalty phase of capital trial without justifiable state interest violates due process, was not retrospective, and, thus, habeas petitioner's claim under *Deck* was not based upon new retroactive constitutional rule, so as to warrant evidentiary hearing. U.S.C.A. Const.Amend. 14; 28 U.S.C.A. § 2254(e)(2)(A).

[16] Constitutional Law 92 ☞4745

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)6 Judgment and Sentence
                92k4741 Capital Punishment; Death Penalty
                    92k4745 k. Proceedings. Most Cited Cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

**Sentencing and Punishment 350H ☞1780(1)**

350H Sentencing and Punishment
 350HVIII The Death Penalty
  350HVIII(G) Proceedings
   350HVIII(G)3 Hearing
    350Hk1780 Conduct of Hearing
     350Hk1780(1) k. In general. Most
Cited Cases
Restraint of murder defendant during penalty phase of capital murder trial, in form of knee immobilizer worn under his pants, did not violate his due process rights, where defendant's counsel was not even aware that defendant was restrained, as she thought he was wearing knee brace because his knee was bothering him, and it thus was extremely unlikely that jury was aware that he was restrained. U.S.C.A. Const.Amend. 14.

**[17] Constitutional Law 92 ☞4745**

92 Constitutional Law
 92XXVII Due Process
  92XXVII(H) Criminal Law
   92XXVII(H)6 Judgment and Sentence
    92k4741 Capital Punishment; Death
Penalty
     92k4745 k. Proceedings. Most
Cited Cases

**Criminal Law 110 ☞2146**

110 Criminal Law
 110XXXI Counsel
  110XXXI(F) Arguments and Statements by
Counsel
   110k2145 Appeals to Sympathy or Prejudice
    110k2146 k. In general. Most Cited
Cases

**Criminal Law 110 ☞2150**

110 Criminal Law
 110XXXI Counsel
  110XXXI(F) Arguments and Statements by
Counsel

   110k2145 Appeals to Sympathy or Prejudice
    110k2150 k. Comments on frequency of offenses, and appeals for law enforcement. Most Cited Cases

**Sentencing and Punishment 350H ☞1780(2)**

350H Sentencing and Punishment
 350HVIII The Death Penalty
  350HVIII(G) Proceedings
   350HVIII(G)3 Hearing
    350Hk1780 Conduct of Hearing
     350Hk1780(2) k. Arguments and conduct of counsel. Most Cited Cases
Prosecutor's statements during closing arguments in guilt and penalty phases of capital murder and assault trial, including "I can't emphasize enough to you the seriousness of this case," accusing defendant of sneaking around at night and terrorizing victim, stating that defendants are usually "sitting in that chair for a reason," calling defendant "convicted killer," telling jury that they could send a message to the victims of crime, and analogizing jury to "patriots" who needed to step up to protect society, did not deny defendant due process, in that challenged statements were either not improper, or even if they were, were not so inflammatory and prejudicial as to render trial fundamentally unfair. U.S.C.A. Const.Amend. 14.
*1185 Joseph W. Luby, Public Interest Litigation Clinic, Kansas City, MO, argued (Terri L. Backhus, on the brief), for appellant.

Andrew W. Hassell, Asst. Atty. Gen., Jefferson City, MO, argued (Chris Koster, Atty. Gen., on the brief), for appellee.

Before BYE, BEAM, and GRUENDER, Circuit Judges.

BEAM, Circuit Judge.

Andre Cole appeals the district court's denial of his 28 U.S.C. § 2254 petition for *1186 habeas corpus.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

The district court [FN1] certified nine claims for appeal, and upon review of these claims, we affirm the denial of relief.

FN1. The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

## I. BACKGROUND

The evidence at Cole's trial in Missouri state court in 2001 reveals that Cole and his wife, Terri, divorced in 1995 after eleven years of marriage. Cole was ordered to pay child support for the care of the couple's two children, but his periodic failure to make payments resulted in an arrearage of nearly $3,000. The record indicates that Cole and Terri also had disputes involving visitation with the children, and in August 1998, Cole was upset about his alleged lack of visitation with his two sons. There is also evidence he was upset about his wages being garnished to cover the child support arrearage. On the evening of August 21, 1998, Cole forced his way into Terri's house by throwing a tire iron [FN2] through a glass door leading to the dining room from the patio. Anthony Curtis, who was visiting Terri, confronted Cole and asked him to leave. Cole stabbed and slashed Curtis more than twenty times, the fatal blow being an eight-inch deep knife wound to Curtis's back. Cole then assaulted Terri, stabbing her repeatedly in the stomach, breasts, back, arms, and her hands when she attempted to defend herself. Terri survived and testified at trial. After the attack, Cole fled the state but after a little over a month, returned to St. Louis and surrendered to the police. DNA analysis confirmed the presence of both victims' blood on the knife and the presence of Cole's blood on the deck of Terri's home, the backyard fence, and in the street where Cole's car had been parked. At trial, Cole presented the theory that, although he did break into Terri's home with the jack, he did not bring a weapon, and actually was attacked by a knife-wielding Curtis, who was much larger than Cole. Cole's testimony at trial also insinuated that Terri delivered the fatal wounds to

Curtis in an attempt to keep Curtis from attacking Cole.

FN2. This object was variously referred to as either a "jack" or a "tire iron" or a "wrench" during trial. At one point a police detective described it as a "scissor jack."

A jury in St. Louis County, Missouri, convicted Cole of first-degree murder, first-degree assault, first-degree burglary, and two counts of armed criminal action. He was sentenced to death for Curtis's murder and given three life terms of imprisonment for the assault and armed criminal action and thirty years for the burglary. The Missouri Supreme Court upheld Cole's convictions and sentences on direct appeal. *State v. Cole,* 71 S.W.3d 163 (Mo.2002) ( *Cole I*). Cole's Rule 29.15 motion for postconviction relief, in which he raised numerous claims of ineffective assistance of counsel, was also denied by the trial court, and the denial was affirmed on appeal. *Cole v. State,* 152 S.W.3d 267 (Mo.2004) (*Cole II* ).

