UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BILLIE JEROME ALLEN, | ) |
| Movant, | ) ) ) |
| v. | ) NO.  4:07 CV 27 ERW ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

**GOVERNMENT'S MOTION FOR AUTHORIZATION TO CONDUCT DEPOSITIONS, AND INDEPENDENT EXAMINATIONS AND TO REQUIRE IDENTIFICATION OF HEARING WITNESSES AND SHARING OF DEPOSITION EXPENSES**

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Richard G. Callahan, and Carrie Costantin, Steven E. Holtshouser, and Joseph Landolt, Assistant United States Attorneys for said district, and files its Motion for discovery, as follows:

### I.    **Procedural History**

On May 10, 2011, this Court granted an evidentiary hearing on movant's claim that his trial counsel was ineffective for their failure to investigate and present evidence at the penalty phase of the trial.  Movant claimed generally "that they were ineffective in failing to make timely preparations for the proceedings and in failing to properly investigate and present evidence of his abusive childhood." Order, p. 45 [Document 147].  The evidentiary hearing is set for November 29, 2011.

On August 16, 2011, counsel for the Government and counsel for petitioner conducted a telephone conference call to discuss depositions that the Government intended to schedule.  At that time, movant's counsel indicated that she wished to have a written list of the proposed witnesses to

be deposed. The same day, the Government provided a letter listing the witnesses to be deposed. On August 22, 2011, petitioner's counsel informed the Government by letter that they would not agree to the deposition of anyone and that: "[w]e suggest that you file a motion with the court setting out the topics you intend to explore in each deposition, and the reasons you need each deposition. If we agree that there is good cause for any deposition, we will so indicate in our response to your motion." In addition, Allen's counsel advised the Government that they would not inform the Government of the addresses of their potential witnesses or identify their hearing witnesses until October 29, 2011. Previously, they had indicated orally that they would not be calling any witness not otherwise identified in Allen's petition and replies. This motion therefore follows.

## II. Legal Standard For Depositions

Rule 6(a) of the Rules Governing Section 2255 proceedings states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." "A party requesting discovery must provide reasons for the request." Rule 6(b), Rules Governing Section 2255 proceedings. In defending a claim of ineffective assistance of counsel, the Government is entitled to discover any information tending to undermine petitioner's specific claims. *United States v. Lott*, 2005 WL 3741492.

## III. Witnesses to Be Deposed

The Government requests that the Court authorize it to conduct depositions of the following witnesses: Juanita Allen, Billy Wayne Allen, Cathy Tolliver, Brady Tolliver, Claude McLemore, John Simon, Rick Sindel, David Randall, Connie Supranowich, Pablo Stewart, Daniel Martell and petitioner Billie Allen. There is good cause to depose each of these witnesses concerning evidence

that allegedly should have been presented in mitigation during the penalty phase.

### A. Juanita Allen

As the Court noted in its Order granting an evidentiary motion concerning trial counsel's conduct of the mitigation portion of the trial, "the thrust of Allen's claim is that counsel failed to obtain readily-available evidence of a much more severe history of abuse than was actually depicted at sentencing, and the primary sources of evidence to that effect are Allen's mother and uncle, Juanita Allen and B.W. Allen." Order, p. 60 [Document 147]. Counsel has filed a declaration from Juanita Allen stating that trial counsel gave her basic information on the case "but they never really sat with me to hear my story." Decl. Juanita Allen, ¶ 14. [Doc. 94-30]. Juanita Allen's declaration stated that she beat petitioner repeatedly when he was a child. She stated that "Billie's current lawyers have also asked me a lot of different types of questions, which have helped me to understand what information would be important to help Billie's legal case." Decl. Juanita Allen, ¶ 14. [Doc. 94-30]. Dr. Stewart and Dr. Martell's expert opinions are largely based on this "new evidence" of lifelong abuse. Dr. Martell's report explicitly relies upon the declaration of Juanita Allen and Dr. Stewart interviewed Ms. Allen. Decl. Pablo Stewart, ¶ 5. [Doc. 94-27]; Decl. Dan Martell, p. 19. [Doc. 94-28]. Ms. Allen did not testify at trial.

Given the importance of Ms. Allen's information to Allen's claim and his new experts, the Government surmises that Allen will call her as a witness at the hearing. A deposition of Juanita Allen is necessary to discover information related to petitioner's claims that Ms. Allen repeatedly abused petitioner, that trial counsel was unaware of any childhood abuse or that trial counsel spent inadequate time with Ms. Allen in order to develop mitigation evidence for petitioner.

