UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BILLIE JEROME ALLEN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | NO.  4:07 CV 27 ERW |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S REPLY TO PETITIONER'S PARTIAL OPPOSITION TO
GOVERNMENT'S MOTION FOR AUTHORIZATION TO CONDUCT DEPOSITIONS,
AND INDEPENDENT EXAMINATIONS AND TO REQUIRE IDENTIFICATION OF
HEARING WITNESSES AND SHARING OF DEPOSITION EXPENSES**

COMES NOW the United States of America, by and through the United States Attorney for

the Eastern District of Missouri, Richard G. Callahan,  and Carrie Costantin, Steven E. Holtshouser,

and Joseph Landolt, Assistant United States Attorneys for said district, and files its Reply to

Petitioner's Partial Opposition to Government's Motion for Authorization to Conduct Depositions,

and Independent Examinations and to Require Identification of Hearing Witnesses and Sharing of

Deposition Expenses, as follows:

**I. Witness Depositions**

Rule 6(a) of the Rules Governing Section 2255 proceedings states: "A judge may, for good

cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil

Procedure, or in accordance with the practices and principles of law." "A party requesting discovery

must provide reasons for the request."  Rule 6(b), Rules Governing Section 2255 proceedings.  In

defending a claim of ineffective assistance of counsel, the Government is entitled to discover any

information tending to undermine petitioner's specific claims.  *United States v. Lott*, 2005 WL

3741492.

The Government requested that the Court authorize it to conduct depositions of the following witnesses:  Juanita Allen, Billy Wayne Allen, Cathy Tolliver, Brady Tolliver, Claude McLemore, John Simon, Rick Sindel, David Randall, Connie Supranowich, Pablo Stewart, Daniel Martell and petitioner Billie Allen.

Petitioner opposes *any* depositions on the grounds that: 1) the Government has failed to show good cause; 2) the Government can just cross-examine these witnesses at the evidentiary hearing; 3) each witness has signed a sworn declaration; 4) depositions would provide the Government with an unfair advantage in the resolution of whether the witnesses' testimony would have a reasonable probability of affecting the outcome of petitioner's trial; 5)  the request is burdensome; and 6) the time constraints are significant.

It its motion, the Government listed specific areas of inquiry for each witness that were directly related to the remaining issue in petitioner's Section 2255 motion:  that trial counsel failed to obtain readily-available evidence of a much more severe history of abuse by Juanita Allen, Jerome Allen and Otha Petty Sr.  Petitioner's new experts rely on this alleged new history of abuse to conclude that petitioner suffered (or suffers) from Post-Traumatic Stress Disorder, Dementia and a Major Depressive Disorder.  The Government will not rehash the explanation for each witness. Petitioner has presented declarations or reports from twenty-five witnesses.  The Government's request for depositions is limited to the lay witnesses whose statements directly assert the "new evidence" of abuse:  Juanita Allen, Billy Wayne Allen, Cathy Tolliver, Brady Tolliver, Claude McLemore.  Only one of these witnesses--Claude McLemore--testified at trial and he did not describe the abuse now claimed.  The Government cannot respond to petitioner's claim that trial

counsel was ineffective in failing to present such evidence without deposing these witnesses concerning their knowledge and/or participation in the abuse.

Petitioner asserts that counsel can simply cross-examine these individuals at the evidentiary hearing.  Petitioner's counsel has not listed these individuals as witnesses they intend to call and resists the timely disclosure of Allen's witness list.  Thus, it is not clear that the declarants--whose statements are the basis for the experts' opinions--will actually testify.  The importance of these witnesses' declarations is that the conclusions of the new experts are dependent upon this "new evidence." These declarations routinely conclude with language such as  "After many meetings with Billie's lawyers and their staff, they have come back to me with this statement."  Decl. Juanita Allen, ¶ 15. [Doc. 94-30].  Government counsel have reviewed trial counsel's records and have been unable to locate any allegations of abuse by Juanita Allen, Jerome Allen and Otha Petty Sr.  If examinations of these witnesses demonstrate that the abuse now described is exaggerated, all experts should have time to consider the impact on their opinions.  This can only occur if depositions are taken before the hearing--as opposed to an examination during the hearing.

