UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BILLIE JEROME ALLEN, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 4:07CV00027 ERW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

# **MEMORANDUM AND ORDER**

This matter comes before the Court on the Motion of the United States, Respondent, for Authorization to Conduct Depositions and Independent Examinations and to Require Identification of Hearing Witnesses and Sharing of Deposition Expenses [ECF No. 162]. Movant Bille Allen has filed a Response [ECF No. 166] and Respondent has filed a Reply [ECF No. 170].

## I.   BACKGROUND

In April 1997, Movant Billie Jerome Allen ("Allen") was indicted for crimes arising from the March 17, 1997, armed bank robbery of the Lindell Bank and Trust Company in St. Louis, Missouri. During that robbery, bank security guard Richard Heflin suffered multiple gunshot wounds, leading to his death. In Count I of the indictment, Allen was charged with killing Mr. Heflin in the course of committing an armed bank robbery, in violation of 18 U.S.C. § 2113(a), (e), and in Count II, he was charged with using a firearm to commit a crime of violence resulting in the death of another under circumstances constituting first-degree murder, in violation of 18 U.S.C. § 924(j)(1). The United States filed a timely notice of intent to seek the death penalty. A jury found Allen guilty on both Counts. The jury returned a sentence of life

imprisonment on Count I, and a sentence of death on Count II. This Court formally sentenced Allen on June 4, 1998.

Allen appealed, and extensive appellant litigation followed. *See generally United States v. Allen*, 406 F.3d 940, 941-43 (8th Cir. 2005) (en banc) (describing procedural history). Ultimately, the United States Court of Appeals for the Eighth Circuit affirmed Allen's sentence, *id.* at 942, and the Supreme Court of the United States declined to grant review. *See United States v. Allen*, 549 U.S. 1095 (2006) (denying writ of certiorari); *United States v. Allen*, 549 U.S. 1246 (2007) (denying petition for rehearing).

Allen then challenged his sentence by filing a Motion under 28 U.S.C. § 2255 [ECF No. 60]. In this Motion, Allen alleged that numerous constitutional defects infected his sentence prior to trial, during trial, and throughout the appellate process. With one exception, this Court denied Allen's claims for relief without an evidentiary hearing [ECF No. 147]. The exception was Ground J, in which Allen alleges he received ineffective assistance of counsel at the penalty and sentencing phase of his trial because his counsel failed to properly investigate and present mitigation evidence. The Court ruled that Allen was entitled to an evidentiary hearing on Ground J. At that hearing, it is expected that Allen will present evidence in support of the allegations of ineffective assistance of counsel made in Ground J. This hearing is currently scheduled for November 29, 2011, at 9:00 a.m.

Respondent now moves for authorization to conduct depositions of 12 individuals, including Allen himself. The United States also requests that Allen -- and not the Department of Justice -- bear the costs of his counsel's attendance at these depositions, because Allen's present counsel is already court-appointed. Additionally, the United States requests that Allen be

ordered to disclose by September 30, 2011, the witnesses he will call at his hearing. Finally, the United States seeks to conduct an independent medical examination of Allen.

## II.    DEPOSITIONS

In the pending motion, the United States seeks court authorization to depose 12 individuals in advance of Allen's § 2255 evidentiary hearing. Rule 6 of the Rules Governing Section 2255 Proceedings states, in part:

> **(a) Leave of Court Required.** A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

Thus, under Rule 6(a), either party to a § 2255 motion may conduct discovery upon a showing of "good cause." *See also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.").

The Rules do not define "good cause," and the term does not appear to have been defined by case law. However, one court has stated that a respondent is "entitled to discover any information tending to undermine" the allegations of a § 2255 movant or § 2254 petitioner. *Lott v. Bradshaw*, No. 1:04-cv-822, 2005 WL 3741492 at *6 (N.D. Ohio Mar. 29 2005). In addition, a court has discretion to determine whether to allow discovery, and what forms of discovery to allow. *See* Section 2255 R. 6 advisory committee notes; R. Governing Section 2254 Cases R. 6 advisory committee notes.

