IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BILLIE JEROME ALLEN | § | |
| Petitioner | § | |
| | § | |
| vs. | § | Cause No.  4:07-CV-27-ERW |
| | § | |
| UNITED STATES OF AMERICA | § | CAPITAL CASE |
| Respondent | § | |

**PETITIONER'S MOTION FOR RECONSIDERATION OF ORDER AUTHORIZING THE DEPOSITION OF PETITIONER OR, IN THE ALTERNATIVE, FOR ORDER CERTIFYING INTERLOCUTORY APPEAL**

Petitioner Billie Jerome Allen moves for a reconsideration of this Court's Order of October 7, 2011, insofar as that order grants the government leave to depose Mr. Allen.  He respectfully urges this Court to reconsider its ruling, and either deny the Government's request to depose him, amend the order to recognize that the full extent of his Fifth Amendment rights apply during the deposition. or, in the alternative, amend the order to certify an interlocutory appeal under 28 U.S.C. §1292(b).  In support of this motion, Mr. Allen states the following:

On August 23, 2011, the Government filed a discovery motion [ECF No. 162].  Among other requests, the government moved to depose Petitioner Billie Allen.  On August 30, 2011, Mr. Allen responded with a partial opposition to the government's discovery motion, arguing against the government's motion to depose Mr. Allen.  *See* Petitioner's Partial Opposition at 6-8 [ECF 166].  On September 1, 2011, the Government filed a Reply [ECF 170].

On October 7, 2011, the District Court entered an Order granting, *inter alia*, the government's motion to depose Mr. Allen [ECF 188, hereafter "Order"].  The Court reasoned: (1) the Fifth Amendment does not bar the deposition, because during the deposition Allen can assert his Fifth Amendment privilege "as is necessary to protect his rights concerning his guilt"; (2) the Government has shown good cause to take Allen's deposition, because "Allen's

1

communications and interactions with his counsel are highly relevant and probative of his claim of ineffective assistance of counsel," and; (3) relying upon a case from the Eastern District of California, "The United States is 'entitled to discover not only counsel's version of what was said, but also petitioner's version as well.'" Order at 12-13.  This Court's Order limits the scope of the deposition to Ground J of Mr. Allen's §2255 Motion,[1] and states, "any questioning that addresses Allen's guilt or innocence is prohibited." Order at 13.

**I.     This Court Should Reconsider and Deny the Government's Request to Depose Mr. Allen**.

The Court has recognized that Mr. Allen retains his Fifth Amendment rights when being questioned by the Government.  Order at 11.  But the Court implies that the privilege extends only to questions "concerning his guilt."[2] *Id.*  The protections of the Fifth Amendment apply equally to questions concerning sentence.  Under *Estelle v. Smith*, 451 U.S. 454, 463 (1981), "Any effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." This is because

> In this case, the ultimate penalty of death was a potential consequence of what respondent told the examining psychiatrist. Just as the Fifth Amendment prevents a criminal defendant from being made " 'the deluded instrument of his own conviction,' " *Culombe v. Connecticut*, [367 U.S 568,] 581, [1961] quoting 2 Hawkins, Pleas of the Crown 595 (8th ed. 1824), it protects him as well from being made the "deluded instrument" of his own execution.
> *Estelle* at 462.

The Supreme Court extended the Fifth Amendment right to refuse to testify about *any* sentencing fact, whether or not the death penalty was at issue, in *Mitchell v. United States*, 526

---

[1]Ground J asserts that "Mr. Allen was denied effective assistance of counsel because of failure to investigate and present evidence at the penalty phase of his trial."

[2]Although it is not specified, Mr. Allen assumes that by "guilt" the Court is referring to his culpability for the offense, and not to his sentence.

U.S. 314 (1999).  There, the Court held that in sentencing the defendant after her plea of guilty, the trial court could not draw adverse inferences from her failure to provide details of her crimes at sentencing.  The Court held, "This Court has already rejected the proposition that 'incrimination is complete once guilt has been adjudicated,'  *Estelle v. Smith*, 451 U.S. 454, 462. . . (1981), and we reject it again today."  *Id.* at 325.  The Court went on to hold that the privilege ends only when "no adverse consequences can be visited upon the convicted person by further testimony."  *Id.* at 326.  Quoting *Estelle v. Smith*, the Court emphasized, "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'"  *Id.*at 326, citing *Estelle v. Smith*, 451 U.S. 454, 462 (1981).

