1

**RECEIVED**

JAN 1 6 2014

**BY MAIL**

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI EASTERN
DIVISION

BILLIE ALLEN,

      Movant,

           No. 4:07 CV 27 ERW

  v.

UNITED STATES OF AMERICA,

      Respondent.

## PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE

The government has responded to my pro se motion [Document 363], filed in response
to the Court's Memorandum and order, where I would assert 1) Fraud On The Court; 2) Conflict
Of Interest; 3)Further DNA testing to prevent a Miscarriage Of Justice; and 4) Cumulative
effect of trial counsel's ineffectiveness. All claims which deserve relief.

### A.     FRAUD ON THE COURT

Typically, motions to set aside judgments are subject to a one-year bar. Fed. R. Civ. P.
60(b)(3). If however, a plaintiff alleges that a fraud was committed against the court,
as specified in this motion, there is no such bar. Fed. R. Civ. P. 60(d)(3) states: "This
rule does not limit a court's power to . . . set aside a judgment for fraud on the court."
Fed. R. Civ. P. 60(d)(3). **Rule 60(d)(3)** thus allows claimants to escape **Rule 60(c)(1)**'s
one-year statue of limitations imposed on 60(b)(3) motions for fraud, and allege fraud
on the court, regardless of the passage of time. See Parkhurst v. Pittsburgh Paints. Inc.,
No. 10-8026, 399 Fed. Appx. 341, 2010. App. LEXIS 21554, 2010 WL 4069430, at *1 (10th Cir.
Oct. 19, 2010).

## FRAUD ON THE COURT: RULE 60(C)(1) DOESN'T APPLY

The facts presented in this motion are very hard, if not impossible to dispute. When given
the chance to dispute or challenge the merits of the Fraud On The Court claim, the government
would instead, recharacterize the issue as the "motion to suppress". They also contend that
the facts set out in this motion were already considered by, both this Court and The Court
Of Appeals.

The government is wrong in recharacterizing my claim when I clearly state and show that
the claim rests on the "effect" that the actions and lies played in interrupting the judicial
machinery, denying it it's role to be impartial and make accurate evidentuary rulings, and
the "effect" that the lies have and continue to have on both this Court and The Court Of
Appeal's rulings. It's clear that the two differ greatly. Never has either Court taken into
consideration the "impact" of the action and lies put before either Court.

Fraud On The Court claims are distinct from fraud between parties. Fraud On The Court claims
"merit seperate analysis..."  Rule 60(c)(1) doesn't apply.

## SCHEMES TO COMMITTED A FRAUD ON THE COURT

From the beginning, Henderson knew that his testimony at the suppression hearing, under
oath, was a lie and that his testimony would be used in a evidentuary  finding. It was, and
Henderson's lies helped the Magistrate judge, this Court and The Court of Appeals all come
to the conclusion that "reminders" were given when there was no way that any of the officers
who said that they did so could have done as they said.

When Henderson himself was asked whether he actually knew of my request for counsel, before
the supposed statement, he would state:

### HENDERSON

A. No. No, I was not sir.

Testimony at trial is a clear indication that Henderson knew that his testimony would impact
the Magistrate judge's rulings, interfere with the Court's ability to be fair and impartial,
in turn, preventing the judicial machinery from performing its task because it was lead
to believe a lie.

Henderson's lies would be supported by Harper's, who would testify at the suppression hearing that:

### HARPER

A. I'd been informed that he had requested an attorney "prior" to the lineup and, therefore, I was told not to talk to him.

Q. Okay. Who told you that?

A. That would have been LIEUTENANT RON HENDERSON.

The scheme to deceive the Court(s) into making rulings based on lies, prejudice me from receiving a fair trial, impartial suppression hearing, and a fair appeal was set in motion the day Henderson took the stand at the suppression hearing and decided to lie. That fact couldn't be any more clearer.

