RECEIVED

JUL 07 2014

BY MAIL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

BILLIE ALLEN,                          )
                                       )
    V.                                 )          No. 4:07 CV 27 ERW
                                       )
THE UNITED STATES OF AMERICA,          )
                                       )
                                       )
                                       )

## MOTION FOR RECUSAL

This is a pro se motion, seeking the recusal of Judge Richard Webber from this case. Because of bias, favoritism, the unwillingness to weigh and take into account all the evidence and facts in this case, show cause for recusal.

## REASONING BEHIND RECUSAL

Soon, this Court will receive a Rule 59 motion, filed by my attorneys, presenting facts and evidence which show cause for a hearing, and/or a new trial. As to the latter, although a comprehensive list of grounds for granting a new trial is elusive, the Supreme Court has held that a motion for a new trial may rest on the fact that the "verdic is against the weight of the evidence...for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructaions to the jury." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251. 61 S.Ct. 189, 85 L. Ed. 141(1940).

Because of this Court's history in this case to not weigh all the facts and evidence in this case, to show favoritism towards any and all arguments the government presents; (even if the facts and evidence contridict their argument and facts), and the Court's unwillingness to be fair and impartial; the Court shouldn't be asked to review, take into account and weigh facts and evidence that it has shown it will only veiw one way and not as a whole.

## STANDARD FOR RECUSAL

The standard under which a judge should disqualify himself is set forth in 28 U.S.C. 455

Generally, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a). As is the case here. Additionally, a judge "shall also disqualify himself ... Where he has a personal bias or prejudice concerning a party." 28 U.S.C. 455(b)(1).

Within the Eighth Circuit, "the standard to be used in deciding whether to recuse is an objective one: '[w]ould the average person, knowing the facts alleged by the party seeking disqualification, question the judge's impartiality, and if so, would the question be reasonable.'" Veneklase v. City of Fargo, 236 F.3d 899, 901 (8th Cir. 200) (quoting O'Bannon v. Union Pac. R.R. Co., 169 F.3d. 1088, 1091(8th Cir. 1999)).

"Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky, 510 U.S. at 55 Additionally, any opinion that a judge forms "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion, <u>"unless the opinion displays a deep seated favortism or antagonism that would make fair judgment impossible."'</u> Id. Which I'm claiming here.

The record in this case is full of favoritism, limited review of the facts and evidence, bias and unfairness.

## FACTS AND EVIDENCE TO SUPPORT RECUSAL

One only needs to look at the Court's most recent pleadings, compare the evidence against the Courts factual findings, and it will show just cause for recusal.

The Court would grant me permission in the case to present to it, issues which I felt were abandonded by my attorneys and not presented to this Court for consideration. The Court would state that I'd be able to present to it the issues, show why the issues aren't time barred or waived; but that I couldn't present any supportive evidence with it. I'd follow the Court's order and file my issues.

On 6/25/14 this Court would rule on the issues presented to it in my pro se motion, and though I'd present to it facts and evidence (in the form of transcripts that I'd cite), it's clear that the Court disregarded facts, the record and evidence in favor of its own opinions or those of the government.

In the Fraud On The court claim, I'd present to this Court the "sworn testimony" of

Lieutenant Ronald Henderson, when he'd finally admit, after lying at a hearing under oath, that he actually "never knew of the request for counsel" that he swore he knew. This Court, in spite of the officer's own admission that he never knew something that would be used in rulings and applied as law, that the lies were just "a minor discrepancy" or "slight inconsistency."

The Court, in its unwillingness to examine "all" the facts and evidence surrounding Henderson's admission, failed or chose to ignore the "full impact of the lies that were told."

1. The lies were used to say that I had waived my Miranda rights. (Which never took place!)

2. The lies were used to justify taking me to a lineup; when there was no way that officers could've reminded me of something that they never knew!

3. The lies were used to say that after the lineup, I asked to speak with Henderson, because I supposedly knew him from a previous case. (Which never took place!)

