# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

_____

BILLIE JEROME ALLEN,

      Petitioner,

      -v-

UNITED STATES OF AMERICA,

      Respondent.

_____

:
:
:
:
:
:
:
:
:
:
:

No. 4:07-CV-27 ERW

**Capital 2255 Case**

Hon. E. Richard Webber, U.S.D.J.

### PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59

Timothy Patrick Kane
Eric John Montroy
James Henry Moreno
Assistant Federal Defenders
Capital Habeas Unit
Federal Community Defender Office
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106

Counsel for Petitioner

July 23, 2014

CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE CONTENT OF THIS MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Claims from the Counseled Amended § 2255 Motion. . . . . . . . . . . . . . . . . 5

        A.      Mr. Allen was denied effective assistance of trial and
                appellate counsel in connection with the pre-trial motion
                to suppress alleged statements made to the police. . . . . . . . . . . . . . . 5

        B.      Trial counsel provided ineffective assistance at guilt phase by
                failing to present available evidence that would have raised a
                reasonable doubt as to Mr. Allen's guilt.  . . . . . . . . . . . . . . . . . . . . 14

II.     *Pro Se* Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        A.      Recusal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        B.      Fraud on the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        C.      Conflict of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

        D.      *Brady*/Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**INDEX OF EXHIBITS**

1.    Law Enforcement Records from Murder of Marquise Taylor

2.    Correspondence with Richard Sindel, Esq.

3.    Transcript of Police Dispatch Communications

4.    Statements Obtained from Chris Shegog

5.    Declaration of Chris Shegog

6.    Documents Submitted in Support of *Pro Se* Motion to Recuse

## INTRODUCTION

Petitioner Billie Jerome Allen respectfully moves the Court pursuant to FED. R. CIV. P. 59(e) to alter and amend its judgment entered June 25, 2014, denying Mr. Allen's amended motion for post-conviction relief pursuant to 28 U.S.C. § 2255, denying Mr. Allen's *pro se* supplemental claims for relief, and denying a certificate of appealability on all claims.

This Motion addresses only certain issues that demonstrate manifest error of law or fact, and does not address all allegations of error or all claims.  By not addressing any issue in this Motion, Petitioner does not intend to waive any argument or claim.

## PROCEDURAL HISTORY

Mr. Allen filed his initial motion for post-conviction relief pursuant to 28 U.S.C. § 2255 on January 8, 2007, Doc-1; an amended § 2255 motion on February 11, 2008, Doc-60; and a supplement to the amended motion on August 17, 2009, Doc-98.

On March 31, 2011, this Court denied Petitioner's motion for discovery. Doc-146.  On May 10, 2011, the Court denied most of the claims in the amended § 2255 motion.  Doc-147.  On August 29, 2011, the Court denied Petitioner's supplemental claim regarding new evidence undermining the reliability of forensic evidence presented at trial.  Doc-165.  As to the remaining claim of ineffective assistance of counsel at penalty phase, the parties conducted discovery, and the

1

Court held an evidentiary hearing between June 4, 2012, and December 12, 2012.

On November 25, 2013, Mr. Allen filed a *pro se* motion seeking leave of the Court to file additional claims for relief.  Doc-358.  In response, the Government argued that Mr. Allen had no right to submit *pro se* filings as he was already represented by counsel; that courts routinely refuse to entertain such filings; and that, consistent with Eighth Circuit policy, this Court should not permit Petitioner to submit such filings.  Doc-360 at 1-2 (citing cases).  On December 11, 2013, the Court nonetheless granted the *pro se* motion and gave Petitioner leave to file additional grounds for relief.  Doc-361.  Petitioner did so in subsequent *pro se* submissions.  *See* Doc-362; Doc-363; Doc-367; Doc-369; Doc-370.

On February 12, 2014, the Court directed that the "Clerk of Court shall not accept any future *pro se* filings in this matter.  Any further pleading filed on behalf of Petitioner shall be filed by counsel of record only."  Doc-372.

On June 25, 2014, the Court denied Petitioner's *pro se* claims.[1]  Doc-373. On the same date, the Court denied the claim of ineffective assistance of counsel at penalty phase  – the sole remaining claim from the counseled amended § 2255 motion.  Doc-374.  The Court also denied a certificate of appealability ("COA")

---

[1] Although "[i]t is Eighth Circuit policy not to consider pro se filings when the appellant is represented by counsel," *United States v. Halverson*, 973 F.2d 1415, 1417 (8th Cir. 1992) (per curiam), that court on occasion reviews *pro se* claims submitted by represented defendants, just as this Court did here.  *See id.*; *see also United States v. Montgomery*, 701 F.3d 1218, 1220 n.2 (8th Cir. 2012).

on all claims, and entered judgment against Petitioner.  Doc-375.

On July 8, 2014, consistent with its order of February 12, 2014, the Court struck a *pro se* motion to recuse that Petitioner had filed the previous day.  *See* Doc-377; Doc-378.

 Petitioner now files this motion to alter and amend the judgment pursuant to FED. R. CIV. P. 59(e).

### THE CONTENT OF THIS MOTION

As recounted above, this Court granted Petitioner leave to file *pro se* grounds for relief, which the Court thereafter reviewed and denied.  Petitioner wishes to move the Court *pro se* to alter and amend its judgment on those claims, but – pursuant to this Court's order of February 12, 2014 – Petitioner may do so only through counsel.

Undersigned counsel also seeks to move the Court, on Petitioner's behalf, to alter or amend its judgment denying certain claims raised in the counseled amended § 2255 motion.

In an effort to protect Petitioner's rights, follow this Court's orders, and fulfill their professional obligations, undersigned counsel include in this Motion *pro se* arguments and claims, including Petitioner's request for recusal.  Where *pro se* arguments relate to claims raised in the counseled petition, those arguments are incorporated therein, as set forth in Part I of the Argument section.  Where Petitioner's arguments or claims are distinct from claims raised in the counseled

petition, they are set forth, at times verbatim, in Part II.

