IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BILLIE J. ALLEN,                    )
                                    )
            Movant,                 )
                                    )
    v.                              )    No. 4:07 CV 27 ERW
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO ALTER OR
AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59

COMES NOW the United States of America, by and through the United States Attorney

for the Eastern District of Missouri, Richard G. Callahan, and Carrie Costantin, Assistant United

States Attorney for said district, and files its Response to Petitioner's Motion to Alter or Amend

Judgment Pursuant to Federal Rule of Civil Procedure 59.

Defendant filed a motion to alter and amend the Court's judgment that denied Allen's

amended motion for post-conviction relief pursuant to 18 U.S.C. §2255, his pro se supplemental

claims and a certificate of appealability on all claims.

In his motion, Allen claims:

1.  He was denied effective assistance of counsel in connection with the pre-trial motion

    to suppress his statements to the police.

2.  Trial counsel provided ineffective assistance in the guilt phase by failing to present

    evidence that would have raised a reasonable doubt as to Allen's guilt.

3.  The Court is biased and should be recused (*pro se* claim).

4.  A fraud was committed on the Court through false testimony at the hearing on his

1

motion to suppress his statements (*pro se* claim).

5.   A conflict of interest existed between Allen and trial counsel Richard Sindel (*pro se* claim).

6.   The Government withheld recordings of witnesses that constitute *Brady* material (*pro se* claim).

As a preliminary matter, Allen's first two claims were denied by the Court in its Memorandum and Order on May 10, 2011.   On June 16, 2011, Allen filed his Motion for Reconsideration of the Court's findings on these two claims.   The Court denied the Motion for Reconsideration on August 11, 2011.   Nevertheless, the Government will address the substance of all the claims in this current motion.

None of Allen's claims are supported by the record.   Petitioner's Motion to Alter or Amend Judgment should be denied.

I.      Allen Was Not Denied Effective Assistance of Counsel in Connection with His Motion to Suppress His Statements

Allen claims that the Court erred by determining that 1) the Magistrate Judge did not rule that Allen was subject to cross-examination on anything other than the issues pertaining to his motion to suppress; 2) counsel's performance was not deficient; and 3) counsel submitted a timely offer of proof concerning Allen's proffered testimony.   The record supports the Court's findings on all these matters.

Allen filed a motion to suppress statements he made to law enforcement in which he admitted his participation in the robbery and murder.   A hearing was held before Magistrate Judge Thomas C. Mummert on both Allen and co-defendant Norris Holder's motions to suppress

2

statements.   At the hearing, the Government presented evidence that Allen received *Miranda*

warnings at the time of his arrest on March 18, 1997 and an hour later when he was brought to the

St. Louis Metropolitan Police Department headquarters.   At four a.m. on March 18, FBI Special

Agent Jan Hartman attempted to inform Allen again of his *Miranda* rights but he requested an

attorney before she finished.     Allen was placed in a lineup that morning after he declined the

presence of counsel for the procedure.   After Allen was identified in the lineup by several

witnesses, a detective informed him that he had been identified but the detective did not question

Allen.   Allen told the detective that he wanted to talk but the detective told him that the police

could not talk to him because he had previously requested an attorney.   Allen insisted that he did

not want an attorney and asked to speak with Lt. Ronald Henderson.   Allen was then taken to an

interview room and was advised of his *Miranda* rights.   Allen then admitted participation in the

robbery and shooting of the victim.   When questioned about details, Allen told the detectives that

he did not wish to discuss the case anymore.   The interview then ceased.

After the Government's evidence, during the following exchange, Magistrate Judge

Mummert indicated that, if either defendant testified, they would be cross-examined on some

issues.   The attorney for Holder (Mr. Dede) told the Court that he intended to call his client to

testify at the motion hearing.   The following exchange occurred:

> THE  COURT: I just want the,—I just want to make my point.   I don't know
> what Mr. Landolt's position is, but to avoid this when we're in the middle of it,
> my position is once an individual takes a witness stand he's there for
> whatever cross examination that may pop up, especially in a situation like this.
> So, if you want to limit his testimony to various items, I'm not so sure that I can keep
> Mr.,—or I won't keep Mr. Landolt to that limitations (sic).   I want to
> make sure you knew that going in.
>
> MR. DEDE:   Oh, alright. Well, then let me discuss that with the Defendant.   It would be
> my position that consistent with,--

THE COURT:   Unless Mr. Landolt agrees to cross only on the issues addressed in the questioning.

