**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

_____

BILLIE JEROME ALLEN,

        Petitioner,

        -v-

UNITED STATES OF AMERICA,

        Respondent.

_____

|  |
|:--|
| : |
| : |
| : |
| : |
| : |
| : |
| : |
| : |
| : |
| : |
| : |

No. 4:07-CV-27 ERW

**Capital 2255 Case**

Hon. E. Richard Webber, U.S.D.J.

**PETITIONER'S REPLY BRIEF IN SUPPORT OF
MOTION TO ALTER OR AMEND JUDGMENT**

Petitioner Billie Jerome Allen respectfully submits this reply in support of his motion to alter and amend the judgment of this Court.

On June 25, 2014, this Court denied Petitioner's § 2255 motion, denied a certificate of appealability ("COA") on all claims, and entered judgment against Petitioner.  Doc-375.

On July 23, 2014, Petitioner timely filed a motion to alter and amend the judgment pursuant to FED. R. CIV. P. 59(e).  Doc-379.  The Government submitted a Response on July 30, 2014.  Doc-380.  This reply brief follows.

**ARGUMENT**

**A.  Mr. Allen was denied effective assistance of trial and appellate counsel in connection with the pre-trial motion to suppress alleged statements made to the police.**

The Government contends that it presented evidence at the suppression hearing to establish that Mr. Allen had waived his rights after officers continually reminded him that he had earlier requested an attorney.  Resp. at 3.

The magistrate court's evidentiary findings turned on two key points: first, whether officers honored Mr. Allen's rights after he requested an attorney; and, second, whether Mr. Allen initiated contact with officers after he was purportedly identified in a lineup.  A close look at the evidence presented at the suppression hearing, in conjunction with the trial evidence, shows that the magistrate court's findings were undermined at trial by the false testimony of Government witnesses. Thus, the Government's contention that Mr. Allen waived his rights is belied by the record.

As evidence that Lieutenant Henderson was told of Mr. Allen's request for counsel, the Government has repeatedly argued that Henderson did not find out that Mr. Allen requested an attorney from Agent Hartman (who testified that she did not tell Henderson or anyone else about the request), but from Sergeant Grist.  But this argument is directly refuted by Henderson's testimony at trial, which the Government

fails to acknowledge. At trial, Henderson was clear that he had not been told that Mr. Allen requested an attorney:

> Q. Listen to my question. I don't care if you spoke with Agent Hartman or not. What I want to know is at the time that you interviewed Mr. Allen, were you aware that he had told Agent Hartman [about his request.]
>
> A. No. No, I was not, sir.

Tr. 2/17/98 at 203.

It is clear that Henderson did not know anything about the request for counsel until after the alleged confession was given. This point directly undermines the Government's position that Mr. Allen waived his rights *after* the lineup. Counsel failed to identify the timing of these events at the suppression hearing or at trial to effectively argue that Mr. Allen had not given a confession and/or that any statement should be suppressed.[1]

Counsel was ineffective for failing to call into question the inconsistent and incredible testimony of Officers Henderson and Harper at the suppression hearing and

---

[1] There are no notes or recordings of what actually took place, so both the magistrate court, and later the jury, could only rely on the testimony of Harper and Henderson. As has been pointed out repeatedly, that testimony was highly inconsistent and not credible.

at trial.[2]  Had counsel effectively exposed the incredible testimony of these witnesses, and properly advised Mr. Allen about his right to testify at the suppression hearing, there is a reasonable likelihood that Mr. Allen's alleged confession would have been suppressed and Mr. Allen acquitted at trial.  Similarly, there is a reasonable likelihood that the jury would have correctly surmised from the officers' incredible testimony that Mr. Allen never made a confession, and thus would have acquitted him.

**B**.　　**Trial counsel provided ineffective assistance at guilt phase by failing to present available evidence that would have raised a reasonable doubt as to Mr. Allen's guilt**.

The Government overlooks the fact that, while Petitioner's claim addresses the DNA found on the white strap from the bulletproof vest, DNA was also found in another area of the crime scene.  *See* Resp. at 7-8.  The DNA relevant to this claim was found not only the "white strap" but also on a "damp rag."  *See* Ex. 1.

