UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| BILLIE JEROME ALLEN, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:07CV00027 ERW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Billie Jerome Allen's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59 [ECF No. 379].

**I.      BACKGROUND**

On March 17, 1997, Petitioner Billie Jerome Allen and Norris Holder robbed the Lindell Bank & Trust Company in Saint Louis, Missouri. The bank robbery resulted in the death, by multiple gunshot wounds, of bank security guard Richard Heflin. Mr. Allen was indicted for crimes stemming from the armed bank robbery in April 1997. Count I of the indictment charged him with killing Mr. Heflin in the course of committing an armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (e) (1994). Count II of the indictment charged Mr. Allen with using a firearm to commit a crime of violence resulting in the death of another under circumstances constituting first-degree murder, in violation of 18 U.S.C. § 924(j)(1) (1994 and Supp. II 1996).[1] The Government filed a timely notice of intent to seek the death penalty, and, following a trial, a jury found Mr. Allen guilty on both Counts. Following a separate penalty phase, the jury

---

[1] Norris Holder was indicted and convicted of identical counts. He received sentences of death on both counts.

returned a sentence of life imprisonment on Count I, and a sentence of death on Count II. The Court formally sentenced Mr. Allen on June 4, 1998.

On February 11, 2008, Mr. Allen filed his Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under a Sentence of Death (Amended Motion) [ECF No. 60],[2] raising numerous grounds for relief. In its Memorandum and Order dated May 10, 2011 [ECF No. 147], the Court denied, without an evidentiary hearing, all but one of Mr. Allen's asserted grounds of relief. The Court granted an evidentiary hearing regarding Mr. Allen's claim trial counsel were ineffective for failing to adequately investigate and present mitigating evidence at the penalty phase of trial.

On June 14, 2011, Mr. Allen filed a Motion for Reconsideration [ECF No. 149], asking, *inter alia*, the Court to reconsider various portions of its May 10, 2011 Memorandum and Order. The Court denied the Motion for Reconsideration on August 29, 2011. ECF No. 165. Then, on dates between June 4, 2012 and December 10, 2012, the Court conducted an extensive evidentiary hearing on Mr. Allen's claim trial counsel were ineffective for failing to adequately investigate and present mitigating evidence at the penalty phase of trial. Afterward, the parties submitted post-hearing briefs.

On November 25, 2013, Mr. Allen filed a Letter to the Court requesting permission to file a pro se motion raising additional grounds for his pending Amended Motion. The Court, although recognizing it had no obligation to entertain pro se filings while Mr. Allen is represented by counsel, permitted Mr. Allen to state his additional grounds for relief. The Court allowed Mr. Allen to "submit only those filings necessary to apprise the Court of (1) the substance of his additional grounds for relief, and (2) whether such grounds have been

---

[2] Mr. Allen supplemented this Amended Motion on August 17, 2009. ECF No. 98.

procedurally defaulted." ECF No. 361 at 2. On February 12, 2014, after receiving additional pro se filings outside this scope, the Court ordered, in the future, it would only accept filings through counsel of record. ECF No. 372.

On June 25, 2014, the Court denied relief as to both the pro se filings and the filings submitted with assistance of counsel, including the claim litigated at the evidentiary hearing. ECF Nos. 373-74. The Court entered judgment against Mr. Allen the same date. ECF No. 375. Mr. Allen filed a pro se Motion for Recusal [ECF No. 377] on July 7, 2014, which the Court struck from the record pursuant to its February 12, 2014 Order. In the instant Motion, Mr. Allen, through counsel, seeks to alter the Court's June 25, 2014 judgment.

## II. STANDARD

Under Federal Rule of Civil Procedure 59(e), a district court has broad discretion to "alter or amend a judgment . . . no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e); *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). Motions under Rule 59(e) "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted). "Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise new arguments which could have been offered or raised prior to the entry of judgment." *Id.* at 934.

## III. DISCUSSION

In the instant Motion, Mr. Allen argues the judgment should be amended on several grounds. First, he contends the Court erred in finding he was not denied effective assistance of counsel in relation to his efforts to suppress certain incriminating statements made to law enforcement officials. Second, he claims the Court erroneously concluded counsel was not

deficient for failing to present various forms of alleged exculpatory evidence during the guilt phase of trial. Finally, Mr. Allen states the Court should have granted relief on the grounds set forth in his pro se filings. For reasons stated *infra*, relief will be denied.