In his timely petition for habeas corpus relief, Cole raised numerous claims. The district court denied the petition, without an evidentiary hearing, and the following claims are certified for appeal: (1) a *Batson* claim regarding black veniremember Vernard Chambers, who was struck by the prosecution (Claim 4); (2) claims for ineffective assistance of counsel based on counsel's failure to investigate Cole's social and medical history, specifically on the days leading up to the crime (Claims 10 and 11); (3) a claim for ineffective assistance of counsel based upon counsel's failure*1187 to present evidence during the penalty phase about Cole's exemplary prison conduct while awaiting trial (Claim 12); (4) due process claims based upon Cole's allegedly visible leg restraint during the guilt and penalty phase trials (Claims 7 and 16); (5) claims for prosecutorial misconduct during closing argument in both the guilt and penalty phase (Claims 2 and 13); and (6) the cumulative effect of the foregoing errors (Claim 20).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

## II. DISCUSSION

[1][2] In this habeas corpus action, we review the district court's conclusions of law de novo and its factual findings for clear error. *McGehee v. Norris,* 588 F.3d 1185, 1193 (8th Cir.2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may not grant relief for claims adjudicated on the merits by the Missouri state courts unless the adjudication was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable. *McGehee,* 588 F.3d at 1193. Further, "a determination of a factual issue made by a State court shall be presumed to be correct" in a federal habeas proceeding. 28 U.S.C. § 2254(e)(1).

### A. Claim 4: Striking of Veniremember Chambers

Cole argues that the prosecutor's use of a peremptory challenge to strike veniremember Chambers from the jury violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). During Cole's trial, after defense counsel made the *Batson* challenge to the strike of veniremember Chambers, the prosecutor offered the following reasons for why the strike was race-neutral:

[t]he State's primary concern with Mr. Chambers is that he is divorced. And because of the facts and the dynamics of [sic] case-the record should reflect the State expects that the evidence that's introduced will show that Mr. Cole was divorced from his wife Terri Cole. There was a great deal of animosity between the two of them. I'm concerned that someone who is similarly situated to Mr. Cole in that he's divorced may be sympathetic to Mr. Cole and may not be sympathetic to Terri Cole, the victim in this case.... In addition

to that, Your Honor, with regard to the death penalty he stated that he was not opposed to the death penalty, but not sure if he could do it or not. Furthermore, he has a cousin doing life in prison for a murder in Michigan.

Trial Transcript (Tr.) at 569-70. Defense counsel responded that there was a white male paying child support and a different white male who was never married, neither of whom was struck by the state. She also generally objected to Chambers being struck on the basis of his divorced status.[FN3] The trial court summarily found the state's reasons race-neutral and denied the defense's *Batson* challenge.

FN3. Though not pressed by Cole's counsel during voir dire, on direct appeal he alleged that a white venireperson not struck by the prosecution, Shirley Parsons, was similarly situated to Chambers because she had a nephew serving time in prison for manslaughter. The Missouri Supreme Court found that Parsons and Chambers were not similarly situated. *Cole I,* 71 S.W.3d at 173.

The Missouri Supreme Court adjudicated this claim on the merits and found that *1188 the prosecutor's reasons were race-neutral, not pretextual and noted that the "similarly situated" jurors proposed by the defense were not actually divorced, but one was simply subject to a child support order, though not married. The court concluded that these comparison jurors were not similarly situated and that Chambers' status as divorced, his somewhat equivocal answers about the death penalty, and having a cousin with a murder conviction were all reasons for the prosecution's use of the strike that did not violate *Batson. Cole I,* 71 S.W.3d at 173.

[3][4][5] In *Batson,* the Court held that the Equal Protection Clause of the United States Constitution prohibits the use of peremptory challenges to exclude jurors on the basis of race. *Batson,* 476 U.S. at 89, 106 S.Ct. 1712. The Court uses a three-step process for evaluating whether the use of a peremp-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

tory challenge was based on purposeful discrimination. First, the defendant must make a prima facie case of racial discrimination. Second, after such showing is made, the state must suggest a race-neutral explanation for the use of the strike. Third, after a race-neutral reason is offered, the trial court must decide whether the defendant has shown purposeful discrimination. *Snyder v. Louisiana,* 552 U.S. 472, 476-77, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). Within this framework, the defendant may rely on "all of the circumstances that bear upon the issue of racial animosity" to show purposeful discrimination. *Id.* at 478, 128 S.Ct. 1203. Whether a peremptory strike was motivated by race is ultimately a question of fact, *Miller-El v. Dretke,* 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), and a state court finding is accorded a presumption of correctness under AEDPA, 28 U.S.C. § 2254(e)(1). Thus, a Missouri state court's determination regarding the prosecution's intent may be set aside only if Cole rebuts "the presumption of correctness by clear and convincing evidence." *Id.*

Cole complains that the trial court did not make proper findings or do an adequate *Batson* evaluation by simply saying the reasons were race-neutral without saying they were "true." His argument, as we understand it, is essentially that the trial court did not complete step three of the *Batson* analysis. He also argues that the state court adjudications violate the recent Supreme Court pronouncements in *Snyder.* While the trial court's *Batson* analysis may have been lacking, in addition to considering (and giving deference to) the trial court's *Batson's* findings, we also must consider the Missouri Supreme Court's analysis. *Smulls v. Roper,* 535 F.3d 853, 862 (8th Cir.2008), *cert. denied,* --- U.S. ----, 129 S.Ct. 1905, 173 L.Ed.2d 1061 (2009).