### B. Billy Wayne Allen

3

As stated above, this Court noted that petitioner's claim is that counsel did not obtain evidence of more severe abuse than was shown in the penalty portion and that a key source of that evidence is Billy Wayne Allen. Order, p. 60 [Document 147]. Counsel has filed a declaration from Billy Wayne Allen stating that:

> My only contact with Billie's lawyers came when I telephoned them after Juanita asked me to. I spoke briefly on the phone with someone I thought was his attorney on that occasion and maybe one other time. I received no other phone calls from Billie's lawyers or their associates. The phone call did not last for more than about 10 minutes...Billie had a very hard life, and I had lots of information to share about that, but I was never asked about those details until Billie's current lawyers began to speak with me and asked me to complete this statement.

Decl. Billy Wayne Allen, ¶ 2. [Doc. 94-33]. Mr. Allen stated in his declaration that Juanita Allen and her husband (his brother John Allen) beat their children, that he and John Allen taught petitioner to sell drugs before he was a teenager, and that petitioner worked for a heroin dealer. Mr. Allen concedes that his "memory is not as good as it could be." Decl. Billy Wayne Allen, ¶¶ 5, 6, 7. [Doc. 94-33]. Drs. Stewart and Martell relied on this account of physical abuse and illegal activity for their opinions of post-traumatic stress disorder and child abuse and neglect. Dr. Martell's report explicitly relied upon the declaration of Billy Wayne Allen and Dr. Stewart interviewed Mr. Allen. Decl. Pablo Stewart, ¶ 5. [Doc. 94-27]; Decl. Dan Martell, p. 18. [Doc. 94-28].

Again, the Government believes that Allen will call Billy Wayne Allen as a witness at the hearing. A deposition of Billy Wayne Allen is necessary to discover information related to, and that would tend to undermine, petitioner's claims that Juanita Allen repeatedly abused petitioner, that trial counsel was unaware of any childhood abuse or that trial counsel spent inadequate time with Mr. Allen in order to develop mitigation evidence for petitioner. In addition, evidence

presented during the mitigation phase tended to establish that petitioner was not a drug dealer and, in fact, sold poorly-disguised fake narcotics such as candy or soap. A deposition of Billy Wayne Allen is necessary to explore his veracity and memory problems.

### C. Cathy Toliver

The Court's order noted that current counsel alleged that a professionally reasonable investigation would have found significant mitigation evidence, including:

> testimony from Cathy Toliver, a friend of the family, that Juanita Allen neglected and abused Allen and his siblings as small children, refusing to change their diapers and shaking Allen when he experienced asthmas attacks, and that Juanita Allen continued to abuse Allen physically and emotionally throughout his adulthood

Order, p. 53 [Document 147].

Counsel filed a declaration from Cathy Toliver which stated that she was a life-long friend of Juanita Allen, that she was never contacted by trial counsel, and that she would have been easy to contact through petitioner's family. Decl. Cathy Toliver, ¶¶ 1,15. [Doc. 94-35]. Drs. Stewart and Martell cited the declaration of Cathy Toliver to support their opinions that petitioner suffered from childhood abuse and subsequent post-traumatic stress disorder. Decl. Pablo Stewart, ¶ 4. [Doc. 94-27]; Decl. Dan Martell, pp. 18, 19. [Doc. 94-28].

A deposition of Cathy Toliver is necessary to test her knowledge and veracity concerning any alleged abuse by Juanita Allen, her contacts with petitioner, and her availability as a witness during the trial.

### D. Brady Toliver

Counsel filed a declaration from Brady Toliver which stated that Juanita Allen routinely abused petitioner: "She would scream at him and hit him or throw any object that was close to her at him. She threw shoes, an iron, and I even saw her throw a pan off the stove at Billie." Decl.

Brady Toliver, ¶ 4. [Doc. 94-36]. He stated that he was never contacted by anyone from the trial team and that he was available and willing to testify at petitioner's trial. Decl. Brady Toliver, ¶ 8. [Doc. 94-36]. He claimed that he was petitioner's best friend until high school. Decl. Brady Toliver, ¶ 1. [Doc. 94-36]. Drs. Stewart and Martell rely on Brady Toliver's declaration in concluding that petitioner suffered from various maladies that were not properly presented at trial. Decl. Pablo Stewart, ¶ 4. [Doc. 94-27]; Decl. Dan Martell, pp. 19-20. [Doc. 94-28].