As to the trial team--Richard Sindel, John Simon, Connie Supranowich and David Randall--depositions are clearly warranted to establish communications and discussions between trial counsel, petitioner, and any of the persons who now claim that petitioner suffered from the brutal childhood abuse he now claims.  *Lott v. Bradshaw*, 2005 WL 374192 *6 (N.D. Ohio  2005).  There is good cause  to depose these witnesses concerning the claims for which the evidentiary hearing has been granted.  There are serious conflicts between the record and the claims in the petition and the declarations which require investigation through deposition in lieu of wasting valuable Court time to investigate these conflicts.

It appears that petitioner opposes the depositions of his current experts, although he requests to depose any Government experts. Dr. Stewart and Dr. Martell are the heart of the prejudice portion of petitioner's claim that trial counsel prepared and presented an inadequate mitigation case. Petitioner must show that that a different result would have occurred at trial if Dr. Stewart and Dr. Martell testified. The Government has shown good cause to depose these witnesses concerning the bases for their opinions. Depositions of experts are routinely granted in civil cases to prevent needless exploration of pertinent topics at trial. The same rationale holds true here.

Counsel contends that the fact that these individuals signed sworn declarations obviates the need for depositions. As described above, the lay witnesses' declarations frequently state words to the effect that current counsel "came back to me [the declarant] with this statement" which they then signed. Decl. Brady Toliver, ¶ 9. [Doc. 94-36]. Depositions are necessary to determine the accuracy of these statements which are the heart of petitioner's claim and whether they are the statements of the declarants or the words of habeas counsel. Petitioner complains that depositions would provide the Government with "an unfair advantage" in the resolution of the issue of whether these witnesses would have had a reasonable probability of affecting the outcome of petitioner's trial. The Government seeks these depositions to refute petitioner's claim that trial counsel was ineffective in finding and presenting mitigation evidence. This proper use of the discovery process is hardly "unfair" as demonstrated by petitioner's request to depose any government witnesses, including experts.

Finally, petitioner claims that the deposition requests are burdensome and the time constraints are significant. The Government anticipates that the depositions could be grouped to minimize travel by petitioner's out-of-town counsel. Many of these depositions should not be

lengthy. The Government has provided available dates from early October through November and discussed general availability with petitioner's counsel. Unless the witnesses' schedules are inflexible, the Government expects the time frame for depositions to be adequate.

## II. Need to Depose Billie Allen and to Independently Examine Billie Allen

The Government seeks to depose Allen, and possibly call him as a witness at the hearing if he does not testify in his case-in-chief, and to have him examined by independent mental health experts. Allen responds that: 1) he cannot be deposed or called as a witness because he did not submit a declaration; 2) he can only be examined by mental health experts as to his mental health; 3) there is no claim that counsel made strategic decisions based on Allen's statements; and 4) he has a Fifth Amendment privilege to refuse to submit to a questioning.

Allen is the petitioner and his petition claims that his counsel were ineffective in the conduct of the mitigation investigation and presentation. Among his criticisms is the claim that his counsel failed to adequately investigate his life history. The statements of some of his witnesses claim that his counsel did not begin investigating his mitigation facts soon enough or thorough enough. Several claim that counsel essentially ignored them, did not ask them the right questions and were not interested in certain facts. Even though he did not submit his own declaration, Allen did authorize the filing of this petition thereby endorsing its factual claims. *See* Doc. 61 at 60-61 (attestation signed by Elizabeth Carlyle). In essence, Allen has already "testified" by submitting his petition and the Government simply seeks a fair opportunity to question him about his allegations concerning his dealings with his counsel and his life history. *Bean v. Calderon*, 166 F.R.D. 452, 455 (E.D. Ca. 1996)(deposition of petitioner authorized). Bean has been cited with approval by other jurisdictions. *See, e.g.*, *Detrich v. Schiro*, 2007 WL 177831, \*3 (D. Ariz. Jan. 23, 2007); *Lott v.*

*Bradshaw*, 2005 WL 3741492, *10 (N.D. Ohio Mar. 29, 2005). Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings requires verification under penalty of perjury or by an authorized representative. In addition, because a Section 2255 proceeding is essentially civil in nature, if Allen refuses to be deposed or testify at his hearing, this Court may draw an adverse inference about the facts. *United States v. Nahodil*, 36 F.3d 323, 328-29 (3d Cir. 1994).