To determine whether the United States has shown good cause for the requested depositions, the Court first must identify the "essential elements" of Allen's claim. *See Bracy*, 520 U.S. 899, 904 (1997) (to determine whether a § 2254 petitioner was entitled to discovery

3

under Rule 6 for his claim of judicial bias, the Court first had to determine the "essential elements" of that claim) (quotation omitted). In Ground J of his § 2255 Motion, Allen alleges that he received ineffective assistance of counsel at the sentencing phase of his trial. To make this claim, Allen recognizes the familiar test for claims of ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a litigant must make a two-part showing to succeed on a claim of ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
> *Id.* at 687.

To make this showing, Allen alleges that his trial counsel was defective in investigation and presentation of mitigation evidence at the sentencing phase of Allen's criminal trial. Allen asserts that the source of this deficiency was a misunderstanding regarding the division of duties between his trial counsel and a retained mitigation expert, thereby causing almost no work regarding mitigation evidence to be completed until about one month prior to Allen's trial. Allen's counsel immediately retained a replacement expert, but the little time that remained was insufficient to properly investigate and present mitigation evidence. For instance, Allen assets that his trial counsel was unable to develop the trust and rapport with witnesses necessary to discuss sensitive personal topics, and thus failed to uncover extensive evidence of Allen's dysfunctional and abusive upbringing. He also asserts that they lacked the time and resources to properly examine Allen, and thus failed to present evidence of Allen's numerous psychological and mental health disorders. Allen alleges these failures prejudiced his penalty phase defense.

4

Against these allegations, the United States now seeks to depose 12 individuals. They are: John Simon, Richard Sindel, Connie Supranowich, David Randell, Juanita Allen, Billy Wayne Allen,[1] Cathy Toliver, Brady Toliver, Claude McLemore, Pablo Stewart, Daniel Martell, and Movant, Billie Allen. These 12 individuals can be grouped into four distinct categories: Allen's trial counsel team; Allen's family and relatives; Allen's currently-retained experts; and Allen himself.

Allen objects to each of these depositions, arguing that the United States should not be entitled to conduct any depositions because they would be burdensome. In particular, Allen states that every member of his present § 2255 counsel and at least three of the proposed deponents live outside of the Eastern District of Missouri, and that without a continuance, it is unlikely there will be sufficient time to conduct all the requested depositions prior to Allen's hearing. As an initial matter, it can hardly be just to bar the United States from all deposition discovery based on where Allen's current counsel and experts happen to reside. In addition, Allen's counsel appears to assume this Court would not continue Allen's hearing on the basis of an authorized, but not completed, deposition. Instead, the Court finds that the "good cause" standard of Section 2255 Rule 6 is a better basis for determining whether to authorize discovery. Accordingly, the Court will now consider whether the United States has shown good cause to depose each of these groups, in turn.

*A. Allen's Trial Counsel*

The United States seeks to depose Allen's trial counsel team: Richard Sindel, John Simon, Connie Supranowich, and David Randell.

---

[1] Billy Wayne Allen is the uncle of Movant Billie Jerome Allen.

As identified above, to prevail on his claim of ineffective assistance, Allen must prove that his counsel's performance was "deficient," in that it "fell below an objective standard of reasonableness" accordingly to "prevailing professional norms" after "considering all the circumstances." *Strickland*, 466 U.S. at 687-88. In the context of the penalty phase of a criminal trial, the Supreme Court has stated that counsel has an "obligation to conduct a thorough investigation of the defendant's background." *Williams v. Taylor*, 529 U.S. 362, 396 (2000).

One of the two essential elements of Allen's Ground J allegations is that his trial counsel was deficient in this obligation. Richard Sindel was appointed as to serve as Allen's lead counsel; he retained both mitigation experts, and he presented mitigation evidence at the penalty phase of Allen's trial. *See* Decl. Richard H. Sindel, Esq. [ECF No. 94-12]. John Simon was appointed as second counsel; he had contact with Allen's family, including Juanita Allen, and he conducted mitigation interviews. *See* Decl. John Williams Simon, Esq. [ECF No. 94-13]. The actions that Richard Sindel and John Simon did and did not take in investigating and presenting mitigation evidence are among the most relevant facts of the instant proceeding.