Significantly, the Court in *Mitchell* held that Ms. Mitchell was entitled to assert her Fifth Amendment privilege at sentencing, and to be free from any adverse inference related to that assertion, even though she had affirmatively waived the privilege as to guilt by entering a plea of guilty.  Mr Allen, of course, did not testify at either phase of his trial and has never waived his Fifth Amendment testimonial privilege at all. Thus, under the Fifth Amendment, Mr. Allen cannot be compelled to testify concerning any fact that could be used by the prosecution in support of a death sentence.  .

The federal death penalty statute allows the Government to raise non-statutory aggravating factors and to present "any evidence" in support of those aggravating factors, outside the rules of admissibility in a criminal trial.  In light of the protection prescribed by *Estelle v. Smith*, limiting a deposition of Mr. Allen to penalty-phase issues does not begin to solve the constitutional problem.

3

Almost any question to Mr. Allen about penalty phase preparations could implicate his absolute constitutional privilege to refrain from statements that could be used to impose a sentence of death.  The breadth of the possible aggravating circumstances in a federal capital sentencing, and the fact that traditional rules of evidence do not apply at a federal capital sentencing, provide no assurance that a statement by Mr. Allen in these proceedings would not be used against him in a future re-sentencing proceeding.

The federal death penalty statute enumerates sixteen (16) aggravating factors which could merit the death penalty for capital homicide. 18 U.S.C. §3592(c), but also authorizes the Government to present evidence on other, non-statutory aggravating circumstances.  *Id.* ("The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.").  The statute does not limit the evidence the prosecution can present at the penalty hearing:

> At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. . . . **The government may present any information relevant to an aggravating factor** for which notice has been provided under subsection (a). **Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials** except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. §3593.  In addition to the virtually unlimited scope of aggravating evidence, the Government may also rebut mitigating factors presented by the defense:

> The government and the defendant **shall be permitted to rebut any information received at the hearing**, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.

4

*Id.* Upon a finding of at least one aggravating factor, the jury is required to consider a death sentence, and, if any mitigating factors have been found, to determine whether the aggravating factor(s) outweigh the mitigating factor(s):

> the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. §3593(e)(3).

If Mr. Allen is granted relief under 28 U.S.C. §2255, he may be entitled to a new penalty phase hearing at which any statements made in connection with this proceeding could be used against him, either directly or as a basis for the development of further government evidence in support of a death sentence.  In addition to the possibility of a new *federal* penalty phase hearing, Mr. Allen remains subject to prosecution for capital murder in Missouri. See Mo. Rev. Stat. §565.020.

The Fifth Amendment privilege is broadly construed because

> The Fifth Amendment privilege against self-incrimination is one of the core concepts of our adversary judicial system. The privilege is a shield against the dangers of an inquisitorial system of jurisprudence. As Justice Blatchford stated in *Counselman v. Hitchcock*, 142 U.S. 547, 562. . . (1892), the Fifth Amendment privilege "must have a broad construction in favor of the right which it was intended to secure."

*In Re Corrugated Container Antitrust Litigation,* 661 F.2d 1145, 1149-1450 (7th Cir. 1981). In *Corrugated Container*, the court allowed a witness to claim the Fifth Amendment privilege, holding that the witness need not prove the likelihood of prosecution.  See also *Hoffman v. United States*, 341 U.S. 479, 486 (1951), holding that the privilege protects not only direct admissions of guilt but also to disclosures which would "furnish a link in the chain of

5

evidence needed to prosecute the claimant. . . .”; *United States v. Rodriguez*, 706 F.2d 31, 36 (2nd Cir. 1983) (scope of waiver after conviction must be “carefully limited.”)

Given the scope of the Fifth Amendment privilege, under *Estelle v. Smith*, 451 U.S. 454, 462 (1981) and *Mitchell v. United States*, 526 U.S. 314 (1999), Mr. Allen has a privilege against disclosing any fact which the Government may use in support of a statutory or non-statutory aggravating factor or in rebuttal of a mitigating factor.  Not only does the sentencing statute allow the Government to present and argue non-statutory aggravating circumstances and rebuttal of mitigating circumstances, but it also allows for the admissibility of evidence “regardless of its admissibility under the rules.”  These wide-open provisions underscore the importance of protecting Mr. Allen’s Fifth Amendment rights.