### THE GOVERNMENT'S ROLE IN THE SCHEME

At trial, even after Henderson confessed to him not knowing of my request for counsel, the government didn't try to right the wrong. They didn't appeal to this Court to reconsider its ruling to allow the "supposed" confession into trial, being that this Court would rely on the Magistrate's ruling, which relied on the lies Henderson and Harper told. If anything, they would exploit the situation further, as seen in the closing statement's to the jury:

### U.S. ATTORNEY'S CLOSING ARGUMENT

"After the lineup, Detective Harper tells the defendant, "You've been identified in the lineup" and he says, "I want to talk to Lieutenant Henderson" and Harper goes by the book and says, "I'm sorry, you can't talk to him, you've asked for a lawyer, we can't talk to you...""

They go on to further say:

"And he later explained that he found out later [meaning Henderson] from Sergeant Ghrist and that's why he told Harper, "Don't talk to the defendant, he's invoked his right to a lawyer." They did everything just the way the law requires."

4

Even with Henderson admitting that he never knew of my request for counsel, that didn't stop the government from latching onto the lies that were told at the suppression hearing and presenting them to the jury as if they were the truth.

### THE GOVERNMENT'S APPEAL BRIEF

Not once in the Government's appeal do they hint to Henderson's confession at trial that he never knew of my request for counsel. They would state:

1. "Because of the word limitations of this brief, the Government adopts the facts as set out in the Memorandum of the Magistrate Judge Thomas C. Mummert which accompanied his Order and Report and Recommendation of United States Magistrate Judge..."

2. "It is abundantly clear under the totality of the circumstances presented herein that Allen's statement to Lt. Henderson came only after Allen reinitiated contact with police..."

3. "After Allen invoked his Miranda rights, investigators never initiated questioning but continued "to remind Allen of his decision..."

4. "Similarly, when Detective Harper informed Allen after the lineup that he had been identified Harper initially declined Allen's request to speak about the crime "by reminding Allen" that the police could not talk to him about the incident because he had requested an attorney.'

### THE GOVERNMENT'S SUR_REPLY TO TRAVERSE

Still aware of Henderson's confession that he never knew of my request for counsel, before the "supposed" confession, they would continue to state:

1. After Allen was identified in the lineup by several witnesses, a detective informed him that he had been identified but the detective did not question Allen. Allen told the detective that he wanted to talk but the detective told him that the police could not talk to him because he had "previously requested an attorney. Allen insisted that he did not want an attorney and asked to speak with Lt. Ron Henderson, who he knew from a prior investigation."

2. At the hearing and trial, both witnesses testified that they "

5

knew that Allen had previously invoked his **Miranda** rights but that"
Allen had requested to speak to Lieutenant Henderson after Allen had
been identified in the lineup.

It would be at every stage of the appeal process that the government would put forth the lies
of Harper and Henderson as if they were the truth. Knowing that Henderson's confession
at trial proved that everything they were citing was a lie.

In United States v. Hampton, 396 BR.28 (Oct. 16, 2008) the court stated that "misrepresentation
denotes not only written or spoken words, but also any other conduct that amounts to an
assertion not in accordance with the truth." It went on to further state: "...a series
of events, activities or communications which, when considered collectively, create a false
and misleading set of circumstances."

The government's willful disregard for the truth and misrepresentation of the facts in
this case have clearly shown their scheme to decieve the Court(s). And from the rulings
and the facts used by the Court(s), the scheme seems to have worked.


## THE SCHEME'S EFFECT ON THIS COURT

This Court would rely on the Magistrate's findings, in which the Court would cite the
"supposed reminders" that couldn't have taken place and the "supposed prior relationship"
that Henderson and I had. This Court would state:

> 1. The Government's evidence further showed that the following morning,
> Allen participated in a lineup but declined to have counsel present,
> and that after he was identified, a detective declined Allen's request
> to "talk about it" based "on Allen's previous request for an attorney,
> whereupon Allen responded that he did not want an attorney and wished
> to speak with Lt. Henderson.