4. The lies were the foundation for the Court(s) rulings!

5. Before the lies were exposed, this Court would allow it into my trial "because of what was said at the hearing!

Yet, dispite all of these facts and supportive evidence at the Court's disposal, this Court simply calls the lies, "minor" or inconsistant.

The Court should and could have considered the police report where it clearly shows that Henderson was never at the crime scene at my friend's murder, nor did he talk to me; as the police tried to insinuate.

One must ask; how many "minor discrepancies and slight inconsistencies" does it take to be prejury, a lie, or to denied a fair hearing or trial; when the lie was so crucial?

[Footnote: The evidence to support that Henderson and I never met is submitted with this motion. ]

4

On the issue of asking this Court for DNA testing to prove that someone, other than myself, committed the crime, this Court really shows bias, an unwillingnesss to be impartial, (for the sake of justice), and think outside of its own opinions.

The Court would state in its ruling that "Even if the blood (found at scene(s) of the crime) were Bostic's, moreover, the evidence still wouldn't undermine the Court's confidence in the accuracy of the outcome, given Allen's confession, extensive evidence concerning Allen and Holder's planning of the robbery, and numerous eyewitness reports..."

The Court has never taken into account my proffer that I never confessed to officers, and given all the lies presented to the court(s) about what actually took place inside the interrogation room that morning, any reasonable person would question whether any of what officer's said could be believed.

The court has never taken into account the fact that years before the robbery, Holder had talked to other people about robbing the bank. Me not being one of those people. And Holder's own friend's statements that they couldn't see Holder asking me to rob a bank with him, being that holder and I didn't know each other that well.

The Court has never taken into account that every witness to the crime would state one thing to police, yet at trial, every witness would suddenly remember me or details; "after talking to the government."

But one must question the Court's reasoning behind its statement. Because how else would Bostic's blood be on evidence and at the scene of the crash site and in other places unless he took part in the crime? So, if the blood does match him, which I know it does, will the court then conclude that 3 people must have been involved, even when the evidence says otherwise, simply because the Court believes something or has an opinion about the facts?

There is simply no fairness in the Court's statement and examination of the evidence. A Court is suppose to be objective and not subjective. But this Court is clearly the latter in its views and ability to weigh the evidence. The comment made by this Court is more conducive to what the Court feels, as opposed to what the evidence could show.

[footnote: The Court continues to rely on a confession that I never gave as to why it feels the way it does about my guilt. The only way to actually be sure of the confession's truthfullness is through a hearing and through my testimony. Until then, a lie is the law. Henderson's admission proves that.]

On the ineffective Assistance Of Counsel claim, the court would again overllok all the alternate strategies and evidence that I'd present to it to show what counsel could've done, but didn't do. Ineffective assistance of counsel is about showing that counsel(s) "actions", plural, made him ineffective. I'd present this arguement to the Court and site all of the things that counsel didn't do to show why I was prejudiced by counsel(s) ineffectiveness. But this Court chose to ignore that the foundation of the argument was a simple ineffective assistance of counsel claim, and not a "cumulative claim." (As I clearly stated in the motion.)

On the conflict of interest claim, the Court would state that I failed to "state the nature of this purported conflict." But the Court again overlooks where I'd clearly state that:

1. "One only has to look at the 20+ things that I highlighted in 'What Counsel Didn't Do'" as conflict.

2. "This conflict kept Mr. Sindel from investigating credible facts, evidence and leads," as conflict.

3. "That there was a breakdown in communication," as conflict.

But the entire argument rested on the fact that even though the Court was put on "notice" that there was a conflict, or that something was wrong; this Court failed to make a simple inquiry into why I filed my motion to have MR. Sindel removed, and why was it that counsel(s) would tell the Court that it should have removed Mr. Sindel from my case. What more "notice" can one get that something is or was wrong? I sent a motion to the court and so did counsel(s0. The court just chose to ignore both.