## STANDARD OF REVIEW

Through his Rule 59(e) motion, Petitioner asks the Court to reconsider its denial of relief and denial of COA on several issues.

Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations omitted). The Court has broad discretion in deciding whether to grant a motion under Rule 59(e). *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). Reconsideration should be allowed under Rule 59(e) to correct clear error of law or fact, *id.*, or to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Relief is appropriate under Rule 59(e) for the reasons set forth herein.

The relief Petitioner seeks also includes reconsideration of the Court's denial of a COA on all claims. A COA is appropriate when "the issues are debatable among jurists of reason; ... a court could resolve the issues [in a different manner]; or ... the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal quotations omitted, bracketed material in original); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA "does *not* require

4

a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337.  "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.  "In a capital case, the nature of the penalty is a proper consideration" to weigh in favor granting a COA.  *Barefoot*, 463 U.S. at 893.

**ARGUMENT**

## I.  Claims from the Counseled Amended § 2255 Motion

### A.  Mr. Allen was denied effective assistance of trial and appellate counsel in connection with the pre-trial motion to suppress alleged statements made to the police

Counsel advised Mr. Allen to not testify at the pre-trial suppression hearing because he believed that the suppression court would allow the government to cross-examine him on all topics related to his case and not merely the topics pertaining to his alleged confession.  Petitioner followed counsel's advice and did not testify.  The suppression court then relied solely on the suspect  and uncontested testimony of St. Louis Police Officer Henderson to deny Mr. Allen's motion to suppress.  Mr. Allen was deprived of his right to testify and his right to effective counsel, and the suppression court erroneously denied Mr. Allen's suppression motion based solely on false, misleading, and incomplete evidence.

5

Mr. Allen sought an evidentiary hearing on this issue.   This Court denied this claim without an evidentiary hearing.  Doc-147; Doc-165.  In denying this claim, the Court made findings that were both erroneous and incomplete.

First, this Court clearly erred by determining that the magistrate judge did not rule that Mr. Allen would be subject to cross examination on anything other than the issues pertaining to his motion to suppress.  *See* Doc-147 at 11.

Second, this Court erred in finding that counsel's performance was not deficient.

Third, this Court clearly erred by determining that counsel submitted a timely offer of proof to the magistrate court concerning Mr. Allen's proffered testimony.  *Id*. at 11-12.

> **1.    The magistrate court intended to expose Mr. Allen to cross-examination on all matters during his testimony at the suppression hearing**

During the suppression proceedings, the magistrate court unequivocally stated that, were Mr. Allen to testify at the suppression hearing, he would be subject to cross examination on all maters related to his case, and not merely those relevant to the suppression hearing:

> I just want to make my point. I don't know what Mr. Landolt's position is, but to avoid this when we're in the middle of it, my position is once an individual takes a witness stand he's there for

whatever cross examination that may pop up, especially in a situation like this. So, if you want to limit his testimony to various items, I'm not sure I can keep Mr.,— or I won't keep Mr. Landolt to that limitations. I want to make sure you knew that going in.

Tr. 5/16/97 at 348.  Thus, the magistrate judge erroneously accepted the

government's argument that Mr. Allen was subject to cross examination on all

issues that "might pop up":

> COURT:  Unless Mr. Landolt agrees to cross only on the issues addressed in the questioning.
>
> LANDOLT:  Judge, I think once he takes the stand he's, – the issues in the case are the scope of the cross examination.
>
> DEDE:    Well, my position, – my argument is that just as the Government has objected all day long about being limited in the scope of this proceeding, I think that his testimony is limited to the scope of this proceeding.
>
> COURT:    Yeah, it is except that I just think it goes a lot broader because Mr. Allen and Mr. Holder for that matter, —Mr. Holder and Mr. Allen I should say, were participants in this questioning and answer process in the police department from get to go, ...that the cross examination is going to be a lot wider and more open that I permitted with the police officers who were here to,– or the witnesses who were just here to testify about the specific identification process.

*Id*. at 348.  Based on this ruling, Mr. Allen declined to testify at the suppression

hearing, even though he had important, and if credited, dispositive testimony to

offer on the suppression issues.  *See id*. at 357.

7

Contrary to the plain reading of the magistrate court's ruling that Mr. Allen would be subject to "whatever cross examination that may pop up," this Court, in denying Mr. Allen's claim, determined that "the magistrate did not suggest that Allen would be subject to cross examination on anything other than the 'preliminary matter' of issues relevant to his motion to suppress." Doc-147 at 11. This finding is belied by the record, as the magistrate court never stated or suggested that it was limiting the scope of the cross examination to "preliminary matters of issues relevant to his motion to suppress." To the contrary, the magistrate court informed counsel that Mr. Allen would be subject to broad cross examination on anything that "popped up."

The magistrate court's ruling violated Fed. R. Evid. 104(d) and Supreme Court precedent.[2] This Court clearly erred by determining that the magistrate

_____

[2]*See Simmons v. United States*, 390 U.S. 377 (1968) (holding that a criminal defendant cannot be made to forego his right Fifth Amendment right against self-incrimination at the suppression hearing in order to avail himself of the full process offered to demonstrate that the police did not honor his Fifth Amendment right at an earlier time); *United States v. Roberts*, 14 F.3d 502, 517 (10th Cir. 1993) (acknowledging that Rule 104(d) circumscribed the government's cross examination and finding that the lower court did not err in allowing cross examination on the defendant's mental capacity because it directly related to the voluntariness of the confession); *United States v. Gomez-Diaz*, 712 F.2d 949, 951-952 (5th Cir. 1983); *United States v. Williams*, 754 F.2d 672, 676 (6th Cir. 1985); *see also* Fed. R. Evid. 104, Note to Subdivision (d) ("The limitation upon cross-examination is designed to encourage participation by the accused in the determination of preliminary matters. He may testify concerning them without exposing himself to cross-examination

judge did not rule that Mr. Allen would be subject to cross examination on anything other than the issues pertaining to his motion to suppress.