MR. LANDOLT:   Judge, I think once he takes the witness stand, he's,─the issues in the case are the scope of cross examination.

THE COURT:    Yeah.   Well, that's what,--

MR. DEDE:    Well,─ I'm sorry.   I didn't mean to interrupt.

THE COURT:    No, that's okay.   Go ahead.

MR. DEDE:    No, please, you.

THE COURT: I probably should have let Mr. Landolt make that objection first, but, again, I didn't want to put you in a position of making the ruling before,─or after you had already subjected your client to the cross examination.   That's my understanding of the law.   But if you can convince me otherwise, I'll be glad to listen to it.

MR. DEDE: Well, my position,─my argument is, that just as the Government has objected all day long about being limited in the scope of this proceeding, *I think that his testimony is limited to the scope of this proceeding.*

*THE COURT: Yeah, it is, except, ─I think you're right, except that I just think it goes a lot broader on, ─because Mr. Allen and Mr. Holder, for that matter,─Mr. Holder and Mr. Allen, I should say, were participants in this questioning and answer process in the police department from get to go (sic), that the cross examination is gonna be a lot wider and more open than I permitted with the police officers who were here to, ─or the witnesses who were just here to testify about the specific identification processes.*

MR. DEDE: Okay.   Well, if I could have a few minutes to discuss that with Mr.,--

THE COURT: Mr. Sindel, are you gonna make the same type of request?

MR. SINDEL: Yes, your Honor.   I had indicated to you in chambers that I had intended to call my client, and I intended to seek an order from the Court in a Motion in Limine to restrict the cross examination to those matters that were brought up and appropriately touched up in the direct examination.   It's my understanding that that would be, in fact, the rule of law, that there would not be a situation in which they could be questioned about other matters that have not been specifically raised during the course, ─or touched upon during the course of direct.   Just so the record is clear, and I hope I'm not misstating anything, but, you know, you did indicate to me what your ruling would be in that particular situation and I indicated to you that I would like to make an offer of proof in that

4

regard.   I don't know how the Court wants me to do it.   I know if we were in State Court how you'd want me to do it, okay‒

THE COURT: I wouldn't want you to do it, okay.   But I'm not gonna let you have, ‒how would you want to make the offer of proof?

MR. SINDEL: I could either do it through the testimony of the Defendant or I could do it through the statements that I make to the Court.

THE COURT: Yeah, that's how I would prefer you doing.

Hrg. Trans. 5-16-97,   pp. 348-351 (emphasis added).

This Court correctly found that the Magistrate Court limited the potential cross-examination to the issues relevant to the motion to suppress.   The Magistrate Judge merely observed that these matters would necessarily be broader than earlier witness testimony because Allen was involved in multiple contacts with the police officers that day as opposed to another witness who simply testified about the lineup mechanics.   This Court did not err in finding that the Magistrate Judge had limited Allen's possible cross-examination to issues concerning his motions to suppress.

Allen now claims that his trial counsel was ineffective for failing to understand the ruling, not asking for clarity if he did not understand the ruling, and for not properly advising Allen about testifying in light of the ruling.   These specific claims were not raised by Allen in his earlier petitions.   As the Court noted in its May 10, 2011 order, "Allen is also not alleging that counsel provided ineffective assistance by failing to advise him to testify at the suppression hearing, notwithstanding the magistrate judge's statements about the scope of cross examination." Document 147, p. 10, ftnt 3.   The original claim was limited to trial counsel's alleged failure to argue effectively for suppression and to submit a timely offer of proof.