While the Court and the Government have addressed the white strap, neither has meaningfully addressed the damp rag or explained how another sample of unknown

---

[2] As argued at length in Petitioner's Rule 59 motion, Government witnesses testified incredibly: Henderson testified incredibly about being told of Allen's request for counsel; Harper testified incredibly about destroying his notes of Allen's interview; Henderson testified incredibly that Allen requested to speak with him because he "knew" him from the Marquis Taylor incident. *See, e.g.*, Doc-379 at 5-14, 25-27.  Furthermore, counsel has acknowledged that he would have had no reasonable basis for not investigating and presenting evidence that Henderson testified incredibly that Petitioner asked to speak with him because he knew Henderson from the Marquis Taylor killing.  *See* Doc-379, Ex. 2.

biological material was found outside of the area where Holder was arrested.  The Government contends that it is "entirely speculative" that the blood found on the white strap came from someone *other than* Holder, *see* Resp. at 8, but of course, without DNA testing, it is equally speculative that the blood came *from* Holder.  In any event, the Government's argument fails to explain how a perpetrator's biological material also ended up on the damp rag.  Because Holder was arrested near the van and the damp rag was found in a separate area, *see* Ex. 1, it is highly unlikely that the DNA on the rag could be Holder's.  Only DNA testing and not baseless speculation can answer the question of whose DNA it is.

That DNA testing is needed is further established by the reports from witnesses in the park who indicated that they saw a suspect shortly after 11:00 a.m. running through the park with a cut on his hand.  *See* Doc-379-3, Ex. 3.  Under the Government's trial theory, it could not have been Mr. Allen who was running through the park at that time, since the Government presented testimony that Mr. Allen was driven out of the park by two park workers. *See* Tr. 2/19/98 at 241-78 (trial testimony of Bobby Harris); Tr. 2/20/98 at 15-50 (trial testimony of Bruce Norman).[3]  The DNA

---

[3] Of course, these park workers initially *denied* having given Mr. Allen a ride out of the park.  *See id.*

testing that is needed will either show that it was Mr. Allen who was running through the park around 11:00 a.m., or that it was actually Jerry Bostic.

The Government also contends that Mr. Shegog's account of the day of the crime does not advance Petitioner's defense, *see* Resp. at 11-13, but that is incorrect. Mr. Shegog has consistently placed Mr. Allen at the shopping mall at or before the time when the second suspect was still seen in Forest Park. *Compare* Doc-379-4, Ex. 4 & Doc-379-5, Ex. 5 *with* Doc-379-3, Ex. 3. Given the undisputed accounts of the officers and witnesses at the park, and the consistent statements of Mr. Shegog, Mr. Allen simply could not have been at two places at one time. There was no way that Mr. Allen could have made it from the park to the mall, gone shopping and then met Mr. Shegog between 10 and 11 a.m. Counsel was ineffective for failing to adequately investigate and present this evidence.

The Government nonetheless argues that Mr. Sindel was not ineffective for not presenting the DNA evidence, the gasoline testing results, and the other available evidence related to Mr. Allen's innocence. *See* Resp. at 8-11. The Government's position raises an issue of fact that requires a hearing, particularly in light of Mr. Sindel's responses to Petitioner's recent letter. *See* Doc-379, Ex. 2. Mr. Sindel did not adequately consider and investigate the evidence related to guilt, and there was no strategic reason for this failure.

6

WHEREFORE, for the above reasons and the reasons set forth previously, this Court should alter and amend its judgment to order discovery and a hearing, to vacate Petitioner's convictions and death sentence, or at a minimum, to issue a certificate of appealability.

Respectfully Submitted,

/s/ Timothy Patrick Kane
Timothy Patrick Kane
James Henry Moreno
Eric John Montroy
Assistant Federal Defenders
Capital Habeas Unit
Federal Community Defender Office
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
 (215) 928-0520

Dated:      August 6, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2014, the foregoing *Petitioner's Reply in Support of Motion to Alter of Amend Judgment* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

> Ms. Carrie Constantin
> Assistant United States Attorney
> 111 South 10th Street, 20th Floor
> St. Louis, Missouri 63102,

and to be served by first class mail, postage prepaid, upon:

> Billie Jerome Allen
> Register # 26901-044
> USP Terre Haute
> Special Confinement Unit
> P.O. Box 33
> Terre Haute, IN  47808.

/s/ Timothy Patrick Kane
Timothy Patrick Kane
Counsel for Petitioner