### A. *Motion to Suppress*

On May 8, 1997, Mr. Allen filed a Motion to Suppress certain incriminating statements he made to law enforcement officials. *See* Case No. 4:97CR00141 ERW, Doc. No. 71. At the suppression hearing, the Government presented evidence indicating Mr. Allen was properly informed of his *Miranda* rights at the time of his arrest – approximately 2:00 A.M. on March 18, 1997 – and again upon his arrival at police department headquarters a short time later. A few hours later, Federal Bureau of Investigation (FBI) Special Agent Jan Hartman attempted to give Allen a third *Miranda* warning, but he interrupted her by requesting an attorney. The Government's evidence further suggested, on the following morning, Mr. Allen participated in a lineup but declined to have counsel present. After he was identified, a detective declined his request to "talk about it" based on his previous request for an attorney, whereupon he responded he did not want an attorney and wished to speak to a Lieutenant Henderson. Testimony indicated Mr. Allen was then directly led to an interview room and given a *Miranda* warning once again, at which point he made incriminating statements.

Mr. Allen contends the Court manifestly erred in concluding he was not denied effective assistance of counsel in connection with his motion to suppress statements made to the police. Specifically, Mr. Allen argues the Court erred by finding: (1) "the magistrate judge did not rule that Mr. Allen would be subject to cross examination on anything other than the issues pertaining to his motion to suppress," (2) "counsel's performance was not deficient," and (3) "counsel

submitted a timely offer of proof to the magistrate court concerning Mr. Allen's proffered testimony." ECF No. 379 at 9. For reasons stated *infra*, the Court does not agree.

### 1. Scope of Cross Examination at the Suppression Hearing

First, Mr. Allen contends the Court manifestly erred when it held, "The magistrate judge did not suggest that [Mr.] Allen would be subject to cross examination on anything other than the 'preliminary matter' of issues relevant to his motion to suppress[.]" ECF No. 147 at 11. Mr. Allen claims the magistrate judge stated he would be subject to cross examination on any subject pertaining to the case if he chose to testify at the suppression hearing; he states he opted out of testifying on this basis. Mr. Allen states, had the magistrate judge properly limited the scope of cross examination to matters discussed on direct examination, he would have testified at the suppression hearing. He further argues his testimony would have resulted in the exclusion of his incriminating statements to law enforcement officers.

The Court finds it did not manifestly err in concluding "[t]he magistrate judge did not suggest that [Mr.] Allen would be subject to cross examination on anything other than the 'preliminary matter' of issues relevant to his motion to suppress[.]" ECF No. 147 at 11. The relevant portion of the suppression hearing transcript reads as follows:

> THE COURT: I just want the, -- I just want to make my point. I don't know what Mr. Landolt's position is, but to avoid this when we're in the middle of it, my position is once an individual takes a witness stand he's there for whatever cross examination that may pop up, especially in a situation like this. So, if you want to limit his testimony to various items, I'm not so sure that I can keep Mr., -- or I won't keep Mr. Landolt to that limitations [sic]. I want to make sure you knew that going in.
>
> MR. DEDE: Oh, alright. Well, then let me discuss that with the Defendant. It would be my position that consistent with, --
>
> THE COURT: Unless Mr. Landolt agrees to cross only on the issues addressed in questioning.

MR. LANDOLT: Judge, I think once he takes the witness stand he's, -- the issues in the case are the scope of cross examination.

THE COURT: Yeah. Well, that's what, --

MR. DEDE: Well, -- I'm sorry. I didn't mean to interrupt.

THE COURT: No, that's okay. Go ahead.

MR. DEDE: No, please, you.

THE COURT: I probably should have let Mr. Landolt make that objection first, but, again, I didn't want to put you in a position of making the ruling before, -- or after you had already subjected your client to the cross examination. That's my understanding of the law. But if you can convince me otherwise, I'll be glad to listen to it.

MR. DEDE: Well, my position, -- my argument is, that just as the Government has objected all day long about being limited in the scope of this proceeding, I think that his testimony is limited to the scope of this proceeding.