[6] We find that the Missouri Supreme Court's analysis of Cole's *Batson* claim was not contrary to, nor an unreasonable application of, Supreme Court precedent. Its factual findings regarding the three proffered similarly situated jurors are accorded a presumption of correctness. As is the Missouri Su-

preme Court's finding that, given the marital status issue, Chambers' equivocation about the death penalty, and having a cousin serving time for a murder conviction, the prosecutor's reasons for striking Chambers were not race-based. Cole's arguments to the contrary, while well-presented, are not clear and convincing evidence that entitles him to overcome these presumptively correct findings.

Furthermore, Cole cannot argue that the trial court or the Missouri Supreme Court unreasonably applied either *Miller-El* or *Snyder,* because neither had been decided at the time the state courts adjudicated his *Batson* issue. *See* *1189*Thaler v. Haynes,* --- U.S. ----, 130 S.Ct. 1171, 1174 n. 2, ---L.Ed.2d ---- (2010) (per curiam). To the extent Cole simply argues that *Snyder* and *Miller-El* are factually and legally persuasive reasons why *Batson* was unreasonably applied in this case, we disagree. In *Snyder,* the petitioner challenged the strike of two black jurors during his state court prosecution for capital murder. The prosecutor's reasons for striking the first juror were that he looked "nervous" during voir dire and that his school and work obligations were arduous because he was a student teacher. The trial court allowed the strike without discussion. In reversing the denial of habeas corpus relief, the Court refused to presume that the trial court credited the prosecutor's representation that he struck the challenged juror based on the juror's demeanor because the trial court had made no factual findings concerning the demeanor. 552 U.S. at 479, 128 S.Ct. 1203.

In *Miller-El,* prosecutors "shuffled" the jury at least twice and offered no explanation to rebut the defendant's evidence that this was done to limit the number of black persons on the jury. 545 U.S. at 265, 125 S.Ct. 2317. Ten of the eleven qualified black persons were peremptorily struck; two of those who were allegedly struck for being hesitant about applying the death penalty actually gave answers that an unbiased prosecutor seeking the death penalty would have readily accepted. *Id.* Most of the blacks were subject to questions and scripts de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

signed to elicit answers that non-blacks generally were not. *Id.* at 265-66, 125 S.Ct. 2317. The egregious facts present in *Miller-El* were not present during Cole's trial. We have no evidence that there was jury shuffling, and a review of the record indicates that no different forms of questioning were posed to the black and non-black members of the jury pool. *Snyder* involved a demeanor-based challenge, which was not at issue in this case. There was no unreasonable application of *Batson* by the Missouri state courts, and neither *Miller-El* nor *Snyder* changes that result. The district court properly denied relief based upon this claim.

## B. Claims 10 and 11: Ineffective Assistance of Counsel: Failure to Investigate Cole's Mental and Emotional Disturbance

[7] In Claim 10, Cole argues that trial counsel failed to investigate and present evidence that he suffered from an extreme mental and emotional disturbance at the time of the crime. In Claim 11, Cole relatedly argues that counsel erred by failing to investigate and present evidence from lay witnesses on his troubled state of mind around the time of the offense.

[8][9] A claim of ineffective assistance of counsel is governed by the performance and prejudice standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689, 104 S.Ct. 2052. If performance was deficient, the prejudice prong requires proof "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Although Cole had undergone two pretrial psychiatric evaluations by mental health experts, he argues that counsel should have had him evaluated by a third *1190 expert to develop mitigation evidence for the penalty phase. At Cole's state postconviction hearing a forensic psychiatrist opined that Cole was suffering from an "extreme emotional distress" at the time of the offense.

The Missouri Supreme Court adjudicated this claim on the merits and found that counsel was not deficient because both pretrial experts who examined Cole concluded that he was not suffering from any mental disease or defect at the time of the crime. There was no evidence that Cole was suffering from depression, paranoia or delusional beliefs. His thought processes were found to be logical and sequential, and he was determined to be capable of knowing and appreciating the nature, quality and wrongfulness of his conduct. Accordingly, the court found that counsel was not deficient for failing to shop for a more favorable expert. *Cole II,* 152 S.W.3d at 270. Further, the court found that lay witness testimony may have been more harmful than helpful. *Id.*

This adjudication was not an unreasonable application of, nor was it contrary to, *Strickland.* Cole's trial counsel testified at the postconviction hearing about the avenues she investigated concerning Cole's background. She met with Cole's mother and sister routinely and questioned them about medical conditions, a family history of mental illness or alcohol abuse, and Cole's use of alcohol and drugs. Cole informed her that he had not been treated for mental disease or defect and denied that he was depressed. He admitted to drinking two beers on the night of the crime but he denied being drunk or on any drugs at the time of the offense, and he denied having an alcohol problem. This was enough of an investigation to clear *Strickland's* performance prong. *See, e.g., Forsyth v. Ault,* 537 F.3d 887, 892 (8th Cir.2008) (holding that the Sixth Amendment does not require favorable expert "shopping" for adequate performance), *cert. denied, Forsyth v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

*Burt,* ---U.S. ----, 129 S.Ct. 1044, 173 L.Ed.2d 475 (2009). And with the strong expert testimony already in the hands of the state at the time of trial, it is unlikely that Cole suffered any prejudice from the failure to call more favorable expert or lay witnesses, even if performance was lacking. *See id.* (noting that, given the weight of psychiatric opinion on petitioner's competence, the proffered postconviction expert's opinion was unlikely to have had an effect on the outcome of the proceeding). The district court did not err in rejecting these two points.

### C. Claim 12: Ineffective Assistance of Counsel: Failing to Investigate and Present Evidence Regarding Cole's Exemplary Prison Conduct

[10] Cole argues that his trial counsel performed deficiently during the penalty phase by failing to investigate and present evidence of Cole's good prison conduct. The Missouri Supreme Court rejected this claim, citing trial counsel's testimony at the Rule 29.15 motion hearing that "her experience with presenting evidence on a defendant's good behavior in jail was generally ineffective," and by stating that the testimony of jail witnesses would have overlapped other good character evidence that was presented at the sentencing. *Cole II,* 152 S.W.3d at 269-70.