A deposition of Brady Toliver is necessary to discover the basis for his claims of abuse and to explore his availability as a witness for the 1998 trial.

### E.     Claude McLemore

Counsel filed a declaration from Claude McLemore that "[w]hen [petitioner] was young, Juanita grab [sic] Billie, rough [sic] him up, and beat him with thick belts, extension cords, high-heel shoes, whatever she could put her hands on." Decl. Claude McLemore, ¶ 5. [Doc. 94-41]. He also stated that Jerome Petty and Otha Petty Sr. beat petitioner: "Jerome and Otha also used belts to whip Billie, and Jerome also punched him with his fist." Decl. Claude McLemore, ¶ 8. [Doc. 94-41]. Thus, Mr. McLemore asserted that the physical abuse was inflicted by family members other than Juanita Allen. At trial, Mr. McLemore's testimony concerning Juanita and Otha Petty Sr. was simply that they tended to hold in their emotions. Transcript, March 3, 1998, pp. 165-6.

Petitioner's experts Drs. Stewart and Martell cite the declaration of Claude McLemore to support their opinions that petitioner suffered from childhood abuse and subsequent post-traumatic stress disorder. Decl. Pablo Stewart, ¶ 4. [Doc. 94-27]; Decl. Dan Martell, p. 21. [Doc. 94-28].

A deposition of Claude McLemore is necessary to examine his assertions of abuse and

explore his statements to trial counsel about his knowledge of petitioner's life, including any purported abuse by Juanita Allen, Jerome Petty and Otha Petty Sr.

### F. John Simon

John Simon was one of petitioner's trial counsel. Mr. Simon's declaration, filed by current counsel, stated that he had more contact with petitioner's family than Mr. Sindel, petitioner's primary trial counsel. He stated that most of his contact was with Juanita Allen. He stated that he did not conduct mitigation interviews with those who knew Mr. Allen as a child or young man. Decl. John Simon, ¶ 3. [Doc. 94-13]. However, in a letter dated January 20, 1998 from Mr. Simon to Mr. Sindel, Mr. Simon stated that he had interviewed several of the family mitigation witnesses during the time that Dr. Heaney was the mitigation expert. BA_533. In the January 1998 letter, he stated that he had conducted mitigation interviews over the past two or three weeks. BA_534.

It is clear from material provided by current counsel that Mr. Simon was the primary attorney contact for expert witnesses and services. Certain decisions taken in regards to these experts are relevant to evaluating the effectiveness of counsel. In order to defend the claim that counsel was ineffective in their presentation of mitigation evidence, it is necessary to discover any information concerning the investigation that was completed and the strategic decisions that were made.

A deposition of Mr. Simon is needed to explore the preparation completed for the mitigation phase, including any discussions with petitioner or any witnesses concerning the evidence to be presented in the mitigation portion of the trial.

### G. Richard Sindel

Mr. Sindel was the primary trial counsel for petitioner. In his declaration, he stated:

> I have now reviewed materials provided to me by Mr. Allen's current counsel. It is apparent that they have developed themes that we did not realize existed or present xxx [sic], and that they have been able to significantly expand on other themes that we treated only superficially. The topics covered by current counsel include childhood abuse, neglect, family dysfunction, family and neighborhood impoverishment, and abandonment. In my experience these are potent mitigation subjects.

Decl. Richard Sindel, ¶ 14. [Doc. 94-12].

Trial counsel presented over thirty witnesses in the mitigation portion of the trial. The decision to present certain witnesses and not to present other witnesses is the core of a trial attorney's strategy. Current counsel has presented declarations from many individuals who testified at trial. Their testimony did not describe the childhood abuse and neglect purportedly suffered by petitioner at the hands of Juanita Allen, Jerome Petty and Otha Petty Sr.--or the abuse that some witnesses now claim was inflicted by petitioner's sisters on him.

A deposition of Mr. Sindel is necessary to develop information concerning trial counsel's investigation of the mitigation stage--including conversations with petitioner and his mother--and decisions made to present certain evidence and to refrain from the presentation of other evidence in the mitigation portion.

### H. David Randall

David Randall was the mitigation expert hired by trial counsel. In his affidavit dated February 6, 1998, Dr. Randall described the duties to be performed by a mitigation specialist in a capital murder case. He stated that the specialist must interview the client concerning:

> any significant childhood experiences, including such things as death or serious injury of a family member or other significant person, divorce of parents, *abandonment by parents and family, family violence, parental alcohol or drug abuse*, or *abuse of the client, including physical, sexual or emotional abuse*;

8

BA_408 (emphasis added).