Allen's response to the Government's motion ignores the fact that <u>he</u> is the subject of the mitigation and the primary source of information about his life experiences.  The best evidence concerning the adequacy of the work performed by his counsel is what questions his counsel did or did not ask and what answers Allen did or did not give.  By his petition, Allen put into issue his personal communications with his counsel about his life story and his mental health.  He cannot bring this action and then deny the Government access to the most probative evidence on the claim.

Secondly, the Government should not be limited to examining Allen, through experts, about his mental health.  The Government does seek such examinations, but inquiries into his mental health wouldn't address the pertinent factual issue - what did his counsel learn or not learn about Allen's life from Allen himself?  It is not enough to simply make this inquiry to counsel, because Allen himself may have concealed facts from counsel or not given counsel honest information.  It is not the function of mental health experts to determine what Allen did or did not tell his counsel before and during the trial.

The Supreme Court's leading ineffective-assistance case, *Strickland v. Washington*, itself hinted at the need to permit inquiry into areas otherwise privileged. 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ( "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's ... litigation decisions.").  Several circuits have had no

difficulty applying this rule in the context of waivers of the attorney-client privilege. *See, e.g., In re Lott*, 424 F.3d 446, 453 (6th Cir.2005) ("The implied waiver in habeas proceedings [is] the result of a petitioner's assertion of his own counsel's ineffectiveness."); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir.2003) (en banc) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir.2001) (holding that by bringing an ineffective-assistance claim, § 2255 movant waives attorney-client privilege with respect to conversations that "bare on strategic choices made during representation"); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir.1974) ("[Attorney-client] privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence."); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir.1967) ("[W]here, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue."). The Ninth Circuit has also indicated that this rule applies as well to the attorney's work-product privilege. *Bittaker*, 331 F.3d at 722 n. 6. Fifth Amendment rights are and should be as subject to waiver as attorney-client privilege rights.

Third, relying on language from the case cited by the Government, *Wessinger v. Cain*, 2009 WL 111735 (M.D.La. 2009), Allen argues that a deposition of him is not appropriate because there is no claim that counsel relied on statements of Allen. While that may have been true in *Wessinger*, it is not true in this case. Allen claims that counsel did no mitigation

investigation and simply hired Dr. Haney and then ignored Dr. Haney.  On the contrary, the Government claims that the evidence will show that counsel was actively investigating Allen's background before and after Dr. Haney was hired.  This case does not involve a strategic decision to forego a mitigation investigation, but it does involve what counsel did based on what they knew and a key source of that knowledge was Allen.  Unlike in *Wessinger*, the Government here needs to interrogate Allen as to what counsel asked or did not ask him and what Allen did or did not tell them about his life history and the identity of potential mitigation witnesses.

Finally, Allen  was not compelled to bring these allegations against his counsel, but having voluntarily chosen to do so he at least partially waived his Fifth Amendment privilege against self-incrimination.  The Government does not seek to question Allen about the offense conduct and the Government does not object to the Court granting Allen use immunity for his deposition or hearing testimony about his life history or his communications with his counsel about same.

Allen's habeas hearing strategy appears to be to place blame on his trial counsel's alleged deficiency, his mother's alleged mistrust of white people and his trial experts' failure to conduct adequate examinations.  This case is about his social history, not his criminal conduct, and specifically what his attorneys knew or did not know, asked or did not ask, had reason to investigate or did not have reason to investigate pertaining to his background and character. Allen's course of dealing with his attorneys is relevant to explain why they made some of the decisions that they made.  There is no risk of prosecution over his truthful answers to questions concerning these topics and what other witnesses say about his background and its impact on him. Allen obviously had his own communications with trial counsel about the facts of his life

and his background, being the primary historian of his own life.  He also submitted to examinations by his trial experts and he has more recently submitted to examinations by his new experts who will be witnesses at the hearing and presumably give testimony based, in part, on Allen's statements to them.  Yet Allen wants to deny the Government and the Court an opportunity to question him about his communications and relationship with the trial counsel he now attacks.