Likewise, Connie Supranowich and David Randell are each a prime source of information as to whether Allen's trial counsel was defective. Connie Supranowich (maiden name Caspari) served as Sindel's paralegal in his representation of Allen; she had frequent contact with Allen while he was incarcerated and she conducted some investigation. *See* Decl. Connie Supranowich [ECF No. 94-47]. David Randell was the replacement mitigation expert hired by Sindel; he directed investigation and preparation of the mitigation case, interviewed members of Allen's family and observed their family dynamic, and suspected Allen had been subjected to a dysfunctional abuse household. *See* Decl. of David M. Randall, Ph.D. [ECF No. 94-26]. Both

individuals were tasked by Allen's counsel with mitigation investigation and preparation duties, and thus became intimately involved with the conduct that Allen challenges here.

Finally, as the parties have already recognized, the Court notes that by alleging ineffective assistance of counsel Allen has waived attorney-client privilege as to the matters he challenges. *See, e.g., Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003).

For these reasons, the United States has shown good cause to depose Richard Sindel, John Simon, Connie Supranowich, and David Randell. The United States may depose these individuals, subject to the conditions listed below.

*B. Allen's Family and Friends*

The United States seeks to depose members of Allen's friends and family, specifically Juanita Allen, Billy Wayne Allen, Cathy Toliver, Brady Toliver, and Claude McLemore.

The central assertion of Allen's Motion is that his trial counsel failed to discover the long history of familial abuse and neglect he suffered. Two of the primary sources of information on this claim are Juanita Allen and Billy Wayne Allen. Juanita Allen, Allen's mother, states that she smoked cigarettes and drank alcohol while she was pregnant with Allen, that she regularly beat Allen, and that Allen's trial counsel spent little time with her. *See* Decl. Juanita Petty Allen [ECF No. 94-30]. Billy Wayne Allen, Allen's uncle, states that Allen grew up in an abusive household, that Allen's mother was a heavy drinker who often threw Billy out of the house, and that Allen was introduced to crime and drugs by his family. *See* Decl. Billy Wayne Allen [ECF No. 94-33].

Other friends and family members also filed declarations that detail the abuse and neglect Allen suffered. Cathy Toliver, a friend of Allen's mother, states Allen's mother neglected and abused Allen when he was a child, and that she was never contacted by Allen's trial counsel. *See*

7

Decl. of Cathy Toliver [ECF No. 94-35]. Brady Toliver was friends with Allen until they started high school. He states that Allen's mother was always drunk, regularly abused Allen, and provided Allen no emotional support. He says he was never contacted by Allen's trial counsel. *See* Decl. of Brady Toliver [ECF No. 94-36]. Claude McLemore, Allen's cousin, states that Allen grew up without adult supervision and that Allen's mother drank heavily and often beat Allen. *See* Decl of Claude McLemore [ECF No. 94-41]. He also states that prior to testifying at Allen's trial, Allen's counsel had met with him only once and had asked only about Allen's positive characteristics. *Id.*

As identified above, one of Allen's primary allegations is that his counsel failed to discover and present this evidence of Allen's social history. As such, these witnesses provide the essential facts that underlie Allen's allegations. In addition, Allen's present § 2255 counsel has retained Drs. Pablo Stewart, M.D., and Daniel Martell, Ph.D., to examine Allen and provide their conclusions and opinions. Each of these experts expressly relied upon the declarations submitted by Allen's family and friends in developing their conclusions and opinions. *See* Decl. of Pablo Stewart, M.D. ¶ 4 [ECF No. 94-27]; Rpt. of Daniel Martell, Ph.D, p.4 [ECF No. 94-28].

For these reasons, the United States has shown good cause to depose Juanita Allen, Billy Wayne Allen, Cathy Toliver, Brady Toliver, and Claude McLemore. The United States may depose these individuals, subject to the conditions set forth below.