The Court’s Order prohibiting questioning on Mr. Allen’s “guilt or innocence” does not sufficiently protect his rights.  The Fifth Amendment prevents Mr. Allen from being made the “deluded instrument of his own execution,” 451 U.S. at 462-63, by providing testimony that could be used to establish aggravating factors or rebut mitigating factors at any future sentencing hearing.  The government’s argument that it is entitled to hear Mr. Allen’s “version” of what he told his lawyers must give way to his privilege against self-incrimination.  Once the cat is out of the bag as to what information he provided, there is no way to limit its use in any future proceeding.  For this reason, this Court should reconsider its order allowing the deposition of Mr. Allen.

### II. This Court should reconsider its determination that there is “good cause” to take Mr. Allen’s deposition in light of Mr. Allen’s Fifth Amendment privilege.

The Government has not yet shown good cause for this discovery.  As the district court in *Wessinger v. Cain*, 2009 WL 11735, 2 (E.D. La. 2009) (unpub.) noted, where there is no factual

6

dispute regarding a habeas petitioner's communications with trial counsel, there is no good cause for discovery.  While the government here (unlike in *Wessinger*) has claimed that trial counsel's strategic decisions were based on communications with Mr. Allen, such assertions are not in trial counsel's sworn declarations and there is no other factual basis for them.  Thus, there is no disputed issue of fact at present.  Only after trial counsel's depositions will it be clear whether any communications with Mr. Allen are in dispute.  At that time, if facts are in dispute, the Government may move again to depose Mr. Allen, arguing that good cause is shown for discovery.

This approach has the advantage of avoiding further litigation over the scope of Mr. Allen's Fifth Amendment privilege until and unless discovery determines whether his deposition is necessary.

### III. In the alternative, if this Court authorizes the deposition of Mr. Allen, it should certify the issue for interlocutory appeal.

Under 28 U.S.C. §1292(b), a litigant may petition the court of appeals for permission to file an interlocutory appeal is proper as to an order entered before final judgment if the district judge certifies that in his opinion the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ." The issue of whether Mr. Allen's deposition should be taken meets these criteria.

In light of *Estelle v. Smith*, 451 U.S. 454, 462 (1981)and *Mitchell v. United States*, 526 U.S. 314 (1999), it is clear that this Court's decision that the Government may take Mr. Allen's deposition and that he may claim his Fifth Amendment privilege only as to matters bearing on his guilt of the charged offenses is subject to a difference of opinion. If this Court declines to

7

certify an interlocutory appeal, Mr. Allen's counsel will be required, in order to litigate the issue, either to seek extraordinary relief in the court of appeals or to instruct Mr. Allen to refuse to answer any question as to which he can, under *Estelle* and *Mitchell*, assert a Fifth Amendment privilege, expose him to sanctions, and then appeal those sanctions to the court of appeals. Thus, to the extent to which the government wishes to rely on Mr. Allen's testimony, permitting an interlocutory appeal may materially advance the ultimate termination of the litigation.

## CONCLUSION

Mr. Allen respectfully requests that the Court reconsider in part its Order of October 7, 2011, either to deny the request to depose Petitioner Allen, or to recognize the full scope of Petitioner's Fifth Amendment privilege, which extends to any questions the Government may ask that would produce answers that could be used to prove an aggravating circumstance or to rebut a mitigating circumstance. In the alternative, this Court should amend its order to certify that this issue meets the requirements of 28 U.S.C. §1292(b) for an interlocutory appeal.

Respectfully submitted,

/s Elizabeth Unger Carlyle
Elizabeth Unger Carlyle #41930MO
P.O. Box 30418
Kansas City, MO  64112
(816)525-6540
elizcar@lawalumni.neu.edu

Joseph M. Cleary #534292
Collignon & Dietrick
310 N. Alabama, Ste. 250
Indianapolis, IN  46202
(317) 637-1000
jcleary498@aol.com

James Henry Moreno
Eric John Montroy
Assistant Federal Defenders
Capital Habeas Corpus Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West- The Curtis Center
Philadelphia, P A 191 06
215-928-05 20
Fax:215-928-0826
James_ Moreno@fd.org
Eric_Montroy@fd.org

ATTORNEYS FOR PETITIONER

9

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been served upon counsel for respondent, Mr. Joseph M. Landolt, Asst. U. S. Attorney, Mr. Steven Holtshouser, Asst, U.S. Attorney, and Ms. Carrie Costantin, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102, by filing with the Court's electronic filing system on October 21, 2011.

/s/ Elizabeth Unger Carlyle
Elizabeth Unger Carlyle