The impact of Henderson and Harper's testimony and the lies that they presented were used
in this Court's findings and rulings. This Court would cite a "supposed reminder" to justify
it ruling against me, yet Henderson's confession to not knowing about the request shows
otherwise. Henderson, Harper, and the government citing their lies in their briefs are to blame.
But none the less, the Court was deceived.

## THE SCHEME'S EFFECT ON THE COURT OF APPEALS

1. We first briefly "recite" the facts surrounding Allen's arrest, interrogation, and confession, based "on the Magistrate judge's findings, which were adopted by the district court." (See Allen App., Vol. 1 at 114-80, 192-93.)

2. ...and asked Allen if, "in light of his request for counsel..."

3. ...at which point Allen asked to speak with Lieutenant Henderson, "an officer Allen knew from an earlier case." Prior to confessing to Henderson, Allen was "reminded of his earlier request for counsel and again advised of his Miranda rights."

4. We have little difficulty determining that Allen's subsequent self-initiated request to speak to Henderson amounted to a valid waiver of his rights to have counsel.

5. ...Allen was "reminded" of his request for counsel and given another explanation of his Fifth Amendment rights...

The impact of Harper and Henderson's lies and the government's citing them in their brief can't be denied. The Magistrate, this Court, and The Court of appeals based findings on their lies and let them define the rulings of the Court(s). The lasting effects of the successful scheme to commit Fraud On The Court in this case can be read on WestLaw, LEXIS, and throughout law books. One looking to deny the suppression of a supposed confession under similar circumstances only has to look up my case and use it. Though the facts in which the decision is based on is a lie.

## CONCLUSION

Even if one was to conclude that the government was unaware that Haper and Henderson were lying at the suppression hearing, they became aware of that fact at trial. They would exploit my attorney's failure to object and/or raise a fraud on the court claim at that time, by using the lies in their closing statement to the jury and throughout their appeals.

The government's briefs clearly direct the Court(s) to consider "supposed reminders" which never happened and to consider "prior relationships" between Henderson and I that never

happened. Their witnesses would confess that they had lied and their own files showed that testimony given was a lie, but they didn't care. The evidence is overwhelming on this point.

What's the use of one taking an oath to tell "the truth, the whole truth and nothing but the truth, SO HELP THEM GOD", if all one has to do is lie and that lie be rewarded as if it were the truth? The oath is a key element in mantaining a just judicial machinery. One who decides to defy the oath that they take to tell the truth; they too are defying the Court.

A suppression hearing is the second line of defense in the judicial machinery after the grand jury. The suppression hearing's purpose is to ensure that no trial is unfair or tainted with evidence which is deemed inadmissable under the law. The only way for a judge to maintain this gate-keeping function is for the Court to hear the evidence, the truth in one's testimony, and use both to make a correct and just ruling. But a lie, like those told in this case under oath, have and will continue to prevent the judicial machinery from functioning as it should until the fraud is corrected.

## THE COURT'S POWER TO SET ASIDE THE JUDGMENT

While few circuits have articulated express elements of fraud on the court, the doctrine by the Eighth Circuit describes Fraud On The Court "as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." Pfizer, Inc. v. Int'l Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976); see also Herring v. United States, 424 F.3d 384, 386 (3rd Cir. 2005)(stating the elements for Fraud On The Court in the Third Circuit as "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court."

The power to correct the judgment in this case rests in Rule 60(d)(3), which "confirms" that Rule 60 "does not limit a Court's power to . . . set aside a judgment for Fraud On The Court."

I plea for the Court to right this wrong and grant relief.

[footnote: though a supposed confession was introduced into evidence, and the supposed notes from this supposed confession were "intentionally destroyed"; there was never a confession by me to police where I'd admit to taking part in the robbery or murder of Mr.Heflin!]