Has the court had a hearing when the motion was filed by me or counsel, the Court would've seen that there was clearly a conflict that stemmed from the breakdown in communication that I mentioned in my filings. Even if the court choses to ignore my motion to have counsel removed, what isn't more clear than counsel(s) own words about it?

Lastly, the Court would rule on my motion to compel the government to turn over audio recordings of witnesses interviews with law inforcement, by stating that it believes the filing to "be wholly without merit." It would also state that I "merely speculated

the Government has retained audio recordings for nearly 17 years." When I filed the motion, the Court would go so far as to tell the government that it didn't even need to respond, since the court seemed to already have its mind made up.

Had the court simply reviewed the record in this case concerning the recordings I seek, the Court would've seen that I'm not just "speculating" and that the motion is actually not "wholly without merit". As the Court's unfounded opinion suggests.

The record in this case, regarding the recordings state the following:

## HEARING TRANSCRIPTS

Q. Are you aware of whether or not anyone else has used a tape recorder in order to interview any of the witnesses in connection with this case?

MR. LANDOLT: Judge, I object to the relevance.

THE COURT: The tape recording of witnesses, -- or we talking witnesses or are we talking about defendants?

MR. SINDEL: We're talking about witnesses at this point in time.

THE COURT: I'll overrule the objection.

THE WITNESS: Okay. Ask that again.

BY MR. SINDEL:

Q. Are you aware of whether or not anyone else used a tape recording (sic) to, -- in the process of an interview of any witnesses in this case?

A. Yes.

7

As to who did the recording's, it would state:

> Q. The person who did the tape recording, was he in
> the City Police Department or the FBI?
>
> A. It would have been a city officer.

It's clear, (from the record) that the governement has in their posession, recordings of witnesses, and that they have withheld these recordings for 17+ years!

This Court would go so far and inform the government that they didn't need to respond, because it shows that the Court, automaticly believed my request was "without merit", simply because it was filed by me and could've made the government look bad. But had the Court reviewed the entire record, it would have seen that my request had "a lot of merit!"

It's not suprising tha the government never acknowledged that they had the recordings, even when the Court came to its aid. But why would they do so when the ruling was in their favor?

### CONCLUSION

If the standard in which a judge should recuse himself from a case rests on "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows "all" the relevant facts of a case", then that standard surely applies here.

This Court can say that it's fair and impartial, but the bias, favoritism and unwillingness to weigh "all" the facts and evidence in this case clearly show otherwise. The pattern of this Court's favoritism and towards any and everything the government presents or says, and its inability to give any weight to the facts and evidence I present to it is rooted in its findings and opinions.

I'm not looking for a judge of my own choosing, or one who will just rule in my favor because I want it to. I'm looking for a judge who will at least consider, weigh and examine "all" of the facts and evidence, and make fair, unbiased and just rulings; based on the facts and evidence. Even when those facts and evidence go against the government or the conviction of guilt. That's not the case here and why this Court

*8*

should recuse itself.

This motion shouldn't be deemed untimely, being that this is the appropriate stage to do so. This is the earliest possible moment to ask for a recusal of this nature, after "obtaining knowledge of facts demonstrating the basis for seeking the recusal." Bias was suspected, but ███████████████████████, I had no factual basis footing to stand on. However, as you can see from the transcripts related to the recordings, the police report surrounding Marlluise's murder, and all the other facts and evidence presented to this Court, it's clear that bias, favoritism and impartiality are present.

This court should recuse itself from this case.

RESPECTFULLY SUBMITTED,

*Billie Allen* 7/1/14

[Footnote: An earlier motion for recusal was filed in this case, related to other reasons; which this Court denied.]

1
95063947

At 9:04 P.M., Wednesday, May 3, 1995, Detective Sergeant Robert Davis, DSN 0441, Crime Scene Supervisor, Homicide Section, was contacted by the Bureau of Investigation Dispatcher and advised Homicide Detectives were being requested to 1815 North Taylor for the victim of a Shooting, with the victim en route to Barnes Hospital.