### 2. Even if this Court properly determined the scope of the magistrate court's ruling, counsel was deficient

To the extent that this Court's interpretation of them magistrate court's ruling on the scope of cross examination at the suppression hearing is accurate, which it is not, counsel was still ineffective for failing to understand the ruling, to ask for clarity if he did not understand, and to properly advise Mr. Allen about testifying in light of that ruling.

Trial counsel recognized the importance of Mr. Allen's testimony and clearly intended to present his testimony at the suppression hearing. Tr. 5/15/97 350.  Likewise, counsel understood that the law limited the potential cross examination of Mr. Allen at the suppression hearing. *Id*. at 350.  In anticipation of presenting Mr. Allen's testimony, counsel considered moving *in limine* to limit the scope of the government's cross examination in accordance with the law. *Id*. Counsel discussed the issue in chambers with the court in advance of the suppression hearing. *Id*.

Based on the magistrate court's ruling, however, counsel believed, and so

---

generally. The provision is necessary because of the breadth of cross-examination under Rule 611(b).")

advised Mr. Allen, that the court would permit the Government to cross examine Mr. Allen on all subjects were he to testify at the hearing.  Based on counsel's advice, Mr. Allen did not testify.

Counsel's performance was deficient.  Had counsel accurately understood the ruling of the magistrate as interpreted by this Court that the Government's cross examination would be limited to issues relevant to the suppression motion, counsel would have advised Mr. Allen to testify, and Mr. Allen would have testified.  If this Court's understanding of the magistrate's ruling is correct, Mr. Allen would have incurred no risk in testifying at the hearing, but could have offered important evidence that countered the evidence being presented by the Government.  Counsel had no reasonable basis for advising Mr. Allen not to testify under these circumstances.  Counsel's advice to Mr. Allen that he not testify was based solely on an understanding of the magistrate court's ruling that squarely contradicts this Court's understanding.  Counsel was deficient.

Mr. Allen was prejudiced by counsel's deficient performance.  Had he been permitted to testify, Mr. Allen would have rebutted the government's case that any statements were voluntary.  Instead,  the suppression court simply accepted Officer

10

Henderson's uncontested testimony that the Mr. Allen's statement was voluntary.[3]

In light of the major inconsistences between witnesses Henderson and Harper, there is a reasonable probability that the statements would have been suppressed had the Court, or the magistrate judge, had Mr. Allen's testimony been before them.[4]

Mr. Allen is entitled to an evidentiary hearing to determine unresolved factual disputes about this issue.  This Court's contrary rulings were clearly erroneous.

> **3.    Counsel's performance was deficient for failing to present a timely offer of proof of Mr. Allen's testimony to the magistrate court**

The magistrate court ordered counsel to file an offer of proof as to Mr. Allen's proffered testimony following the suppression hearing.  Counsel failed to file the ordered offer of proof until several  months after the Magistrate Court had

---

[3] As discussed at length in Mr. Allen's *Traverse*, *pro se* pleadings, and throughout this motion, Officers Henderson and Harper provided inconsistent and incredible testimony at the suppression motion and trial.

[4] The testimony of Officers Henderson and Harper undermines the reliability of Mr. Allen's alleged confession and ultimately the jury's verdict, given the great weight afforded confessions by juries.

11

denied the motion.[5]  The magistrate court thus did not have Mr. Allen's proffered

testimony when it denied the motion to suppress.

In its order denying an evidentiary hearing on this ground, this Court found

that the proffer was actually available to the magistrate judge before he issued his

amended report and recommendations, and that Mr. Allen was therefore not

harmed by trial counsel's failure to present it earlier.  Doc-147 at 11.  In so

holding, this Court conceded that the proffer had been submitted after the

magistrate judge issued his Report and Recommendations, but held that the

_____

[5]Mr. Allen would have testified that although he had not been advised of his *Miranda* rights, following his arrest, he was repeatedly interrogated by Detective Nickerson and other police officers. When Mr. Allen requested an attorney, he was told by Detective Nickerson that he couldn't get one until the next day. Mr. Allen was told by police "that he would fry."  Mr. Allen was handcuffed to a table while the police attempted to the interrogate him. Mr. Allen was finally advised of his *Miranda* rights by FBI agent Hartman. Agent Hartman stopped speaking with Mr. Allen when he informed her that he wanted an attorney. After Mr. Allen invoked his right to counsel, Detective Nickerson entered the interrogation room and told Mr. Allen that things would "get worse for if you don't tell." Detective Nickerson continued to press Mr. Allen over the next few hours.  A lineup was then conducted by Officer Henderson, at which time a female witness identified a person other than Mr. Allen as the perpetrator.  Following the lineup, Detective Nickerson informed Mr. Allen that he had been identified in the lineup. Detective Nickerson told Mr. Allen that he wanted to question him.  Officer Henderson then entered the room and began speaking about a homicide investigation involving the death of Mr. Allen's friend Marquise.  Officer Henderson then began questioning Mr. Allen about this robbery and murder.  Officer Henderson never re-advised Mr. Allen of his *Miranda* rights. Mr. Allen never informed Officer Henderson or any other police officers or agents that he wished to waive counsel or his right to silence and speak to police about the incident.  *See* Case No. 4:97-cr-141, Doc-92.