Trial counsel was not ineffective for failing to understand the ruling; it is clear that he knew

5

that Allen would be subjected to cross examination beyond the narrow limits of direct examination and could be questioned about his contacts with multiple officers that day concerning his statements.   Allen now postulates that trial counsel would have advised him to testify if he understood the Magistrate Judge's ruling and that trial counsel would have no reasonable basis for advising Allen not to testify.   There is nothing in the record to support this speculation. Moreover, it was sensible to advise Allen not to testify at the motion to suppress.   The offer of proof concerned all Allen's contacts with police officers and agents on March 18th and 19th. Allen's Traverse, p. 20, fn 3.   Thus, the proper scope of cross examination would necessarily be broad--and dangerous given that his testimony would have contradicted the testimony of multiple police officers and agents.   Counsel did not render ineffective assistance by advising Allen not to testify at the motion to suppress hearing.   In addition, Allen cannot demonstrate prejudice; that is, if he had testified, the Magistrate Judge would have suppressed his statement.

Finally, Allen contends that trial counsel was deficient for failing to present a timely offer of proof to the Magistrate Judge.   This issue was correctly resolved by this Court in its Memorandum and Order of May 10, 2011 and its Memorandum and Order of August 29, 2011 denying the Motion for Reconsideration.   The Motion to Suppress hearing was held on May 16, 1997.   The Magistrate Judge issued his initial Report and Recommendation on June 13, 1997, which, among other findings, rejected Allen's Motion to Suppress Statements.    On June 19, 1997, Allen's trial counsel filed his offer of proof which asserted that he was not advised of his *Miranda* rights until 4 a.m. on March 18 by the FBI agent, that he then invoked his rights, that detectives continued to question him, that he was not identified in the lineup but was told that he had been identified, and that he continued to be questioned by detectives and Lt. Henderson

6

despite his invocation of his rights.   On July 8, 1997, the Magistrate Judge issued a Supplemental

Order and Amended Findings which amended certain findings of fact but continued to deny

Allen's Motion to Suppress Statements.   Subsequently, both the Government and Allen filed

Objections to the Report and Recommendation of the Magistrate Judge.   On August 13, 1997, this

Court adopted the Magistrate Judge's Report and Recommendation and denied Allen's Motion to

Suppress Statement.   Thus, trial counsel preserved Allen's objection to the admission of his

statements by filing a written offer of proof.   The written offer of proof was before the Magistrate

Judge when he issued his Supplemental Order and Amended Findings and before this Court when

it issued the order denying Allen's Motion to Suppress Statements.

Trial counsel's actions fall "within the wide range of reasonable professional assistance."

*Strickland v. Washington,* 466 U.S. 668, 689 (1984).   Allen cannot show prejudice because the

offer of proof was before the Magistrate Judge and this Court before final rulings.

The allegations do not require a hearing.   The Court's prior findings are supported by the

record.   Allen's claim should be denied.

II.    Allen Was Not Denied Effective Assistance of Counsel in the Guilt Phase Because

the Listed Evidence Would Not Have Raised a Reasonable Doubt As to Allen's

Guilt

Allen contends that trial counsel was ineffective for failing to present purportedly

exculpatory evidence during the guilt phase of the trial. Specifically, Allen contends that counsel

should have presented evidence that: 1) blood on a strap of a bullet proof vest found at the scene of

the burning van did not match his blood; 2) Jerry Bostic was the real murderer; 3) Allen's clothing

did not contain petroleum distillates; and 4) Chris Shegog saw Allen at Northwest Plaza at 10 or 11

7

a.m. on the morning of the robbery.   All of these contentions are refuted by the record and do not warrant an evidentiary hearing.

### 1. Velcro strap

The "white velcro strip/body armor with blood spattering" was found at the scene of the burning getaway van.   The blood did not match Allen's or the victim Mr. Heflin's blood.   It was not tested against co-defendant Holder's blood.   The strap was consistent with the evidence at trial that Holder was arrested at the scene of the burning van while wearing body armor.   It is entirely speculative that the blood actually came from someone other than Holder and that other person was the second robber.   In addition, Allen cannot show prejudice.   The other evidence—Allen's confession, evidence of Holder and Allen's planning of the robbery and eyewitness accounts—demonstrate Allen's guilt.