THE COURT: Yeah, it is, except, -- I think you're right, except that I just think it goes a lot broader on, -- because Mr. Allen and Mr. Holder, for that matter, -- Mr. Holder and Mr. Allen, I should say, were participants in this questioning and answer process in the police department from get to go [sic], that the cross examination is gonna be a lot wider and more open than I permitted with the police officers who were here to, -- or the witnesses who were just here to testify about the specific identification processes.

MR. DEDE: Okay. Well, if I could just have a few minutes to discuss that with Mr., --

THE COURT: Mr. Sindel, are you gonna make the same type of request?

MR. SINDEL: Yes, your Honor. I had indicated to you in chambers that I had intended to call my client, and I intended to seek an order from the Court in a Motion in Limine to restrict the cross examination to those matters that were brought up and appropriately touched up [sic] in the direct examination. It's my understanding that that would be, in fact, the rule of law, that there would not be a situation in which they could be questioned about other matters that have not been specifically raised during the course, -- or touched upon during the course of direct. Just so the record is clear, and I hope I'm not misstating anything, but, you know, you did indicate to me what your ruling would be in that particular situation and I indicated to you that I would like to make an offer of proof in that regard. I don't know how the Court wants me to do it. I know if we were in State Court how you'd want me to do it, but, --

> THE COURT: I wouldn't want you to do it, okay. But I'm not gonna let you have, -- how would you want to make the offer of proof.
>
> MR. SINDEL: I could either do it through the testimony of the Defendant or I could do it through the statements that I make to the Court.
>
> THE COURT: Yeah, that's how I would prefer you doing [sic].

Evid. H'rng Tr., Case No. 4:97CR00141 ERW, p. 348:8-351:1 (May 16, 1997). Reading this exchange as a whole makes clear the magistrate judge did not state Mr. Allen would be subject to cross examination on "all matters related to his case," as Mr. Allen argues. ECF No. 379 at 9. Rather, the magistrate judge simply observed, due to Mr. Allen's multiple contacts with police officers, his cross examination would be broader than the cross examinations of witnesses who had merely testified about the lineup and identification. The magistrate judge clarified this concept when he contrasted Mr. Allen – who participated in the "questioning and answer process" – with other witnesses "who were just [there] to testify about the specific identification processes." Evid. H'rng Tr., Case No. 4:97CR00141 ERW, p. 349:15-23 (May 16, 1997). Thus, the magistrate judge did not state he would allow Mr. Allen to be cross examined "on all matters related to his case," and the Court finds no manifest error.

### 2. Deficient Performance

Next, Mr. Allen argues, even if this Court properly determined the scope of the magistrate judge's ruling, trial counsel was deficient "for failing to understand the ruling, to ask for clarity if he did not understand, and to properly advise Mr. Allen about testifying in light of that ruling." ECF No. 379 at 12. Mr. Allen states, if trial counsel understood the magistrate judge's ruling, Mr. Allen would have been advised to testify, and his incriminating statements would have been excluded.

As the Government notes, Mr. Allen could have, but did not raise this argument prior to the instant Motion.³ "Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise new arguments which could have been offered or raised prior to the entry of judgment." *Metro. St. Louis Sewer Dist.*, 440 F.3d at 934. Because Mr. Allen has never before asserted this argument, it is not the proper subject of his instant Rule 59(e) Motion, and relief will not be granted on this ground.

3. **Offer of Proof**

As noted in Section III.A.1, *supra*, on May 16, 1997, the magistrate judge permitted Mr. Allen to submit an offer of proof, describing how he would have testified at the suppression hearing if he had chosen to do so. On June 13, 1997, the magistrate judge, in a Report and Recommendation, recommended denial of Mr. Allen's Motion to Suppress. Case No. 4:97CR00141 ERW, Doc. No. 89. On June 18, 1997, Mr. Allen's trial counsel filed a Motion to Supplement the Record on Defendant's Motions to Suppress Evidence, Identification and Statements; in the Motion, counsel explained, "through inadvertence and error, the [offer of proof], though prepared, was not . . . filed with the court." Case No. 4:97CR00141 ERW, Doc. No. 91. The following day, trial counsel for Mr. Allen filed the offer of proof, which generally alleged detectives repeatedly interrogated Mr. Allen both before advising him of his *Miranda* rights and after he invoked his rights. Case No. 4:97CR00141 ERW, Doc. 92. On July 8, 1997, the magistrate judge granted the Motion to Supplement, adding the following explanation:

> Pending before the undersigned United States Magistrate Judge is the motion of defendant Billie Jerome Allen to file an Offer of Proof . . . in order to supplement the record on his motions to suppress evidence, identification, and statements. Defendant explains in that motion that the offer of proof was prepared in accordance with the undersigned's order granting him leave at the conclusion of the evidentiary hearing to file an offer of proof detailing what the testimony of

---

³ Tellingly, Mr. Allen does not attempt to rebut this point in his Reply brief. *See* ECF No. 381.

defendant would have been had the Court allowed him to testify under the limitations he requested; however, the offer of proof was inadvertently never filed with the Court.

Case No. 4:97CR00141 ERW, Doc. No. 104. The same day, the magistrate judge issued a Supplemental Order and Amended Findings of the United States Magistrate Judge, which amended factual findings unrelated to the offer of proof. Case No. 4:97CR00141 ERW, Doc. No. 103. This Court adopted the magistrate judge's findings and denied the Motion to Suppress on August 13, 1997. Case No. 4:97CR00141 ERW, Doc. No. 133.

On January 13, 1998, the magistrate judge issued yet another Report and Recommendation, the purpose of which was described as follows:

> A previous evidentiary hearing on these . . . motions [to suppress identification] was held on May 16, 1997. Thereafter, the Assistant United States Attorney advised Defendants and the Court that three additional identification procedures occurred after the May 16 evidentiary hearing, thereby requiring another hearing.

Case No. 4:97CR00141 ERW, Doc. 202. The magistrate judge addressed these new matters without discussing the offer of proof, and without affecting the ruling of the original Motion to Suppress. On February 4, 1998, this Court adopted the second Report and Recommendation. Case No. 4:97CR00141 ERW, Doc. 242.

In the instant Motion, Mr. Allen contends this Court manifestly erred when it found the offer of proof was available to the magistrate judge in rulings subsequent to the initial Report and Recommendation. Mr. Allen asserts the offer of proof was, in fact, untimely, because it was unavailable to the magistrate judge when he issued the initial Report and Recommendation. Mr. Allen contends he was prejudiced, because the offer of proof was never discussed in subsequent rulings.

The Court does not agree. As previously stated in the Memorandum and Order dated May 10, 2011,

> Although counsel failed to provide the offer of proof before the initial [Report and Recommendation] was filed, counsel's submission prior to the amended [Report and Recommendation] ensured that the magistrate judge had the opportunity to consider it, and it also served to preserve any objection to the magistrate judge's ruling on the scope of cross-examination.

ECF No. 147 at 11. In the instant Motion, Mr. Allen has not convinced the Court its previous ruling was incorrect; merely because subsequent orders made no mention of the offer of proof does not mean both the magistrate judge and this Court failed to consider it. Any purported "deficiency" of counsel was promptly cured by the June 18, 1997 Motion to Supplement the Record on Defendant's Motions to Suppress Evidence, Identification and Statements. In short, as it has in previous rulings, the Court still concludes counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The Court finds no manifest error, and will not amend the judgment on this ground.

### B. *Guilt Phase Evidence*

In his second ground for relief, Mr. Allen argues the Court manifestly erred by concluding (1) there was a "lack of any colorable allegations linking [Jerry] Bostic to the crimes for which [Mr.] Allen was convicted," and (2) even if evidence did link Bostic to the crimes, the Court's confidence in the outcome of the trial would not be undermined, due to other incriminating evidence. ECF No. 147 at 40. For reasons stated *infra*, the Court finds no manifest error.