The three witnesses Cole argues should have been investigated and presented by his counsel were two jail employees, and a nun who ran the jail religious services, Sister Judith Klump. One prison employee allegedly would have testified that Cole was an ideal inmate who followed rules, was mild mannered, and an excellent worker. The other apparently would have testified that Cole was an exceptional *1191 worker with no discipline problems. Sister Klump met Cole through the religious classes that she taught at the jail. She now claims she would have testified that she often asked Cole to start her class with a prayer because he spoke from the heart, and that Cole was a polite class leader who was respected among the inmates.

[11] The Missouri Supreme Court's opinion rejecting this claim was not contrary to, nor an unreasonable application of, *Strickland.* We may not second-guess counsel's reasonable strategic decisions. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052 (describing informed strategic choices as "virtually unchallengeable"). And counsel did, in fact, put on good character evidence during the penalty phase of Cole's trial, including Cole's family members, friends, and his church pastor. At the postconviction hearing, counsel testified that she interviewed correctional officers at the jail but learned of no potentially relevant testimony. Counsel admitted that she did not investigate any potential witnesses regarding Cole's attendance at religious services and Bible study groups while he was incarcerated and that she was unaware he attended such services in jail. Counsel's primary concern was that Cole had a prior conviction for failure to return to confinement, and that might be a negative issue if she put jail employees on the stand. She felt that a reminder of the prior conviction would outweigh any good character evidence a jail employee could provide.

Cole argues the Missouri court's adjudication of this issue was contrary to or an unreasonable application of *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). In *Skipper,* the Court held that evidence of a "defendant's disposition to make a well-behaved and peaceful adjustment to life in prison" is relevant mitigating evidence. *Id.* at 7, 106 S.Ct. 1669. However, while *Skipper* held that such evidence is relevant and admissible, the failure to put on this evidence does not make counsel's performance deficient. And under our doubly deferential standard of review, it does not mean that the Missouri Supreme Court unreasonably applied *Strickland.* The district court did not err in denying this point.

### D. Claims 7 and 16: Visible Restraint

Cole asserts that the leg brace restraint he was required to wear during his trial was visible to the jurors and that this violated his due process rights,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

as stated in *Deck v. Missouri,* 544 U.S. 622, 630-32, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (holding that visibly shackling a defendant during the penalty phase of a capital trial without a justifiable state interest violates due process). Claim 7 pertains to the effect of the restraint on the guilt phase of the trial and Claim 16 pertains to its effect on the sentencing phase. The state argues that Cole has defaulted these claims because they were not raised in either his direct appeal or his postconviction motion, but that even if not defaulted, Cole's claims would fail because the leg restraint was not visible and thereby did not violate *Deck.* Cole argues that these claims are not procedurally defaulted because he raised them in a motion to recall the mandate, shortly after *Deck* was decided, and that the claim was raised as soon as possible under *Deck.* The district court agreed that the *Deck* claim was not procedurally defaulted because it was raised in the motion to recall the mandate. Cole's 29.15 motion was denied in November 2004, and *Deck* was decided by the Supreme Court in May 2005. Cole filed his motion to recall the mandate based upon *Deck* in August 2005, and the Missouri Supreme Court summarily denied this motion later in August 2005.

*1192 [12][13] As noted, Claim 16 involves the restraint during penalty phase issue, and the basis for this claim would not have been available before *Deck* was decided. But Claim 7 is based upon unjustified restraint during the guilt phase, which has been unconstitutional since 1986 when the Supreme Court decided *Holbrook v. Flynn,* 475 U.S. 560, 567-68, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Cole failed to preserve this claim for review by the state courts, and advances no arguments with regard to cause for or prejudice from the procedural default of this claim. Accordingly, Claim 7 is defaulted. Claim 16 is not defaulted, however, because Cole raised the issue to the state courts as soon as the claim became legally viable (following *Deck)* in a motion to recall the mandate.FN4

> FN4. The State of Missouri has previously allowed a defendant to bring a motion to recall the mandate to raise a new constitutional claim. In *State v. Whitfield,* 107 S.W.3d 253, 265, 268 (Mo.2003), the Missouri Supreme Court allowed a defendant to bring a new claim in a motion to recall the mandate when his capital sentencing violated the Sixth Amendment principles announced in *Ring v. Arizona,* 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The *Whitfield* defendant's 29.15 motion had been finally decided prior to *Ring,* and following Whitfield's motion, the court recalled its mandate and imposed a life sentence. 107 S.W.3d at 270-72. Further, in *Nave v. Delo,* 62 F.3d 1024, 1032 (8th Cir.1995), we recognized that in Missouri, a motion to recall the mandate may be employed when a decision of a lower court "is contradicted by subsequent developments in the law."

The district court treated Claim 16 as though it had been adjudicated on the merits by the Missouri Supreme Court's summary denial of the motion to recall the mandate, accorded the decision AEDPA deference, and found that there was no unreasonable application of *Deck* because the restraint here-a knee immobilizer worn under Cole's pants-was far less visible and obtrusive than those employed in *Deck.* Cole alleges that the restraint (even though worn under his pants) was visible from the bottom of his pants. He also submitted statements from a juror who "remembered" that Cole was shackled, and another from a juror who thought Cole was handcuffed during trial (which he clearly was not), as well as from family members who opined that the restraint was visible during trial. The district court refused to grant an evidentiary hearing on the issue, dismissed the credibility of the juror statements as the product of faulty memory, and denied the claim.