Current counsel alleges that trial counsel was ineffective for their failure to discover and present evidence of petitioner's childhood abuse. Dr. Randall's declaration submitted by current counsel stated:

> Ms. Allen was an aggressive, dominant, and heavy-drinking woman who demonstrated a notable lack of warmth and compassion. The only emotions she seemed to readily display were anger and rage...Despite my suspecting family abuse and dysfunction, I was not able to obtain concrete information from any family member that this existed.

Decl. David Randall, ¶ 13-14. [Doc. 94-26].

It is necessary to depose Dr. Randall to determine the efforts that were made to conduct the mitigation investigation and the decisions that were made concerning the presentation of mitigation evidence. This information directly relates to the effectiveness of trial counsel in the mitigation portion of the trial.

### I. Connie Supranowich

Connie Supranowich was a paralegal employed by Mr. Sindel on the petitioner's case. She had frequent contact with petitioner. Decl. Connie Supranowich, ¶¶ 1, 3. [Doc. 94-47]. Ms. Supranowich (formerly Caspari) asserted that she has no independent recollection of the precise investigation that she performed. Decl. Connie Supranowich, ¶ 3. [Doc. 94-47]. However, trial counsel's file contains a plethora of documents referring to Ms. Supranowich's contacts with petitioner and Dr. Randall, the mitigation specialist.

Any mitigation investigation by defense counsel must rely, to some extent, on information provided by the client. Documents completed by Ms. Supranowich indicated that petitioner was a highly unreliable source of information. For example, a January 13, 1998 memo from Ms.

9

Supranowich to Mr. Sindel indicated that, as part of her mitigation investigation, she spoke with petitioner concerning the fact that he "had a baby on the way." Despite petitioner's claim that his girlfriend was about to have a child, Ms. Supranowich confirmed that his girlfriend had told him that she had aborted the child. Ms. Supranowich concluded: "...I had to vent my frustrations with Billie's complete inability to tell the truth." BA_2459.

A deposition of Ms. Supranowich is necessary to determine the mitigation investigation that she conducted, her contacts with petitioner, and her knowledge of other mitigation efforts by Dr. Randall.

### J. Pablo Stewart and Daniel Martell

Drs. Pablo Stewart and Daniel Martell are the two experts employed by current counsel to evaluate petitioner. Dr. Stewart opined that petitioner suffers[1] from Post-Traumatic Stress Disorder, Dementia and a Major Depressive Disorder. Dr. Martell concluded that petitioner suffered from Dementia, Major Depression or Bipolar II Disorder, and Post-Traumatic Stress Disorder. According to them, these conditions result from petitioner's abusive childhood. Both doctors concluded that the prior mitigation investigation and prior defense experts' examinations were incomplete and fell short of the standard of care.

Depositions of Drs. Stewart and Martell are essential to explore the basis of their current diagnoses and their conclusions concerning the prior examinations of the petitioner.

### K. Petitioner Billie Allen

The Government seeks to depose petitioner concerning the issue of the effectiveness of trial

---

[1] It is not clear whether his opinion was that Allen suffered from PTSD in 1997, 1998, the present or during all periods. Similar uncertainty exists with respect to his other diagnoses.

10

counsel's investigation and presentation of evidence during the mitigation portion of the trial--the issue for which the Court has granted an evidentiary hearing. Current counsel stated in her letter of August 22, 2011: "We do not presently intend to present his testimony at the hearing, and believe his testimony is subject to the Fifth Amendment privilege as well as the normal Section 2255 restrictions on discovery."

The Advisory Committee notes for Rule 6 of the Rules Governing Section 2255 proceedings cross-reference the notes to Rule 6 of the Rules Governing Section 2254 proceeding. Those notes state:

> Subdivision (c) specifically recognizes the right of the respondent to take the deposition of the petitioner. Although the petitioner could not be called to testify against his will in a criminal trial, it is felt the nature of the habeas proceeding, along with the safeguards accorded by the Fifth Amendment and the presence of counsel, justify this provision.

Notes to Rule 6 of the Rules Governing Section 2254 proceeding

"The little existing authority on this issue makes clear that a habeas court may, with good cause, order the deposition of a habeas petitioner." *Lott v. Bradshaw*, 2005 WL 3741492, at * 8 (N.D.Ohio).