Similarly, he placed his mental condition in issue by presenting new evidence that he suffers from depression, PTSD, borderline personality disorder and other ill effects of his background.  The law is clear that a partial waiver of Fifth Amendment rights occurs in a criminal case when a defendant puts his mental state in issue, which is why the Government can obtain a pre-trial independent examination.  Federal Rule of Criminal Procedure 12.2.  If such a waiver exists in a criminal case before a conviction, there is no constitutional or other obstacle to finding such a waiver in a post-conviction proceeding.

Nothing would prevent the Government from immunizing Allen and compelling him to testify before a Grand Jury concerning the offense conduct if there was a basis for additional investigation.  Here, the Government does not need to question him about the offense conduct, but it does need to question him about his communications with his trial counsel and their assistants concerning his background and the mitigation investigation being conducted by them.

Attached are five excerpts from discovery materials provided by Allen.  Exhibit A is a letter dated April 17, 1997, in which Mr. Sindel sought information from Allen which arguably related to the mitigation investigation which Allen claims Mr. Sindel did not conduct.  Allen gives partial answers to the questions and the content of the letter suggests that Mr. Sindel had

obtained information from Allen prior to the letter.  Exhibit B is a memo dated November 4, 1997, from Mr. Sindel's assistant to Mr. Sindel in which the assistant recounts conversations with Allen and Juanita Allen concerning attempts to gather mitigation information.  The memo calls into question Allen's reliability and credibility as to claims about his history.  Exhibit C is a letter dated January 12, 1998, from the St. Louis council of the Boy Scouts of America to Mr. Sindel in response to his request for information about Allen's membership in the Boy Scouts. The letter is copied to Mr. Simon.  Exhibit D is another memo from Mr. Sindel's assistant, this one dated January 13, 1998, concerning her communications with Allen about whether he had a child and concludes with a reference to her "frustrations with Billie Allens' complete inability to tell the truth."  Exhibit E is a letter dated June 10, 1998, which is weeks after the trial, from Mr. Sindel to Allen that suggests continuing frustration with Allen's veracity.

These exhibits and others warrant factual development with the plaintiff, Allen, to determine whether the claims in Ground J are the true or not.  The exhibits suggest that the main obstacle facing the trial team may not have been time pressures but an uncooperative and untruthful client.  Allen's past and present experts relied, in part, on the results of Allen's statements in clinical interviews and examinations.  The weight to be given to their conclusions may be impacted by the veracity of Allen.  If Allen wished to wrap himself in the protection of his right to silence, to the extent it still remains, he should not have put his mental state and his communications with his attorneys about his life history into issue.  Allen can't have it both ways.[1]

---

[1]It is worth noting that in the discovery leading up to a hearing on the 2255 claims by Allen's criminal co-defendant, Norris Holder, Holder's deposition was taken and was received by the Court in lieu of him testifying in person at the hearing.

10

*Wessinger* demonstrates that the Government's request in the case at bar is neither novel nor impermissible. A limited deposition of Allen, limited to the specific factual dispute alleged by him, is authorized by Rule 6(a) and 26(b)(1) of the Rules Governing Section 2254 Cases. *Id*. at 1. Although the *Wessinger* Court ultimately denied a deposition of the petitioner on the ground that there was no factual dispute regarding petitioner's communications with his counsel, the Court clearly did not view the Fifth Amendment as an obstacle and viewed the Fifth Amendment as capable of partial waiver in a habeas action. The Court discussed the origin and interpretation of the Fifth Amendment and concluded: "The availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Id*. at 3.

Here, the proceeding is a civil habeas hearing initiated by petitioner. The nature of the inquiry that the Government seeks concerns the extent and nature of trial counsel's communications with petitioner and the information provided by Allen to his trial team about his life history and mental issues. Allen's allegations directly implicate the extent and nature of his communications with his trial team about non-offense conduct matters. Team members are portrayed by declarants as neglectful, disinterested and rushed. Allen is portrayed as brain damaged and suffering from PTSD and depression. Questions about these topics do not serve to inculpate Allen in the offense or invite exposure to criminal prosecution. As in *Wessinger*, here "it seems improbable that a truthful answer to every question [Allen] could be asked, relevant to his claims of ineffective assistance of counsel, would tend to incriminate him." *Id*.