### *C. Experts Retained for § 2255 Hearing*

The United States seeks to depose Pablo Stewart and Daniel Martell, experts Allen's present § 2255 counsel have retained to conduct evaluations of Allen.

A second major allegation of Allen's Motion is that his trial counsel failed to uncover evidence of Allen's extensive psychological and mental health disorders. In support, Allen

8

presents Dr. Pablo Stewart, M.D., a medical doctor, professor of pyschiatry, and practicing clinical and forensic psychiatrist, who specializes in victims suffering from trauma, substance abuse and Posttraumatic Stress Disorder (PTSD). *See* Decl. Pablo Stewart, M.D. ¶ 1 [ECF No. 94-27]. Dr. Stewart evaluated Allen, in part, by conducting a two-day clinic interview of him, interviewing various members of his family, and reviewing the declarations submitted in support of his Motion. *Id.* at ¶¶ 4-6. Among other diagnoses, Dr. Stewart found that Allen has suffered from PTSD for much of his life, due to the severe physical abuse he endured from his family members. *Id.* at ¶¶ 22-28.

The second expert witness Allen expects to call is Dr. Daniel Martell, Ph.D., a forensic psychologist. *See* Rpt. by Dr. Daniel Martell, Ph.D., at 1 [ECF No. 1]. Dr. Martell personally examined and conducted extensive psychological testing on Allen over three days, and examined many other materials. *Id.* at 2-4. Dr. Martell concluded that Allen suffered from "Dementia due to Multiple Etiologies" as a result of "maternal cigarette smoking; maternal alcohol abuse; lead poisoning; recurrent febrile convulsions; uncontrolled asthma; and one or more mild head injuries." *Id.* at 32-33.

Each expert witness also states conclusions addressing the mitigation evidence that was presented at Allen's penalty trial, and what effect the un-presented evidence would have had on the jury. Dr. Stewart concludes that evidence of Allen's history of abuse and mental health disorders was available at the time of trial, but was not presented fully to the jury. *See* Decl. Pablo Stewart, M.D. ¶¶ 35-36. Instead, he states the jury was presented evidence that was inaccurate and poorly-developed. *Id.* at ¶¶ 36-37. Dr. Martell concludes that the evidence of Allen's mental health presented at trial was based on an inaccurate and incomplete factual basis, and incorporated unreliable methodologies and procedures. *Id.* at 33-34. He concludes that the

9

impact on the jury of even this flawed evidence was limited, because it was presented without first establishing the appropriate context of Allen's life history. *Id.* at 36-37.

Drs. Stewarts and Martell are experts who have drawn conclusions that are wholly different in kind and in scope from the experts who examined Allen prior to trial. They reach these conclusions based on a wide variety of sources in addition to their education and experience, including extended examinations of Allen and the declarations submitted in Allen's Motion. Their expert conclusions bear directly on both of the essential elements - deficient performance, and prejudice - that Allen must establish to prevail on his Ground J allegations.

For these reasons, the United States has shown good cause to depose Pablo Stewart and Daniel Martell. The United States may depose them, subject to the conditions set forth below.

### *D. Allen*

Finally, the United States seeks to depose Allen himself. Allen objects, contending that a deposition of him conducted by the United States would violate his Fifth Amendment right against self-incrimination, and that the United States cannot show good cause to depose him.

Like other courts to consider this issue, the Court finds that the Fifth Amendment itself is not an absolute bar to Allen's deposition. *See Bean v. Calderon*, 166 F.R.D. 452 (E.D. Cal. 1996); *Lott v. Bradshaw*, No. 1:04-cv-822, 2005 WL 3741492 (N.D. Ohio Mar. 29 2005); *Dietrich v. Schriro*, No. CV 03-229-TUC-DCB, 2007 WL 177831 (D. Ariz. Jan. 23, 2007); *Wessinger v. Cain*, No. 04-637-JJB-SCR, 2009 WL 111735 (M.D. La. Jan. 15 2009). First, the Rules of § 2254 cases and § 2255 proceedings contemplate the prosecution taking the deposition of a § 2254 petitioner or a § 2255 movant. *See* R. Governing § 2254 Cases 6(c) and advisory committee notes; *Lott*, No. 1:04-cv-822, 2005 WL 3741492 (N.D. Ohio Mar. 29 2005). In addition, the following language from *Bean* is instructive:

> The overriding purpose of criminal actions, in which the Fifth Amendment privilege is fully applicable, is to determine whether the state can prove the guilt of a defendant beyond a reasonable doubt. If the state fails in this endeavor, the truth of the matter becomes irrelevant. Habeas is different. It is a remedy that seeks to overturn miscarriages of justice. There is no other proceeding known to our law in which the truth of matters asserted is so important. That search for the truth is impeded by assertion of privileges—especially when that search for the truth is initiated by the person who now desires to assert a self-incrimination privilege.
> 166 F.R.D. 452, 455-56 (E.D. Cal. 1996).

Finally, a blanket assertion of the Fifth Amendment is appropriate only in limited circumstances:

> [I]n a [§ 2254] proceeding, a witness may not make a blanket assertion of his Fifth Amendment privilege unless the court can conclude, based on the expected testimony, that the witness could legitimately refuse to answer all relevant questions.
> *Detrich*, 2007 WL 177831, *2 (D.Ariz. 2007) (citations omitted).

That standard is not met here, where the issue before the Court is whether Allen's counsel provided ineffective assistance of counsel in the penalty phase of his trial. *See id.* ("There is nothing inherently incriminating in answering questions regarding mitigating evidence and communication with counsel about such evidence."). Accordingly, the Fifth Amendment is not an absolute bar to Allen's deposition.

Allen is correct, however, that he does retain his Fifth Amendment rights when being questioned by the United States, particularly if he were to be questioned as to his guilt. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951) (citizen may assert right against self-incrimination whenever a question from the government gives "reasonable cause to apprehend danger"); *Application of Gault*, 387 U.S. 1, 49 (1967) ("availability of the privilege [against self-incrimination] does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites."). Accordingly, Allen may raise the Fifth Amendment privilege in response to specific questions as is necessary to protect his rights concerning his guilt.

11

Next, Allen argues that the United States cannot show good cause to take Allen's deposition. On this issue, *Strickland* is instructive:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.
> *Strickland*, 466 U.S. 668, 691 (1984).

This passage is directly applicable to the facts at issue, and make it abundantly clear that Allen's communications and interactions with his counsel are highly relevant to and probative of his claim of ineffective assistance of counsel.

Finally, Allen argues that the United States has failed to show good cause because there is no evidence his trial counsel made decisions regarding mitigation evidence based on communications with or information from Allen. Allen relies upon *Wessinger*:

> "[N]owhere in the respondent's answer to the petitioner's ineffective assistance of counsel claims is there any indication that the petitioner's trial counsel based any strategic trial decision on information provided by the petitioner. Nor does the answer assert, or even infer, that any of trial counsel's strategic trial decisions were made after consulting with the petitioner, informing him of counsel's proposed course of action, or communicating with the petitioner in any way."
> *Wessinger v. Cain*, 2009 WL 111735, *2 (M.D. La. Jan. 15 2009).

The United States responds persuasively. *See* Govt's Reply (citing evidence of communications on mitigation evidence between Allen and his trial counsel [ECF No. 170]; *see also* Decl. Connie Supranowich ¶ 3 ("frequent contact with Mr. Allen at the jail"). Moreover, taking the Supreme Court's language in *Strickland* together with Allen's allegations, the United States is "entitled to

12

discover not only counsel's version of what was said, but also petitioner's version as well." *See Bean v. Calderon*, 166 F.R.D at 457 (E.D. Cal. 1996).

For these reasons, the United States has shown good cause to depose Allen and may do so, subject to the conditions listed below.