8

## B.   CONFLICT OF INTEREST

The government relies on <u>Cuyler</u>, <u>Mickens</u>, <u>Noe</u>, <u>Morelos</u>, and even <u>Winfield</u> to challenge my claim, but all hold no weight under the circumstances which I've presented. These cases either deal with "non-notices" to the Court, where the Court held an inquiry, where the Court applied Cuyler's "non-notice" standards, or where the defendant made a voluntary waiver of his right to conflict-free representation. None of which apply here.

Even if the government was correct, which they are not, and i had to "identify alternative defense strategy's", or show that counsel's failure to purse a strategy was "linked to the actual conflict", one only has to look at the 20+ things that I highlighted in "What Counsel Didn't Do" to satisfy that requirement.

The complete breakdown in communication between Mr. Sindel and I contributed to his being ineffective and denying me of my Sixth Amendment right to conflict -free representation. This conflict kept Mr. Sindel from investigating credible facts, evidence and leads. It too would keep him from presenting these same facts and evidence at my trial. Even when these facts and evidence would've challenged the government's case and changed the outcome of the trial.

Had an inquiry been done, the record would've further supported my "notice" to the Court that there was a problem between Mr. Sindel and I that warranted him being removed from my case, and prevented me from going forward to trial without conflict free representation.

### NOTICE TO COURT

<u>Holloway v. Arkansas</u>, 435 U.S. 475(1980), addressed situations where the trial Court  is made aware of a <u>potential conflict</u> of interest before, during, or in some instances, after trial. Under those circumstances, the Court held that trial Court has a duty to conduct a "searching inquiry into the <u>possibility</u> of a constitutional violation arising from that conflict." <u>See</u> <u>Wood v. Georgia</u>, 450 U.S. 261(1981).

While my ingnorance of the law kept me from using legal terms, such as, "conflict of interes "ineffective assistance of counsel", or "Sixth Amendment violation"; one can't deny that writing the Court and asking that counsel be removed from a capital case wasn't a "notice." <u>Wood's</u> has stated, "the trial Court <u>must</u> make an inquiry into that conflict, <u>regardless of its nature."</u>

The government makes light of counsel's "notice" to the Court in the "Motion For A New Trial", where it's clear in counsel(s) language where they state:

> "The District Court erred, clearly erred, or abused its discrection
> in denying the defendant's motion for appointment of different counsel
> (Doc. Nos. 95 & 97), in violation of the First, Fifth, Sixth, and
> Eighth Amendments."

I asked that counsel be removed, counsel said that counsel should've been removed; how much more straight to the point can one get that something was wrong?

The record in this case is clear. I did what was required of me under the law and gave the Court "notice" that there was a problem between Mr. sindel and I and that I wanted him removed from my capital case. Is one suppose to believe, as the government tries to explain, that I was asking for Mr. Sindel to be removed as counsel because we were getting along/happy with each other, that I was happy he was representing me, or that I was happy with his represention of me? Did counsel say the Court erred in not taking him off the case because he felt that was no problems that effected my defense?

Under Koste v. Dormire, 260 F.3d 872, 879 (8th Cir. 2001); Atley v. Ault, 191 F.3d 865, 870 n. 4 (8th Cir. 1999); and United States v. Horton, 845 F.2d 1414 (7th Cir. 1988), the Court's would state "the trial court is 'obligated' to conduct an inquiry, regardless of the nature of the conflict.

## RELATE BACK

The government asserts that my conflict claim doesn't "relate back" to the timely filed Section 2255 Motion. They are incorrect, being that in my 2255 I'd cite counsel's ineffectiveness for failure to investigate viable leads in my case, present DNA and other scientific evidence; all which spawned from the conflict that counsel and I were having. All the things that counsel didn't do, which I raised in my 2255 and that I raised in this motion all "relate back" to counsel's ineffectiveness, which arises out of the same conduct, transaction, and occurrence. The conflict being the link to it all. In turn, Rule 15(c) allows this issue to be heard and bypass the time limit for filing a new claim.

## CONCLUSION

There's no denying that there's a record of the Court receiving a "notice" that there was a conflict, or the possibility of one between Mr. Sindel and myself. I would clearly make my "notice" to the Court by writing the Court and saying that I wanted the Court to appoint new counsel. I didn't do this because I was happy with counsel. I didn't do this because I felt that counsel wasn't deficient. I didn't do this because there's wasn't a conflict between Mr. Sindel and myself. I asked the Court to replace counsel because there was a problem and I knew that as counsel, I wouldn't receive effective assistance of counsel.

While one can deem that my request to have counsel removed echoed the same request of many who are just unhappy with their attorneys for reasons that don't rise to the level where counsel should be replaced; counsel(s) in this case would go on record in the "Motion for a new trial" and tell the Court that "It erred, clearly erred, or abused its descrection in denying the defendant's motion  for appointment of different counsel (Doc. Nos. 95 & 97), in violation of the First, Fifth, Sixth, and Eighth Amendments."

"Notice" that there was a problem between Mr. Sindel and I, which both of us felt required Mr. Sindel being removed from the case, was given to the Court. That notice was ignored and denied. Koste and Atley require the Court, when made aware of a "possible conflict", to inquire. That wasn't done here. The record reflects that.

The government makes a weak assertion that the claim should be denied because it doesn't "realate back" to the claims filed within my timely filed Section 2255 motion. The ineffectiv assistance of counsel claims that we raised in my 2255 spawned from the conflict between Mr. Sindel and I, which arises out of the same conduct, transaction, and occurence. The conflict being the link to it all. Satisfying Rule 15(c) and granting the  Court power to rule on the claim.

Reversal in this case is warranted. Koste, Wood, Holloway and Atley support that being done

At the least, a full hearing on this matter is warranted. The court can then be presented with evidence and testimony to determine whether counsel should've been removed. Because as the record stands, me asking for appointment of new counsel and counsel saying that the Court should've appointed new counsel, clearly shows that counsel should've been removed in order to prevent a violation of my Sixth Amendment right to a fair trial, effective assistance of counsel, and conflict free counsel.

11

### C.      FURTHER DNA TESTING REQUIRED TO PREVENT

### A MISCARRIAGE OF JUSTICE

The government's response to this claim doesn't dispute or challenge the facts given to show that further DNA testing of evidence in this case shouldn't be done, they simplt cite the Court's Memorandum and Order. They also don't dispute or challenge testing of the "Damp Rag", which was found elsewhere and tested positive for traces of blood.

While the Court did consider some of the facts, which I've adopted into this motion, it hasn't considered a majority of the facts that I've presented, how they tie to J.B., nor has the Court considered testing of the "Damp Rag".

### THE INNOCENCE PROTECTION ACT

Under The Innocence Protection Act, an individual serving a federal sentence may move the sentencing Court for DNA testing of specific evidence. 18 U.S.C. 3600.

The DNA, which was tested by the government, was tested in hopes of linking me to the crime scene. The results would exclude me; automaticly calling into question my involvement in the case. Why else try to link me to the evidence? With the results excluding me, the governmer contends that both the blood and the "White strap" belong to Holder. Why test it against me then if the government is "now" so sure?

Do to the fact that there are new methods of testing being done, which are different than the testing done in 1997, and the technology is substantially more probative than prior DNA testing, I'd request to the Court to allow further testing be done on the evidence in this case to prevent a misscarriage of justice.

### "WHITE STRAP" AND THE "DAMP RAG"

The government has come to the conclusion that since the results from the DNA that was tested against me and the victim, (Mr. Heflin) came back negative, it automaticly has to be that of Holder. I disagree and the facts set out in my motion clearly show that there's enough facts to support that someone other than Holder could've left their DNA at the crime scene. That being said, how do they explain the "Damp Rag" that was found elsewhere, which had traces of blood on it? It wasn't found at the crash site; so one can't say that it's Holder'

12

There's still some questions about the "White Strap" being that of Jerry Bostic. Because they arrested holder with a bulletproof vest on, that doesn't exclude the second person from wearing one. Many people buy bulletproof vests from other sources.

The fact that witnesses saw a suspect matching the description of the person police were looking for, and that same suspect had a visable injury to the hand, shows why testing should be done. If I "supposedly got a ride" from two park workers, then who's running through the park with a cut on their hand?

A report in the government's files would show that there was another place where DNA was found. (Though, according to the government's own files, there seemed to be several different pieces of evidence that would have traces of blood on them.) The report which I speak of is a technicians report of "1 'Damp Rag'" , found in "driver's seat of vehicle." The report goes on to say that "DNA testing would be done." The tests would reveal traces of blood. But no tests have ever been done against, Holder, Mr. Heflin, or me. Because this "Damp Rag", with blood on it couldn't be that of Holder, one has to ask who's blood is it?

Witnesses saw someone with an injury to their hand. DNA would be found at different places. There are more reasons to do the testing than there are reasons not to do them. What is the government afraid of? Does DNA results only matter when they come back positive?

## CONCLUSION

I've laid out the reasons why there should be more testing done on the DNA found in this case and why the results  should be presented to a jury for their determination, instead of speculating, without proof, that the results wouldn't change their minds. One can never know unless they are asked to consider it.

In light of the cases where one was found to be guilty and where one was said to have "overwhelming evidence" against them, but would later be exonerated; I can only hope that the Court will alllow testing in this case. Because mistakes do happen. Even when it seems that one is guilty and the evidence overwhelming....

13

D.      THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S
        INEFFECTIVENESS, WHICH DENIED ME A FAIR TRIAL
        CONFLICT FREE COUNSEL, AND WOULD RESULT IN A
        MISCARRIAGE OF JUSTICE

The government's assertion is incorrect and misleading as they try to suggest that I'm asking the court to consider the cumulative effect of all my issues to determine whther counsel was ineffective. I simply asked the Court to examine the cumulative effect of counsel's ineffectiveness "within this single issue." While I may refer to and use some of the evidence and/or circumstances from some of the other issues (because they fit within this claim); my other claims can stand on their own and should be reviewed seperately.

## SATISFYING STRICKLAND'S (2) PRONGS

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674(1984), states that a petitioner alleging ineffective assistance of counsel must make two showings. Id. at 687. First, the petitioner must "show that counsel's performance was deficient" in that it "fell below an objective standard of reasonableness."

Counsel's performance in this case was deficient and "fell below an objective standard of reasonableness", when counsel abandoned any and all investigation into the government's case, viable evidence, and viable leads. In Reynoso v. Giurbino, 462 F.3d 1099, (9th Cir. 2006), the Court would state that "counsel cannot be said to have made a tactical decision without 'first' procuring the information necessary to make such a decision."

Counsel's defense relied and revolved around what the government was going to present. Counsel didn't do his own investigation into any of the government witnesses, though he should have, being that witnesses would change their stories several times before taking the stand. The changes in testimony clearly threw defense counsel off, being that he had lied on the government's files as his investigation. In Parkus v. Delo, 33 F.3d 933, 938-39 n. 6 (8th Cir. 1994) the court remanded for an evidentiary hearing to address counsel's failure to thoroughly investigate guilt phase defense).

Counsel's total reliance on the government's files clearly deemed counsel's performance deficient. In Stanby v. Bartley, 465 F. 3d 810 (7th Cir. 2006) the Court would find counsel's performance deficient when, ("counsel prepare for trial by reading the statement's that perspective witnesses had given to police . . . [but] did not interview them.")

14

There is no record of counsel doing his own investigation into the guilt phase of the case, though counsel would state that that was his main focus. There's no record of counsel sending an investigator out into the field for guilt phase. I don't recall an investigator visiting me. The only person counsel had was a paralegal, who he just hired, who had no experience in investigation, but who too didn't investigate guilt phase defense.

### SATISYING STRICKLAND'S PREJUDICE PRONG

The conflict of interest between counsel and I affected counsel's performance. I'd ask counsel to investigate the things that I've directed the Court to look at in this issue and counsel would simply say that he wasn't going to look into any of it. Whenever I brought something to counsel's attention, counsel simply ignored it. This created the conflict between counsel and I and there was a complete breakdown in communication.

The Holloway Court stated that the right to have conflict-free assistance of counsel "is too fundamental and absolute to allow Courts to indulge in nice calculations as to the amount of prejudice arising from its denial." Me asking for counsel to be removed and counsel saying that he should've been removed was because there was a conflict. This conflict affected counsel's performance and the prejudice was a violation of my Sixth Amendment right to conflict-free counsel and a fair trial.

"A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his clients factual innocence, 'or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance." Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006) (quoting Lord v. Wood, 184 F.3d 1083, 1093 (9th Cir. 1999)). The Supreme Court has long "referred to [The American Bar Associan ("ABA") Standards for criminal Justice] as guides to determining what is reasonable." Rompilla v. Beard, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005).

Counsel's conflict with me prevented counsel from investigating facts and evidence and prevented him from presenting those facts and evidence in trial. Him not doing so establishes prejudice.

I'd present to this Court over 20 available leads, facts, and in some cases, evidence which any competent attorney would've presented and investigated. To simply not investigate the things that I've put before the Court, renders deficient performance. Two of the simpliest things that counsel could've done was:

1. Prove that charges the government would use to establish;
    a. Motive
    b. Opportunity
    c. preparation
    d. Planning
    e. Knowledge

weren't true. Special Agent Jan Hartman would even testify that she had talked to the officer who made the arrest on that case, and how the officer remembered me and how the officer remembered reading me my rights. None of which were true, and all i can prove not to be so.

2. Present the files from Marquise's murder to attack the credibility of officer's as they tried to show that I had a prior relationship with Henderson from Marquise's murder.

In United States v. Stangeland, 2009 U.S. Dist. LEXIS 51513(N.D. Iowa, June 18, 2009), the Court would rule that not attacking a witnesses credibility on critical parts of the testimony "shows ineffective assistance of counsel."

Counsel in this case would neglect to do the smallest things in this case. Which any attorney would've done.

## CONCLUSION

The ineffective assistance of counsel in this case spawned from the conflict between Mr. Sindel and I, which "relates back" to issues filed in my 2255 where counsel didn't investigate and present viable evidence or testimony of witnesses. By allowing me to go forward without conflict free counsel, I'd be denied my Sixth Amendment right to a fair trial, effective assistance of counsel, and conflict free representation.

Counsel's performance was deficient, and the violations of my Sixth Amendment rights to a fair trial, effective assistance of counsel, and conflict free representation establish prejudice. In light of these facts, the Court should order a new trial.Or at the least, a hearing on this issue.

16

For the following reasons, and under the laws granting the Court the power to do so, I ask the Court to right the wrongs in the case by granting relief on all issues. Relief is warranted.

[footnote: I ask the Court to forgive me for all mistakes that I made and overlooked.]

RESPECTFULLY SUBMITTED,

1/13/14

BILLIE ALLEN

Case: 4:07-cv-00027-ERW    Doc. #: 367    Filed: 01/16/14    Page: 17 of 18 PageID #: 7478

26901-044
P.O. BOX 33
Terre Haute, IN,
47808

TO: Clerk of the Court

111 S. Tenth Street

St. Louis, MO. 63102

INMATE
IDENTIFICATION
CONFIRMED

RECEIV

JAN 1 6 20

BY MA

U.S. Penitentiary
Terre Haute, IN 47808
Date _____

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the facility has a problem or question over which this material or correspondence you may wish to return to the writer and processes, please contact the above address.