Accordingly, Sergeant Davis responded to Barnes Hospital and Sergeant Andre Hill, DSN 7245, along with Homicide Detectives Jeffrey Crawford, DSN 3444, Phillip Wasem, DSN 8402, Gerald Young, DSN 2215, Brian McGlynn, DSN 2721, and Thomas Wiber, DSN 7777, responded to the scene, arriving at 9:28 P.M.

At the scene, the Homicide Detectives were met by Captain David Dorn, DSN 7539, Commander District Eight, car 1800; Lieutenant Joseph Hoening, DSN 8435, Watch Commander District Eight, car 2801; Sergeant Cliff Sassenger, DSN 8028, car 2811; Sergeant Jerry Dodson, DSN 5320, car 2812; Police Officers Byron Pargo, DSN 3896, car 2827; Dana Isom, DSN 2789, car 2828; Donish Minor, DSN 3194, car 2826; and Steven Dodge, DSN 4278, car 2823; Area III Detectives Jerome Dyson, DSN 2196, car 6333; Nancy James, DSN 3884, car 6335; and Joan Williams, DSN 2709, car 6328; and Canine Officer Catherine Dennis, DSN 3404, along with canine "Cello", car 7215, who relinquished the scene to the Homicide Detectives at that time.

Officer Isom stated she and Officer Pargo received a radio assignment at 9:00 P.M. directing them to 1815 North Taylor for a report of a "Shooting". Upon their arrival they observed the victim lying on the front steps of the residence at 1815 North Taylor, unconscious and unable to make a statement. At that time they requested EMS and a supervisor, who requested Homicide.

Medic #11, manned by Emergency Medical Technicians Pam Delaney, DM4643, and Joslyn Thomas, DM1650, responded to the scene and conveyed the victim to Barnes Hospital where Dr. Steve Carter pronounced the victim lifeless at 9:35 P.M.

Sergeant Davis viewed the victim in the nude at the hospital and observed the victim evidenced two puncture wounds; one in the left arm pit and one in the right shoulder.

Medical Legal Investigator Francis Dawkins, of the Medical Examiner's Office was contacted and initiated his investigation. He later caused the victim's body to be conveyed to the City Morgue by Glenn Livery Service where it was assigned Morgue number 95-959.

Luberta Taylor, residing at 4541 Cote Brillante, home telephone 454-9631, the victim's mother, responded to the hospital where she identified the victim as her son, Marquise Taylor.

0002042

4
95063947

Acres and Shaw stated they were lying in their bed, when they heard approximately seven to eight gunshots coming from outside their residence, apparently from the front. They stated the first shots did not sound as loud as the last two or three. Both subjects stated they looked outside their window but did not see anyone, they only heard people next door (1815 North Taylor) screaming.

ACRES, ANTHONY        1817 "A" North Taylor, B/M, no phone

Acres stated he heard approximately four or five loud gunshots coming from the front of his residence, but did not see anyone.

BANKS, JOHN        1819 "A" North Taylor, B/M, 535-6558

Banks stated he heard approximately four to five loud gunshots from the front of his residence, but did not see anyone. Banks stated he is the owner of 1823 North Taylor, the vacant beauty salon where the projectile was recovered from an inside wall. Banks was advised of the damage to his building.

1819 "B" North Taylor        No response

1813 North Taylor        Vacant

1809 North Taylor        Vacant

1803 North Taylor        Vacant

1801        North        Taylor
Vacant

Detective Robert Jordan, DSN 3167, interviewed the following subject at the Homicide Office.

ALLEN, BILLIE        (Identified in Pirs)

Allen stated Eric T., Marquise Taylor (victim) and he were visiting Prentiss C. at his residence at 1815 Taylor. They decided to leave Prentiss' house and go to the residence of a friend named Issac (no further).

Upon leaving the residence, Allen and Marquise Taylor (victim) proceeded to walk north on Taylor approaching Garfield. Prentiss was on the front porch and Eric was on the steps.

0002045