Magistrate Judge had it available before filing his "amended report" and recommendations.  But an examination of the two documents titled "Report and Recommendations" shows that, although the offer had been filed before the magistrate judge's second order, he did not consider it.[6]

The order of January 12, 1998 did not address the motion to suppress Mr. Allen's confession, but instead related to other, subsequent motions filed by Mr. Allen because of identification procedures which were not considered in the first evidentiary hearing:

> A previous evidentiary hearing on these two motions was held on May 16, 1997. Thereafter, the Assistant United States Attorney advised Defendants and the Court that three additional identification procedures occurred after the May 16 evidentiary hearing, thereby requiring another evidentiary hearing.

Case No. 4:97-cr-141, Doc-202 at 1 n.1.

The only findings of fact made in the January 12, 1998 order concern the new identification evidence. There is no mention of Mr. Allen's offer of proof regarding the admissibility of his statements. The magistrate judge's statement in the January 12, 1998 order makes clear that he did not reconsider the motion to

_____

[6] On May 16, 1997, the magistrate ordered counsel to submit Mr. Allen's offer of proof.  On June 13, 1997, the magistrate issued "Order and Report and Recommendation of the United States Magistrate Judge" (Case No. 4:97-cr-141, Doc-89) recommending that Mr. Allen's suppression motion be denied.  On January 23, 1997, the magistrate issued an additional order denying the suppression motion.

13

suppress statements in light of Mr. Allen's offer of proof.  Instead, as he was within his right to do since the offer was submitted late, he simply ignored it.  Mr. Allen was harmed by trial counsel's failure to submit the offer of proof in a timely manner. An evidentiary hearing is required to resolve issues of any trial strategy relating to this default, and to allow this Court to consider the motion in light of the offer of proof, something which has never been done.

The allegations set forth in these proceedings required an evidentiary hearing.  The Court's contrary rulings were clearly erroneous.

**B.      Trial counsel provided ineffective assistance at guilt phase by failing to present available evidence that would have raised a reasonable doubt as to Mr. Allen's guilt[7]**

Available evidence that was not presented at trial would have created a reasonable doubt as to Mr. Allen's guilt.  *See* Doc-60 at 29-32.

In support of this claim, Mr. Allen has pointed to numerous examples of exculpatory evidence that trial counsel failed to follow up on and present, including:

- biological evidence recovered at the crime scene and/or related locations;

- evidence that Jerry Bostic was involved in the crime; and

---

[7] This ground for relief was raised as claim "I." in the amended § 2255 motion.

14

- evidence contradicting the Government's case against Mr. Allen.

*Id*.; Doc-94 at 89-99; Doc-363 at 13-17.

Mr. Allen sought an evidentiary hearing and discovery, including DNA testing of biological evidence recovered by law enforcement. This Court denied discovery, and denied this claim without an evidentiary hearing. Doc-146; Doc-147; Doc-373. In denying the DNA aspect of the claim, the Court found (1) a "lack of any colorable allegations linking Bostic to the crimes for which Allen was convicted;" and (2) that, even if DNA on a strap from a bullet-proof vest used in the robbery and the DNA on a rag recovered from a vehicle connected to the robbery were linked to Bostic's DNA profile, it would not undermine confidence in the outcome of trial in light of "Allen's confession, extensive evidence concerning Allen and Holder's planning of the robbery, and the numerous eyewitness reports describing" the height of the robber as at least 5' 8", where "Bostic's undisputed height [was] 5' 5"." Doc-147 at 40; Doc-373 at 5-6 & n.6. The Court's resolution of this claim involved several clear errors.

### 1. "Colorable allegations" link Jerry Bostic to this crime

The Court's ruling that there are not "any colorable allegations" of Bostic's involvement in this crime is undermined by several documents, including the FBI's

investigative records.  The FBI investigated the involvement of "JB" in this crime, including JB's contacts with Holder in the days before the crime.  *See* Doc. 94-53, Ex. 46 at 6.

The Court also incorrectly found that "Bostic's undisputed height" was 5' 5". Doc-147 at 40.  In fact, court records from 1998 reflect that Bostic was 5' 8" tall. Doc-94-21, Ex. 14 at 7.  That is the precise height of the suspect as described by witnesses Greg Prater and Joe Powell.  Doc-94-50, Ex. 43 at 2.  Moreover, Bostic had scars on his hands and forearms consistent with someone who was injured and bled at the scene of the crime.  *See* Doc-94-23, Ex. 16 at 5-6.

Most importantly, DNA testing that matched Bostic to any of the biological material in this case would obviously create a link to this crime.  If the blood on the bullet-proof vest strap or on the damp rag (or both) matches Bostic, then it would be difficult to conjure any explanation other than that he was one of the two perpetrators inside the bank.  That is precisely the allegation Mr. Allen has presented in this case.

### 2. Other evidence against Mr. Allen would be undermined by exculpatory DNA test results

"Modern DNA testing can provide powerful new evidence unlike anything known before." *District Attorney's Office v. Osborne*, 557 U.S. 52, 62 (2009).  For

16

this reason, the Court clearly erred in finding that exculpatory DNA results would not undermine confidence in Mr. Allen's convictions and death sentence. *See* Doc-147 at 40. At a minimum, the issue is debatable among jurists of reason.

As an initial matter, the other evidence the Court pointed to is itself subject to debate. Mr. Allen denies making the confession, and has pointed to considerable evidence that the law enforcement officers who reported the confession were not credible and that the confession should have been suppressed. *See* Part I.A., *supra; see also* Doc-363 at 1-10; Doc-367 at 7. As to planning of the robbery, this evidence pointed most directly to Holder, and much of the evidence was itself subject to serious question. For example, evidence available to trial counsel undermined Wayne Ross' testimony that he could overhear Mr. Allen and Holder discussing a bank robbery while at a bowling alley. *See* Doc-94-54, Ex. 47 at 3-4; Doc-94 at 97-98.

In any event, Mr. Allen need not show that the Government lacked sufficient evidence to convict, but only that exculpatory DNA test results "*may . . .* be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal quotation omitted; emphasis added). Here, at least two pieces of evidence recovered from the bank and/or related crime scenes contained blood and/or other biological material. One of those items – the bullet-proof vest

strap – was tested, and the results excluded both Mr. Allen and Mr. Heflin as the DNA-donor of the blood.  If one or both of the items contains the DNA profile of Bostic, or of another person other than Mr. Allen, Mr. Heflin, or Mr. Holder, then it is highly likely that such person was involved in the crime.  As the undisputed evidence showed that only two perpetrators entered the bank, the DNA of another person would, at a minimum, create a reasonable probability that Mr. Allen would not have been convicted and/or sentenced to death.[8]

*United States v. Fasano*, 577 F.3d 572 (5th Cir. 2009), further demonstrates that this Court erred in denying Petitioner's request for DNA testing and, at a minimum, that the question is debatable among jurists of reason.  In *Fasano*, as here, a bank robber wore various items that were then discarded near the bank shortly after the robbery.  577 F.3d at 574.  In *Fasano*, as here, other evidence pointed to the defendant's guilt including testimony of numerous eyewitnesses and fingerprint evidence.  *Id*. at 578.  The Fifth Circuit found that, where a house guest with a criminal record had been staying with the defendant at the time of the robbery and the defendant claimed the houseguest committed the robbery, testing was appropriate because DNA test results linking the clothing items to the

---

[8] As this Court has recognized, residual doubt is "[f]irst and foremost" among penalty phase strategies that capital counsel employ in Missouri, and thus exculpatory DNA evidence would be relevant both to guilt and to sentence.  *See* Doc-374 at 45.

18

houseguest would have established a reasonable probability that the defendant would have been acquitted. *Id*. This Court should reach the same conclusion or, at a minimum, recognize that other jurists would find the question debatable.

### 3.     Deficient Performance

Petitioner has previously set forth the standards that trial counsel is required to meet in collecting and presenting available evidence. *See* Doc-94 at 89-99. In addition to these arguments, Petitioner proffers as follows:

After this Court issued its Judgment, Mr. Allen wrote Mr. Sindel a letter, in which Mr. Allen posed various hypothetical scenarios, including:

- whether, if Mr. Sindel had known that the government discovered traces of DNA at the crime scene, and after testing, the results excluded Mr. Allen and the victim, Mr. Sindel would have further investigated and/or presented the evidence to the jury;

- whether, if Mr. Sindel had known that Jerry Bostic or "J.B." could be linked to the DNA found at the crime scenes and had other possible links to the crime, Mr. Sindel would have further investigated and/or presented the evidence to the jury; and

- whether, if Mr. Sindel had known that the government tested Mr. Allen's clothes for traces of gasoline in an effort to link Mr. Allen to the crime, and the results of the tests were negative, Mr. Sindel would have further investigated and/or presented the evidence to the jury.

*See* Ex. 2. By letter to undersigned counsel enclosing Mr. Allen's letter, Mr. Sindel

indicated an affirmative answer to these questions. *See id.*

Mr. Allen submits that these responses indicate either that Mr. Sindel did not adequately fulfill his obligation to be familiar with the available evidence in this case, or that Mr. Sindel failed to adequately follow up on these leads and present the available evidence to the jury. This indicates, at a minimum, that a hearing is appropriate to resolve this claim.

### 4.    Prejudice

In weighing the impact of unpresented evidence, a post-conviction court must "evaluate the totality of the evidence – both that adduced at trial, *and the evidence adduced in the habeas proceedings.*" *Wiggins v. Smith*, 539 U.S. 510, 536 (2003) (internal quotation omitted; emphasis in *Wiggins*); *see also Williams v. Taylor*, 529 U.S. 362, 397 (2000). The "undermines confidence" standard requires only "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). This Court clearly erred in weighing the significance of the "totality" of the evidence proffered in these habeas proceedings.

The evidence proffered in the course of these habeas proceedings demonstrates that counsel's errors here included the failure to present evidence that would have rebutted the testimony of Police Officer Carroll. Officer Carroll

20

testified that when Mr. Allen was arrested he smelled strongly of smoke.  Tr. 2/20/98 at 177.  This testimony was used to link Mr. Allen to the crime, because the getaway van had been doused in gasoline and caught on fire as the two perpetrators fled.  Forensic evidence available to trial counsel, however, indicated that Mr. Allen's clothes did not contain any petroleum distillates, thus contradicting the government's theory.  *See* Doc 94-49, Ex. 42.  Counsel was ineffective in failing to present this evidence.

Counsel's errors also included failing to investigate and present evidence that a witness in Forest Park identified the fleeing suspect around 11:12 a.m. on the morning of the crime as "last seen going north and east towards the bike path towards Kingshighway."  Ex. 3 at 4; *see also* Doc-363 at 15, 20.  In conjunction with the undisputed evidence that the robbery occurred at approximately 10:30 a.m.,[9] such evidence would have shown that Mr. Allen could not be the suspect. Indeed, both the Government and the defense knew from a witness, Chris Shegog, that he met Mr. Allen at the Northwest Plaza Mall that morning around 10 a.m. or 11 a.m.,[10] a fact that Mr. Shegog maintains to this day.  Ex. 5.  Mr. Shegog could

_____

[9] *See, e.g.*, Tr. 2/17/98 at 2-3 (Government opening statement).

[10] Mr. Shegog, who was employed as a security guard at the time and had previously dated Mr. Allen's sister, told the defense that he saw Mr. Allen when Mr. Shegog arrived at Northwest Plaza "around 10:00 a.m." or "between 10:15 and 10:30

not have met Mr. Allen at the Northwest Plaza around 10 a.m. or 11 a.m. if Mr. Allen had been the perpetrator who escaped from the van and fled through Forest Park around 11 a.m.  By failing to investigate and present the available evidence, trial counsel was ineffective.

The "totality" of this unpresented evidence – including the unpresented DNA evidence, evidence linking Jerry Bostic to the crime, and evidence contradicting the Government's theory that Mr. Allen planned the robbery with Holder, *see supra*– would, if presented to the jury, have created a reasonable probability of a different result at trial.  Under these circumstances, the allegations set forth in these proceedings required a discovery and an evidentiary hearing.  The Court's contrary rulings were clearly erroneous.

---

a.m.," and that Mr. Allen had already been shopping when he first saw him.  Mr. Shegog told the FBI that he saw Mr. Allen at "about eleven," although he also told the FBI that he left his home at about 9:30 a.m. and that it would have taken him thirty to forty minutes to get to Northwest Plaza.  Regardless of the exact time they met, it is clear that Mr. Allen could not have robbed the bank at 10:30 a.m., fled through the park around 11:00 a.m., traveled to Northwest Plaza and shopped, all before Mr. Shegog arrived.  *See* Ex. 4.

## II.   *Pro Se* Issues

Mr Allen submits the following:

### A.   Recusal[11]

Bias, favoritism, and the unwillingness to weigh and take into account all the evidence and facts in this case, show cause for recusal.

### 1. Reasoning Behind Recusal

This Motion presents facts and evidence which show cause for a hearing, and/or a new trial.  As to the latter, although a comprehensive list of grounds for granting a new trial is elusive, the Supreme Court has held that a motion for a new trial may rest on the fact that the "verdict is against the weight of the evidence . .. for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S . 243, 251 (1940).  Because of this Court's history in this case to not weigh all the facts and evidence in this case, to show favoritism towards any and all arguments the government presents (even if the facts and evidence contradict their argument and facts), and the Court's unwillingness to be fair and impartial, the Court should not

---

[11] Many of the grounds and arguments set forth in this section are directly relevant to and incorporated by reference into the sections that follow.

23

be asked to review, take into account and weigh facts and evidence that it has shown it will only view one way and not as a whole.

## 2. Standard for Recusal

Generally, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U. S.C. 455(a). As is the case here. Additionally, a judge "shall al so disqualify himself ... Where he has a personal bias or prejudice concerning a part y." 28 U.S.C. 455(b)(1). Within the Eighth Circuit, "the standard to be used in deciding whether to recuse is an objective one: '[w]ould the average person, knowing the facts alleged by the party seeking disqualification, question the judge's impartiality, and if so, would the question be reasonable .'" *Veneklase v. City of Fargo*, 236 F.3d 899, 901 (8th Cir. 2000) (quoting *O'Bannon v. Union Pac. R.R. Co.*, 169 F.3d. 1088, 1091 (8th Cir. 1999)) .

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 55 (1994). Additionally, any opinion that a judge forms "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion, unless the opinion displays a deep seated favortism or antagonism that would make fair judgment impossible." *Id*. Which

24

I'm claiming here. The record in this case is full of favoritism, limited review of the facts and evidence, bi as and unfairness.

### 3. Facts and Evidence to Support Recusal[12]

One only needs to look at the Court's most recent pleadings, compare the evidence against the Court's factual findings, and it will show just cause for recusal.

The Court would grant me permission in the case to present to it issues which I felt were abandoned by my attorneys and not presented to this Court for consideration. The Court would state that I'd be able to present to it the issues, show why the issues are not time barred or waived; but that I couldn't present any supportive evidence with it. I'd follow the Court's order and file my issues.

On June 25, 2014, this Court would rule on the issues presented to it in my pro se motion, and though I presented to it facts and evidence (in the form of transcripts that I'd cite), it is clear that the Court disregarded facts, the record and evidence in favor of its own opinions or those of the government.

In the Fraud on the Court claim, I'd present to this Court the "sworn testimony" of Lieutenant Ronald Henderson, when he'd finally admit, after lying at

---

[12] Exhibit 6 contains the attachments Mr. Allen submitted with his motion to recuse. Exhibit 1 also contains documents relevant to the suppression testimony.

a hearing under oath, that he actually "never knew of the request for counsel" that he swore he knew.  This Court, in spite of the officer's own admission that he never knew something that would be used in rulings and applied as law, that the lies were just "a minor discrepancy" or "slight inconsistency."

The Court, in its unwillingness to examine "all" the facts and evidence surrounding Henderson's admission, failed or chose to ignore the "full impact of the lies that were told."

1.  The lies were used to say that I had waived my Miranda rights. (Which never took place!)

2.  The lies were used to justify taking me to a lineup; when there was no way that officers could've reminded me of something that they never knew!

3.  The lies were used to say that after the lineup, I asked to speak with Henderson, because I supposedly knew him from a previous case. (Which never took place!)

4.  The lies were the foundation for the Court(s) rulings!

5.  Before the lies were exposed, this Court would allow it into my trial because of what was said at the hearing!

Yet, despite all of these facts and supportive evidence at the Court's disposal, this

Court simply calls the lies "minor" or inconsistent.  The Court should and could have considered the police report where it clearly shows that Henderson was never at the crime scene at my friend's murder, nor did he talk to me, as the police tried to insinuate.  One must ask how many "minor discrepancies and slight inconsistencies" does it take to be perjury, a lie, or to denied a fair hearing or trial; when the lie was so crucial?

On the issue of asking this Court for DNA testing to prove that someone, other than myself, committed the crime, this Court really shows bias, an unwillingnesss to be impartial, (for the sake of justice), and think outside of its own opinions. [. . .]

On the Ineffective Assistance Of Counsel claim, the court would again overlook all the alternate strategies and evidence that I'd present to it to show what counsel could've done, but didn't do.  Ineffective assistance of counsel is about showing that counsel(s) "actions," plural, made him ineffective.  I'd present this argument to the Court and cite all of the things that counsel didn't do to show why I was prejudiced by counsel(s) ineffectiveness.  But this Court chose to ignore that the foundation of the argument was a simple ineffective assistance of counsel claim, and not a "cumulative claim."  (As I clearly stated in the motion.)

On the Conflict of Interest claim, the Court would state that I failed to "state

27

the nature of this purported conflict." But the Court again overlooks where I'd clearly state that:

1. "One only has to look at the 20+ things that I highlighted in 'What Counsel Didn't Do,'" as conflict.

2. "'This conflict kept Mr. Sindel from investigating credible facts, evidence and leads," as conflict.

3. "That there was a breakdown in communication," as conflict.

But the entire argument rested on the fact that even though the Court was put on "notice" that there was a conflict, or that something was wrong, this Court failed to make a simple inquiry into why I filed my motion to have Mr. Sindel removed, and why was it that counsel(s) would tell the Court that it should have removed Mr. Sindel from my case. What more "notice" can one get that something is or was wrong? I sent a motion to the court and so did counsel(s). The court just chose to ignore both.

Had the court had a hearing when the motion was filed by me or counsel, the Court would've seen that there was clearly a conflict that stemmed from the breakdown in communication that I mentioned in my filings. Even if the court chose to ignore my motion to have counsel removed, what is more clear than counsel(s) own words about it?

28

Lastly, the Court would rule on my motion to compel the government to turn over audio recordings of witnesses interviews with law enforcement, by stating that it believes the filing to "be wholly without merit." It would also state that I "merely speculated the Government has retained audio recordings for nearly 17 years." When I filed the motion, the Court would go so far as to tell the government that it didn't even need to respond, since the court seemed to already have its mind made up. Had the Court simply reviewed the record in this case concerning the recordings I seek, the Court would have seen that I'm not just "speculating" and that the motion is actually not "wholly without merit." As the Court's unfounded opinion suggests. The record in this case, regarding the recordings states the following:

Q. Are you aware of whether or not anyone el se has used a tape recorder in order to interview any of the witnesses in connection with this case?

MR. LANDOLT: Judge, I object to the relevance.

THE COURT: The tape recording of witnesses , -- or we talking witnesses or are we talking about defendants?

MR. SINDEL: We're talking about witnesses at this point in time.

THE COURT: I'll overrule the objection.

WITNESS : Okay.  Ask that again.

> BY MR. SINDEL:

Q. Are you aware of whether or not anyone else used a tape recording (sic) to, -- in the process of an interview of any witnesses in this case?

A. Yes.

Tr. 5/16/97 at 83-84.  As to who did the recordings, it would state:

Q. The person who did the tape recording, was he in the City Police Department or the FBI?

A. It would have been a city officer.

*Id*. at 84.  It is clear (from the record) that the government has in their possession, recordings of witnesses, and that they have withheld these recordings for 17+ years!

This Court would go so far and inform the government that they did not need to respond, because it shows that the Court, automatically believed my request was "without merit," simply because it was filed by me and could have made the government look bad.  But had the Court reviewed the entire record, it would have seen that my request had "a lot of merit!"

It is not surprising that the government never acknowledged that they had the recordings, even when the Court came to its aid.  But why would they do so when

the ruling was in their favor?

### 4. Conclusion

If the standard in which a judge should recuse himself from a case rests on "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows "all" the relevant facts of a case," then that standard surely applies here.  This Court can say that it is fair and impartial, but the bias , favoritism and unwillingness to weigh "all" the facts and evidence in this case clearly show otherwise.  The pattern of this Court's favoritism and towards any and everything the government presents or says, and its inability to give any weight to the facts and evidence I present to it is rooted in its findings and opinions.

I am not looking for a judge of my own choosing, or one who will just rule in my favor because I want it to.  I am looking for a judge who will at least consider, weigh and examine "all" of the facts and evidence, and make fair, unbiased and just rulings based on the facts and evidence.  Even when those facts and evidence go against the government or the conviction of guilt.  That is not the case here and why this Court should recuse itself.

This request should not be deemed untimely, being that this is the appropriate stage to do so.  This is the earliest possible moment to ask for a recusal

31

of this nature after "obtaining knowledge of facts demonstrating the basis for seeking the recusal."  Bias was suspected, but I did not have this factual basis to stand on.  However, as you can see from the transcripts related to the recordings , the police report surrounding Marquise's murder, and all the other facts and evidence presented to this Court, it is clear that bias, favoritism and impartiality are present.  This Court should recuse itself from this case.

### B.    Fraud on the Court

In support of this issue, Mr. Allen incorporates and includes by reference all arguments and facts set forth in Part I.A. and Part II.A., above, and in his prior *pro se* pleadings.  Mr. Allen further submits:

Much of the government's evidence in support of the motion to suppress was not credible.  As noted in Mr. Allen's *pro se* pleadings, Doc - 362; Doc-363, Doc-367, the pervasive false and misleading testimony concerning Mr. Allen's confession amounted to a fraud on the court.

FBI Agent Janet Hartman provided credible testimony that when she advised Mr. Allen of his rights, he invoked his right to counsel.  Tr. 5/16/97 at 88.  Hartman also testified that she did not inform anyone of Mr. Allen's request for counsel. Tr. 2/25/98 at 20.

Lieutenant Henderson's testimony at the suppression hearing was called into

32

question by Detective Harper's testimony at trial. At the suppression hearing, Officer Henderson testified that he did not personally know that Mr. Allen had requested an attorney, but that Detective Harper informed him that Mr. Allen invoked his right to counsel. TR 5/16/97 at 297- 298. Officer Harper, however, testified that Officer Henderson told him that Mr. Allen had requested an attorney:

Sindel:     Okay.  Did you ask [Billie Allen] any  questions?

Harper:     No Sir.

Sindel:     Why didn't you ask him any questions?

Harper:     I'd been informed that he had requested an attorney prior to the line-up and, therefore, I was told not to ask him any questions.

Sindel:     Okay.  Who told you that.

Harper:     That would be Lieutenant Ron Henderson.

*Id*. at 228.  Harper's testimony was equally incredible.  He testified to taking notes of Mr. Allen's statement, but inexplicably destroyed those notes sometime before trial.  Tr. 5/16/97 262, 265.  Henderson, meanwhile, testified that he didn't recall Officer Harper taking notes of Mr. Allen's statement.  *Id.* at 292.

Additionally,  Henderson provided incredible testimony that Mr. Allen requested to speak with him because Mr. Allen said he knew him from "another contact." *Id.* at 292-93.  This other contact was a reference to the police

33

investigation of the murder of Mr. Allen's friend, Marquise Taylor. Yet, counsel possessed police paperwork from that investigation demonstrating that Henderson did not interview Mr. Allen as Henderson suggested during his suppression hearing testimony. *See* Ex 1.

The scope of the inconsistences and incredible testimony became fully apparent at trial when Henderson directly contradicted his own testimony from the suppression hearing. While Henderson had initially testified at the suppression hearing that he had been told by Harper that Mr. Allen invoked his right to counsel (a claim contradicted by Agent Hartman), he testified at trial that he had not been told that Mr. Allen requested counsel. Tr. 2/17/98 at 203.

This revelation of Henderson's lie undermines the denial of Mr. Allen's suppression claim and amounts to fraud on the court. However, counsel failed to renew his suppression motion. Nor did counsel seek a mistrial despite the highly prejudicial nature of Mr. Allen's confession. Counsel also failed to show that Henderson did not interview Mr. Allen in conjunction with the Marquise Taylor murder investigation and therefore did not have prior contact with him. *See* Ex. 1. Counsel failed to point out the many inconsistences at the suppression hearing and trial in support of suppression and/or a mistrial.

From the beginning, someone should have seen through the lies of Harper

and Henderson, being that the person who Mr. Allen had invoked his rights to admitted that she not only, never took steps to secure counsel for me, but that she never made anyone aware of my request. Her testimony should have raised three important questions about the "supposed confession" before it was allowed to be used against Mr. Allen at trial.

1. Whether officers actually "honored" his rights when Mr. Allen invoked them?

2. How could officers "honor" rights that they never knew about?

3. How could officers "remind" him of something that they never knew about?

4. After swearing to tell "the truth, the whole truth and nothing but the truth, SO HELP THEM GOD"; did officers intentionally lie, in order to get , both the magistrate and this Court to rule in their favor?

The answers to these questions leads to the conclusion that there was a fraud on the court. *See* Doc-367 at 2-6.

Mr. Allen further argues that this Court's prior ruling that Rule 60 motions must be raised within a year after judgment, *see* Doc. 373 at 3, is now moot, as the Court has passed judgment. For the reasons set forth in Part I.A. and Part II.A., above, Mr. Allen likewise contends that the fraudulent conduct was so egregious

35

and fraudulent as to require relief or, at a minimum, an evidentiary hearing.

### C.    Conflict of Interest

In support of this issue, Mr. Allen incorporates and includes by reference all arguments and facts set forth in Part I.B. and Part II.A., above, and in his prior *pro se* pleadings, regarding counsel's ineffectiveness.  Mr. Allen further submits that, if there had not been a complete breakdown in communication with Mr. Sindel, or if the Court had adequately inquired into the conflict, the leads and evidence discussed above would have been followed up on and presented to the jury.  Thus, just as relief is appropriate on grounds of ineffective assistance of counsel, the same facts justify relief under the more defense-friendly standard in which a court must "discharge its constitutional duty to determine whether the defendant is receiving assistance of counsel, unburdened by a conflict of interest," and where a conflict is present, "prejudice is presumed" regardless of "the nature of the conflict."  *Atley v. Ault*, 191 F.3d 865, 870 & n.4(8th Cir. 1999) (citing *Holloway v. Arkansas*, 435 U.S. 475 (1980)).

### D.    *Brady*/Discovery

In support of this issue, Mr. Allen incorporates and includes by reference all arguments and facts set forth in Part II.A., above, and in his prior *pro se* pleadings. As quoted from the record above (Tr. 5/16/97 at 83-84), Mr. Allen submits that it is

clear that the government has in their possession recordings of witnesses, and that

they have withheld these recordings for more than 17 years.  Had the Court

reviewed the entire record, it would have seen that the request had a lot of merit.

WHEREFORE, for the above reasons, this Court should alter and amend its judgment to order discovery and a hearing, to vacate Petitioner's convictions and death sentence, or at a minimum, to issue a certificate of appealability.

Respectfully Submitted,

/s/ Timothy Patrick Kane
Timothy Patrick Kane
James Henry Moreno
Eric John Montroy
Assistant Federal Defenders
Capital Habeas Unit
Federal Community Defender Office
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
 (215) 928-0520

Dated:       July 23, 2014

38

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2014, the foregoing *Petitioner's Motion to Alter of Amend Judgment Pursuant to Federal Rule of Civil Procedure 59* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

> Ms. Carrie Constantin
> Assistant United States Attorney
> 111 South 10th Street, 20th Floor
> St. Louis, Missouri 63102,

and to be served by first class mail, postage prepaid, upon:

> Billie Jerome Allen
> Register # 26901-044
> USP Terre Haute
> Special Confinement Unit
> P.O. Box 33
> Terre Haute, IN  47808.

/s/ Timothy Patrick Kane
Timothy Patrick Kane
Counsel for Petitioner