### 2. Jerry Bostic

Allen's contention that trial counsel should have presented evidence that Jerry Bostic was the real murderer is equally unsupported by colorable evidence.   His citation of reports of a possible robbery suspect who was 5'8" tall is undercut by the fact that the autopsy reports for Jerry Bostic indicate that he was 5'5" tall.   Allen told the police that J.B. was involved in the crime by obtaining stolen cars, not by entering the bank to rob it and kill Mr. Heflin.

At trial, the Government presented Allen's confession.   Allen stated that co-defendant Holder told him that "J.B" would steal two vans and that one van would be used for the robbery and the second van would be used to drive to Holder's car.      Tr. Trans., 2-17-98, p. 144.   Allen has presented no evidence that J.B. was one of the robbers of the Lindell Bank and Trust.   His claim that Jerry Bostic accurately fit the description of the individual implicated in the bank robbery is

8

refuted by the record.    Betty Thompson testified that the passenger in the getaway van was five or six feet tall–a description consistent with Allen, Bostic and many others.   Tr. Trans., 2-18-98, p. 95.   Alma Gilliam testified that the passenger was about 5'8" which was taller than her.   Tr. Trans., 2-18-98, pp. 346, 352.   Bobby Harris, who gave the passenger a ride after the getaway van caught fire, stated that he believed the passenger was 5'9" or 5'10" tall, 175 lbs..   Tr. Trans., 2-19-98, p. 267.   Bruce Norman, who was with Bobby Harris, stated he had told the police that the person was 5'9" tall, 175 lbs.   Tr. Trans., 2-20-98, p. 9-37.   None of these descriptions match Jerry Bostic's true height and weight of 5'5" and 135 lbs.

Allen has not shown prejudice from trial counsel's failure to further investigate Jerry Bostic as a possible robber.   The evidence was overwhelming that Allen was the robber of the Lindell Bank and Trust who repeatedly shot Mr. Heflin.   He confessed to robbing the bank and shooting Mr. Heflin.   He was identified as the passenger in the getaway van.   He was identified as the passenger who fled from the burning getaway van.   His clothing had burnt plastic on it that was consistent with the burnt plastic in the getaway van.   His hair and ear were burnt.   He made admissions to two acquaintances about his involvement in the robbery.   He attempted to convince a friend to lie for him at trial.   The Court's denial of an evidentiary hearing on this claim is supported by the record.

### 3. Petroleum Distillates

Allen claims that trial counsel was ineffective for failing to present evidence that his clothing did not contain petroleum distillates to contradict Officer Carroll's testimony that defendant smelled of smoke when arrested.   This evidence was irrelevant to Officer Carroll's testimony.   Furthermore, trial counsel impeached Officer Carroll with other witnesses' testimony

9

that defendant did not smell of smoke.

In the Government's Response to Allen's Traverse, Addendum 4, Forensic Scientist Margart Owens stated that she reviewed the laboratory report that found that there were no petroleum distillates on Allen's clothing.   She stated:

> I believe that in this instance, there is no correlation between the smell of smoke on clothes from Mr. Allen and the Laboratory's analysis result that "no petroleum distillates were detected" on the clothes.   The method of analysis to which the clothing was subjected was not a test for the presence of smoke.

Ms. Owens managed the Arson Section at the St. Louis Metropolitan Police Department laboratory and analyzed in excess of 200 arson cases.   Government's Response, Addendum 4.

Allen presented no affidavits to show that the lack of petroleum distillates on Allen's clothing was inconsistent with his clothing smelling like smoke.   The van was doused in gasoline by Holder and then set on fire prematurely by Holder as he and Allen were fleeing from the scene. Tr. Trans., 2-17-98, pp. 145-6, 148-9.   Since Holder poured gasoline on the van (and apparently his sleeve as well), petroleum distillates were likely to be found on his clothing.   The lab report indicates that petroleum distillates were found on Holder's clothing.   Government's Response, Addendum 4.    Because Allen was in a burning vehicle, it is logical that he would smell of smoke even if none of the gasoline had been poured on him.   There is no inconsistency between Allen smelling like smoke and the finding that there were no petroleum distillates on his clothing.

Trial counsel impeached Officer Carroll's testimony with testimony from two other witnesses that Allen did not smell of smoke.   Lakeisha Williams testified that Allen did not smell of smoke when he was arrested.   Tr. Trans., 2-24-98, pp. 167-8.   Marcie Chowning also testified that Allen did not smell of smoke that evening.   Tr. Trans., 2-24-98, p. 212.

Trial counsel impeached Officer Carroll and therefore cannot be found to be ineffective.

10

Allen's claim that the gas chromatographic examination would have been more effective is belied by Ms. Owens' affidavit that there is no correlation between the lack of petroleum distillates and the smell of smoke.    Allen can show no prejudice from trial counsel's failure to use the laboratory report to impeach Officer Carroll.

    4.  <u>Chris Shegog</u>

For the first time, Allen raises the claim that trial counsel was ineffective for failing to introduce the testimony of Chris Shegog that he saw Allen at Northwest Plaza at 10 or 11 a.m. on March 17, 1998, the day of the robbery.    Allen's claim that trial counsel was ineffective for not presenting Chris Shegog is time-barred because it does not relate back to his original timely motion.    Allen has not previously claimed ineffective assistance of counsel based upon failure to present Chris Shegog as a witness.    Allen's new claim is not similar in both time and type to his original claim.    His original claims concerned trial counsel's actions during trial for failing to present specific evidence that did not include testimony of Chris Shegog.    Allen's new claim concerns the use of Shegog as a witness.    The Eighth Circuit Court of Appeals has rejected the argument that the trial itself is the transaction or occurrence that satisfies the relation-back doctrine.  *United States v. Hernandez,* 436 F.3d 851, 858 (8th Cir. 2006).    This claim is not similar enough to satisfy the "time and type" test, nor does it arise out of the same set of operative facts as the original claim.  *Id.*    Allen's new claim should be dismissed as time-barred.

Moreover, the claim should be denied on the merits.    As can be seen from the various statements that Mr. Shegog has given, he has not provided a consistent account of *when* he met Allen at Northwest Plaza and their activities after that time.    Document 379-4.    No records support the time that he met Allen at Northwest Plaza.    However, Mr. Shegog has repeatedly

11

stated that Allen had a blister consistent with a burn on his ear, that Allen spent a large amount of money on clothing that day and brought cash and gifts to women Mr. Shegog assumed were Allen's girlfriends, and that Allen did not appear upset.   Document 379-4, pp. 21-22, 29-31, 34. It is clear that trial counsel was aware of Mr. Shegog as a witness.   Document 379-4, p. 8 (memo from Connie Supranovich to Richard Sindel 1/29/1998) p. 1-2 (memo from Andrew Rackers to Richard Sindel).

Defendant's statement to St. Louis City police was that when he fled from the burning van after he committed the robbery, he paid two City workers to take him to the MetroLink.   He took the MetroLink to the St. Charles Rock Road stop where he caught a bus to Northwest Plaza.   He shopped at Northwest Plaza.   Tr. Trans., 2-26-98, pp. 149-150.   Marsha Chowning testified that she spoke to Allen on a three way conversation with Lakeshia Williams when he was at Northwest Plaza anytime between 11 a.m. and 3 p.m. on the day of the robbery.   Tr. Trans., 2-24-98, p. 190. Ms. Williams testified that the phone call occurred around 3 or 3:30 p.m. that day. Tr. Trans., 2-24-98 , p. 138.

Mr. Shegog would have confirmed that Allen had a burn on his ear and suddenly had large sums of money to spend.   He would have confirmed, in part, the accuracy of Allen's statement to the police.   Thus, it was not ineffective assistance for trial counsel to conclude that Mr. Shegog's testimony would not be beneficial to Allen overall.    The evidence that Allen was the robber of the bank was extremely strong—his confession, eyewitness identification, admissions to acquaintances of his involvement, and physical evidence such as burnt plastic on his clothing. Mr. Shegog's testimony would have established that Allen used the stolen money to go on a shopping spree a short time after the murder of Mr. Heflin.   This would have reinforced the

12

Government's argument that Allen lacked remorse after the killing as evidenced by his shopping at Northwest Plaza shortly after the murder.   Tr. Trans., Government closing, 3-9-98, p. 60. Allen's claim should be denied as untimely and on the merits without an evidentiary hearing.

III.     There is No Factual or Legal Basis to Recuse the Court

Allen claims *pro se* that the Court is biased and should be recused.   There is no factual or legal basis for this claim and it should be denied.

A judge must be recused from "any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) sets forth an objective standard for assessing a judge's duty to recuse; the question is " 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.' "   *United States v. Melton,* 738 F.3d 903, 905 (8th Cir. 2013) (citations omitted). Expressions of impatience, dissatisfaction, annoyance and even anger are not sufficient to require recusal.   *Id.*   When a party seeks to establish bias or prejudice from court conduct, the party must show "that the judge had a disposition 'so extreme as to display clear inability to render fair judgment.' "   *Id.* (citations omitted).   Allen has made no such showing.

Allen supports his claim for recusal solely on the basis that the Court denied his *pro se* claims related to alleged fraud on the court, DNA testing, conflict of interest with trial counsel, and his motion to compel production of audio recordings.   Judicial rulings rarely establish a valid basis for recusal. See *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147 (1994) ("[Judicial rulings] are proper grounds for appeal, not for recusal.");   *Melton,* 738 F.3d at 906.    The Court's rulings have been meticulously supported by the record and the caselaw.    There is no basis for recusal of the Court and his claim should be denied.

13

IV.     There Was No Fraud Upon the Court Concerning the Testimony on Allen's Motion to Suppress Statements

Allen repeats his *pro se* claim that there was fraud upon the Court because Detective Harper testified at trial that Lt. Henderson gave instructions not to ask Allen questions because Allen had requested an attorney whereas Lt. Henderson testified that he was not aware that Allen had told FBI Special Agent Jan Hartman that Allen had requested counsel.   This is a false contradiction.   Lt. Henderson testified that, when he came to work the morning of March 18th, he was told that Allen had invoked his *Miranda* rights and did not wish to speak to anyone.   Lt. Henderson testified that Sgt. Grist informed him of Allen's wishes.   Tr. Trans., 2/17/98, pp. 158-160.   Lt. Henderson did not speak to Agent Hartman and only learned *later* than Allen had asked Agent Hartman for an attorney. Tr. Trans., 2/17/98, pp. 194-195.

These supposed contradictions are, in fact, merely a reflection that different officers knew different details at different times.   None of these alleged contradictions have any impact on the uncontradicted testimony of the officers that no officer interviewed Allen after he invoked his *Miranda* rights until Allen initiated contact after Allen was identified in a physical line-up.   There was no fraud on the Court.     The validity of his waiver was fully litigated during the criminal case.   The Court of Appeals affirmed the denial of his motion to suppress statements.   *United States v. Allen,* 247 F.3d 741, 764-7 (8th Cir. 2001), *vacated on other grounds,* 536 U.S. 953, 122 S. Ct. 2653, 153 L.Ed.2d 830 (Mem. 2002).   Because his claim was considered and rejected on appeal, it is not cognizable in a Section 2255 motion.   *Thompson v. United States*, 7 F.3d 1377 (8th Cir. 1993) .

Allen attempts to couch his claim under Federal Rule of Civil Procedure 60.   However, as

14

the Court found in its June 25, 2014 Order denying relief, Allen is ineligible for relief under Rule 60(b)(3) because such relief is limited to "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).    His claim under Federal Rule of Civil Procedure 60(d)(3) is similarly unsuccessful.    Although FRCP 60(d)(3) does not have a specific time limit, its requirements for a showing of  "fraud on the court" are stringent and have not been met by Allen.    As the Court stated in its Order, "Only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court."  *Jackson v. Thaler*, 348 Fed. Appx. 29, 34 (5th Cir. 2009) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)) (internal adjustments omitted).    Allen has not demonstrated any such fraud.

V.    Allen Has Not Demonstrated a Conflict of Interest Between Himself and Trial Counsel

Allen's next *pro se* claim is that there was a conflict of interest between himself and trial counsel.    Neither his original *pro se* motion nor his current motion has identified any conflict of interest.    This claim should be denied as untimely and because he has provided no basis for his allegation.

As the Court found in its June 25, 2014 Order, Allen's claim is untimely because it fails to relate back to his timely filed 2255 Motion.    The claims in a supplemental motion must arise out of the same set of facts as the original motion in order for them to "relate back" and thus be timely. *Mandacina v. U.S.*, 328 F.3d 995, 1000 (8th Cir. 2003).    Allen's new *pro se* claim does not arise out of the same set of facts.

Moreover, Allen has not described any "conflict of interest."    In *Morelos v. United*

15

*States,* 709 F.3d 1246, 1252 (8th Cir. 2013), the Court stated:

> Under *Cuyler* [*v. Sullivan,* 446 U.S. 335, 100 S.Ct.1708, 64 L.Ed., 333 (1980)] a defendant must prove the existence of an actual conflict of interest. 446 U.S. at 348, 100 S.Ct. 1708. "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Noe [v. United States*, 601 F.3d 784, 790 (8th Cir.)], (quoting *Mickens [v. Taylor]*, 535 U.S. at 174–75, 122 S.Ct. 1237). "The effect must be actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct." *Id.* (quoting *Covey [v. United States]*, 377 F.3d at 908). To prove a conflict produced an adverse effect, a defendant must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir.2006) (quoting *Covey*, 377 F.3d at 908) (internal quotations omitted).

Allen fails to state the nature of the conflict of interest, to identify a plausible alternative defense strategy or tactic defense counsel might have pursued, or to establish that a conflict of interest caused defense counsel to fail to pursue such alternative strategy or tactic.   His claim should be denied.

## VI.      Allen Has Not Established Any *Brady* or Discovery Violation

Allen's final *pro se* claim is that the Government had in its possession recordings of witnesses that have been withheld from Allen.   As a initial matter, Allen has failed to establish that such recordings exist.   He has not even pled facts that would establish the three crucial requirements of *Brady:* (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed the evidence.     *Mandacina*, 328 F.3d at 1001.

Allen bases his claim that recordings exist on an exchange between his counsel Mr. Sindel and FBI Special Agent Jan Hartman:

Sindel:        Are you aware of whether or not anyone else has used a tape recording (sic) to,--in the process of an interview of any witnesses in this case?

16

| | |
|---|---|
| Hartman: | Yes. |
| Sindel: | Okay. Was that Ms. Gilliam? |
| Hartman: | Not that I know of. |
| Sindel: | Okay.   Who was that that you know of? |
| Landolt: | Judge, again, I'd—this is a fishing expedition. |
| The Court: | I'll sustain the objection. |
| Sindel: | Okay. |
| | Was that person with the police department, City Police Department, or the Federal Government? |
| | I'll tie it up.   Just let me ask one more question. |
| Hartman: | Okay. I'm, -- |
| Sindel: | The person who did the tape recording, was he in the City Police Department or the FBI? |
| Hartman: | It would have been a City officer. |
| Sindel: | Okay.   So the City officer, to the best of your knowledge, had tape recording equipment available to them? |
| Hartman: | I believe so. |

Motion hearing Transcript, 5/16/97, p. 84.   Subsequently, trial counsel asked Officer Thomas Carroll if he used tape recording equipment during the investigation and he stated that he had not done so although such equipment was available to him.   Motion hearing Transcript, 5/16/97, p. 182.

Allen has not identified any officer or agent who took a taped statement or any witness whose statement was taped by the police or agents and not provided to him.   He has not shown that any such taped statements, if they exist, were favorable to him or material to his guilt.   Allen has wholly failed to demonstrate any grounds for relief.

For the foregoing reasons, the Government respectfully requests that the Court deny Petitioner's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59.

Respectfully submitted,

RICHARD G. CALLAHAN.
United States Attorney


*s/Carrie Costantin*
CARRIE COSTANTIN, #35925MO
Assistant United States Attorney
111  South 10th Street, Room 20.333
St. Louis, Missouri  63102
Telephone:  (314) 539-2200


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2014, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.


*s/Carrie Costantin*
Carrie Costantin, #35925 MO
Assistant United States Attorney

18