#### 1. Colorable Allegations Linking Jerry Bostic to the Crimes

As to his first contention, Mr. Allen claims documents and physical evidence support his allegations another individual, Jerry Bostic, was responsible for the bank robbery, instead of Mr. Allen. Specifically, he states FBI records indicate Bostic was investigated as an individual having contacts with Holder in the days preceding the crime. He also argues records reflect

Bostic's height was 5'8", not 5'5". Mr. Allen contends Bostic had scars on his hands and forearms, consistent with someone involved in the bank robbery. Finally, Mr. Allen argues the blood on two pieces of physical evidence – a bulletproof vest strap and a damp rag – should have been tested to determine whether it matched Bostic's DNA.[4]

None of these allegations support Mr. Allen's claim of manifest error, because each individual allegation is refuted by the record. For example, Mr. Allen cites a single FBI report, describing the statements of a witness named Wayne Ross. The relevant portion of the report states,

> When asked if he was familiar with anyone named JB, Ross advised that either Wednesday or Thursday of Spring Break, a group of friends were at Ross' grandmother's residence playing playstation when Holder was paged. Shortly thereafter, someone called for "808", a nickname for Holder. Ross asked who was calling, and the caller told him JB. Ross asked Holder who it was, and Holder told him one of Bill's "cats."

ECF No. 94-53. As the Court previously explained, this evidence, "assuming it means what [Mr.] Allen claims it means, might tend to inculpate the since-deceased Jerry Bostic, [but] it does

---

[4] In arguing this purported DNA evidence would undermine confidence in the outcome of his trial, Mr. Allen cites *U.S. v. Fasano*, 577 F.3d 572 (5th Cir. 2009). *Fasano*, however, is inapposite for two reasons. First, *Fasano* addressed whether a convicted felon was entitled to DNA testing under Innocence Protection Act, not whether counsel was ineffective for failing to present alleged DNA evidence. 577 F.3d at 574-77. Second, *Fasano* is distinguishable on its facts, because, there, trial counsel presented substantial evidence connecting another individual with the crime:

> Hughes had a criminal record and had been staying in [Fasano's] old room as a guest of Fasano's brother. The defense argued that Hughes had access to the green shirt, hard hat and glasses; that although Fasano's finger prints were on the demand note, the paper on which the demand note was written came from his old room. The state of course put the clothes on Fasano with the eyewitness testimony and Fasano would put them on Hughes. That the robber wore them and presented the note was never at issue.

*Id.* at 578. In contrast, as discussed in Section III.B.1, *supra*, there is no colorable evidence linking Bostic with the bank robbery.

not in any way suggest that [Mr.] Allen was *not* involved in the robbery." ECF No. 147 at 43. In his instant Motion, Mr. Allen fails to show how this conclusion was manifest error.

Mr. Allen's remaining arguments equally fail. Based on a Missouri state court record and descriptions from two witnesses, Mr. Allen claims Bostic's height was 5'8", not 5'5". Bostic's autopsy report, however, indicates his height was 5'5". ECF No. 94-23 at 5. The autopsy report is also the single document cited for Mr. Allen's proposition "Bostic had scars on his hands and forearms consistent with someone who was injured and bled at the scene of the crime." ECF No. 379 at 19. While the medical examiner did note some scarring in these areas, there is no evidence in the record to support Mr. Allen's speculative assertion the scars were "consistent with someone who was injured and bled at the scene of the crime." In fact, the report indicates Bostic died on May 22, 1998: over a year after the bank robbery. Finally, the bulletproof vest strap tested negative for the DNA of Mr. Allen and Mr. Heflin. It was not tested, however, for the DNA of Holder – the person who was wearing body armor at the scene of the crime. ECF No. 79-2 at 12. The allegation it could have contained Bostic's blood is entirely speculative and unsupported.[5]

Most importantly, however, Mr. Allen's arguments erroneously assume Bostic's potential involvement in the crimes would exculpate Mr. Allen. Assuming only for the sake of argument Mr. Allen's allegations were supported by the record, he has still failed to come forward with any evidence demonstrating Bostic's involvement is tantamount to his own exoneration, or

---

[5] Even more speculative is Mr. Allen's contention the "damp rag" constitutes exculpatory evidence. Mr. Allen has provided no citations to the record suggesting a damp rag tested negative for his blood. In fact, in a pro se pleading, Mr. Allen concedes the damp rag was never tested against himself, the victim, or Holder. ECF No. 363 at 15. In his arguments regarding the damp rag, Mr. Allen provides a single citation to the record: an "Evidence Technicians Report," which states, *inter alia*, "Damp rag – found on [illegible] seat of vehicle – DNA testing." ECF No. 381-1. At most, this document suggests the damp rag was sent for DNA testing; it by no means, however, establishes the rag had any biological material on it at all.

would otherwise implicate a reasonable probability of a different outcome. Mr. Allen has failed to show manifest error, and the Court will not amend the judgment on this basis.

## 2. Weight of the Totality of the Evidence

Mr. Allen contends the Court erred in finding DNA evidence linking Bostic to the crime would not undermine confidence in Mr. Allen's convictions and sentence. In essence, Mr. Allen claims the Court erred in weighing the impact of the allegedly unpresented evidence discussed above, because much of the incriminating evidence was tenuous. In so stating, Mr. Allen largely reasserts arguments already addressed in this Memorandum and Order.[6] Therefore, the Court will discuss only those topics not already addressed.

First, Mr. Allen claims the habeas evidence would have rebutted the testimony of Police Officer Carroll, who testified Mr. Allen smelled strongly of smoke when he was arrested.[7] Mr. Allen states trial counsel was ineffective for failing to present available forensic evidence indicating his clothes did not contain petroleum distillates. Mr. Allen, however, fails to point to any manifest error in the Court's previous ruling:

> The Government presented evidence in response to Allen's Motion from Forensic Scientist Margaret Owens, manager of the St. Louis Metropolitan Police Department's Arson Section, stating that a test for petroleum distillates is "not a test for the presence of smoke" and that "there is no correlation between the smell of smoke on clothes from Mr. Allen and the Laboratory's analysis result that 'no petroleum distillates were detected' on the clothes." Even without this evidence, it is apparent that "petroleum distillates" refers to actual petroleum products, not to trace evidence left by smoke. Furthermore, as noted above, and as will be restated multiple times in this section, it is incredibly unlikely that this relatively minor piece of evidence, even if given the import Allen suggests, would have resulted in a different outcome at trial. Trial counsel's decision not to attempt to impeach Officer Carroll with it did not violate Allen's Sixth Amendment right to counsel.

---

[6] For example, Mr. Allen contends the statements he made to police are "subject to debate." ECF No. 379. For reasons discussed in Section III.A, *supra*, the Court does not agree.
[7] This testimony was used to link Mr. Allen to the crime, because the getaway vehicle had been doused in gasoline and set afire.

- 13 -

ECF No. 147 at 41 (quoting ECF No. 79-1 at 26-27). In short, Mr. Allen rehashes his previous argument, but fails to state a proper basis for relief under Rule 59(e).

Second, Mr. Allen contends counsel's performance was deficient for failing present evidence establishing a witness, Chris Shegog, purportedly saw Mr. Allen at a shopping mall at the same time other witnesses saw a fleeing suspect in Forest Park.[8] However, Mr. Allen presents this theory for the first time in this Rule 59 Motion. "Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise new arguments which could have been offered or raised prior to the entry of judgment." *Metro. St. Louis Sewer Dist.*, 440 F.3d at 934. Moreover, the Court could not have manifestly erred in ruling on a matter not presented to it. Therefore, the Court will not consider the newly asserted theory regarding Chris Shegog in ruling the instant Motion.[9]

In sum, each individual allegation of "deficient performance" is without merit. Reexamining the "totality" of the proffered unpresented evidence, as Mr. Allen urges, does not change this fact. There is still no deficient performance, and no reasonable probability of a different outcome. That is, taking all of Mr. Allen's arguments as a whole, the Court finds his allegations insufficient to undermine confidence in the outcome, and finds no manifest error in the previous rulings.

Finally, in an apparent attempt to establish a deficient performance by trial counsel, Mr. Allen offers recent correspondence between trial attorney Rick Sindel and himself. Specifically, in a letter dated July 1, 2014, Mr. Allen asked Mr. Sindel the following questions:

---

[8] Forest Park is in the vicinity of the Lindell Bank & Trust Company.
[9] In addition, for all the cogent reasons stated in the Government's brief, the Court finds trial counsel was not deficient for failing to present Shegog as a witness. ECF No. 380 at 11-13.

1) Before and/or during my trial, if you had known that the government discovered traces of DNA at the crime scene, and after testing, the results excluded me and the victim; would you have investigated this evidence further and/or presented the results to my jury to establish reasonable doubt?

2) Before and/or during my trial, if you had known that the government was in possession of recordings of witnesses, who were at the crime scene; would you have wanted those recordings in determining what to present on my behalf and/or to use in cross examining the witnesses: being that witnesses stories would change at trial from what was in their police or FBI 302 forms?

3) Before and/or during my trial, had you known that the government would test my clothes for traces of gasoline, (in hopes of linking me to the crime), but the results would later exclude my clothes for traces of gasoline; would you have investigated this further or presented this to my jury to establish reasonable doubt?

4) Before and/or during my trial, had you known that officers lied about Henderson and I knowing each other from the Marquise murder and evidence could prove the lie; would you have investigated this evidence and/or presented it to impeach the witnesses?

5) Before and/or during my trial, had you known the government planned to use charges in my indictment to establish motive (and other things) and the charges would later be revealed to be done by someone else; would you have investigated these facts, kept them from being heard by my jury, or had them removed from the record all together?

6) Before and/or during my trial, had you known that someone name [sic] Jerry Bostic or (JB) could be linked to the DNA found at the crime scenes and that he had possible links to the planning and possibly the crime; would you have investigated him and/or presented him as a witness, or ask for testing to link him to the crime?

ECF No. 379-2 at 3-5. In a response dated July 21, 2014, Mr. Sindel answered as follows:

1. Yes
2. Yes
3. Yes
4. Yes
5. I do not understand the question
6. Yes.

ECF No. 379-2 at 1. Even assuming as true Mr. Allen's dubious proposition "these responses indicate either that Mr. Sindel did not adequately fulfill his obligation to be familiar with the

- 15 -

available evidence in this case, or that Mr. Sindel failed to adequately follow up on these leads and present the available evidence to the jury," ECF No. 379, this correspondence constitutes new evidence. As repeatedly stated throughout this Memorandum, "Rule 59(e) motions cannot be used to introduce new evidence . . . which could have been offered or raised prior to the entry of judgment." *Metro. St. Louis Sewer Dist.*, 440 F.3d at 934. Therefore, the Court will disregard the July 2014 correspondence between Mr. Allen and Mr. Sindel for purposes of ruling the instant Motion.

### C. Pro Se Filings

Mr. Allen argues the Court manifestly erred in denying his pro se grounds for habeas relief. First, he contends the Court is biased and should be recused. Mr. Allen asserted this argument in his Motion for Recusal [ECF No. 377], which the Court struck from the record pursuant to its February 12, 2014 Order [ECF No. 372], stating the Court only would accept future filings from counsel of record.[10] In the instant Motion, Mr. Allen does not challenge the Court's decision to strike his filing; instead, he largely reasserts, in many places verbatim, his previous arguments for recusal. In short, he contends the Court should have granted his Motion for Recusal based on the merits. However, the Court did not examine the merits, because the Motion was stricken from the record. Without adjudicating the Motion, there could be no manifest error.

Therefore, the Court turns to Mr. Allen's remaining arguments, which simply rehash his previous pro se allegations there was (1) a fraud on the Court in connection with testimony at the suppression hearing, (2) a conflict of interest between Mr. Allen and Mr. Sindel, and (3) a *Brady* violation regarding audio recordings of witness interviews allegedly in the Government's

---

[10] "There is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel." *U.S. v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994).

possession. *See* ECF Nos. 379 at 35-41, 363 at 1-13, 370 at 1-4. The Court addressed these arguments in a Memorandum and Order dated June 25, 2014 [ECF No. 373]. As Mr. Allen simply reasserts his previous arguments, and fails to allege any manifest error, or otherwise assert a basis for relief under Rule 59(e), the Court now denies his arguments for the same reasons it found he was not entitled to habeas relief or an evidentiary hearing.

IV. **CERTIFICATE OF APPEALABILITY**

Finally, Mr. Allen asks the Court to grant a certificate of appealability as to the matters addressed *supra*. In order for Mr. Allen to receive a certificate of appealability, the Court must conclude he has made a substantial showing on the issues presented to the Court. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Id.* The Court concludes Mr. Allen has failed to make a substantial showing as to any of his claims. Therefore, the Court will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Billie Jerome Allen's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59 is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim.

Dated this  22nd  Day of August, 2014.

                                                          *E. Richard Webber*
                                                          E. RICHARD WEBBER
                                                          SENIOR UNITED STATES DISTRICT JUDGE