[14] Cole asserts that at the very least, he was entitled to an evidentiary hearing on this claim. We review the district court's decision denying an evid-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

entiary hearing for an abuse of discretion. *Osborne v. Purkett*, 411 F.3d 911, 915 (8th Cir.2005). The AEDPA dictates that an evidentiary hearing may only be held in extremely limited circumstances when the factual basis for a claim was not developed in state court. 28 U.S.C. § 2254(e)(2). However, an evidentiary hearing may also be held when the claim is based upon a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court. *Id.* § 2254(e)(2)(A).

[15] While Cole arguably relies upon a "new rule of constitutional law" as set forth in *Deck*, the Supreme Court has not made *Deck* retroactive to cases on collateral review. *Deck* itself was a direct appeal from a Missouri conviction. We can find no Supreme Court case making *Deck* retrospective. *Cf. In re Rutherford*, 437 F.3d 1125, 1128 (11th Cir.2006) (holding that *Deck* is not retroactive for purposes of § 2244's general prohibition on successive habeas corpus petitions). Accordingly, because*1193 Cole's claim is not based upon a new retroactive constitutional rule, the district court did not abuse its discretion in refusing to hold an evidentiary hearing on this claim.

[16] Nor did the district court err in refusing to grant relief on the merits of this claim. *Deck* cannot be the basis for a Missouri court violation of clearly established Supreme Court precedent because it was not decided until after Cole's conviction became final. *See Williams v. Norris*, 612 F.3d 941, 958 (8th Cir.2010) ("Williams cannot claim any relief from *Deck*, because *Deck* post-dated his trial and the principles articulated therein were not clearly established at that time."). And even considering the merits, our review of the record indicates that Cole was not unconstitutionally shackled within the meaning of *Deck*. The record indicates that Cole's counsel was not even aware that Cole was restrained, as she thought he was wearing a knee brace because his knee was bothering him. In that regard, the following discussion took place on the record, out of the presence of the jury:

[Cole's Counsel]: This morning, Your Honor,

January 15th, I had asked the Court to consider having Mr. Cole's brace taken off of his-either I think it's [sic] left leg. I'm not sure. He had it on last week. And I misunderstood what he was saying. I thought he was [sic] said he was wearing it because his knee was bothering him so I didn't bring this to the Court's attention before I asked the Court this morning and you asked the Department of Justice Services the reason for that.

[Court]: They basically said it was their administrative policy on death penalty cases to implement the leg brace or install the leg brace on the Defendant in these kind of cases where he's in custody. So, if I believe that it may affect his ability in this case to effectively assist his attorney in this case, then I will reconsider that.

[Counsel]: I don't think it will. I think it's uncomfortable. My thought was at first it was because he had to have it on.

Tr. at 1188. Defense counsel and the trial judge spoke further about the fact that Cole was not too uncomfortable to assist in his own defense, and counsel also requested, and was promised, a recess before Cole testified so that the jury would not see him uncomfortably walking to the witness stand. The record reflects that when the jury was brought in for Cole's testimony, he was already seated at the witness stand.

Considering that his own attorney was unaware that Cole was restrained, it is extremely unlikely that the jury was aware of it. *Deck* proscribes the routine use of "visible shackles" during the penalty phase of a capital trial. 544 U.S. at 632, 125 S.Ct. 2007. Because Cole was not subject to "visible shackles," the district court properly denied relief on Claim 16.

### E. Claims 2 and 13: Prosecutorial Misconduct

Cole contends that statements made by the prosecutor in closing argument, during both the guilt phase (Claim 2) and the penalty phase (Claim 13),

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

were prejudicial to him and made his trial fundamentally unfair. In the guilt phase arguments, Cole objects to the prosecutor: personalizing the evidence by saying, "I can't emphasize enough to you the seriousness of this case nor can I emphasize enough to you the strength of the State's case;" accusing Cole of sneaking and creeping around at night and terrorizing Terri; eviscerating Cole's presumption of innocence by stating that defendants are usually "sitting in that chair ... for a reason;" calling Cole a "convicted killer;" telling the jury that *1194 they can send a message "to the victims of crime, families in St. Louis County, that you can come to the court house and get justice;" and unfairly appealing to the jury's sympathies by reminding them that Terri was a "dying woman." [FN5] Tr. at 1415-21, 1474-80. In the penalty phase, Cole objects to the prosecutor analogizing the jury to "patriots" who needed to step up to protect society; again reminding jurors that "verdicts do send messages;" and opining that the "death penalty is a weapon we need to have in our arsenal to fight crime." Tr. at 1653-54.

> FN5. At the time of trial, Terri had been diagnosed with amyotrophic lateral sclerosis (also known as "Lou Gehrig's Disease"), completely unrelated to the incident that resulted in Curtis's death. The record reflects that the effects of the disease had begun to physically affect Terri, and the jury was aware of the diagnosis.

None of these statements were objected to by trial counsel. After noting that none of these claims were preserved for direct appeal by a timely objection at trial, the Missouri Supreme Court reviewed for plain error and summarily rejected the majority of Cole's claims. *Cole I,* 71 S.W.3d at 170. The state court discussed the merits of only one prosecutorial argument (the "convicted killer" comment), but still found no error of law. In adjudicating the claim, the court found that the prosecutor had repeatedly referred to Cole as a "convicted felon" during argument, and found the "convicted killer" remark to be

a single inadvertent remark which did not prejudice Cole because the jury had already been presented with the precise nature of his actual prior convictions, none of which involved a homicide. *Id.* The court also found that "[s]tatements made in closing argument will rarely amount to plain error." *Id.* at 171.

Although we agree that the "convicted killer" comment was clearly improper and several of the other statements were unnecessarily close to the line, the Missouri Supreme Court's adjudication of this claim was not an unreasonable application of, or contrary to, clearly established Supreme Court precedent. The watershed Supreme Court precedent on prosecutorial misconduct is *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), and under *Darden,* habeas relief is only appropriate if a prosecutor's improper closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181, 106 S.Ct. 2464 (quotation omitted). In *Darden,* the prosecutor insinuated that if not given the death penalty, the defendant might be allowed out on work release to kill again, referred to the defendant as an animal who should be on a leash, and asserted that he wished the defendant's face had been "blown off." *Id.* at 180 n. 9-12, 106 S.Ct. 2464. The Court found that while improper, the comments did not infect the trial with unfairness sufficient to deny petitioner due process. *Id.* at 181-83, 106 S.Ct. 2464.

The Missouri Supreme Court's conclusion that the prosecutor simply misspoke in calling Cole a convicted "killer" is a factual finding that we presume to be correct. 28 U.S.C. § 2254(e). Cole cannot rebut this presumption. We agree that because of the prosecutor's repeated earlier descriptions of Cole as a "convicted felon," the record supports the conclusion that the use of the word "killer" instead of "felon" in this instance was inadvertent and not unduly prejudicial. Arguments about Cole sneaking around and terrorizing were not improper, unless throwing a tire jack through a glass patio door, con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

duct admitted by Cole, can somehow not be considered terrorizing. And while we have previously frowned upon "send a *1195 message," see *Sublett v. Dormire,* 217 F.3d 598, 601 (8th Cir.2000), and personalizing arguments, see *Kellogg v. Skon,* 176 F.3d 447, 451-52 (8th Cir.1999), we have also recognized that it will be exceptionally rare that we grant habeas corpus relief on these bases. *Sublett,* 217 F.3d at 601. The "there for a reason" comment was also ill-advised. However, shortly thereafter, the prosecutor reminded the jury that Cole was entitled to a presumption of innocence. Furthermore, the prosecutor's comment about Terri being a dying woman was simply an unfortunate fact, and one which defense counsel acknowledged in front of the jury before cross-examining her.

Cole argues that the "patriot" statement compares favorably with prosecutorial argument in *Weaver v. Bowersox,* 438 F.3d 832, 842 (8th Cir.2006), wherein we affirmed the grant of habeas corpus relief on the basis of improper prosecutorial closing argument. The *Weaver* prosecutor used a graphic story from a war movie to analogize the jurors to soldiers with a duty to kill, and also implored jurors to kill the defendant as part of the war on drugs. *Id.* at 836-37. We held that because the prosecutor used an analogy to soldiers, who "have no choice but to kill" and who "follow orders when they kill," the prosecutor improperly "eviscerate[d] the concept of discretion afforded to a jury as required by the Eighth Amendment." *Id.* at 840. We found the prosecutor's statements improper because they diminished the jury's sense of responsibility for imposing the death sentence. *Id.*

The same cannot be said about the statements made by the prosecutor in this case. While the prosecutor did call the jurors "patriots," this is not the same as calling them "soldiers." "Patriot" is a rather generic term defined as "a person who loves, supports, and defends his or her country and its interests with devotion." *Webster's Unabridged Dictionary* 1422 (2d ed.1997). It does not commonly include a duty to kill. Nothing in the prosecutor's statements insinu-

ated that the jurors lacked the discretion to decide whether to impose the death penalty. Analogies to war and to soldiers are not comparable to the prosecutor's brief reference to the jurors here as "patriots."

[17] Accordingly, the challenged statements were either not improper, or even if they were, they were not so inflammatory and prejudicial as to render the trial fundamentally unfair and constitute a denial of Cole's due process. The evidence at trial showed, and Cole admits, that he went to Terri's home with a tire iron and broke a glass patio door to gain entrance to the house. Cole then asked the jury to believe that Terri delivered the fatal blows to Curtis, her guest, in an effort to keep Curtis (who was, admittedly, quite large), from hurting Cole. During his testimony, Cole also insinuated that Curtis administered the knife wounds to Terri. The essence of Cole's guilt phase trial boiled down to whether jurors believed Terri or Cole. At the penalty phase, the prosecution presented three aggravating circumstances-that the murder was committed during the attempted homicide of Terri Cole; that it involved depravity of the mind because it was wantonly vile, horrible and inhumane (based upon the excessive number of knife wounds sustained by Curtis); and that it was committed during the perpetration of burglary. The jury found the latter two aggravators beyond a reasonable doubt. When considered in context of the prosecutor's lengthy closing arguments and the evidence presented at both phases of trial, there is no reasonable probability that the prosecutor's statements during closing *1196 arguments fatally infected either trial with unfairness or affected the outcome. Accordingly, the Missouri Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

**F. Claim 20: Cumulative Effect of Errors**

In Cole's final claim, he alleges that his constitutional rights were violated by the cumulative effect of the errors asserted in his petition. Our precedent

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

forecloses this argument, *Hall v. Luebbers*, 296 F.3d 685, 692-93 (8th Cir.2002), as Cole concedes.

### III. CONCLUSION

We affirm the judgment of the district court denying habeas corpus relief.

BYE, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion, with the following exceptions. With respect to Part II. D, I concur in the discussion regarding Claim 7 (guilt phase restraints), but concur only in the result of the resolution of Claim 16 (penalty phase restraints) because it appears Claim 16, even if meritorious, is foreclosed by *Williams v. Norris*, 612 F.3d 941 (8th Cir.2010). *See id.* at 958 ("Williams cannot claim any relief from *Deck*, because *Deck* post-dated his trial and the principles articulated therein were not clearly established at that time."). I respectfully dissent from Part II. C because I believe Cole's trial counsel was constitutionally ineffective in failing to investigate and present evidence regarding Cole's exemplary behavior during his pre-trial detention.

I

Cole alleges his trial counsel should have called two jail employees, William Bradford and Romel Cochrel, and a nun, Sister Judith Klump, during the penalty phase of his trial. Bradford was in charge of the inmates housed on Cole's floor and would have testified Cole was an ideal inmate who followed rules, was mild mannered, and an excellent worker. Bradford would have informed the jury as to Cole being one of the select inmates with a prison job, considered a privilege.

Cochrel, a seasoned jailer, was Cole's housing unit officer and would have testified as to Cole being an exceptional worker with no discipline problems. "[O]ne out every 30 to 40 inmates would be the Andre Cole type. And what I mean by that, you would [ask] somethin' of him once and ... he would follow through and do what was [asked] of him. He

didn't-he didn't allow himself to get caught up in a lot of jail house games." Post-Conviction Hearing Transcript at 286.

Sister Klump ran the jail religious services. She would have testified Cole was an excellent student who knew more than most of the inmates, and that she often asked Cole to start her Scriptures class with a prayer because Cole spoke from the heart.

The Missouri Supreme Court rejected this claim, noting Cole's "trial counsel was a seasoned, death-penalty litigation attorney" who had "tried nineteen capital murder cases" and who testified that "her experience with presenting evidence on a defendant's good behavior in jail was generally ineffective." *Cole v. State*, 152 S.W.3d 267, 269-70 (Mo.2004). The Missouri Supreme Court did not specifically address whether trial counsel's investigation into Cole's jailhouse behavior was adequate, but seemed to have implicitly found it to be adequate. *See id.* at 269 (finding trial counsel "contacted the corrections officers where [Cole] was being confined and investigated [Cole's] behavior while in *1197 jail"). The Missouri Supreme Court also stated its belief that the good jailhouse behavior evidence "essentially overlapped" with other evidence presented of Cole's good behavior and concluded trial counsel was "not ineffective for failing to put on cumulative evidence," characterizing trial counsel's decision as a "reasonable choice[ ] of trial strategy." *Id.* at 270.

The Missouri Supreme Court's resolution of this issue was unreasonable in two respects. First, the implicit factual determination as to trial counsel conducting an adequate investigation into Cole's jailhouse behavior was an "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The post-conviction transcript indicates trial counsel did not investigate Cole's jailhouse behavior. Second, because trial counsel's investigation was inadequate, the Missouri Supreme Court's determination that trial counsel made a reasonable choice of trial strategy is "an unreasonable applica-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
**(Cite as: 623 F.3d 1183)**

tion of [ ] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Well-established Supreme Court precedent indicates there must first be an adequate and thorough investigation before trial counsel's choice can be considered a reasonable strategy decision.

### A. The Failure to Investigate

Trial counsel in a capital case is "obligat[ed] to conduct a thorough investigation of the defendant's background." *Williams v. Taylor,* 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A capital defendant's lawyer must make diligent efforts "to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted). Evidence regarding the exemplary behavior of a capital defendant during time he spends in pretrial detention awaiting trial is clearly "relevant mitigating evidence" which a capital defendant has a "right to place before the sentencer." *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).

The Missouri Supreme Court's implicit decision as to Cole's trial counsel having adequately investigated his positive jailhouse behavior is unreasonable. I recognize "[f]indings of fact made by state appellate courts have the same presumptive correctness as findings of fact made by state trial courts," *Weaver v. Bowersox,* 241 F.3d 1024, 1031 (8th Cir.2001), but such presumption is overcome in this case.

The transcript of the post-conviction proceedings establishes that trial counsel did not investigate Cole's exemplary jailhouse behavior. She never discovered he was involved in the Scripture class or made any attempt to interview Sister Klump. She never conversed with Bradford or Cochrel, or even made an attempt to determine who Cole's housing

unit officer was. Instead, her investigation consisted of seeing correction officers walking around during jailhouse visits with her client. As she would finish visiting Cole she "would say a few things to people. I can't tell you who those people were by name." Post-Conviction Transcript at 369. This was the full extent of the testimony presented at the post-conviction hearing on trial counsel's purported investigation into Cole's exemplary jailhouse behavior. Saying "things" to jailhouse staff in passing does not constitute an investigation into *Skipper-*type evidence. A trial counsel's casual conversations with jail staff, with nothing more than an implied suggestion the conversations even related to her client, clearly does satisfy the stringent\*1198 investigatory duties required by the Supreme Court in capital cases. The Missouri Supreme Court's decision to the contrary is unreasonable.

I am not persuaded by the state's reliance on *Skillicorn v. Luebbers,* 475 F.3d 965 (8th Cir.2007). *Skillicorn* rejected a claim that a capital defendant was prejudiced by his counsel's failure to present *Skipper-*type evidence of his good behavior while he was in a drug treatment center and at a county jail awaiting trial, recognizing *Skipper* does not necessarily require an attorney to present positive jailhouse behavior evidence in a capital case. In *Skillicorn,* however, the defendant's attorney actually investigated the defendant's good behavior in jail before deciding the evidence would not be terribly helpful. 475 F.3d at 975.

As the Supreme Court noted in *Strickland,* "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland [v. Washington],* 466 U.S. [668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]. On the other hand, strategic choices "resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel." *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.1991); *see also Wiggins v. Smith,* 539 U.S. 510, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

(2003) (" *Strickland* does not establish that a cursory investigation automatically justifies a tactical decision.... Rather, a reviewing court must consider the *reasonableness* of the investigation said to support that strategy." (*citing Strickland,* 466 U.S. at 691, 104 S.Ct. 2052)).

*Armstrong v. Kemna,* 534 F.3d 857, 864-65 (8th Cir.2008); *see also Sears v. Upton,* --- U.S. ----, 130 S.Ct. 3259, 3265, 177 L.Ed.2d 1025 (2010) (reiterating the "plain" point that a failure to present evidence cannot be justified as a reasonable tactical decision when "counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." (quoting *Williams v. Taylor,* 529 U.S. at 396, 120 S.Ct. 1495)). The Missouri Supreme Court therefore unreasonably concluded trial counsel made a reasonable choice of trial strategy to forego presenting jailhouse evidence, where there is no evidence Cole's trial counsel actually conducted an investigation, let alone an adequate investigation, into his positive jailhouse behavior.

### B. Prejudice From the Failure to Present the Evidence

In *Skipper,* the Supreme Court reversed a South Carolina court's decision to exclude testimony from two jailers and a regular jail visitor regarding the behavior of a capital defendant during the seven-and-a-half months he spent in pretrial detention awaiting his trial. Significantly, the Supreme Court specifically distinguished the testimony of the two jailers and jailhouse visitor from testimony by Skipper himself and a family member regarding his general good character and adjustment to prison life. South Carolina argued the evidence from the jailers was "merely cumulative" of the evidence offered by the defendant himself and his former wife, and its exclusion was therefore harmless. 476 U.S. at 8, 106 S.Ct. 1669. The Supreme Court rejected that claim, stating:

The evidence petitioner was allowed to present

on the issue of his conduct in jail [i.e., from himself and a family member] was the sort of evidence that a jury naturally would tend to discount as self-serving. The testimony of more disinterested witnesses-and, in particular, of jailers who would have had no particular reason to be favorably predisposed **\*1199** toward one of their charges-would quite naturally be given much greater weight by the jury.

*Id.*

The Supreme Court also addressed whether the failure to present such evidence could result in prejudice, stating:

Nor can we confidently conclude that credible evidence that petitioner was a good prisoner would have had no effect upon the jury's deliberations. The prosecutor himself, in closing argument, made much of the dangers petitioner would pose if sentenced to prison, and went so far as to assert that petitioner could be expected to rape other inmates. Under these circumstances, it appears reasonably likely that the exclusion of evidence bearing upon petitioner's behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury's decision to impose the death sentence.

*Id.*

Similar arguments were made by the prosecutor in this case. The prosecutor argued Cole had escalated his level of violence from one encounter with his ex-wife to the next, and thus implied the death penalty was the next step needed to stop the escalation:

When you think about the culmination of things that were done to be fair to him, for this system to be fair to him-he's given probation, no more guns, for this one. How does he respond? Ex parte order violation: Unscrewing the lights to terrorize, to sneak; just like he did in this case. That explosion through the window to terrorize.

No contact. How does he respond to that in 1995?

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

Along with the guns we know what he did. He went back into [ ] that house.

So, the Court escalates things a little. No contact provisions aren't working. He keeps goin' back. No weapons provisions aren't workin'. So he gets work release.

Do you know why he gets work release? So he can pay his child support. And he still is-you know, in this case he still didn't do that. And then, he gets the jail time. That's the deterrent. Now he's got jail time. Now he'll abide by the rules.

Well guess what? He didn't.

Trial Transcript at 1635-36.

This argument clearly suggests that a progressively punitive response is necessary to control Cole's behavior, from probation, to a no-contact order, to work release, to jail time. The next step implied-the death penalty. In light of this argument, the failure to present evidence of Cole's exemplary behavior in jail may have affected the jury's decision to impose the death penalty.

In *Williams v. Taylor,* the Supreme Court emphasized not only the important role evidence of good jailhouse behavior plays in a capital case, but also trial counsel's duty to conduct a thorough investigation regarding all reasonably available mitigating evidence. The Supreme Court granted habeas relief to a capital defendant based on his trial counsel's failure to thoroughly investigate and present mitigating evidence, including evidence of his jailhouse behavior while awaiting trial. The Supreme Court noted that trial counsel failed to investigate Williams's prison records, which showed he broke up a drug distribution ring in the facility, and that prison officials described him as being among the "least likely to act in a violent, dangerous or provocative way." 529 U.S. at 396, 120 S.Ct. 1495.

Similar to Cole, Williams took part in a prison ministry program. *Id.* He also *1200 earned a carpentry

degree. *Id.* The Supreme Court held Williams was prejudiced by his trial counsel's failure to discover and present his correctional history to the jury, *id.* at 398, 120 S.Ct. 1495, despite the fact there were some negative aspects to his correctional history, i.e., he "set fire to his cell while awaiting trial for the murder at hand and has repeated visions of harming other inmates." *Id.* at 419, 120 S.Ct. 1495 (Rehnquist, C.J., dissenting).

Here, the state argues the positive information about Cole's prison behavior would not have made a difference because it was negated by the unfavorable evidence, that is, Cole failing to report to jail after a work release shift. The problem with the state's argument is two-fold. First and foremost, the jury was already aware of the negative information. Cole's trial counsel failed to counter the negative information already known to the jury with positive information from William Bradford, Romel Cochrel, and Sister Judith Klump. Second, the negative information involved in *Williams* (setting a jail cell on fire) was much more serious than Cole's negative behavior (failure to report), and yet did not prevent the Supreme Court from finding Williams suffered prejudice from his counsel's failure to investigate and present positive jailhouse behavior.

Given *Skipper's* distinction between jailhouse behavior testimony directly from jailers, as opposed to similar character evidence from a capital defendant or his family members, the Missouri Supreme Court's decision that Cole's good jailhouse behavior would have merely been cumulative of other evidence of Cole's good behavior is an unreasonable application of Supreme Court precedent. In addition, the emphasis the Supreme Court placed on presenting positive jailhouse behavior in *Williams,* despite the existence of some negative information, belies Missouri's claim that Cole did not suffer prejudice from his trial counsel's failure to discover and present evidence of his positive jailhouse behavior.

II

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

623 F.3d 1183
(Cite as: 623 F.3d 1183)

For the reasons stated, I respectfully dissent from the court's decision to affirm the district court's denial of relief on the claim that Cole's trial counsel failed to investigate and present evidence regarding Cole's exemplary prison conduct. I would grant habeas relief on that claim and require Missouri to give Cole a new penalty phase trial.

C.A.8 (Mo.),2010.
Cole v. Roper
623 F.3d 1183

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.