The Government must show good cause when seeking to depose the petitioner in a 2255 proceeding. *Wessinger v. Cain*, 2009 WL 111735 (M.D.La.) (applying the "good cause" test where Government sought to depose petitioner). The Government can make a demonstration of good cause where there is a factual dispute. In *Lott*, the court found that the Government had shown good cause to allow the Government to depose the petitioner. The petitioner had made three claims that the Government wished to address when deposing the petitioner: 1) the petitioner's knowledge about

11

what his trial counsel knew; 2) petitioner's actual innocence of the crime; 3) petitioner's actual statements to a detective. *Id*. The court found that in all three instances there was a factual dispute. *Id*. at *10. Because of these factual disputes the Government had shown good cause to conduct a deposition of the petitioner. *Id*.

In *Bean v. Calderon*, 166 F.R.D. 452, 456-57 (E.D.Cal. 1996), the court concluded that the Government had shown good cause to depose the petitioner in a capital case. The petitioner made several claims of ineffective assistance of counsel and prosecutorial misconduct, including: 1) counsel did not perform an investigation that would have revealed the identity of the actual murderer; 2) counsel did not adequately investigate facts for the penalty phase, including family background; and 3) the prosecutor suppressed evidence or prevented true facts from being revealed at trial. *Id*. at 456. The court noted that the Supreme Court has said that in ineffective assistance of counsel claims it is important to know what the petitioner said to his counsel. *Id*. at 456-57 (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)) ("inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's other litigation decisions"). The court found that "contentions about . . . innocence/family background are easily fit into the quoted portion of *Strickland*." *Id*. at 457. The court concluded, therefore, that "the good cause established by respondents . . . is nearly self-evident." *Id*. at 456. The nature of the claims asserted meant that the Government had good cause to seek to depose the petitioner.

In the instant case, there is good cause to depose the petitioner based on his claim that counsel did not adequately investigate his family background, including the alleged abuse by his mother, grandfather and uncle. Statements on these matters that petitioner made to trial counsel and Dr. Randall are relevant to determine the reasonableness of their investigation. If, for example,

12

petitioner never told Dr. Randall or his trial counsel that he had been physically abused by his mother, uncle or grandmother, perhaps trial counsel's actions would be viewed in a different light than if petitioner told them of the abuse and they did not pursue an investigation. The Government is also entitled to explore any statements made by Allen, as referenced by Ms. Supranovich, which were intentionally false or intended to mislead or manipulate trial counsel.

Petitioner's letters to his mother do not reveal an abusive relationship between petitioner and his grandfather or mother: "Tell my grandfather that I pray every night that I get out of here so we can go to church together and spend more time together. I love my grandfather so much..." BA_627. "The other day I was reading this cartoon and it reminded me of you and I smiled I love you so much, and I know that you feel the same." BA_629. "Everything you tried to teach me I went the other way but I don't look at it as your fault you did your part as a mother for me and I love you for that I'm sitting here about to cry cause I miss you and I know how you feel." BA_630. "To me you will still be the best mother in this world even though your son might be locked up like I said you did your part and I didn't do mine I'll Allways [sic] love you for being there for me when my so called friends wasn't. BA_630-1. Other letters and evidence indicated a plot between Mrs. Allen and petitioner to convince witnesses to lie on his behalf. Such conduct is pertinent to petitioner's claim as well as the diagnoses by his new experts.

A factual dispute exists as to whether petitioner experienced the abuse now alleged and, if so, whether he told his trial counsel, mitigation specialists or doctors of the abuse. A deposition of the petitioner is necessary to determine these matters.

Based upon current counsel's August 22, 2011 letter, the Government anticipates that current counsel may attempt to make a blanket invocation of his Fifth Amendment privilege. A blanket

13

invocation of the Fifth Amendment is not appropriate in this case. The Court has limited the hearing to the issue of whether trial counsel conducted an adequate investigation and presentation of mitigation evidence. For example, petitioner has placed in issue whether his childhood was abusive, whether the abuse drove him to deal drugs, and whether he told trial counsel or mitigation investigators of these matters. Deposition questions on these matters are necessary and should not be stymied by a blanket invocation of the Fifth Amendment. A petitioner cannot stop a deposition by making a blanket invocation of the Fifth Amendment. *Wessinger*, 2009 WL at *3 ("Petitioner has not shown that a blanket invocation of the Fifth Amendment privilege is warranted. . . . it seems improbable that a truthful answer to every question he could be asked, relevant to his claims of ineffective assistance of counsel, would tend to incriminate him").

The Government has demonstrated that there is good cause to depose petitioner concerning the matters that will be litigated at the evidentiary hearing. Petitioner made his testimony and deposition necessary by supplying his declaration and by his statements to his past and present experts. It is simply not just to permit Allen to make his mitigation claims against his counsel, support them with his own statements and then assert a privilege to prevent the Government from gaining access to the very information which might undermine his claims.

Petitioner's counsel has requested that the Government indicate dates on which Government counsel will be available for depositions. Those dates are: October 3,4, 6, 7, 12, 13, 14, 17, 18, 19, 26, 27, 28; and November 1, 2, 3, 4, 7, 8, 9, 10, 14, 15, 16, 17, and 18.

### IV.     Independent Mental Health Examination

Allen has submitted to examinations by his current mental health experts. At trial, the Government's experts were permitted to conduct independent examinations of Allen. Because it

14

appears that Allen will rely on his new experts to support his mitigation investigation claim, the Government should be permitted an opportunity to have its new experts conduct an independent examination of Allen. The Government should not be limited to using its trial experts, because Allen is obviously not so limited. The Government has not yet identified rebuttal experts but will do so soon. The Government should be permitted an opportunity for its experts to independently examine Allen for the same reasons that the Government was permitted to do so at trial and for the additional reason that discovery in this civil habeas proceeding is subject to this Court's discretion and a showing a good cause.

### V.    Disclosure of Hearing Witnesses

Allen's claim has been know to him for years and habeas counsel have had years to prepare for the hearing in question. Allen proposes to wait until October 29, 2011--weeks before the hearing--to disclose the identity of the persons that he intends to call at the hearing. Depositions of witnesses that Allen does not intend to call would be a substantial waste of resources and could be obviated. In addition, the identity of witnesses that Allen does intend to call may reveal additional witnesses who the Government may need to depose to be prepared to conduct a meaningful hearing without unnecessary delay. Disclosure as late as October 29, 2011 might make a deposition prior to the hearing impracticable. Therefore, the Government seeks an order from this Court requiring Allen to disclose its hearing witnesses and exhibits no later than September 30, 2011. This will permit sufficient time before the November hearing to conduct any depositions, independent examinations and present any conflicts to this Court for timely resolution.

### VI.    Fees and Expenses

In her letter, habeas counsel claimed that they were entitled to deposition expenses under

Rule 6(c) of the Rules Government Section 2254 Cases. The Government opposes this request. Rule 6(c) is discretionary with the Court when it applies and habeas counsel is already court-appointed. It does not make sense to the undersigned to have appointed counsel seek expenses from the Government when another branch of the government is already paying counsel's fees and expenses through Court appointment. Therefore, the Government respectfully suggests that each party shall bear its own costs and expenses in connection with any deposition permitted by this Court.

### **VII. Conclusion**

For the foregoing reasons, the Government respectfully requests that this Court grant the Government's request for depositions, independent examinations, disclosure of hearing witnesses and sharing of deposition expenses.

    Respectfully submitted,
    RICHARD G. CALLAHAN
    United States Attorney

    *s/Carrie Costantin*
    CARRIE COSTANTIN #54734
    STEVEN E. HOLTSHOUSER #24277
    JOSEPH LANDOLT #6484
    Assistant United States Attorney
    111 S. 10th Street, Room 20.333
    St. Louis, Missouri 63102
    (314) 539-2200
    (314) 539-2309 FAX

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  August 22, 2011, the foregoing was filed electronically with the Clerk of the Court and was served by mail  on the following:

Elizabeth U. Carlyle
P.O.Box 30418
Kansas City, MO 64112

Joseph M. Cleary
COLLIGNON AND DIETRICK
310 N. Alabama
Suite 250
Indianapolis, IN 46204

Matthew Lawry
FEDERAL COMMUNITY DEFENDER OFFICE
Eastern District of Pennsylvania- Capital Habeas Corpus Unit
The Curtis Center - Suite 545 West
Philadelphia, PA 19106


Michael Wiseman
FEDERAL COMMUNITY DEFENDER OFFICE
Eastern District of Pennsylvania- Capital Habeas Corpus Unit
The Curtis Center - Suite 545 West
Philadelphia, PA 19106

                                              s/*Carrie Costantin*
                                              CARRIE COSTANTIN  54734
                                              Assistant United States Attorney