Allen seems to concede the propriety of an independent mental health examination.  The Government objects to the request of counsel to be present in the examination room.[2]  To give the Government a fair independent examination other less intrusive means can be found to satisfy habeas counsel's concerns, such as 2-way glass, recording devices, earpieces and transmitters to the expert.  Some of these are impacted by logistics of the location of the exam.  Habeas counsel fails to justify the need for their expert to observe the examination by the Government's expert.  The Government respectfully suggests that the parties endeavor to reach agreement on the mechanics of the examination and present the Court with stipulated procedures or areas that remain in dispute.  Allen attached as Exhibit 1 to his response (Doc. 166-1) a Government motion from the Western District of Missouri.  The Government does not object to observing most of the procedures set out at page 5 of Doc. 166-1.  The Government will identify its independent expert(s) and schedule an examination, as requested, at least 2 weeks in advance to give habeas counsel sufficient notice.

### III. Costs

This appears to be a case of 6 of one and half a dozen of another.  Regardless of whether the Department of Justice or the CJA fund pays the expenses of the depositions, the costs will be born by the United States.  The Department of Justice does not oppose paying the costs of witnesses and experts to appear at depositions, but the Government leaves to this Court's discretion whether it is necessary for the Department of Justice to pay the costs of all of Allen's many appointed attorneys to be present at every recorded and transcribed deposition.  Surely,

---

[2]This issue has been litigated in capital criminal cases with varying results, but certain intrusive procedures invalidate results and prevent performance of a professional and reliable examination.

12

costs can be contained by permitting Allen to be represented at any deposition by no more than 2 attorneys with knowledge of the subject matter of the deposition.

## IV. Witness Lists

The Government seeks to obviate unnecessary depositions and preparation. Allen is the plaintiff and has the burden of proof. It is not likely that the Government would seek to depose a witness who Allen does not intend to call at the hearing. Similarly, while the parties know which witnesses are implicated by the facts, if a witness is going to be called by Allen, then there may be no need for the Government to call that witness.

Allen resorts to the Civil Rules when it suits him and to the Criminal Rules when it suits him. Clearly, a habeas hearing is a civil hearing with criminal ramifications and that is why the rules governing habeas proceedings afford this Court broad discretion to craft efficient procedures which make common sense. Arguably, Allen knows today who he is going to call in the hearing and offers no reason why he needs to wait until 30 days before the hearing to identify witnesses. The Government seeks identification only 30 days sooner than the date suggested by Allen. The Government's proposed date would permit timely cancellation of unnecessary depositions. It makes little sense to require the Government to assume that Allen will call all of said witnesses. If Allen is continuing to investigate new witnesses, which seems unlikely 13 years after the trial, he can always seek leave to identify newly discovered witnesses after the disclosure deadline.

Allen's suggestion for simultaneous witness identification also makes little sense. The Government's witnesses depend on identification of Allen's witnesses. The Government can name its witnesses within 2 weeks after Allen or sooner as directed by this Court.

13

## V. Conclusion

For the foregoing reasons, the Government respectfully requests that this Court grant the

Government's request for depositions, independent examinations, disclosure of hearing witnesses

and sharing of deposition expenses.

Respectfully submitted,
RICHARD G. CALLAHAN
United States Attorney


*s/Carrie Costantin*
CARRIE COSTANTIN #54734
STEVEN E. HOLTSHOUSER #24277
JOSEPH LANDOLT #6484
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200
(314) 539-2309 FAX


CERTIFICATE OF SERVICE

I hereby certify that on  September 1, 2011, the foregoing was filed electronically with the Clerk
of the Court and was served by mail  on the following:

Elizabeth U. Carlyle
P.O.Box 30418
Kansas City, MO 64112

Joseph M. Cleary
COLLIGNON AND DIETRICK
310 N. Alabama
Suite 250
Indianapolis, IN 46204

Matthew Lawry
FEDERAL COMMUNITY DEFENDER OFFICE
Eastern District of Pennsylvania- Capital Habeas Corpus Unit
The Curtis Center - Suite 545 West
Philadelphia, PA 19106

14

Michael Wiseman
FEDERAL COMMUNITY DEFENDER OFFICE
Eastern District of Pennsylvania- Capital Habeas Corpus Unit
The Curtis Center - Suite 545 West
Philadelphia, PA 19106

s/*Carrie Costantin*
CARRIE COSTANTIN  54734
Assistant United States Attorney