*E. Conditions of Depositions*

The United States has shown good cause to conduct the requested depositions. Those depositions are subject to the following conditions. First, both Fed. R. Civ. P. 26(b)(1) and Section 2255 R. 6 allow a court to limit the scope of discovery. Accordingly, the scope of discovery authorized here is limited to facts and claims alleged in Ground J of Allen's Motion. The questions posed by the United States must be phrased so that they are directly linked to the allegations of Ground J. *See Bean*, 166 F.R.D. at 457 (E.D. Cal. 1996). Specially, any questioning that addresses Allen's guilt or innocence is prohibited.

The United States requests authorization to take 12 depositions. Fed R. Civ. P. 30(a)(2)(A)(i) states that unless there is a stipulation between the parties, a party must obtain leave of court in order to take in excess of 10 depositions. In its Motion and Reply, the United States has not expressly requested leave to take additional depositions. The Court is satisfied with the United States' arguments that 12 depositions are required. Accordingly, the United States is authorized to take the 12 depositions indicated.

### III. DEPOSITION COSTS

Next, the United States raises the issue of depositions fees and expenses. In its initial Motion, the United States stated that each party should bear its own depositions costs. In its Reply, however, the United States wrote that it did not oppose the Department of Justice paying the costs and expenses of witnesses and experts to appear at depositions. The United States also

suggested the Court limit deposition costs and expenses by limiting Allen to no more than two attorneys per deposition. Section 2255 R. 6(c) states:

> **(c) Deposition Expenses.** If the government is granted leave to take deposition, the judge may require the government to pay the travel expenses, subsistence expenses, and fees of the moving party's attorney to attend the deposition.

First, because the request is unopposed, the United States will pay the depositions costs and expenses of each witness and expert to be deposed. Secondly, the Court finds the Untied States' suggestion to limit costs to be reasonable. Accordingly, the United States will pay the costs of up to two of Allen's attorneys to appear at each deposition.

## IV. DISCLOSURE OF WITNESS LISTS

Next, the United States requests that Allen disclose its hearing witness and exhibits by September 30, 2011. Fed. R. Civ. Pro. 26(a)(3) governs pretrial disclosures, and requires a party to disclose at least 30 days before trial the witnesses expected to be called and the exhibits and documents likely to be presented. The Court can not find any reason to depart from this standard practice. Accordingly, the parties are to exchange witness lists and exhibit and documents lists by October 28, 2011.

## V. EXAMINATION OF ALLEN

Finally, the United States seeks authorization to conduct an independent mental health examination of Allen. Allen agrees the United States is entitled to examine Allen, but seeks clarification of the scope and conditions of the examination. In particular, Allen requests that any examination of Allen be limited to matters raised in Ground J of his Motion, that his present § 2255 counsel be permitted to observe the examination or that it be recorded, and that the United States provide two-week advance notice of the time and place of the examination. In its Reply, the United States objects to the presence of Allen's counsel in the examination room, but

otherwise suggests the parties endeavor to reach an agreement on the mechanics and particulars of an examination, in part by relying upon the ABA Criminal Justice Mental Health Standards.

The Court finds the United States' suggestion to be well-taken. The Supreme Court has declared that the ABA Standards are "guides to determining what is reasonable." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (quotations and citations omitted). Accordingly, the parties are instructed to consult these Standards and use them as a basis for reaching agreement on the mechanics and other particulars of Allen's examination. The Court notes that the parties appear to have been in contact regarding Allen's examination and have been able to reach agreement on such mattters. *See* ECF No. 182 (parties' stipulation regarding mental health examination). The Court commends the parties to continue to do so.

Accordingly, the United States may conduct an independent mental health examination of Allen. Consistent with the limitations on depositions imposed above, this examination is not to delve into the guilt or innocence of Allen, but will not be otherwise restricted. If the parties cannot agree, the examination of Allen will be recorded. The United States is to provide two-weeks' notice to Allen's counsel of the time and place of his examination.

## V.     CONCLUSION

Accordingly, as set forth herein, **IT IS HEREBY ORDERED** that the United States' Motion for Authorization to Conduct Depositions and Independent Examinations and to Require Identification of Hearing Witnesses and Sharing of Deposition Expenses [ECF No. 162] is **GRANTED, in part,** and **DENIED, in part.**

Dated this 7th day of October, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE